# Exhibit B

Sophia Goren Gold (Cal. Bar No. 307971)
KALIELGOLD PLLC
950 Gilman Street, Suite 200
Berkeley, CA 94710
sgold@kalielgold.com
(202) 350-4783

Jeffrey D. Kaliel (Cal. Bar No. 238293)
KALIELGOLD PLLC
1100 15th Street NW, 4th Floor
Washington, DC 20005
jkaliel@kalielpllc.com
(202) 350-4783

Francisco Guerra IV (Tex. Bar No. 00796684 – *Pro Hac Vice* Forthcoming)
Jennifer A. Neal (Tex. Bar No. 24089834 – *Pro Hac Vice* Forthcoming)
WATTS GUERRA LLP
875 East Ashby Place, Suite 1200
San Antonio, TX 78212
fguerra@wattsguerra.com
jneal@wattsguerra.com
(210) 447-0500

*Attorneys for Plaintiff Van Diest and Khalikulov and the Putative Class*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| SAMUEL VAN DIEST and SERGEY KHALIKULOV, on behalf of themselves and all others similarly situated, | Case No. _____ |
| *Plaintiffs*, | **COMPLAINT** |
| v. | **CLASS ACTION** |
| TESLA, INC. dba TESLA MOTORS, | **DEMAND FOR JURY TRIAL** |
| *Defendant*. | |

1.      Plaintiff Samuel Van Diest ("Van Diest") and Plaintiff Sergey Khalikulov ("Khalikulov") (collectively, "Plaintiffs"), on behalf of themselves, all others similarly situated, and the general public, bring this action for legal and equitable relief against Defendant Tesla, Inc., dba Tesla Motors ("Tesla" or "Defendant") for claims arising from the company's defective and deceptive manufacturing, marketing, sale, maintenance, and service of its electric automobiles, which consistently fail to meet their advertised driving range.

**INTRODUCTION**

2.      The electric automobile[1] market has grown tremendously in the last several years. Tesla stands astride the electric automobile industry with over fifty percent market share. A key to Tesla's success has been its vehicles' advertised driving range, which is the number of miles an electric automobile may drive without requiring a battery recharge. But as many consumers have discovered, Tesla's advertised driving range is a lie.

3.      In general, driving range is among the most important features informing consumer decisions about whether to buy an electric automobile and about which electric automobile to buy. This is because consumers seek to maximize the distance they can travel without having to recharge, which is frequently inconvenient and time consuming, and seek to minimize range anxiety, the fear of being stranded with a depleted battery.

4.      Accordingly, all things being equal, consumers prefer electric automobiles with longer advertised driving ranges to those with shorter advertised driving ranges and are more likely to buy electric automobiles with longer advertised driving ranges than those with shorter advertised driving ranges. Understanding these consumers preferences, Tesla advertises high driving ranges for its electric automobiles.

5.      Tesla's advertised driving ranges are, however, fraudulent. To achieve its

---

[1] The terms "all-electric automobile", "pure-electric automobile", "electric automobile", "electric car", "electric vehicle", and "EV" are used interchangeably throughout this Class Action Complaint. By all these terms, Plaintiffs denote full-sized electric automobiles, not small electric vehicles such as golf carts and scooters. EVs, which run solely on electric battery power, are to be distinguished from gasoline-powered automobiles, which run solely on gasoline power, and gasoline-electric hybrid automobiles, which run on a mix of gasoline and electric battery power.

advertised driving ranges, Tesla uses a range-testing regime intentionally designed to produce high range estimates. The driving conditions used in this range-testing regime do not reflect the driving conditions that buyers encounter in the real world. Therefore, every Tesla model's actual driving range is considerably lower than its advertised driving range.

6.     Additionally, Tesla attempts to conceal the defectiveness of its products after purchase. First, Tesla rigs its onboard range gauges to deceive drivers as to available range. Second, Tesla uses a team of employees to persuade complaining customers that its automobiles are not defective and otherwise to dissuade complaining customers from making or keeping service appointments, which Tesla knows would be fruitless.

7.     Thus, Tesla engages in a three-fold fraud that begins before purchase and extends through ownership. To right these wrongs, on behalf of themselves and the proposed classes, Plaintiffs seek damages, restitution, statutory damages, and attorneys' fees for Defendant's deceptive practices, as set forth more fully below.

8.     Because Tesla's conduct is continuing, Plaintiffs also bring this action on behalf of the general public to enjoin Tesla from continuing to mislead current and prospective Tesla owners regarding the driving range on its cars.

## PARTIES

9.     Plaintiff Van Diest is a California citizen. Van Diest resides in San Francisco. Van Diest is a Tesla owner.

10.     Plaintiff Khalikulov is a California citizen. Khalikulov resides in San Francisco, California. Khalikulov is a Tesla owner.

11.     Defendant Tesla is a Delaware corporation. Tesla's principal place of business is 13101 Harold Green Road, Austin, Texas 78725. Tesla designs, develops, manufactures, tests, markets, distributes, sells, leases, and services electric vehicles, including in California.

## JURISDICTION

12.     This Court has original jurisdiction over this action because (1) the proposed Class is comprised of at least 100 members, (2) at least one member of the proposed Class is a citizen of a state other than California, and (3) the aggregate claims of the proposed Class

members exceed $5 million, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2) and (6). *See infra* "Class Action Allegations" (defining "Class").

## VENUE

13.     Venue is proper in the United States District Court for the Northern District of California because Tesla is subject to personal jurisdiction in the Northern District, because Tesla regularly conducts business in the Northern District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in the Northern District. 28 U.S.C. § 1391.

## DIVISIONAL ASSIGNMENT

14.     This action would be appropriately assigned to the Oakland Division because it is related to *James Porter et al. v. Tesla, Inc.*, Case No. 23-cv-03878, which has been assigned to United States District Judge Yvonne Gonzalez Rogers.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

15.     The essence of Tesla's wrongdoing is easy to understand: Tesla misrepresents the battery range of its automobiles to prospective buyers. Tesla uses its automobiles' onboard software to deceive owners as to actual battery range. And Tesla programmatically deceives vehicle owners as to whether their vehicles' batter range is less than advertised or is otherwise defective and dissuades complaining customers them from receiving service. All of these actions are violations of the law and consumers' rights.

## I.     THE ELECTRIC VEHICLE MARKET HAS BOOMED IN RECENT YEARS

16.     Globally, the sale of all-electric automobiles has boomed in recent years. In 2020, less than 5% of new cars sold were electric. In 2021, around 9% of new cars sold were electric. In 2022, around 14% of new cars sold were electric. In 2023, around 18% of new cars sold are expected to be electric. INTERNATIONAL ENERGY AGENCY, GLOBAL EV OUTLOOK 8 (2023). That is, within four years, electric vehicle sales will have quadrupled.

17.     It is a similar story in the United States. Here, all-electric vehicle sales have grown from 1.8% of new car sales in 2020 to 5.6% of new car sales in 2022, tripling within three years. Marty Miller, Experian, Automotive Market Trends Q3 2022 at 30, available at

www.experian.com/content/dam/noindex/na/us/automotive/market-trends/2022-market-

trends/experian-automotive-market-trends-q3-2022final.pdf.

18.     In this highly competitive industry, Tesla is the clear market leader: Tesla

delivered approximately 1.3 million electric vehicles in 2022. Tesla's vehicles accounted for

65.4% of all electric vehicle sales in 2022. *Id.* at 31. And four of the six best-selling electric

vehicles in the U.S. in 2022 were Tesla models. Mathilde Carlier, *Best-Selling Battery-Electric*

*Cars In the United States 2022*, STATISTA.COM, June 14, 2023,

https://www.statista.com/statistics/257966/best-selling-electric-cars-in-the-united-states/.

19.     Unlike a traditional automobile manufacturer, Tesla sells all of its vehicles

directly to consumers, without the use of third-party dealerships or other intermediaries.

## II.     TESLA MISREPRESENTS DRIVING RANGE TO INDUCE PURCHASES

20.     Tesla knows that driving range is one of the most important factors to consumers

deciding whether to purchase a gasoline vehicle, hybrid vehicle, or electric vehicle.

21.     Tesla also knows that driving range, sometimes called battery range, is one of the

most important factors to consumers deciding which electric vehicle to buy.

22.     For that reason, Tesla prominently advertises its vehicles' estimated driving range

in nearly all of its marketing and across all marketing channels.

23.     On its website, for example, Tesla features the driving range of each of its

vehicles as one of the very first pieces of information conveyed to consumers about each of its

vehicles. *See* Appendix A (collecting screenshots of each Tesla model's product page).

*Continued on the next page.*

24.     By way of example, here is how Tesla advertises its Model S[2]:



25.     Reading left to right, the estimated driving range is the first and therefore most prominently featured attribute of the Model S.

*Continued on the next page.*

---

[2] Red arrows appearing on screenshots included in this Complaint have been added for illustrative purposes.

26.     If a consumer clicks "Order Now," they are again advertised the Model S's estimated driving range:



27.     If a consumer clicks "Feature Details," a model screen presents the vehicle's estimated driving range yet a third time:



28.     Tesla uses these same marketing pattern across all of its models and displays the estimated driving range of each. *See* Appendix A.

29.     As recent news reporting has revealed, Tesla's advertised driving ranges are a lie. Steve Stecklow and Norihiko Shirouzu, *Tesla Created Secret Team to Suppress Thousands of Driving Range Complaints*, REUTERS, July 24, 2023, https://www.reuters.com/investigates/special-report/tesla-batteries-range/. That is, Tesla vehicles with fully charged batteries do not drive as far as Tesla advertises to prospective customers.

30.     To evade regulatory checks on such lies, Tesla artificially inflates its driving range projections by failing to account for realistic driving conditions in its own testing of its vehicles. The actual driving range of an electric vehicle is affected by numerous real-world variables. These include both driving habits, such as acceleration and braking rates, average speed, and stop frequency, and external factors, such as traffic, weather, terrain, and road conditions. Responsible automakers include these variables in their testing and report honest range estimates both to regulators and to consumers.

31.     Tesla, on the other hand, tests its vehicles in artificial settings that are designed not to reflect real-world driving conditions but to optimize range estimates. It is these inflated range estimates that Tesla reports to government agencies and advertises to consumers. But when tested by third parties, Tesla vehicles consistently fail to drive for their advertised ranges.

32.     Therefore, each marketing communication in which Tesla promises greater range than its cars deliver constitutes a false statement intentionally communicated by Tesla to prospective customers.

33.     And prospective customers unquestionably rely on Tesla's false statements when deciding to buy a Tesla automobile.

III.    **TESLA'S MISREPRESENTATIONS CONTINUE AFTER PURCHASE**

34.     Tesla continues to misrepresent the actual driving range of its vehicles after purchase. First, Tesla uses its control of its vehicles' onboard technology to misrepresent driving range. Second, Tesla uses its control of Tesla service to conceal its pre-purchase and post-purchase misrepresentations.

A.      **TESLA RIGS ITS DRIVING RANGE GAUGES TO DECEIVE DRIVERS**

35.     Tesla automobiles are essentially computers with electric motors attached to them.

As Tesla CEO Elon Musk said in 2015, "We really designed the Model S to be a very sophisticated computer on wheels." Jerry Hirsch, *Elon Musk: Model S Not a Car But a 'Sophisticated Computer on Wheels'*, L.A. TIMES, March 19, 2015, https://www.latimes.com/business/autos/la-fi-hy-musk-computer-on-wheels-20150319-story.html.  Like all computers, Tesla automobiles have operating systems. Thus, as Musk elaborated, "Tesla is a software company as much as it is a hardware company. A huge part of what Tesla is, is a Silicon Valley software company. We view [updating the software that controls our cars as being] the same as updating your phone or your laptop." *Id.*

36.     The Tesla operating system cannot be altered by users. However, Tesla can and does update the operating system in its vehicles remotely via the Internet. Indeed, Tesla updates its operating system automatically and without users' consent whenever a vehicle's onboard computer detects that it is connected to the Internet. David Shepardson, *Tesla Owners Sue Over Impact of Software Update on EV Batteries*, REUTERS, May 15, 2023, https://www.reuters.com/legal/tesla-owners-sue-over-impact-software-update-ev-batteries-2023-05-12/.

37.     One of the features in the Tesla operating system is a software-based driving range gauge. This gauge purports to estimate the driving distance that can be achieved on the car battery's current level of charge.[3] The lower the remaining charge, the lower the distance the car can travel. Drivers use them to plan their travel.

38.     The range gauge's estimated distance readout is determined by an algorithm that incorporates numerous data, such as outdoor temperature and battery level. While driving, the algorithm continuously adjusts the range estimate displayed to the user. Were such estimates accurate, they would be very useful to Tesla drivers. But Tesla's gauges are designed to be inaccurate—in a very specific way.

39.     Rather than accurately estimating the number of miles a driver can continue to drive without a charge, Tesla intentionally, systematically, and artificially inflates the estimated

---

[3] The Tesla operating system also displays the vehicle's battery charge level in terms of a percentage of a full battery charge.

range left on its batteries. Even though no Tesla vehicle tested by an independent auditor meets the range expectations set by the manufacturer, the range gauge on a fully charged Tesla shows an estimated driving range on the upper end of the company's advertised driving range. As a driver depletes his Tesla battery, the range gauge adjusts algorithmically to become more accurate. This clever trick encourages drivers to recharge their batteries before the sudden and total loss of power that would occur if the range gauge had a linear depletion function because a Tesla's actual range is usually less than the range displayed by the range gauge.

40. Thus, Tesla uses its control of the software in its vehicles to manipulate range estimates and thereby maintain the illusion that Tesla automobiles have their advertised range.

41. These manipulated range estimates, which Tesla controls via its continuously updated vehicle software operating system, constitute further misrepresentations from Tesla to purchasers and concealment of the company's prior misrepresentations.[4]

**B. TESLA DIVERTS SERVICE APPOINTMENTS FOR COMPLAINING CUSTOMERS**

42. Tesla has sought to fraudulently conceal its deception by intentionally cancelling service appointments for drivers who complain about their vehicles failing to drive for the advertised driving range.

43. Tesla has a designated "diversion team" to handle only driving range appointments. The diversion team has been specifically instructed to cancel or delay service appointments for drivers who complain about their range.

44. Among the techniques used to achieve these ends are fake remote diagnostic evaluations of drivers' vehicles, which the diversion team relies upon to persuade Tesla owners that their vehicle batteries are functioning as advertised.

**IV. PLAINTIFFS' EXPERIENCES**

**A. VAN DIEST**

45. Plaintiff Van Diest purchased a new Tesla Model 3 Long Range from Tesla in

---

[4] These false range estimates create a potential safety hazard because a driver may end up stranded due to the mistaken belief that he has more range left than he actually does.

1    May 2021.

2           46.    Van Diest's purchase was based in part on the driving range misrepresentations on

3    Tesla's website.

4           47.    Van Diest opted to purchase the long-range version of the Model 3 because he

5    wanted to maximize his driving range.

6           48.    Specifically, Van Diest wanted to be able to drive approximately 268 miles per

7    week without recharging his vehicle's battery.

8           49.    This distance of 268 miles is the total amount required to drive to and from work

9    five days per week and to drive to and from the South San Francisco Bay Area, frequently

10   referred to as the "South Bay", to visit family one day per week.

11          50.    This distance is also significantly less than the Tesla's advertised driving range for

12   the Model 3 Long Range.

13          51.    Van Diest found that the actual driving range of his Model 3 Long Range was far

14   less than Tesla's advertised driving range.

15          52.    Had Van Diest known that his Tesla would not meet its advertised driving range,

16   Plaintiff would not have purchased the vehicle.

17          53.    Van Diest would consider purchasing another Tesla in the future if he could rely

18   on the accuracy of Tesla's representations.

19   **B.    KHALIKULOV**

20          54.    Plaintiff Khalikulov purchased a used 2020 Tesla Model 3 Long Range in

21   December 2022.

22          55.    His purchase was based in part on the driving range misrepresentations on Tesla's

23   website.

24          56.    Khalikulov opted to purchase the long-range version of the Model 3 because he

25   wanted to maximize his driving range.

26          57.    Specifically, Khalikulov wanted a vehicle to take on road trips that would not

27   need to be charged often.

28          58.    Khalikulov first learned that his Model 3 did not have the driving range Tesla

represented when he took a road trip soon after purchasing his car and found that it needed to be charged often along the way.

59. Khalikulov's Model 3, fully charged, indicates that the vehicle has 281 miles of range as opposed to the 322 miles advertised by Tesla.

60. Khalikulov's Model 3 has an actual maximum driving range that is significantly less than 281 miles indicated by the vehicle's range gauge.

61. Khalikulov would consider purchasing another Tesla in the future if he could rely on the accuracy of Tesla's representations.

## CLASS ACTION ALLEGATIONS

62. Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

63. The proposed classes are defined as follows:

1. all persons who purchased or leased a Tesla vehicle within the applicable statute of limitations preceding the filing of this action to the present ("National Class");

2. all persons in California who purchased or leased a Tesla vehicle within the applicable statute of limitations preceding the filing of this action ("California Subclass").

Collectively, the National Class and the California Subclass shall be referred to as the "Class".

64. Excluded from the Class are (i) Defendant and Defendant's subsidiaries and affiliates; (ii) Defendant's officers, directors, and employees; (iii) entities in which Defendant has a controlling interest; (iv) the judicial officer(s) to whom this action is assigned; and (v) the immediate family members, legal representatives, heirs, successors, or assigns of any party excluded under (i)–(iv).

65. Plaintiffs reserve the right to modify or amend the definition of the proposed Class and to add subclasses before this Court determines whether certification is appropriate.

66. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

67.     As to numerosity: The parties are numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Class consists of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to Tesla's records. Tesla has the administrative capability through its computer systems and other records to identify all members of the Class, and such specific information is not otherwise available to Plaintiffs.

68.     As to commonality: The questions here are ones of common or general interest such that there is a well-defined community of interest among Class members. These questions predominate over questions that may affect only individual Class members because Tesla has acted or failed to act on grounds generally applicable to the Class. Such common legal or factual questions include, but are not limited to: (i) whether Defendant engaged in the conduct alleged herein; (ii) whether Defendant's conduct was deceptive, (iii) whether Defendant's conduct caused Class members harm; (iv) whether Defendant's conduct violated state consumer protection laws; (v) the appropriate measure of damages; and (vi) whether Plaintiffs and the Class are entitled to declaratory relief, injunctive relief, restitution, or a combination of these.

69.     As to typicality: Plaintiffs' claims are typical of the claims of the other members of the Class in that they arise out of the same wrongful business practices by Tesla, as described herein. The evidence and the legal theories regarding Defendant's alleged wrongful conduct committed against Plaintiffs and absent Class members are substantially the same because the challenged practices are uniform for Plaintiffs and Class members. Accordingly, in pursuing their own self-interest in litigating the claims, Plaintiffs will also serve the interests of the Class.

70.     As to adequacy: Each Plaintiff is a more than adequate representative of the Class pursuant to Rule 23 in that each Plaintiff is a Tesla owner and has suffered damages because of Tesla's deceptive practices. Additionally, (i) Plaintiffs are committed to the vigorous prosecution of this action on behalf of themselves and all others similarly situated; (ii) Plaintiffs have retained competent counsel experienced in the prosecution of class actions; (iii) there is no conflict of interest between Plaintiffs and the unnamed members of the Class; (iv) Plaintiffs anticipate no difficulty in the management of this litigation as a class action; and (v) Plaintiffs'

1    legal counsel has the financial and legal resources to meet the substantial costs and address the

2    legal issues associated with this type of litigation.

3         71.    As to predominance: The matter is properly maintained as a class action under

4    Rule 23 because the common questions of law and fact identified herein and to be identified

5    through discovery predominate over questions that may affect only individual Class members.

6         72.    As to superiority: A class action is superior to all other available methods for the

7    fair and efficient adjudication of this matter pursuant to Rule 23 because the injuries suffered by

8    the individual Class members are relatively small. As such, the expense and burden of individual

9    litigation would make it virtually impossible for Plaintiffs and Class members to individually

10   seek redress for Defendant's wrongful conduct.

11        73.    Additionally, the Class is numerous enough to render joinder of all members or

12   the maintenance of separate suits impracticable. Even if any individual person or group of Class

13   members could afford individual litigation, it would be unduly burdensome to the courts in

14   which the individual litigation would proceed. The class action device is preferable to individual

15   litigation because it provides the benefits of unitary adjudication, economies of scale, and

16   comprehensive resolution by a single court. Further, the difficulties likely to be encountered in

17   the management of this action as a class action are minimal.

18        74.    In contrast, the prosecution of separate actions by individual Class members

19   would create a risk of inconsistent or varying adjudications with respect to individual Class

20   members that would establish incompatible standards of conduct for the party or parties

21   opposing the Class and would lead to repetitious trials of many common questions of law and

22   fact.

23        75.    Plaintiffs know of no difficulty to be encountered in the management or

24   maintenance of this action that would preclude its maintenance as a class action. But absent a

25   class action, Plaintiffs and Class members will continue to suffer losses, thereby allowing

26   Defendant's violations of law to proceed without remedy and allowing Defendant to retain the

27   proceeds of their ill-gotten gains.

28        76.    For all these reasons, a class action is superior to other available methods for the

1    fair and efficient adjudication of this action.

2        77.    As stated above, Tesla has acted or refused to act on grounds generally applicable

3    to the class, thereby making appropriate corresponding declaratory relief with respect to the

4    Class as a whole.

5        78.    All conditions precedent to bringing this action have been satisfied, waived, or

6    both.

7                        **CLAIMS FOR RELIEF**

8    **I.    VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW, CAL. BUS. &**

9        **PROF. CODE § 17200, ET SEQ. (ON BEHALF OF PLAINTIFFS AND THE**

10       **CALIFORNIA SUBCLASS)**

11       79.    Plaintiffs hereby incorporate by reference paragraphs 1 through 78 as if fully

12   restated here.

13       80.    Tesla's conduct described herein violates the Unfair Competition Law ("UCL"),

14   codified at California Business and Professions Code section 17200, *et seq*.

15       81.    The UCL prohibits, and provides civil remedies for, unfair competition. Its

16   purpose is to protect both consumers and competitors by promoting fair competition in

17   commercial markets for goods and services. In service of that purpose, the Legislature framed

18   the UCL's substantive provisions in broad, sweeping language.

19       82.    The UCL imposes strict liability. Plaintiffs need not prove that Tesla intentionally

20   or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such

21   practices occurred.

22       83.    A business act or practice is "unfair" under the UCL if it offends an established

23   public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to

24   consumers, and that unfairness is determined by weighing the reasons, justifications, and motives

25   of the practice against the gravity of the harm to the alleged victims.

26       84.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive

27   members of the public.

28       85.    A business act or practice is "unlawful" under the UCL if it violates any other law

or regulation.

86.     Tesla committed unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, by affirmatively and knowingly misrepresenting the driving range on its cars, as described herein.

87.     Defendant's acts and practices offend an established public policy of truthful advertising in the marketplace, and constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

88.     The harm to Plaintiffs and the Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

89.     Defendant's conduct also constitutes an "unlawful" act under the UCL because, as detailed in Plaintiffs' Second Claim for Relief below, it also constitutes a violation of sections 1770(a)(5) and (a)(9) of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code section 1750, *et seq.*, as set forth more fully below.

90.     Tesla's business practices have misled Plaintiffs and the proposed Class and, unless enjoined, will continue to mislead them in the future.

91.     Plaintiffs relied on Defendant's misrepresentations in choosing to purchase a Tesla.

92.     By falsely marketing the driving range of its vehicles, Tesla deceived Plaintiffs and Class members into making purchases they otherwise would not make.

93.     As a direct and proximate result of Tesla's unfair, fraudulent, and unlawful practices, Plaintiffs and Class members suffered and will continue to suffer actual damages. Defendant's fraudulent conduct is ongoing and presents a continuing threat to Plaintiffs and Class members that they will be deceived. Plaintiffs desire to conduct further business with Tesla but cannot rely on Tesla's representations unless an injunction is issued.

94.     As a result of its unfair, fraudulent, and unlawful conduct, Tesla has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiffs and Class members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

95.     Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiffs and the members of the Class, on behalf of the general public, seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their unfair, unlawful, and fraudulent practices.

96.     Plaintiffs have no adequate remedy at law in part because Tesla's conduct is continuing. Plaintiffs therefore seek an injunction on behalf of the general public to prevent Tesla from continuing to engage in the deceptive and misleading practices described herein.

**II.     SECOND CLAIM FOR RELIEF: VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT, CAL. CIV. CODE § 1750, ET SEQ. (ON BEHALF OF PLAINTIFFS AND THE CALIFORNIA SUBCLASS)**

97.     Plaintiffs hereby incorporate by reference paragraphs 1 through 78 as if fully restated here.

98.     This cause of action is brought pursuant to the Consumer Legal Remedies Act ("CLRA"), California Civil Code section 1750, *et seq*. Plaintiffs and each member of the proposed Class are "consumers" as defined by California Civil Code section 1761(d).

99.     Defendant's sale of vehicles to consumers were "transactions" within the meaning of California Civil Code section 1761(e).

100.    The vehicles purchased by Plaintiffs and the Class are "goods" within the meaning of California Civil Code section 1761(a).

101.    74.     Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code section 1770(a) in transactions with Plaintiffs and the Class which were intended to result in and did result in the sale of Tesla vehicles: (i) "[r]epresenting that goods or services have . . . characteristics . . . that they do not have," Cal. Civ. Code § 1770(a)(5); "[a]dvertising goods or services with intent not to sell them as advertised," Cal. Civ. Code § 1770(a)(9).

102.    Specifically, as alleged herein, Tesla has misrepresented and continues to misrepresent the actual driving range of its vehicles.

103.    Tesla has directed and does direct these misrepresentations at consumers before

1    purchase through marketing communications.

2        104.    Tesla has directed and does direct these misrepresentations at consumers after

3    purchase through in-vehicle information displays and through the work of the diversion team

4    described above. both before and after purchase.

5        105.    At no time does Tesla disclose the true driving range of its vehicles to consumers;

6    instead, it repeatedly conceals and misrepresents this material information.

7        106.    Tesla continues to violate the CLRA and continues to injure the public by

8    misleading consumers about the driving range on its vehicles. Accordingly, Plaintiffs seek

9    injunctive relief on behalf of the general public to prevent Tesla from continuing to engage in

10   these deceptive and illegal practices. Otherwise, Plaintiffs, the Class members, and members of

11   the general public may be irreparably harmed or denied an effective and complete remedy if such

12   an order is not granted.

13       107.    In accordance with California Civil Code section 1780(a), Plaintiffs and the Class

14   members seek injunctive and equitable relief on behalf of the general public for violations of the

15   CLRA, including restitution and disgorgement.

16       108.    Pursuant to section 1782(a) of the CLRA, Plaintiffs' counsel notified Defendant in

17   writing by certified mail of the particular violations of section 1770 of the CLRA and demanded

18   that it both rectify the problems associated with the actions detailed above and give notice to all

19   affected consumers of Defendant's intent to act. If Defendant fails to respond to Plaintiffs' letter

20   or fails to agree to rectify the problems associated with the actions detailed above and give notice

21   to all affected consumers within thirty days of the date of written notice, as proscribed by section

22   1782, Plaintiffs will move to amend his Complaint to pursue claims for actual, punitive, and

23   statutory damages, as appropriate, against Defendant. However, as to this cause of action, at this

24   time, Plaintiffs seek only injunctive relief.

25   **III.    THIRD CLAIM FOR RELIEF: FALSE AND MISLEADING ADVERTISING,**

26   **BUS. & PROF. CODE §§ 17500, ET SEQ. (ON BEHALF OF PLAINTIFFS AND**

27   **THE CALIFORNIA SUBCLASS)**

28       109.    Plaintiffs hereby incorporate by reference paragraphs 1 through 78 as if fully

1    restated here.

2        110.    California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code section

3    17500, states that "[i]t is unlawful for any . . . corporation . . . with intent . . . to dispose of . . .

4    personal property . . . to induce the public to enter into any obligation relating thereto, to make or

5    disseminate or cause to be made or disseminated . . . from this state before the public in any

6    state, in any newspaper or other publication, or any advertising device, or by public outcry or

7    proclamation, or in any other manner or means whatever, including over the Internet, any

8    statement . . . which is untrue or misleading and which is known, or which by the exercise of

9    reasonable care should be known, to be untrue or misleading . . . ."

10       111.    Defendant's material misrepresentations and omissions alleged herein violate

11   Business and Professions Code section 17500.

12       112.    Defendant knew or should have known that its misrepresentations and omissions

13   were false, deceptive, and misleading.

14       113.    Pursuant to Business and Professions Code sections 17203 and 17500, Plaintiffs

15   and the members of the Class, on behalf of the general public, seek an order of this Court

16   enjoining Defendant from continuing to engage, use, or employ their deceptive practices.

17       114.    Further, Plaintiffs requests an order awarding Plaintiffs and Class members

18   restitution of the money wrongfully acquired by Defendant by means of said misrepresentations.

19       115.    Additionally, Plaintiffs and the Class members seek an order requiring Defendant

20   to pay attorneys' fees pursuant to California Civil Code section 1021.5.

21   **IV.    FOURTH CLAIM FOR RELIEF: BREACH OF EXPRESS WARRANTY, CAL.**

22   **       CIV. CODE §§ 1791.2(A), 1794 (ON BEHALF OF PLAINTIFFS AND THE**

23   **       CALIFORNIA CLASS)**

24       116.    Plaintiffs hereby incorporate by reference paragraphs 1 through 78 as if fully

25   restated here.

26       117.    Defendant expressly warranted to Plaintiffs and the Class through written

27   statements within the meaning of California Civil Code section 1791.2(a)(1) (including but not

28   limited to statements that Defendant made or caused to be made on Tesla's website, in Tesla

marketing materials, in various print media, and other written forums) that its vehicles could drive a certain number of miles without a charge.

118.    Plaintiffs and the Class reasonably relied on the express warranty in purchasing and using Tesla's vehicles.

119.    Defendant breached the expressed warranty by failing to deliver cars that could drive the designated number of miles without a charge.

120.    Defendant's breaches were "willful" within the meaning of California Civil Code section 1794(c).

121.    As a direct and proximate result of the breach of the express warranty, Plaintiffs and the Class have been injured, as they did not get the benefit of the bargain.

122.    As a result of Tesla's breach of express warranty as set forth above, Plaintiffs and the Class have suffered and will continue to suffer damages in an amount to be determined at trial.

## V.    FIFTH CLAIM FOR RELIEF: BREACH OF IMPLIED WARRANTY, CAL. CIV. CODE §§ 1791.1, 1792, 1794 (ON BEHALF OF PLAINTIFFS AND THE CALIFORNIA CLASS)

123.    Plaintiffs hereby incorporate by reference paragraphs 1 through 78 as if fully restated here.

124.    Under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq.*, every sale or lease of consumer goods to a retail buyer is accompanied by an implied warranty of merchantability from both the manufacturer and the retail seller or lessor, and some such sales and leases may also be accompanied by an implied warranty of fitness from both the manufacturer and the retail seller or lessor. *Id.* §§ 1792-1792.2

125.    The durations of these implied warranties are coextensive with the duration of the Defendant's express warranty, provided the duration of the express warranty is reasonable, except that the duration of the implied warranties cannot have a duration of less than sixty days or more than one year. *Id.* § 1791.1(c)

126.    Defendant's implied warranties of merchantability include warranties that the

vehicles will conform to the promises or affirmations of fact made on the container or label. *Id.*
§ 1791.1(a).

127. The vehicles purchased by Plaintiffs and the Class failed to conform to the
implied warranty of merchantability because they did not drive the designated number of miles
without a charge, as Defendant promised.

128. Defendant's breaches were "willful" within the meaning of California Civil Code
§ 1794(c).

129. As a direct and proximate result of the breach of the implied warranty, Plaintiffs
and the Class have been injured, as they did not get the benefit of the bargain.

130. As a result of Tesla's breach of implied warranty as set forth above, Plaintiffs and
the Class have suffered and will continue to suffer damages in an amount to be determined at
trial.

131. Unless Defendant is enjoined from engaging in conduct alleged herein that
violates their express warranties, members of the consuming public will be further harmed by
that conduct.

## VI. SIXTH CLAIM FOR RELIEF: BREACH OF CONTRACT (ON BEHALF OF PLAINTIFFS, THE NATIONAL CLASS, AND THE CALIFORNIA SUBCLASS)

132. Plaintiffs hereby incorporate by reference paragraphs 1 through 78 as if fully
restated here.

133. Thus Plaintiffs and Class members and Tesla formed a valid contract for the
purchase and sale or lease of electric automobiles.

134. Under said contract, Tesla promised to deliver vehicles that could drive a
designated number of miles without a charge.

135. Under said contract, Plaintiffs promised to pay for those vehicles.

136. By failing to deliver the vehicles as promised, Tesla breached the terms of its
agreement.

137. Under the law of California, all contracts impose upon each party a duty of good
faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and

discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

138.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of violations of good faith and fair dealing are willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

139.    Tesla has breached the covenant of good faith and fair dealing in the contract through its practices as alleged herein.

140.    Plaintiffs and members of the Class have performed all, or substantially all, of the obligations imposed on them under the agreement.

141.    Plaintiffs and members of the Class have sustained damages as a result of Tesla's breach of contract.

## **PRAYER FOR RELIEF**

142.    For the foregoing reasons, Plaintiffs, individually and on behalf of the Class, pray for the following relief:

1.    certification for this matter to proceed as a class action on behalf of the Class pursuant to Rule 23;

2.    appointment of the Plaintiffs as representative of the Class;

3.    appointment of counsel for Plaintiffs as Lead Counsel for the Class;

4.    a finding that Tesla's practices are in violation of state consumer protection statutes;

5.    restitution of all amounts improperly paid to Tesla by Plaintiffs and the members of the Class as a result of the wrongs alleged herein in an amount to be determined at trial;

1               6.        actual damages in an amount according to proof;

2               7.        statutory damages as allowed by law;

3               8.        an award of pre-judgment and post-judgment interest at the maximum rate

4                                 permitted by applicable law;

5               9.        an award of costs and attorneys' fees under the common fund doctrine and

6                                 all other applicable law; and

7             10.       declaratory and injunctive relief.

8    Plaintiffs also request such other relief as this Court deems just and proper.

9                        **<u>DEMAND FOR JURY TRIAL</u>**

10        143.     Plaintiffs and all others similarly situated hereby demand trial by jury on all

11   issues in this Class Action Complaint that are so triable.

13   Dated: August 11, 2023               /s/ Sophia Goren Gold

14                                 Sophia Goren Gold (Cal. Bar No. 307971)

15                                 KALIELGOLD PLLC
950 Gilman Street, Suite 200

16                                 Berkeley, CA 94710
sgold@kalielgold.com
(202) 350-4783

18                                 Jeffrey D. Kaliel (Cal. Bar No. 238293)

19                                 KALIELGOLD PLLC
1100 15th Street NW, 4th Floor

20                                 Washington, DC 20005
jkaliel@kalielpllc.com
(202) 350-4783

22                                 Francisco Guerra IV (Tex. Bar No. 00796684 –
*Pro Hac Vice* Forthcoming)

23                                 Jennifer A. Neal (Tex. Bar No. 24089834 –
*Pro Hac Vice* Forthcoming)

24                                 WATTS GUERRA LLP
875 East Ashby Place, Suite 1200

25                                 San Antonio, TX 78212
fguerra@wattsguerra.com

26                                 jneal@wattsguerra.com
(210) 447-0500

28                                 *Attorneys for Plaintiffs and the Putative Class*

# APPENDIX A

## APPENDIX A:

## TESLA WEBSITE MARKETING



**Figure 1.** Model S product page.



**Figure 2.** Model S order page.





**Figure 3.** Model S Plaid order page.



**Figure 4.** Model S and Model S Plaid feature detail modal.



**Figure 5.** Model 3 product page.



**Figure 6.** Model 3 order page.



**Figure 7.** Model 3 Long Range order page.



**Figure 8.** Model 3 Performance order page.

**Figure 9.** Model 3 feature detail modal.

*Continued on the next page.*



**Figure 10.** Model X product page.



**Figure 11.** Model X order page.





**Figure 12.** Model X Plaid order page.



**Figure 13.** Model X feature detail modal.



**Figure 14.** Model Y product page.



**Figure 15.** Model Y order page.





**Figure 16.** Model Y Long Range order page.

**Figure 17.** Model Y Performance order page.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Figure 18.** Model Y feature detail modal.