Adam A. Edwards*
aedwards@milberg.com
William A. Ladnier (CA Bar No. 330334)
wladnier@milberg.com
Virginia Ann Whitener*
gwhitener@milberg.com
**MILBERG COLEMAN BRYSON
   PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel: (865) 247-0080
Fax: (865) 522-0049

Mitchell Breit*
mbreit@milberg.com
**MILBERG COLEMAN BRYSON
   PHILLIPS GROSSMAN, PLLC**
405 E. 50th Street
New York, NY 1002
Tel: (347) 668-8445

* Admitted pro hac vice

*Attorneys for Plaintiffs
and the Proposed Classes*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES PORTER, BRYAN PEREZ, DRO ESRAEILI ESTEPANIAN, DENNIS ROMANEZ, ARTEM KUPRIIETS, NEIL KREUZER, WAFAY NADIR, and KENNETH BROWN, on behalf of themselves and all others similarly situated,<br><br>   Plaintiffs,<br><br>v.<br><br>TESLA, INC. d/b/a TESLA MOTORS, INC.,<br><br>   Defendant. | Case No. 4:23-CV-03878-YGR<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br><br>DEMAND FOR JURY TRIAL |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs James Porter, Bryan Perez, Dro Esraeili Estepanian, Dennis Romanez, Artem Kupriiets, Neil Kreuzer, Wafay Nadir, and Kenneth Brown (collectively, "Plaintiffs") bring this action on behalf of themselves and all others similarly situated, against Defendant Tesla, Inc. (d/b/a Tesla Motors, Inc.) ("Tesla"). Plaintiffs' allegations are based upon personal knowledge and belief as to their own acts, upon the investigation of their counsel, and, where specifically stated, upon information and belief.

## INTRODUCTION

1.  Plaintiffs bring this action individually and on behalf of a proposed class of similarly situated owners of Tesla model vehicles. This action arises out of Tesla's false advertising of its electric vehicles' range, which Tesla grossly overvalued when selling the vehicles to consumers.

2.  Tesla designs, manufactures, advertises, markets, and sells electric vehicles to consumers.

3.  A key feature of electric vehicles is the "range" of the electric vehicle—that is, the distance the electric vehicle can be driven on a single battery charge, before requiring the driver to stop and recharge the vehicle. The electric vehicle's range directly correlates to the electric vehicle's battery charge. An electric vehicle's range is roughly equivalent to a gas-powered vehicle's potential range it can be driven on a single tank of gas, or it's "distance to empty."

4.  The electric vehicle's range is one of the most important features that consumers generally consider when purchasing an electric vehicle, because it correlates to the distance they can travel before needing to recharge the vehicle. In fact, when a consumer visits Tesla's website to view any of Tesla's various electric vehicle models, "range" is the *first* listed feature advertised among other key features.

5.  Understanding that this would be an important feature (if not the most important

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 4:23-CV-03878-YGR

feature) to many consumers, and preying on this fact, Tesla marketed its electric vehicles as having a grossly overvalued range in an effort to increase sales to consumers. As it so happens, Tesla advertised its vehicles as having ranges that, in some instances, were 26% over the actual average range of the electric vehicle.[1]

6.      After purchasing their Tesla electric vehicles, many Tesla owners noticed that the average range in their vehicles was well-below the range Tesla had advertised prior to their purchase. As some owners grew concerned, they contacted Tesla to schedule service appointments to confirm whether anything was wrong with their electric vehicle or its battery.

7.      However, many consumers who complained or scheduled appointments with Tesla regarding the below-advertised ranges in their vehicles discovered that Tesla would cancel such appointments and would explain that their electric vehicle was performing as intended.[2]

8.      As a result of Tesla's unfair, deceptive, and/or fraudulent business practices in advertising grossly overestimated range statistics for its electric vehicles to consumers, Tesla purchasers, including Plaintiffs, were harmed.

9.      Had Plaintiffs and putative Class Members known that the advertised range of Tesla vehicles were grossly overestimated, they would not have bought Tesla model vehicles, or else would have paid substantially less for them.

10.      As a result of Tesla's tactics and false advertising, Plaintiffs and Class Members suffered an injury in fact, incurred damages, and have been harmed by Tesla's conduct.

11.      Accordingly, Plaintiffs bring this action to redress Tesla's violations of state consumer fraud statutes, fraud, negligent misrepresentation, breach of express warranty, breach of implied warranty, violation of California's Song-Beverly Consumer Warranty Act, and unjust enrichment.

---

[1] https://www.reuters.com/investigates/special-report/tesla-batteries-range (last visited July 28, 2023).
[2] *Id.*

**PARTIES**

12.     Plaintiff James Porter is a resident and citizen of Petaluma (Sonoma County), California. In March 2022, Plaintiff Porter ordered a 2022 Tesla Model Y Performance vehicle. In June 2022, Plaintiff Porter received his Tesla vehicle.

13.     Plaintiff Bryan Perez is a resident and citizen of Lancaster (Los Angeles County), California. In February 2022, Plaintiff Perez ordered a 2021 Tesla Model 3 Long Range vehicle. In March 2022, Plaintiff Perez received his Tesla vehicle.

14.     Plaintiff Dro Esraeili Estepanian is a resident and citizen of Palmdale (Los Angeles County), California. In or around December 2021 or January 2022, Plaintiff Estepanian ordered a 2022 Tesla Model 3 Long Range vehicle. In July 2022, Plaintiff Estepanian received his Tesla vehicle.

15.     Plaintiff Dennis Romanez is a resident of Pompano Beach (Broward County), Florida. In December 2021, Plaintiff Romanez ordered a 2021 Tesla Model Y Long Range vehicle. In December 2020, Plaintiff Romanez received his Tesla vehicle.

16.     Plaintiff Artem Kupriiets is a resident of Palatine (Cook County), Illinois. In February 2023, Plaintiff Kupriiets ordered a 2023 Tesla Model Y Performance vehicle. In March 2023, Plaintiff Kupriiets received his Tesla vehicle.

17.     Plaintiff Neil Kreuzer is a resident of Boston (Suffolk County), Massachusetts. In August 2021, Plaintiff Kreuzer ordered seven Tesla Model 3 Rear Wheel Drive vehicles. In November 2021, Plaintiff Kreuzer received these Tesla vehicles. In or around March 2022, Plaintiff Kreuzer ordered a 2022 Tesla Model 3 Long Range vehicle. In or around June 2022, Plaintiff Kreuzer received this Tesla vehicle. In or around April 2022, Plaintiff Kreuzer ordered a 2022 Tesla Model 3 Long Range vehicle. In or around May 2022, Plaintiff Kreuzer received this Tesla vehicle.

18.     Plaintiff Wafay Nadir is a resident and citizen of Dix Hills (Suffolk County), New York. In or around May 2021, Plaintiff Nadir ordered a 2021 Tesla Model Y Long Range vehicle.

In or around June 2021, Plaintiff Nadir received his Tesla vehicle.

19.    Plaintiff Kenneth Brown is a resident of Washougal (Clark County), Washington. In or around April 2023, Plaintiff Brown ordered a 2023 Tesla Model 3 Performance vehicle. In or around May 2023, Plaintiff Brown received his Tesla vehicle.

20.    Defendant Tesla, Inc. d/b/a Tesla Motors, Inc. is a Delaware corporation, with its headquarters in Austin, Texas, and maintains its engineering headquarters in Palo Alto, California.

21.    Prior to December 2021, Tesla maintained its headquarters in Palo Alto, California. In December 2021, Tesla moved its headquarters from Palo Alto, California, to Austin, Texas.[3]

22.    Despite moving its headquarters to Austin, Texas, Tesla continued to operate locations in California, including one of its factories in Fremont, California, which produces Model S, Model 3, Model X, and Model Y vehicles.[4] Tesla also maintained locations, in addition to its dealerships throughout the state, in Lathrop, Los Angeles, and San Diego, California.[5] And by 2022, Tesla employs approximately 47,000 employees in California alone.[6] While Tesla grew worldwide, Elon Musk, Tesla's CEO since October 2008 and a member of its board since April 2004,[7] noted that Tesla continued to expand in California in particular and that he expects such

---

[3] https://www.tesla.com/contact (last visited Oct. 23, 2023); https://apnews.com/article/business-austin-texas-california-elon-musk-78c7f5549e50edb1d9a8dadad0998113 (last visited Oct. 23, 2023).

[4] https://www.tesla.com/manufacturing (last visited Oct. 23, 2023).

[5] https://youtu.be/vl-Av28e0fo?t=82 (last visited Oct. 23, 2023) (remarks and presentation at the opening of Tesla's Global Engineering Headquarters by Elon Musk, noting Tesla's California locations).

[6] https://youtu.be/vl-Av28e0fo?t=178 (last visited Oct. 23, 2023) (same, noting Tesla's "large impact in California"); https://cleantechnica.com/2023/03/17/teslas-engineering-headquarters-in-california/#:~:text=Now%2C%20Tesla's%20engineering%20headquarters%20is,from%20Reuters%20and%20USA%20Today (last visited Oct. 23, 2023).

[7] https://ir.tesla.com/corporate/elon-musk (last visited Oct. 23, 2023).

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 4:23-CV-03878-YGR

expansions in the state to continue.[8] Moreover, Elon Musk noted that Tesla created almost $45 million worth of value per day in California's economy alone.[9]

23.     In February 2023, Tesla announced that it would be returning its headquarters to California by opening its "Global Engineering Headquarters" in Palo Alto, California.[10] During an event marking the opening of the facility, Elon Musk, Tesla's CEO, stated that Tesla's Global Engineering Headquarters was "effectively a headquarters of Tesla" and that Tesla was "kind of a dual-headquartered company."[11] Elon Musk also described Tesla as "a California-Texas company."[12]

24.     Regardless of the terminology Tesla may use, Tesla maintains two headquarters, located in Austin, Texas, and in Palo Alto, California. Tesla maintains substantial and continuous contacts in the States of Texas and California. Tesla maintains its principal place of business either in the State of Texas or the State of California and maintains substantial and continuous contacts in the other State, such that the exercise of general jurisdiction in either Texas or California is proper.

25.     Accordingly, for jurisdictional purposes, Defendant Tesla, Inc. d/b/a Tesla Motors, Inc. is a citizen of the States of Delaware, Texas, and California, and is subject to the jurisdiction of the States of Delaware, Texas, and California.

## JURISDICTION AND VENUE

26.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367

---

[8] https://youtu.be/vl-Av28e0fo?t=178 (last visited Oct. 23, 2023);
https://cleantechnica.com/2023/03/17/teslas-engineering-headquarters-in-california/#:~:text=Now%2C%20Tesla's%20engineering%20headquarters%20is,from%20Reuters%20and%20USA%20Today (last visited Oct. 23, 2023).
[9] https://youtu.be/vl-Av28e0fo?t=178 (last visited Oct. 23, 2023).
[10] https://www.tesla.com/contact (last visited Oct. 23, 2023).
[11] https://www.cnbc.com/2023/02/22/elon-musk-meets-with-california-gov-newsom-at-teslas-engineering-hq.html (last visited Oct. 23, 2023).
[12] *Id.*

because those claims are related to the federal claims and form part of the same case and controversy.

27.    This Court also has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). The aggregated claims of the individual class members exceed the sum or value of $5,000,000.00, exclusive of interest and costs; there are more than 100 putative class members; and at least one putative class member is from a state different from Tesla.

28.    This Court has personal jurisdiction over Tesla because it conducts substantial business in this District and because Tesla is registered to do business in California. Elon Musk, Tesla's CEO, has described Tesla as a "a dual-headquartered company," because it maintains its Global Engineering Headquarters in Palo Alto, California, which he noted was "effectively a headquarters of Tesla."[13] Thus, Tesla maintains a continuous and significant portion of its business in California and in this District.

29.    Venue is proper in this District under 28 U.S.C. § 1391 because Tesla maintains its Global Engineering Headquarters in this District, and a substantial part of the events or omissions giving rise to the claims occurred in this District. Venue is also proper in this District under 18 U.S.C. § 1965 because Tesla transacts its affairs in this District and the ends of justice require it.

## DIVISIONAL ASSIGNMENT

30.    Assignment to the San Francisco or Oakland Division is proper under Civil Local Rules 3-2(c) and 3-2(d) because a substantial part of the events or omissions giving rise to Plaintiff James Porter's claims occurred in Sonoma County.

## GENERAL FACTUAL ALLEGATIONS

31.    Tesla designs, manufactures, advertises, markets, and sells its electric vehicles throughout the United States and worldwide.

---

[13] *Id.*

32.     Tesla sells four main models of electric vehicles, each of which includes various "sub-models" or versions: the Model 3, the Model Y, the Model S, and the Model X.

### *The Tesla Purchasing Experience*

33.     Tesla sells its vehicles directly to consumers. Although Tesla has dealerships and showrooms, Tesla maintains control over those dealerships and ensures that all sales of its vehicles are directly through Tesla, rather than a third party.

34.     Consumers wishing to purchase a Tesla vehicle, thus, most often do so through Tesla's website, by selecting the preferred model and various features to "build" the vehicle they will purchase.

35.     For example, a consumer wishing to purchase a Tesla Model 3—Tesla's baseline model vehicle—can view available inventory or create a custom order, by selecting the features they most prefer.

36.     For the Model 3, for example, Tesla advertises 3 attributes above all others: the price, the vehicle's acceleration from 0-60 mph, and the vehicle's range. See below:[14]



(continued on next page)

---

[14] https://www.tesla.com/model3 (last visited July 28, 2023).

37.     If a consumer wishes to explore available inventory, Tesla lists options available for purchase directly from Tesla, including "key features" of the vehicle. Among these "key features," Tesla lists the range, top speed, and vehicle's acceleration from 0-60 mph, in that order, along with the price, model, and version of the vehicle (as indicated in the example below):[15]





38.     Consumers also may "custom order" their Tesla vehicle, by choosing the particular vehicle features and attributes they prefer. With this option, Tesla custom builds the vehicle to the consumer's preference.

39.     By custom ordering, a consumer can ensure they select a custom-tailored Tesla vehicle to their preference, selecting the ideal version, range, wheel style, color, and interior trim. Any time a feature selection is changed, the vehicle's price, range, top speed, and acceleration from 0-60 mph will be adjusted. While certain features may impact the vehicle's price, not all features will impact the vehicle's range, speed, or acceleration. For example, selecting a red paint

[15]https://www.tesla.com/m3/order/5YJ3276_9cf71b05e29b56b2eb5242ecb2f0eafc?postal=37923&range=200&region=TN&coord=35.9375,-84.073&titleStatus=new&redirect=no#overview (last visited July 28, 2023).

8

style and black-and-white interior trim will increase the price by $3,000 total, it will not impact the vehicle's range, speed, or acceleration; but selecting 19" sport wheels will increase the price by $1,500 total and will impact the vehicle's range.[16]

40.     For a rear-wheel drive Model 3 version—the base version of the Model 3—with 18" Aero Wheels, the listed range is 272 miles, with a 140-mph top speed, and 5.8 second acceleration from 0-60 mph, as indicated below:[17]



41.     For a Dual Motor All-Wheel Drive Model 3 Long Range version with 18" Aero Wheels, the listed range is 333 miles, with a 145-mph top speed, and 4.2 second acceleration from 0-60 mph, as indicated below:[18]

(image on next page)

---

[16] https://www.tesla.com/model3/design#overview (last visited July 28, 2023).
[17] *Id.*
[18] *Id.*

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 4:23-CV-03878-YGR




42.     And for a Dual Motor All-Wheel Drive Model 3 Performance version with 18"
Aero Wheels, the listed range is 315 miles, with a 162-mph top speed, and 3.1 second
acceleration from 0-60 mph, as indicated below:[19]



---

[19] *Id.*

10

43.     When customizing the vehicle, Tesla further notes that selecting a different style of wheel may impact the vehicle's range.

44.     Regardless of the method a consumer uses to purchase a Tesla model vehicle—whether by exploring available inventory of vehicles or by custom ordering a vehicle—Tesla advertises the electric vehicle's range as a key factor of the vehicle.

45.     And at every turn, Tesla grossly overinflates the vehicle's range.

### *Tesla Vehicles Display Real-Time Range Estimates*

46.     Each of Tesla's model vehicles comes equipped with a screen displaying navigation, infotainment, vehicle settings, and key vehicle information, including battery charge indicators and range information.

47.     Tesla vehicles provide range estimates in real-time. The intention is to provide the driver with real-time updates on the electric vehicle battery's performance, which directly correlates to the range the vehicle can be driven. Accurate range estimates help to ensure that, as the battery drains, the driver knows to pull over at a charging station before the battery drains completely, leaving the driver and occupants stranded. Inaccurate range estimates can, indeed, lead a driver to being stranded, as the battery drains completely—and unexpectedly, based upon inaccurate range information.

48.     Tesla vehicles provide range estimates in two ways. First, through a meter on the screen that is always displayed. This meter can be toggled to indicate either the electric vehicle battery percentage remaining or the range (measured in miles or kilometers) remaining. Second, through the vehicle's navigation system, which estimates the range (indicated in battery percentage) remaining, as compared to the set destination. However, if no destination is input into the navigation system, the vehicle will not indicate a range estimate through this latter method.

49.     Tesla has developed its own proprietary software and algorithms for estimating and updating in real-time the range and battery performance in its vehicles, as displayed through

11

the Tesla system displayed on the screen.

***Tesla Informs Consumers That They Should Not Charge Their Vehicle to Full Capacity***

50.    Following purchase, each Tesla vehicle sets a suggested charge limit—that is, an upper limit to stop charging the battery. For example, if an 80% limit is set, the battery will continue to charge until it reaches 80% capacity, then will stop charging. This effectively ensures that the battery cannot be fully charged to 100%.

51.    A consumer can manually override the charge limit. However, Tesla recommends that consumers *not* exceed the suggested charge limit. Tesla specifically suggests that consumers "[c]harge the battery to the appropriate charge limit for your vehicle based on the installed battery."[20]

52.    Tesla suggests that Tesla owners should charge their vehicle to full 100% capacity only sparingly. In fact, Tesla's chief executive officer, Elon Musk, suggests that owners should only charge to 90% or 95% when necessary.[21]

53.    Setting charge limits directly impacts total range. Tesla's advertised total range of its vehicles are based on a full charge. However, because Tesla discourages owners from ever charging their vehicles to 100%, it is increasingly difficult—if not impossible—to ever reach that advertised range. For example, setting the vehicle's charge limit at 80% can reduce the total range by *over a hundred* miles, compared to the advertised range.

54.    Effectively, based upon Tesla's suggested charge limits, Tesla vehicles cannot reach the total ranges Tesla advertises.

55.    Notably, while Tesla openly advertises its total range estimates (which already

---

[20] https://www.tesla.com/support/range (last visited July 28, 2023).
[21] https://mashable.com/article/tesla-battery-charge-max#:~:text=Tesla-,Elon%20Musk%20explains%20why%20you%20shouldn't%20charge%20your%20Tesla,up%20to%2090%2D95%25.&text=Electric%20car%20batteries%20should%20not,up%20to%2090%25%20by%20default (last visited July 28, 2023); *see also* https://electrek.co/2017/09/01/tesla-battery-expert-recommends-daily-battery-pack-charging (last visited July 28, 2023).

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 4:23-CV-03878-YGR

are exaggerated) to consumers at the point of purchase, it does not indicate to consumers that they can expect to limit the vehicle's total range by setting charge limits.

### How Tesla Calculates the Ranges It Advertises

56.     Electric vehicle manufacturers are required by the Environmental Protection Agency ("EPA") to advertise fuel-efficiency information, as indicated in a miles-per-gallon equivalent ("MPGe") and estimate of the electric vehicle's total range. The MPGe indication allows consumers to compare the electric vehicle directly with gasoline and diesel vehicles. The estimates of the vehicle's total range allow consumers to examine how far an electric vehicle can be expected to travel on a full charge, in combined city and highway driving.

57.     Although the EPA requires that electric vehicle manufacturers advertise the vehicle's range, the EPA does not dictate precisely how this range is calculated.

58.     The EPA provides a standardized formula, which converts fuel-economy results from city and highway driving tests to calculate the vehicle's total range figure. However, electric vehicle manufacturers may conduct their own testing to establish the range estimates for their vehicles. Generally, the only reason an electric vehicle manufacturer would choose to conduct its own testing is to ensure that it generates a more favorable total range estimate.

59.     Numerous electric vehicle manufacturers, including Ford, Mercedes, and Porsche choose to simply use the EPA's standardized formula to calculate the range in their electric vehicles. Doing so ensures that the potential range advertised to consumers reflects *conservative* estimates based on real-world driving conditions.[22]

60.     Tesla, however, does not use the EPA's standardized formula for any of its vehicles. Instead, Tesla conducts its own testing to calculate the total range for each of its model vehicles, resulting in inflated estimates compared to the ranges drivers actually experience.[23]

61.     In a recent audit, the EPA reviewed the estimated ranges in six Tesla models since

---

[22] https://www.reuters.com/investigates/special-report/tesla-batteries-range (last visited July 28, 2023).
[23] *Id.*

the 2020 model year. Based on the EPA's testing, Tesla was required to lower the estimated ranges in all six of those model vehicles, because Tesla consistently was overestimating the range of its vehicles.[24]

62.    When selling a used vehicle, for example, Tesla owners can go visit www.fueleconomy.gov to download a Used Vehicle Fuel Economy label by using the provided online tool, which employs established EPA standardized formulae for estimating electric vehicle range.[25]

63.    An example of a fuel economy label developed by using this tool for a 2020 Tesla Model Y Performance vehicle is included below:



64.    Notably, this label describes the estimated electric vehicle range in these terms: "When fully charged, vehicle can travel about . . ." Describing the estimated range in this manner makes clear that the advertised range is available *only* at full 100% battery charge.

---

[24] *Id.*

[25] https://www.fueleconomy.gov/feg/UsedCarLabel.jsp (last visited July 28, 2023).

65.     When purchasing a vehicle directly from Tesla, Tesla does *not* describe the estimated vehicle range in these terms or with equivalent warnings.

66.     Further, the label makes clear that "[a]ctual results will vary for many reasons including driving conditions." For a used vehicle, it also indicates that range may be impacted by "how the car was driven, maintained, or modified."

### *Tesla Exaggerates the Ranges of Its Vehicles*

67.     For years, Tesla has been exaggerating the range of its vehicles—that is, the vehicle's potential driving distance before requiring the driver to recharge the electric vehicle's battery.[26]

68.     On July 27, 2023, Reuters published a special report, by Steve Stecklow and Norihiko Shirouzu, detailing Tesla's tactics of seriously exaggerating the ranges of its vehicles (the "Reuters report").[27]

69.     Based upon information from those familiar with Tesla's early vehicle software designs, the Reuters report explains that Tesla developed algorithms for estimating the range of its electric vehicles, which would display to drivers "rosy" projections for the distance the vehicle could travel on a full battery.[28]

70.     However, once the battery reached 50% capacity, the algorithm would change and begin showing the driver more realistic projections. This would cause the estimated range of the vehicle to fluctuate drastically from that point.[29]

71.     The decision to include these algorithms to present inflated range estimates came directly from Tesla's chief executive officer, Elon Musk.[30] As the Reuters report indicates, "Elon [and Tesla] wanted to show good range numbers when fully charged . . . . When you buy a car

---

[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.*

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 4:23-CV-03878-YGR

off the lot seeing 350-mile, 400-mile range, it makes you feel good."[31]

72.     Tesla's tactics to inflate the range estimates for its vehicles has continued. Recently, South Korean regulators fined Tesla for false advertising the ranges of its vehicles. Specifically, the Korea Fair Trade Commission found that Tesla exaggerated the "driving ranges of its cars on a single charge, their fuel cost-effectiveness compared to gasoline vehicles as well as the performance of its Superchargers."[32] It was determined that, for example, the range of Tesla electric vehicles could drop by up to 50.5% in cold weather, as compared to the advertised ranges.[33]

73.     Other recent studies determined that various Tesla models averaged 26% below their advertised ranges.[34]

74.     Beginning with 2020 model year vehicles, the EPA has required Tesla to reduce the range estimates Tesla advertised to consumers.[35]

75.     Various factors can impact a Tesla model vehicle's range, including: high driving speeds, cold temperatures, "stop-and-go" traffic, driving uphill, and inclement weather (such as rain, snow, or headwinds).[36]

76.     However, recent testing has found that Tesla vehicles deliver actual ranges well below their advertised ranges. In 2022 and 2023, Recurrent, an electric vehicle analytics company, surveyed more than 8,000 Tesla model vehicles. The results of this survey determined that Tesla vehicles fail to accurately reflect how various factors or conditions will negatively impact the vehicle's range.[37]

---

[31] *Id.*

[32] *See* https://www.reuters.com/markets/commodities/south-korea-fines-tesla-22-mln-exaggerating-driving-range-evs-2023-01-03 (last visited July 28, 2023).

[33] *Id.*

[34] https://www.reuters.com/investigates/special-report/tesla-batteries-range (last visited July 28, 2023).

[35] *Id.*

[36] https://www.tesla.com/support/range (last visited July 28, 2023).

[37] https://www.reuters.com/investigates/special-report/tesla-batteries-range (last visited July 28, 2023).

77.    For example, while Tesla itself explains that temperature can negatively impact a vehicle's range, Recurrent's data determined that Tesla model vehicles still overwhelmingly calculated that they could still deliver nearly the advertised full range, regardless of external factors—with Tesla vehicles calculating that they could travel more than 90% of their advertised range. Put simply, Tesla vehicles failed to accurately account for external factors impacting battery performance and vehicle range, leading to a gross overestimate of the vehicle's range.[38]

78.    Other electric vehicle manufacturers do not overestimate the range of their vehicles to the same extent. For example, Recurrent tested the Ford Mustang Mach-E, the Chevrolet Bolt, and the Hyundai Kona—all electric vehicles and direct competitors to Tesla model vehicles—and found their estimated ranges to be more accurate. In fact, the Hyundai Kona generally underestimated the range the vehicle could travel before requiring a recharge.[39]

79.    Tesla, however, chose to "take[] a different path from most other automakers." While other electric vehicle manufacturers advertise *conservative* range estimates, Tesla consistently advertised overly *aggressive* estimates of the range within its vehicles.[40]

80.    Another recent study, which compared 21 different brands of electric vehicles, analyzed whether electric vehicles could deliver the advertised range in actual use.[41] The study found that three Tesla model vehicles posted the *worst* performances, falling short of their advertised ranges by 26%, on average.[42]

81.    In yet another recent study, *all* Tesla vehicles failed to meet their advertised range estimates based on real-world driving tests. Edmunds.com, an automotive review website, tested

---

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] Gregory Pannone & Dave VanderWerp, *Comparison of On-Road Highway Fuel Economy and All-Electric Range to Label Values: Are the Current Label Procedures Appropriate for Battery Electric Vehicles?*, SAE Technical Paper (2023), *available at* https://www.sae.org/publications/technical-papers/content/2023-01-0349 (last visited July 28, 2023).

[42] *Id.*; *see also* https://www.reuters.com/investigates/special-report/tesla-batteries-range (last visited July 28, 2023).

various electric vehicle manufacturers' range estimate claims. As recently as July 2023, no Tesla vehicle was able to meet its advertised range estimate.[43]

### *Tesla Has Already Admitted It Falsely Advertised and Exaggerated Range Estimates*

82.   South Korean regulators have already fined Tesla for falsely advertising the total ranges of its vehicles in South Korea.

83.   The Korea Fair Trade Commission determined that Tesla failed to inform consumers that the vehicle's total range could be negatively impacted by various factors, and that the range would likely be lower in normal driving conditions.[44]

84.   South Korean regulators required Tesla to publicly admit that it had misled consumers regarding its range estimates for Tesla vehicles. In a June 19, 2023 statement, Tesla executives, including Elon Musk, acknowledged that Tesla had employed "false/exaggerated advertising."[45]

### *Tesla Owners Have Noticed that the Ranges in Their Vehicles Are Not as Advertised*

85.   As Tesla owners used their vehicles, they soon realized that their vehicles did not perform as expected or advertised because the electric vehicles were consistently incapable or driving at the advertised ranges.

86.   As Reuters reported, one Tesla Model 3 owner was required to stop to charge his electric vehicle numerous times during a road trip, and he noticed that he was only receiving about 150 miles of range when his electric vehicle battery was fully charged, which was well below the advertised range.[46]

87.   This understandably caused great concern among Tesla owners, who were worried that the batteries in their vehicles were defective or failing. Based on these concerns,

---

[43] https://www.edmunds.com/car-news/electric-car-range-and-consumption-epa-vs-edmunds.html (last visited July 28, 2023).
[44] https://www.reuters.com/investigates/special-report/tesla-batteries-range (last visited July 28, 2023).
[45] *Id.*
[46] *Id.*

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 4:23-CV-03878-YGR

consumers began contacting Tesla to seek assistance and confirmation that the batteries in their electric vehicles were not failing.

88.     Tesla provides a mobile app to all Tesla owners, which links to each owner's Tesla electric vehicle. The application allows the owner to control the vehicle, view information about the vehicle, and, if necessary, to schedule a service appointment for diagnostics or repair with a Tesla dealership or representative.

89.     Based on their concerns regarding potential issues with the batteries in their Tesla electric vehicles—because the range was consistently falling short of advertised estimates—consumers used their Tesla mobile app to register complaints or schedule service appointments for a representative to check their vehicle.

### *Tesla Created a "Diversion" Team to Handle Complaints Related to Vehicle Range*

90.     Facing mounting complaints and appointments regarding range concerns, Tesla created a special "team" that was tasked specifically with handling these complaints.

91.     However, Tesla's reasoning for creating this team was not to assuage Tesla owners' concerns. Rather, Tesla created this team to divert customers away from service appointments, in an effort to save Tesla time and money in handling service appointments.

92.     This "Diversion Team" was created solely to handle complaints and service appointments regarding concerns over vehicle range. Members of the Diversion Team were tasked with "diverting" customers away from service appointments and would simply cancel any service appointment that was nominally related to concerns over a vehicle's range.[47]

93.     Rather than allowing a customer to attend a service appointment regarding their range concerns, the Diversion Team would run remote diagnostic on a complaining customer's vehicle. The Diversion Team would call the customer and explain that Tesla's advertised range was a "prediction," rather than an actual measurement. The team was trained to explain to customers that the electric vehicle's batteries naturally degrade over time—and, thus, the

---

[47] *Id.*

vehicle's range will be reduced.[48] Upon information and belief, the team did not explain to customers that Tesla's method for calculating the originally advertised range was aggressive, or that the software algorithm displaying the updated vehicle range in real-time did not accurately reflect the range at higher battery percentages.

94.     Notably, when running diagnostics, if the diagnostic indicated some other issue with a customer's vehicle, the Diversion Team was instructed *not* to inform the customer and instead was required to simply close the customer's case.[49]

95.     Tesla also updated the Tesla mobile app to disallow any customer who was voicing concern over their vehicle's range from scheduling a service appointment. Instead, the app would only allow them to ask that a Tesla representative contact them regarding their concern. All such complaints and concerns were routed directly to the Diversion Team.[50]

96.     Following Tesla mobile app update, any time a customer complained or voiced concerns about their Tesla vehicle's range, the app would simply provide an explanation that the vehicle's range "depends on many factors, particularly your environment and personal driving habits." However, the app also would note that the "[d]isplayed range in your Tesla is adapted based on fixed EPA test data, not your personal driving patterns," as indicated below:[51]

(continued on next page)

---

[48] *Id.*
[49] *Id.*
[50] *Id.*
[51] https://www.reuters.com/investigates/special-report/tesla-batteries-range (last visited July 28, 2023).

1

2

3

4

5

6

7

8

9

10

11

12

13



14    97.    Complaints and concerns regarding Tesla vehicle range continued to steadily

15 increase. At one point, the Diversion Team was handling 2,000 complaints a week. Customers

16 voiced understandable frustration over the fact that they were not allowed to book service

17 appointments regarding their concerns over their vehicles' range.[52]

18    98.    As complaints continued to increase, the Diversion Team was expected to handle

19 and close 750 cases per week. Diversion Team members were told to call complaining customers

20 just once. If the customer did not answer this single call, the Diversion Team would close the

21 customer's case as being "nonresponsive." If a customer did answer, the Diversion Team was

22 required to handle the call as quickly as possible—in five minutes or less.[53] This did not afford

23 adequate time to alleviate customers' concerns.

24    99.    By late 2022, the Diversion Team stopped running remote diagnostics on

25

26    _____

[52] *Id.*

27 [53] *Id.*

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 4:23-CV-03878-YGR

1   complaining customers' vehicles altogether.[54]

2       100.   Essentially, by late 2022, if a Tesla owner complained or voiced concern over the

3   range of their Tesla electric vehicle, Tesla would not even check to confirm if, in fact, anything

4   was indeed wrong with the electric vehicle or its battery. Put simply, Tesla ensured that its

5   representatives told thousands upon thousands of customers that there was nothing wrong with

6   their electric vehicles without ever first confirming if that was actually the case.[55]

7       101.   The Diversion Team was created to alleviate pressure on Tesla, which was

8   mounting due to its inability to deliver its exaggerated advertised vehicle ranges, rather than

9   actually help customers or alleviate their concerns.

10  ***Tesla's Conduct Violates Its Warranties***

11      102.   Tesla warrants all its electric vehicles.

12      103.   New Tesla model vehicles are covered by Tesla's New Vehicle Limited

13  Warranty, which includes Tesla's Basic Vehicle Limited Warranty, Tesla's Supplemental

14  Restraint System Limited Warranty, and Tesla's Battery and Drive Unit Limited Warranty.[56, 57]

15      104.   Tesla's Basic Vehicle Limited Warranty "covers the repair or replacement

16  necessary to correct defects in the materials or workmanship of any parts manufactured or

17  supplied by Tesla under normal use for a period of 4 years or 50,000 miles (80,000 km),

18  whichever comes first."[58]

19      105.   Tesla's Battery and Drive Unit Limited Warranty "covers the repair or

20  replacement of any malfunctioning or defective Battery or Drive Unit." If a warranty repair is

21  required, "Tesla will repair the [Battery or Drive] unit, or replace it." "[W]hen replacing a

22

23  ─────────────────────

[54] *Id.*

24  [55] *Id.*

[56] https://www.tesla.com/support/vehicle-warranty (last visited July 28, 2023).

25  [57] Tesla's Supplemental Restraint System Limited Warranty addresses defects in the vehicle's

    seat belts or air bag system, and thus is not relevant to Plaintiffs' claims here.

26  [58] https://www.tesla.com/sites/default/files/downloads/tesla-new-vehicle-limited-warranty-en-

    us.pdf (last visited July 28, 2023).

27

Battery, Tesla will ensure that the energy capacity of the replacement Battery is at least equal to that of the original Battery before the failure occurred." For Tesla Model S and Model X vehicles, the Battery and Drive Unit Limited Warranty offers coverage for "8 years or 150,000 miles (240,000 km), whichever comes first, with minimum 70% retention of Battery capacity over the warranty period." For Tesla Model 3 Rear-Wheel Drive vehicles, the Battery and Drive Unit Limited Warranty offers coverage for "8 years or 100,000 miles (160,000 km), whichever comes first, with minimum 70% retention of Battery capacity over the warranty period." For Tesla Model 3 Long Range, Model 3 Performance, Model Y All-Wheel Drive, Model Y Long Range, and Model Y Performance vehicles, the Battery and Drive Unit Limited Warranty offers coverage for "8 years or 120,000 miles (192,000 km), whichever comes first, with minimum 70% retention of Battery capacity over the warranty period." The "measurement method used to determine Battery capacity . . . [is] at the sole discretion of Tesla." [59]

106.     Notably, the Battery and Drive Unit Limited Warranty explains that "the vehicle's range estimates are an imperfect measure of Battery capacity because they are affected by additional factors separate from Battery capacity."[60]

107.     Tesla also offers a Used Vehicle Limited Warranty on all used vehicles purchased through Tesla, which offers coverage for "the remainder of 4 years or 50,000 miles left on the Basic Vehicle Limited Warranty," and after its expiration, "provides additional coverage of 1 year or 10,000 miles."[61]

108.     Despite offering coverage under the Battery and Drive Unit Limited Warranty, including coverage for any "malfunctioning battery," Tesla refused to provide such coverage to Tesla owners who complained or voiced concerns regarding their electric vehicles' range.

109.     Normally, in order to receive warranty coverage, a Tesla owner would schedule

---

[59] *Id.*; https://www.tesla.com/support/vehicle-warranty (last visited July 28, 2023).
[60] https://www.tesla.com/sites/default/files/downloads/tesla-new-vehicle-limited-warranty-en-us.pdf (last visited July 28, 2023).
[61] https://www.tesla.com/support/vehicle-warranty (last visited July 28, 2023).

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 4:23-CV-03878-YGR

a service appointment to determine whether the battery in their electric vehicle was "malfunctioning." If the battery was determined to be malfunctioning, under the Battery and Drive Unit Limited Warranty, Tesla would be required to offer a repair or replacement.

110.    However, as explained above, Tesla established a Diversion Team that was specifically tasked with canceling such service appointments. This ensured that customers' Tesla vehicles could not be reviewed to determine whether their range complaints arose, in fact, from a malfunctioning battery. This effectively ensured that Tesla would not be required to potentially offer more warranty repair or replacement coverages.

111.    Tesla's conduct, effectuated through the Diversion Team, violated and breached its warranties.

### *Tesla Knew That Its Advertised Range Estimates Exceeded the Actual Range of Its Vehicles*

112.    Tesla was aware that its advertised electric vehicle ranges were exaggerated and exceeded the actual range of the vehicle when driven in real-world driving conditions. Tesla, which employs its own method for calculating the range of its electric vehicles, was aware that this method of calculation produced aggressive and exaggerated range estimates.

113.    Further, Tesla was aware that various factors impacted the electric vehicle's range. Tesla understood that these factors were likely to occur in real-world driving conditions. For example, Tesla stated in its Battery and Drive Unit Limited Warranty that "the vehicle's range estimates are an imperfect measure of Battery capacity because they are affected by additional factors separate from Battery capacity." Thus, Tesla was fully aware that its advertised range estimates were an "imperfect measure" and that its electric vehicles' ranges would vary and be impacted by normal driving conditions.

114.    Nevertheless, despite knowing this, Tesla did not inform consumers of this information when advertising their electric vehicle range estimates. For example, Tesla could have warned potential purchasers that cold weather would drastically lower the electric vehicle's range, but Tesla did not issue such a warning, instead only advertising an exaggerated range

estimate.

115.    Tesla also was aware that its advertised range estimates were based on driving the electric vehicle with a full 100% charge of the electric vehicle battery. However, because Tesla suggests to customers that they establish a charge limit on their vehicles well-below full capacity, Tesla was aware that, in reality, customers would be unable to ever actually experience the full advertised range.

116.    Moreover, Tesla was aware that its software algorithms for displaying the vehicle range in real-time to Tesla electric vehicle owners provided exaggerated, "rosy" projections—particularly at higher percentages. Tesla understood that these algorithms did not accurately reflect the actual range of the electric vehicle, again exaggerating the range.

117.    At the latest, Tesla was aware that its advertised range estimates exceeded the vehicle's actual capabilities under real-world driving and charging conditions when Tesla established a Diversion Team to summarily handle, divert, and close customer complaints and concerns regarding vehicle range issues.

118.    Tesla knew, or at the very least should have known, that the actual range of each of its model vehicles was lower than the advertised estimated range before Tesla advertised such ranges.

### *Had Tesla Honestly Advertised Its Vehicle Ranges, Consumers Would Have Acted Differently*

119.    Had Tesla honestly advertised its electric vehicle ranges, consumers either would not have purchased Tesla model vehicles, or else would have paid substantially less for them.

120.    Tesla, based on its superior knowledge, could have and should have warned customers that its range estimates were based just that—estimates and hopeful projections that did not reflect regular conditions.

121.    Tesla should have warned potential purchasers that the ranges of Tesla model vehicles could be negatively impacted by various driving and environmental factors that were likely to exist; but Tesla did not.

122.    Tesla should have warned potential purchasers that the ranges of Tesla model vehicles were estimated based on full 100% battery charge, but that Tesla suggested that its model vehicles not be charged to full 100% battery charge on a regular basis.

123.    Tesla should have warned potential purchasers that the ranges of Tesla model vehicles were not estimated based on EPA standardized formulae—despite Tesla advertising the range estimates as "EPA estimates"—but instead based on Tesla's own proprietary method for calculating range, which allowed for a more aggressive estimate of total electric vehicle range.

124.    In fact, Tesla could have described the estimated range of its electric vehicles in terms similar to those included on fueleconomy.gov fuel economy labels, as described above, including but not limited to explaining that the advertised range is based on "[w]hen [the vehicle is] fully charged" or by warning consumers that the advertised range "will vary for many reasons including driving conditions." Tesla did not do so.

125.    Had Tesla revealed any of this information to potential purchasers at the time of purchase, by issuing a warning or addendum attached to its advertised estimated vehicle ranges, Plaintiffs and Class Members would have either not purchased Tesla model vehicles or else would have paid substantially less for them.

126.    Tesla's conduct in false advertising its estimated vehicle ranges harmed Plaintiffs and Class Members at the point of sale.

## PLAINTIFFS' ALLEGATIONS

### *Plaintiff James Porter*

127.    Plaintiff James Porter is a resident of Petaluma, Sonoma County, California. Plaintiff Porter ordered a 2022 Tesla Model Y Performance vehicle in March 2022. He took delivery of the vehicle in June 2022 from the Tesla dealership in Vallejo, California. Plaintiff Porter purchased his vehicle for approximately $72,000.

128.    Plaintiff Porter originally went to the Tesla dealership in Vallejo, California to test drive a Tesla electric vehicle in March 2022. After test driving one of the vehicles, he spoke

with a Tesla sales representative at the dealership, discussing various features of the vehicle, including its range. However, at no point did the Tesla representative warn or explain to Plaintiff Perez that the advertised range did not account for normal driving conditions or that it was exaggerated.

129.   After returning home from the Tesla dealership, Plaintiff Porter went to Tesla's website and custom ordered a Tesla Model Y Performance vehicle. As Plaintiff Porter selected the features and attributes of his vehicle, at no point did Tesla warn or explain to Plaintiff Porter that the advertised range did not account for normal driving conditions or that it was exaggerated.

130.   Plaintiff Porter's vehicle came with all Tesla applicable warranties, including Tesla's New Vehicle Limited Warranty, Basic Vehicle Limited Warranty, and Battery and Drive Unit Limited Warranty.

131.   After taking delivery of his Tesla vehicle in June 2022, Plaintiff Porter fully charged his vehicle to 100% battery charge and took a 2-hour trip to visit family, approximately 92 miles away. When he arrived at his destination, Plaintiff Porter noticed that the vehicle was left with approximately 40% charge.

132.   Plaintiff Porter's electric vehicle should have had an advertised range of approximately 303 miles, based upon a full 100% charge. Thus, following Plaintiff Porter's trip, his vehicle lost approximately 182 miles of range—despite only driving 92 miles.

133.   Shortly thereafter, Plaintiff Porter called Tesla to voice concerns over his vehicle's range, and Tesla made an appointment to review his vehicle. However, before he could bring his vehicle to the scheduled service appointment, a Tesla representative reached out to Plaintiff Porter and canceled the appointment.

134.   Plaintiff Porter voiced his concerns to the Tesla representative, complaining that he was not receiving the advertised range in his vehicle. The Tesla representative explained that the range advertised by Tesla was based on a full 100% battery charge, without use of any other electronics in the vehicle (including, for example, use of air conditioning, use of the radio, etc.)

and without accounting for weather, headwinds, temperature, traffic, amount of passengers, and other driving conditions. The Tesla representative explained that it was normal and expected that the Tesla vehicle's range would drop below the advertised range with normal driving conditions and use of other vehicle features. The Tesla representative claimed that there was nothing wrong with the range Plaintiff Porter was experiencing in his vehicle, and the representative canceled the service appointment to review the vehicle and confirm whether the vehicle or battery was, in fact, malfunctioning.

135.   At no point when Plaintiff Porter was custom ordering his vehicle did Tesla warn or explain that the advertised range required the vehicle to be fully charged to 100% battery capacity, required the driver not to use other vehicle features (including other electronics), did not account for normal, expected driving conditions, or that it was exaggerated. Further, at no point when speaking with Tesla representatives, did Tesla representatives warn or explain that the advertised range required the vehicle to be fully charged to 100% battery capacity, required the driver not to use other vehicle features (including other electronics), did not account for normal, expected driving conditions, or that it was exaggerated.

136.   The electric vehicle's range was one of the most important factors Plaintiff Porter considered when choosing to purchase his Tesla vehicle.

137.   Had Tesla truthfully revealed that the advertised range was exaggerated and not based on normal driving conditions, Plaintiff Porter would not have purchased his Tesla vehicle, or else would have paid substantially less for it.

138.   Plaintiff Porter would consider buying another Tesla vehicle in the future if Tesla were ordered to truthfully reveal the actual range of the vehicle, based on normal driving conditions.

***Plaintiff Bryan Perez***

139.   Plaintiff Bryan Perez is a resident of Lancaster, Los Angeles County, California. Plaintiff Porter ordered a 2022 Tesla Model 3 Long Range vehicle in February 2022. He took

delivery of the vehicle in March 2022. Plaintiff Perez purchased his vehicle for approximately $60,128.86.

140.    Plaintiff Perez went to Tesla's website and custom ordered a Tesla Model 3 Long Range vehicle. As Plaintiff Perez selected the features and attributes of his vehicle, at no point did Tesla warn or explain to Plaintiff Perez that the advertised range did not account for normal driving conditions or that it was exaggerated.

141.    Shortly after custom ordering his Tesla vehicle, Plaintiff Perez scheduled a test drive at a local Tesla dealership to confirm whether he did, in fact, wish to purchase a Tesla vehicle. After test driving one of the vehicles, he spoke with a Tesla sales representative at the dealership, discussing various features of the vehicle, including its range. However, at no point did the Tesla representative warn or explain to Plaintiff Perez that the advertised range did not account for normal driving conditions or that it was exaggerated.

142.    Plaintiff Perez's vehicle came with all Tesla applicable warranties, including Tesla's New Vehicle Limited Warranty, Basic Vehicle Limited Warranty, and Battery and Drive Unit Limited Warranty.

143.    After receiving his Tesla vehicle, Plaintiff Perez fully charged his vehicle to 100% battery charge and took an approximately 90-mile trip to visit his parents. After returning home from the approximately 180-mile round trip, he noticed that his vehicle showed that it had roughly 10-15% charge remaining.

144.    Plaintiff Perez's electric vehicle should have had an advertised range of approximately 333 miles, based upon a full 100% charge. Thus, following Plaintiff Perez's trip, his vehicle lost approximately 283 miles of range—despite only driving approximately 180 miles round trip.

145.    Plaintiff Perez called Tesla to voice concerns over his vehicle's range. A Tesla representative reached out to Plaintiff Perez and performed a mobile diagnostic on his vehicle and its battery, without scheduling a service appointment to review the vehicle and confirm

whether the vehicle or battery was, in fact, malfunctioning.

146.    Plaintiff Perez voiced his concerns to the Tesla representative, complaining that he was not receiving the advertised range in his vehicle. The Tesla representative explained that the range advertised by Tesla was based on a full 100% battery charge, without use of any other electronics in the vehicle (including, for example, use of air conditioning, use of the radio, etc.) and without accounting for weather, headwinds, temperature, traffic, amount of passengers, and other driving conditions. The Tesla representative explained that it was normal and expected that the Tesla vehicle's range would drop below the advertised range with normal driving conditions and use of other vehicle features. The Tesla representative claimed that there was nothing wrong with the range Plaintiff Perez was experiencing in his vehicle.

147.    At no point when Plaintiff Perez was custom ordering his vehicle did Tesla warn or explain that the advertised range required the vehicle to be fully charged to 100% battery capacity, required the driver not to use other vehicle features (including other electronics), did not account for normal, expected driving conditions, or that it was exaggerated. Further, at no point when speaking with Tesla representatives, did Tesla representatives warn or explain that the advertised range required the vehicle to be fully charged to 100% battery capacity, required the driver not to use other vehicle features (including other electronics), did not account for normal, expected driving conditions, or that it was exaggerated.

148.    The electric vehicle's range was one of the most important factors Plaintiff Perez considered when choosing to purchase his Tesla vehicle.

149.    Had Tesla truthfully revealed that the advertised range was exaggerated and not based on normal driving conditions, Plaintiff Perez would not have purchased his Tesla vehicle, or else would have paid substantially less for it.

150.    Plaintiff Perez would consider buying another Tesla vehicle in the future if Tesla were ordered to truthfully reveal the actual range of the vehicle, based on normal driving conditions.

***Plaintiff Dro Esraeili Estepanian***

151.    Plaintiff Dro Esraeili Estepanian is a resident of Palmdale, Los Angeles County, California. Plaintiff Estepanian ordered a 2022 Tesla Model 3 Long Range vehicle in or around December 2021 or January 2022. He took delivery of the vehicle in July 2022. Plaintiff Estepanian purchased his vehicle for approximately $62,000.

152.    Prior to ordering his Tesla vehicle, Plaintiff Estepanian test drove a Tesla electric vehicle at a local Tesla dealership. After test driving one of the vehicles, he spoke with a Tesla sales representative at the dealership, discussing various features of the vehicle, including its range. However, at no point did the Tesla representative warn or explain to Plaintiff Estepanian that the advertised range did not account for normal driving conditions or that it was exaggerated.

153.    Plaintiff Estepanian went to Tesla's website and custom ordered a Tesla Model 3 Long Range vehicle. As Plaintiff Estepanian selected the features and attributes of his vehicle, at no point did Tesla warn or explain to Plaintiff Estepanian that the advertised range did not account for normal driving conditions or that it was exaggerated.

154.    Plaintiff Estepanian's vehicle came with all Tesla applicable warranties, including Tesla's New Vehicle Limited Warranty, Basic Vehicle Limited Warranty, and Battery and Drive Unit Limited Warranty.

155.    Plaintiff Estepanian travels 140 to 150 miles round trip for his daily commute, and he routinely charges his vehicle to 90% battery charge (which equates to approximately 299 miles), per Tesla's recommendation. Based on a 90% battery charge (and 299-mile starting range), he typically returns from his approximately 150-mile round trip each day and his Tesla vehicle's screen displays that approximately 100 to 110 miles of range remain, which equates to roughly 33% battery charge remaining. Thus, Plaintiff Estepanian's electric vehicle consistently loses approximately 189 miles of range during his daily commute—despite only driving approximately 140 to 150 miles round trip each day.

156.    Plaintiff Estepanian took his vehicle to a Tesla dealership and service center near

where he worked, complaining and voicing concerns over his vehicle's range. He was told that his vehicle was not covered by any applicable Tesla warranty, and any review or service of the vehicle to determine if the vehicle or battery was malfunctioning would incur a service charge, and he would not be given a loaner vehicle. Plaintiff Estepanian told Tesla representatives that he could not leave the vehicle, because he needed to drive it home. Plaintiff Estepanian left without Tesla reviewing the vehicle to confirm whether the vehicle or battery was, in fact, malfunctioning.

157. Sometime later Tesla representatives performed a mobile diagnostic on his vehicle and explained to him that nothing was wrong with the vehicle. The Tesla representative explained that the range advertised by Tesla was based on a full 100% battery charge, without accounting for various factors, such as weather, headwinds, temperature, traffic, amount of passengers, and other driving conditions. The Tesla representative claimed that there was nothing wrong with the range Plaintiff Estepanian was experiencing in his vehicle.

158. At no point when Plaintiff Estepanian was custom ordering his vehicle did Tesla warn or explain that the advertised range required the vehicle to be fully charged to 100% battery capacity, required the driver not to use other vehicle features (including other electronics), did not account for normal, expected driving conditions, or that it was exaggerated. Further, at no point when speaking with Tesla representatives, did Tesla representatives warn or explain that the advertised range required the vehicle to be fully charged to 100% battery capacity, required the driver not to use other vehicle features (including other electronics), did not account for normal, expected driving conditions, or that it was exaggerated.

159. The electric vehicle's range was one of the most important factors Plaintiff Estepanian considered when choosing to purchase his Tesla vehicle.

160. Had Tesla truthfully revealed that the advertised range was exaggerated and not based on normal driving conditions, Plaintiff Estepanian would not have purchased his Tesla vehicle, or else would have paid substantially less for it.

161.     Plaintiff Estepanian would consider buying another Tesla vehicle in the future if Tesla were ordered to truthfully reveal the actual range of the vehicle, based on normal driving conditions.

### Plaintiff Dennis Romanez

162.     Plaintiff Dennis Romanez is a resident of Pompano Beach, Broward County, Florida. Plaintiff Romanez ordered a 2021 Tesla Model Y Long Range vehicle in December 2020. He took delivery of the vehicle in December 2020. Plaintiff Romanez purchased his vehicle for approximately $70,586.

163.     Prior to ordering his Tesla vehicle, Plaintiff Romanez spoke with a Tesla sales representative at a local Tesla dealership, discussing various features of the vehicle. However, at no point did the Tesla representative warn or explain to Plaintiff Romanez that the advertised range did not account for normal driving conditions or that it was exaggerated.

164.     Plaintiff Romanez went to Tesla's website and custom ordered a Tesla Model Y Long Range vehicle. As Plaintiff Romanez selected the features and attributes of his vehicle, at no point did Tesla warn or explain to Plaintiff Romanez that the advertised range did not account for normal driving conditions or that it was exaggerated.

165.     Plaintiff Romanez's vehicle came with all Tesla applicable warranties, including Tesla's New Vehicle Limited Warranty, Basic Vehicle Limited Warranty, and Battery and Drive Unit Limited Warranty.

166.     Shortly after receiving his Tesla vehicle, Plaintiff Romanez noticed that the vehicle was not receiving the advertised range. Plaintiff Romanez fully charged his vehicle to 100% battery charge and took an approximately 234-mile trip to Orlando, Florida. Upon reaching his destination, his vehicle had less than 20% capacity remaining.

167.     Plaintiff Romanez's electric vehicle should have had an advertised range of approximately 330 miles, based upon a full 100% charge. Thus, following Plaintiff Romanez's trip, his vehicle had less than approximately 66 miles of range remaining—despite only traveling

234 miles.

168.    Plaintiff Romanez regularly charges his vehicle to 80% battery charge for his commute approximately 82-mile roundtrip commute. However, when he returns home from his commute, the vehicle regularly displays that only 20% capacity remains, meaning that 60% total capacity is used for an 82-mile roundtrip commute.

169.    Plaintiff Romanez had considered contacting Tesla to complain and voice concern about the range of his vehicle. However, Plaintiff Romanez felt as though doing so would be futile.

170.    At no point when Plaintiff Romanez was custom ordering his vehicle or when speaking to a Tesla sales representative did Tesla warn or explain that the advertised range required the vehicle to be fully charged to 100% battery capacity, required the driver not to use other vehicle features (including other electronics), did not account for normal, expected driving conditions, or that it was exaggerated. Further, at no point when speaking with Tesla representatives, did Tesla representatives warn or explain that the advertised range required the vehicle to be fully charged to 100% battery capacity, required the driver not to use other vehicle features (including other electronics), did not account for normal, expected driving conditions, or that it was exaggerated.

171.    The electric vehicle's range was one of the most important factors Plaintiff Romanez considered when choosing to purchase his Tesla vehicle.

172.    Had Tesla truthfully revealed that the advertised range was exaggerated and not based on normal driving conditions, Plaintiff Romanez would not have purchased his Tesla vehicle, or else would have paid substantially less for it.

173.    Plaintiff Romanez would consider buying another Tesla vehicle in the future if Tesla were ordered to truthfully reveal the actual range of the vehicle, based on normal driving conditions.

*__Plaintiff Artem Kupriiets__*

174.    Plaintiff Artem Kupriiets is a resident of Palatine, Cook County, Illinois. Plaintiff Kupriiets ordered a 2023 Tesla Model Y Performance vehicle in February 2023. He took delivery of the vehicle in March2023. Plaintiff Kupriiets purchased his vehicle for approximately $65,281.

175.    Prior to ordering his Tesla vehicle, Plaintiff Kupriiets test drove a Tesla electric vehicle at a local Tesla dealership. After test driving one of the vehicles, he spoke with a Tesla sales representative at the dealership, discussing various features of the vehicle. However, at no point did the Tesla representative warn or explain to Plaintiff Kupriiets that the advertised range did not account for normal driving conditions or that it was exaggerated.

176.    Plaintiff Kupriiets went to Tesla's website and custom ordered a Tesla Model Y Performance vehicle. As Plaintiff Kupriiets selected the features and attributes of his vehicle, at no point did Tesla warn or explain to Plaintiff Kupriiets that the advertised range did not account for normal driving conditions or that it was exaggerated.

177.    Plaintiff Kupriiets' vehicle came with all Tesla applicable warranties, including Tesla's New Vehicle Limited Warranty, Basic Vehicle Limited Warranty, and Battery and Drive Unit Limited Warranty.

178.    Shortly after receiving the vehicle, Plaintiff Kupriiets noticed that his Tesla vehicle was not receiving the advertised range. For example, Plaintiff Kupriiets took an approximately 170-mile trip to Peoria, Illinois. Prior to leaving on this trip, Plaintiff Kupriiets charged the vehicle to 100% battery charge at a Tesla Supercharger. Before leaving, his vehicle indicated that it could complete the trip without requiring additional charging. However, during the trip, Plaintiff Kupriiets noticed the vehicle's charge decreasing rapidly, and he did not believe he would be able to reach his destination without charging the vehicle.

179.    Plaintiff Kupriiets' electric vehicle should have had an advertised range of approximately 303 miles, based upon a full 100% charge. However, he noticed that his vehicle

1  was not receiving the advertised range.

2  180.  Plaintiff Kupriiets grew concerned that something was wrong with his vehicle, so

3  he used the Tesla app to schedule a service appointment, in part, to address his concerns over the

4  vehicle's range. In response, the Tesla app indicated that there was nothing wrong with his

5  vehicle's battery and indicated that it was normal and expected that the Tesla vehicle's range

6  would drop below the advertised range with normal driving conditions and use of other vehicle

7  features. At that time, the Tesla app did not schedule a service appointment to review the vehicle

8  and confirm whether the vehicle or battery was, in fact, malfunctioning.

9  181.  During a subsequent service appointment, Plaintiff Kupriiets voiced his concerns

10  over his vehicles' range issues with a service representative at local Tesla dealership,

11  complaining that he was not receiving the advertised range in his vehicle. The Tesla

12  representative explained that the range advertised by Tesla was based on a full 100% battery

13  charge, without use of any other electronics in the vehicle (including, for example, use of air

14  conditioning, use of the radio, etc.) and without accounting for weather, headwinds, temperature,

15  traffic, amount of passengers, and other driving conditions. The Tesla representative explained

16  that it was normal and expected that the Tesla vehicle's range would drop below the advertised

17  range with normal driving conditions and use of other vehicle features. The Tesla representative

18  claimed that there was nothing wrong with the range Plaintiff Kupriiets was experiencing in his

19  vehicle.

20  182.  At no point when Plaintiff Kupriiets was custom ordering his vehicle did Tesla

21  warn or explain that the advertised range required the vehicle to be fully charged to 100% battery

22  capacity, required the driver not to use other vehicle features (including other electronics), did

23  not account for normal, expected driving conditions, or that it was exaggerated.

24  183.  The electric vehicle's range was one of the most important factors Plaintiff

25  Kupriiets considered when choosing to purchase his Tesla vehicle.

26  184.  Had Tesla truthfully revealed that the advertised range was exaggerated and not

27

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 4:23-CV-03878-YGR

based on normal driving conditions, Plaintiff Kupriiets would not have purchased his Tesla vehicle, or else would have paid substantially less for it.

185.    Plaintiff Kupriiets would consider buying another Tesla vehicle in the future if Tesla were ordered to truthfully reveal the actual range of the vehicle, based on normal driving conditions.

### ***Plaintiff Neil Kreuzer***

186.    Plaintiff Neil Kreuzer is a resident of Boston, Suffolk County, Massachusetts. Plaintiff Kreuzer ordered seven 2022 Model 3 Rear Wheel Drive vehicles in August 2021. He took delivery of the vehicles in November 2021. Plaintiff Kreuzer purchased the vehicles for approximately $ 40,000 each. Plaintiff Kreuzer also ordered a 2022 Model 3 Long Range vehicle in or around March 2022. He took delivery of the vehicle in or around June 2022. Plaintiff Kreuzer purchased this vehicle for approximately $53,440. Plaintiff Kreuzer also ordered a 2022 Model 3 Long Range vehicle in or around April 2022. He took delivery of the vehicle in or around May 2022. Plaintiff Kreuzer purchased this vehicle for $57,000.

187.    Prior to ordering his first Tesla vehicle, Plaintiff Kreuzer test drove a Tesla electric vehicle at a Tesla dealership. After test driving the vehicle, he spoke with a Tesla sales representative at the dealership, discussing various features of the vehicle and completing a custom order of a Tesla vehicle with the Tesla sales representative. However, at no point did Tesla warn or explain to Plaintiff Kreuzer—either on its website or through its representative— that the advertised range did not account for normal driving conditions or that it was exaggerated.

188.    Plaintiff Kreuzer's vehicles came with all Tesla applicable warranties, including Tesla's New Vehicle Limited Warranty, Basic Vehicle Limited Warranty, and Battery and Drive Unit Limited Warranty.

189.    Plaintiff Kreuzer bought these vehicles, in part, to rent them out, but he also loaned them to friends and family. After receiving his Model 3 Rear Wheel Drive vehicles, based both on his personal driving of the vehicles and others' driving of the vehicles, Plaintiff Kreuzer

1  noticed that the vehicles were not receiving the advertised range. Plaintiff Kreuzer noticed that

2  the vehicles were generally receiving approximately 20% to 25% less total range than the

3  advertised range for the vehicles.

4       190.   Plaintiff Kreuzer's Model 3 Rear Wheel Drive vehicles should have had an

5  advertised range of approximately 272 miles, based upon a full 100% charge. However, based

6  upon his charging the vehicles to 100% battery charge, Plaintiff Kreuzer noticed that the vehicles

7  were generally receiving only approximately 204 to 217 miles—or approximately 75% to 80%

8  of the total advertised range. In preparation for an approximately 120-mile trip, Plaintiff Kreuzer

9  charged one of these vehicles to full 100% battery charge. Based on being fully charged to 100%

10  battery charge, Plaintiff Kreuzer should have arrived at his destination with approximately 152

11  miles of range remaining, but instead he arrived at his destination with only approximately 50

12  miles of range remaining—an approximately 100-mile discrepancy in the vehicle's range.

13       191.   Plaintiff Kreuzer called Tesla to voice concerns over his vehicles' range. Plaintiff

14  Kreuzer spoke with a Tesla representative, complaining that he was not receiving the advertised

15  range in his vehicles. The Tesla representative explained that the range advertised by Tesla was

16  based on a full 100% battery charge and ideal driving conditions. The Tesla representative

17  explained that it was normal and expected that the Tesla vehicle's range would drop below the

18  advertised range with normal driving conditions and use of other vehicle features. The Tesla

19  representative claimed that there was nothing wrong with the range Plaintiff Kreuzer was

20  experiencing in his vehicles.

21       192.   In part based on the range issues he experienced in his Model 3 Rear Wheel Drive

22  vehicles, Plaintiff Kreuzer decided to sell the vehicles to third party dealers. However, he

23  believed that the range issues were likely limited to Tesla Model 3 Rear Wheel Drive model

24  vehicles because, as he understood it, Tesla Model 3 Rear Wheel Drive model vehicles included

25

26

27

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 4:23-CV-03878-YGR

a different kind of battery than other Tesla model vehicles.[62] Based on this belief, Plaintiff Kreuzer decided to purchase two 2022 Model 3 Long Range vehicles. He custom ordered two 2022 Model 3 Long Range vehicles from Tesla's website. As Plaintiff Kreuzer selected the features and attributes of his Model 3 Long Range vehicles, at no point did Tesla warn or explain to Plaintiff Kreuzer that the advertised range did not account for normal driving conditions or that it was exaggerated.

193.   Immediately after taking delivery of these vehicles Plaintiff Kreuzer again noticed issues with the vehicles' range. His experience with his Model 3 Long Range vehicles, particularly their failure to provide the advertised range, matched his experience with his Model 3 Rear Wheel Drive vehicles.

194.   Plaintiff Kreuzer voiced his concerns over his vehicles' range issues with a local Tesla dealership, complaining that he was not receiving the advertised range in his vehicle. The Tesla representative at the dealership explained that the range advertised by Tesla was based on a full 100% battery charge and ideal driving conditions. The Tesla representative explained that it was normal and expected that the Tesla vehicle's range would drop below the advertised range with normal driving conditions and use of other vehicle features. The Tesla representative claimed that there was nothing wrong with the range Plaintiff Kreuzer was experiencing in his vehicles.

195.   At no point when Plaintiff Kreuzer was custom ordering his vehicles, or when speaking with Tesla representatives during the ordering process, did Tesla warn or explain that the advertised range required the vehicle to be fully charged to 100% battery capacity, required

---

[62] Tesla Model 3 Rear Wheel Drive model vehicles, beginning in August 2021, were equipped with lithium-iron-phosphate ("LFP") batteries. By late 2021, Tesla Model 3 Rear Wheel Drive, Tesla Model 3 Standard Range, and Tesla Model Y Standard Range vehicles in the United States were equipped with these LFP batteries. Other Tesla model vehicles, however, were equipped with nickel-cobalt-aluminum ("NCA") batteries. Other Tesla model vehicles, including Tesla Model S, Tesla Model X, Tesla Model 3 Long Range, and Tesla Model Y Long Range vehicles in the United States were equipped with NCA batteries. https://www.recurrentauto.com/research/what-kind-of-battery-is-in-my-tesla (last visited Oct. 23, 2023).

the driver not to use other vehicle features (including other electronics), did not account for normal, expected driving conditions, or that it was exaggerated.

196.     The electric vehicle's range was one of the most important factors Plaintiff Kreuzer considered when choosing to purchase his Tesla vehicle.

197.     Had Tesla truthfully revealed that the advertised range was exaggerated and not based on normal driving conditions, Plaintiff Kreuzer would not have purchased his Tesla vehicles, or else would have paid substantially less for them.

198.     Plaintiff Kreuzer would consider buying another Tesla vehicle in the future if Tesla were ordered to truthfully reveal the actual range of the vehicle, based on normal driving conditions.

### *Plaintiff Wafay Nadir*

199.     Plaintiff Wafay Nadir is a resident of Dix Hills, Suffolk County, New York. Plaintiff Nadir ordered a 2021 Tesla Model Y Long Range vehicle in or around May 2021. He took delivery of the vehicle in or around June 2021. Plaintiff Nadir purchased his vehicle for approximately $55,000.

200.     Prior to ordering his Tesla vehicle, Plaintiff Nadir test drove a Tesla electric vehicle at a local Tesla dealership. After test driving one of the vehicles, he spoke with a Tesla sales representative at the dealership, discussing various features of the vehicle, including its range. However, at no point did the Tesla representative warn or explain to Plaintiff Nadir that the advertised range did not account for normal driving conditions or that it was exaggerated.

201.     Plaintiff Nadir went to Tesla's website and custom ordered a Tesla Model Y Long Range vehicle. As Plaintiff Nadir selected the features and attributes of his vehicle, at no point did Tesla warn or explain to Plaintiff Nadir that the advertised range did not account for normal driving conditions or that it was exaggerated.

202.     Plaintiff Nadir's vehicle came with all Tesla applicable warranties, including Tesla's New Vehicle Limited Warranty, Basic Vehicle Limited Warranty, and Battery and Drive

Unit Limited Warranty.

203.    After taking delivery of his Tesla vehicle in June 2021, Plaintiff Nadir intended to drive his vehicle for long road trips. Plaintiff Nadir fully charged his vehicle to 100% battery charge. Despite taking a road trip of approximately 250 miles, and despite his vehicle being fully charged, Plaintiff Nadir recalls that he arrived at his destination with less than 5% remaining charge.

204.    Plaintiff Nadir's electric vehicle should have had an advertised range of approximately 330 miles, based upon a full 100% charge. Thus, following Plaintiff Nadir's trip, his vehicle lost approximately 313.5 miles of range—despite only driving approximately 250 miles.

205.    Plaintiff Nadir also loaned his vehicle to his sister for a long road trip to Delaware. Plaintiff Nadir ensured that his vehicle was charged to 100% battery charge prior to this trip. Despite this, Plaintiff Nadir's sister drove to Delaware, picked up another family member before driving to their final destination, and the vehicle died before reaching the final destination. Plaintiff Nadir's sister was forced to ask AAA to charge the vehicle. Based on this and his personal driving experience, Plaintiff Nadir noticed that his vehicle was not receiving the advertised range

206.    Plaintiff Nadir has also noticed that the estimated range of his Tesla vehicle is significantly negatively impacted by cold weather, which he regularly encounters throughout the year.

207.    Sometime later, Plaintiff Nadir called Tesla to voice concerns over his vehicle's range, including concern that his vehicle's battery may be defective, and he spoke with a Tesla representative.

208.    Plaintiff Nadir voiced his concerns to the Tesla representative, complaining that he was not receiving the advertised range in his vehicle. The Tesla representative explained that the range advertised by Tesla was based on a full 100% battery charge, without use of any other

electronics in the vehicle (including, for example, use of air conditioning, use of the radio, etc.) and without accounting for weather, temperature, traffic, amount of passengers, and other driving conditions. The Tesla representative explained that it was normal and expected that the Tesla vehicle's range would drop below the advertised range with normal driving conditions and use of other vehicle features. The Tesla representative claimed that there was nothing wrong with the range Plaintiff Nadir was experiencing in his vehicle.

209.   At no point when Plaintiff Nadir was custom ordering his vehicle did Tesla warn or explain that the advertised range required the vehicle to be fully charged to 100% battery capacity, required the driver not to use other vehicle features (including other electronics), did not account for normal, expected driving conditions, or that it was exaggerated. Further, at no point when speaking with Tesla representatives, including following Plaintiff Nadir's test drive prior to his ordering his Tesla vehicle, did Tesla representatives warn or explain that the advertised range required the vehicle to be fully charged to 100% battery capacity, required the driver not to use other vehicle features (including other electronics), did not account for normal, expected driving conditions, or that it was exaggerated.

210.   The electric vehicle's range was one of the most important factors Plaintiff Nadir considered when choosing to purchase his Tesla vehicle.

211.   Had Tesla truthfully revealed that the advertised range was exaggerated and not based on normal driving conditions, Plaintiff Nadir would not have purchased his Tesla vehicle, or else would have paid substantially less for it.

212.   Plaintiff Nadir would consider buying another Tesla vehicle in the future if Tesla were ordered to truthfully reveal the actual range of the vehicle, based on normal driving conditions.

### ***Plaintiff Kenneth Brown***

213.   Plaintiff Kenneth Brown is a resident of Washougal, Clark County, Washington.

Plaintiff Brown ordered a 2023 Tesla Model 3 Performance vehicle in or around April 2023. He took delivery of the vehicle in May 2023. Plaintiff Brown purchased his vehicle for $55,580.

214.    Prior to ordering his Tesla vehicle, Plaintiff Brown test drove a Tesla electric vehicle at a local Tesla dealership. After test driving one of the vehicles, he spoke with a Tesla sales representative at the dealership, discussing various features of the vehicle. However, at no point did the Tesla representative warn or explain to Plaintiff Brown that the advertised range did not account for normal driving conditions or that it was exaggerated.

215.    Plaintiff Brown went to Tesla's website and custom ordered a Tesla Model 3 Performance vehicle. As Plaintiff Brown selected the features and attributes of his vehicle, at no point did Tesla warn or explain to Plaintiff Brown that the advertised range did not account for normal driving conditions or that it was exaggerated.

216.    Plaintiff Brown's vehicle came with all Tesla applicable warranties, including Tesla's New Vehicle Limited Warranty, Basic Vehicle Limited Warranty, and Battery and Drive Unit Limited Warranty.

217.    Within weeks of receiving the vehicle, Plaintiff Brown noticed that his Tesla vehicle was not receiving the advertised range. For example, Plaintiff Brown took an approximately 90-mile trip, and upon returning, he noticed that the vehicle was not receiving the advertised range.

218.    Plaintiff Brown had considered contacting Tesla to complain and voice concern about the range of his vehicle. However, following reporting regarding Tesla's exaggeration of the advertised range in its vehicles and that Tesla actively disposed of such complaints, Plaintiff Brown felt as though doing so would be futile.

219.    At no point when Plaintiff Brown was custom ordering his vehicle did Tesla warn or explain that the advertised range required the vehicle to be fully charged to 100% battery capacity, required the driver not to use other vehicle features (including other electronics), did not account for normal, expected driving conditions, or that it was exaggerated.

220.     The electric vehicle's range was one of the most important factors Plaintiff Brown considered when choosing to purchase his Tesla vehicle.

221.     Had Tesla truthfully revealed that the advertised range was exaggerated and not based on normal driving conditions, Plaintiff Brown would not have purchased his Tesla vehicle, or else would have paid substantially less for it.

222.     Plaintiff Brown would consider buying another Tesla vehicle in the future if Tesla were ordered to truthfully reveal the actual range of the vehicle, based on normal driving conditions.

## CLASS ACTION ALLEGATIONS

223.     Plaintiffs bring this suit as a class action on behalf of themselves and on behalf of all others similarly situated pursuant to Federal Rule of Civil Procedure 23. This action satisfies the numerosity, typicality, adequacy, predominance, and superiority requirements of the provisions of Rule 23.

224.     Plaintiffs seek to represent the following Nationwide Class:

All persons in the United States who purchased from Tesla a Tesla Model 3, Model S, Model Y, or Model X vehicle.

225.     Plaintiffs seek to represent the following State Classes:

All persons in California who purchased from Tesla a Tesla Model 3, Model S, Model Y, or Model X vehicle. (the "California Class")

All persons in Florida who purchased from Tesla a Tesla Model 3, Model S, Model Y, or Model X vehicle. (the "Florida Class")

All persons in Illinois who purchased from Tesla a Tesla Model 3, Model S, Model Y, or Model X vehicle. (the "Illinois Class")

All persons in Massachusetts who purchased from Tesla a Tesla Model 3, Model S, Model Y, or Model X vehicle. (the "Massachusetts Class")

All persons in New York who purchased from Tesla a Tesla Model 3, Model S, Model Y, or Model X vehicle. (the "New York Class")

44

> All persons in Washington who purchased from Tesla a Tesla Model 3, Model S, Model Y, or Model X vehicle. (the "Washington Class")

226.   Plaintiffs reserve the right to modify or amend the definition of the proposed Nationwide Class and State Classes before the Court determines whether certification is appropriate and as the parties engage in discovery.

227.   ***Numerosity:*** Members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class Members remains unknown at this time, upon information and belief, there are thousands of putative Class Members who are generally ascertainable by appropriate discovery.

228.   ***Commonality:*** This action involves common questions of law and fact, which predominate over questions affective individual Class Members. These common legal and factual questions include, but are not limited to, the following:

   a.   Whether Tesla model vehicles fail to deliver the advertised estimated vehicle range in normal driving conditions;

   b.   Whether Tesla exaggerated its advertised estimated vehicle ranges;

   c.   Whether Tesla knew that its advertised estimated vehicle ranges were exaggerated and could not be met under normal driving conditions;

   d.   When Tesla gained such knowledge;

   e.   Whether Tesla designed, manufacture, marketed, advertised, sold, or otherwise placed its model vehicles into the stream of commerce with such knowledge;

   f.   Whether Tesla intentionally concealed the fact that its advertised estimated vehicle ranges were exaggerated or otherwise could not be met under normal driving conditions;

   g.   Whether Tesla's conduct to divert complaints from Class Members who voiced concerns over their Tesla model vehicle's range violated the terms

1    of Tesla's warranties;

2    h.    Whether Plaintiffs and Class Members were harmed by the fraud and

3          deceptive practices alleged herein;

4    i.    Whether Tesla was unjustly enriched by its deceptive practices; and

5    j.    Whether Plaintiffs and the Class are entitled to equitable or injunctive

6          relief.

7    229.   **Typicality:** Plaintiffs' claims are typical or those of the other Class Members

8 because, *inter alia*, all Class Members were injured through the common misconduct described

9 above and were subject in the same manner to Tesla's unfair, deceptive, and unlawful conduct.

10 Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all

11 members of the Class.

12   230.   **Adequacy of Representation:** Plaintiffs will fairly and adequately represent and

13 protect the interests of the Class in that they have no disabling conflicts of interest that would be

14 antagonistic to those of the other Class Members. Plaintiffs seek no relief that is antagonistic or

15 adverse to the other Class Members, and the infringement of the rights and the damages Plaintiffs

16 have suffered are typical of other Class Members. Plaintiffs have retained counsel experienced

17 in complex consumer class action litigation, and Plaintiffs intend to prosecute this action

18 vigorously.

19   231.   **Superiority:** Class litigation is an appropriate method for the fair and efficient

20 adjudication of the claims involved. Class action treatment is superior to all other available

21 methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a

22 large number of Class Members to prosecute their common claims in a single forum

23 simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and

24 expense that hundreds of individual actions would require. Class action treatment will permit the

25 adjudication of relatively modest claims by certain Class Members, who could not individually

26 afford to litigate a complex claim against large corporate defendants. Further, even for those

27

Class Members who could afford to litigate such a claim, it would still be economically impractical.

232.    The nature of this action and the nature of laws available to Plaintiffs and the Class make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and the Class for the wrongs alleged because Tesla would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

233.    The class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because of the number and nature of common questions of fact and law, multiple separate lawsuits would not serve the interest of judicial economy.

234.    Notice of a certified class action and of any result or resolution of the litigation can be provided to Class Members by first-class mail, email, or publication, or such other methods of notice as deemed appropriate by the Court.

235.    Plaintiffs do not anticipate any difficulty in the management of this litigation.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### BREACH OF EXPRESS WARRANTY
**(By All Plaintiffs on Behalf of All Classes)**

236.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

237.    Tesla provided Plaintiffs and Class Members with Tesla's New Vehicle Limited Warranty.

47

238.    Included in the New Vehicle Limited Warranty, Tesla provided Plaintiffs and Class Members with Tesla's Basic Vehicle Limited Warranty, which expressly "covers the repair or replacement necessary to correct defects in the materials or workmanship of any parts manufactured or supplied by Tesla under normal use for a period of 4 years or 50,000 miles (80,000 km), whichever comes first."

239.    Tesla further provided Plaintiffs and Class Members with Tesla's Battery and Drive Unit Limited Warranty, which expressly "covers the repair or replacement of any malfunctioning or defective Battery or Drive Unit." If a warranty repair is required, "Tesla will repair the [Battery or Drive] unit, or replace it." "[W]hen replacing a Battery, Tesla will ensure that the energy capacity of the replacement Battery is at least equal to that of the original Battery before the failure occurred." For Tesla Model S and Model X vehicles, the Battery and Drive Unit Limited Warranty offers coverage for "8 years or 150,000 miles (240,000 km), whichever comes first, with minimum 70% retention of Battery capacity over the warranty period." For Tesla Model 3 Rear-Wheel Drive vehicles, the Battery and Drive Unit Limited Warranty offers coverage for "8 years or 100,000 miles (160,000 km), whichever comes first, with minimum 70% retention of Battery capacity over the warranty period." For Tesla Model 3 Long Range, Model 3 Performance, Model Y All-Wheel Drive, Model Y Long Range, and Model Y Performance vehicles, the Battery and Drive Unit Limited Warranty offers coverage for "8 years or 120,000 miles (192,000 km), whichever comes first, with minimum 70% retention of Battery capacity over the warranty period."

240.    Tesla also offers a Used Vehicle Limited Warranty on all used vehicles purchased through Tesla, which offers coverage for "the remainder of 4 years or 50,000 miles left on the Basic Vehicle Limited Warranty," and after its expiration, "provides additional coverage of 1 year or 10,000 miles."

241.    The above express warranties became part of the basis of the bargain between Plaintiffs and Class Members and Tesla.

242.   Plaintiffs presented concerns with their vehicles' range to Tesla for repairs. Tesla, however, refused to remedy or even address these concerns, instead choosing to divert the claim and dismiss it.

243.   As explained above, Tesla established a Diversion Team that was specifically tasked with canceling such service appointments. This ensured that customers' Tesla vehicles could not be reviewed to determine whether their range complaints arose, in fact, from a malfunctioning battery. This effectively ensured that Tesla would not be required to potentially offer more warranty repair or replacement coverages. It also effectively rendered the warranties null.

244.   Plaintiffs and Class Members notified Tesla of the breaches within a reasonable time and/or were not required to do so because affording Tesla a reasonable opportunity to cure its breach of written warranty would have been futile.

245.   Plaintiffs and Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Tesla's conduct described herein.

246.   Plaintiffs and Class Members are entitled to legal and equitable relief against Tesla, including damages, consequential damages, specific performance, attorney fees, costs of suit, and other relief as appropriate.

## SECOND CLAIM FOR RELIEF
### BREACH OF IMPLIED WARRANTY
### (By All Plaintiffs on Behalf of All Classes)

247.   Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

248.   Tesla provided Plaintiffs and Class Members with an implied warranty that the Tesla vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold. However, the Tesla vehicles are not fit for their ordinary purpose as electric vehicles because the vehicles fail to deliver adequate range  when operated under normal driving

conditions.

249.   Tesla impliedly warranted that the vehicles were of merchantable quality and fit to provide adequate driving range for normal driving conditions.

250.   Contrary to the applicable implied warranties, the vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable vehicles.

251.   Tesla's actions, as complained of herein, breached the implied warranty that the Tesla vehicles were of merchantable quality and fit for such use.

## THIRD CLAIM FOR RELIEF
## VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT
## 15 U.S.C. § 2301, *et seq.*
## (By All Plaintiffs on Behalf of All Classes)

252.   Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

253.   The Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.*, imposes civil liability on any "warrantor" for failing to comply with any obligation under written and implied warranties. 15 U.S.C. § 2310(d)(1).

254.   This Court has jurisdiction over this matter under CAFA and can therefore assert alternative jurisdiction over Plaintiffs' MMWA claims.

255.   The Tesla vehicles are "consumer products" as defined by 15 U.S.C. § 2301(1).

256.   Plaintiffs and Class Members are "consumers" as defined by 15 U.S.C. § 2301(3).

257.   Tesla is a "warrantor" and "supplier" as defined by 15 U.S.C. § 2301(4) and (5).

258.   As detailed above, Tesla breached its warranty obligations by failing to provide a product that conformed to the promises and affirmations Tesla made about the Tesla vehicles, by failing to truthfully advertise and warrant the range of its vehicles, and by establishing a scheme to divert and systematically cancel customers' customer complaints, concerns, and service appointments relating to the range of their vehicles, which in turn created a system that

prevented the warranties from functioning as intended (and, thus, rendered the warranties null and caused them to fail of their essential purpose).

259.    Tesla's breach of warranty deprived Plaintiffs and Class Members of the benefit of their bargain.

260.    The amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interest and costs) computed on the basis of all claims to be determined in this suit.

261.    Tesla has been afforded reasonable opportunity to cure its breaches of warranty. Plaintiffs previously provided reasonable notice to Tesla of their concerns and complaints regarding the range of their vehicles, creating service appointments to address the issues, which Tesla ultimately canceled. Despite this notice, to Plaintiffs' knowledge, Tesla has taken no steps to correct its business practices or cure its breaches.

262.    Further, pursuant to the provisions of 15 U.S.C. § 2310(e), Plaintiffs, on behalf of themselves and Class Members, sent notice to Tesla on August 2, 2023, to provide it with reasonable opportunity to correct its business practices and cure its breach of warranties under the MMWA.

263.    In addition, resorting to any sort of informal dispute settlement procedure or affording Tesla another opportunity to cure its breach of warranty is unnecessary and futile. Any remedies available through any informal dispute settlement procedure would be inadequate under the circumstances, as Tesla has repeatedly mispresented the true quality and nature of its vehicles, has established a scheme to divert and systematically dispose of reasonable concerns and warranty complaints regarding the range of its vehicles, and has indicated no desire to participate in such a process at this time.  Any requirement under the MMWA or otherwise that Plaintiffs submit to any informal dispute settlement procedure or otherwise afford Tesla a reasonable opportunity to cure its breaches of warranty is excused and/or has been satisfied.

264.    As a direct and proximate result of Tesla's warranty breaches, Plaintiffs and Class Members sustained damages and other losses to be determined at trial. Tesla's conduct damaged

Plaintiffs and Class Members, who are entitled to recover damages, specific performance, costs, attorneys' fees, and other appropriate relief.

**FOURTH CLAIM FOR RELIEF**
**VIOLATIONS OF THE SONG-BEVERLY CONSUMER WARRANTY ACT**
**Cal. Civ. Code § 1790, *et seq.***
**(By Plaintiffs Porter, Perez, and Estepanian on Behalf of the California Class)**

265.    Plaintiffs incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

266.    Plaintiffs and Class Members are "buyers" as that term is defined in the California Civil Code § 1791(b).

267.    The Tesla vehicles are "consumer goods" as that term is defined in the California Civil Code § 1791(a).

268.    At all relevant times, Tesla was the "manufacturer, distributor, warrantor and/or seller" of the Tesla vehicles within the meaning of the California Civil Code § 1791.

269.    Tesla provided Plaintiffs and Class Members with express warranties that "covers the repair or replacement necessary to correct defects in the materials or workmanship of any parts manufactured or supplied by Tesla under normal use" and "covers the repair or replacement of any malfunctioning or defective Battery or Drive Unit."

270.    Plaintiffs presented concerns with their vehicles' range to Tesla for repairs. Tesla, however, refused to remedy or even address these concerns, instead choosing to divert the claim and dismiss it.

271.    As explained above, Tesla established a Diversion Team that was specifically tasked with canceling such service appointments. This ensured that customers' Tesla vehicles could not be reviewed to determine whether their range complaints arose, in fact, from a malfunctioning battery. This effectively ensured that Tesla would not be required to potentially offer more warranty repair or replacement coverages.

272.    Tesla's conduct as complained herein breached applicable warranties and

violated the Song-Beverly Consumer Warranty Act.

## FIFTH CLAIM FOR RELIEF
### FRAUD
### (By All Plaintiffs on Behalf of All Classes)

202.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

203.    Tesla made material misrepresentations and omissions of fact in its advertising and marketing of the Tesla vehicles by exaggerating the range capabilities of its electric vehicles.

204.    Tesla's conduct was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the vehicles have a much greater vehicle range than what could be achieved under normal driving conditions.

205.    Plaintiffs and Class Members considered the Tesla vehicles' driving range to be an important factor when purchasing their Tesla vehicles. The vehicle's advertised range is material to the average, reasonable consumer.

206.    Plaintiffs and Class Members were actually misled and deceived and were induced by Tesla to purchase the vehicles. Had Tesla truthfully advertised the vehicle's range, Plaintiffs and Class Members would have either not purchased the vehicles, or else would have paid substantially less for them.

207.    As a result of Tesla's conduct, Plaintiffs and Class Members have been damaged in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF
### NEGLIGENT MISREPRESENTATION
### (By All Plaintiffs on Behalf of All Classes)

208.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

209.    Tesla had a duty to provide honest and accurate information to consumers so that its customers could make informed decisions on the substantial purchase of a vehicle.

210.    Tesla misrepresented material facts regarding the Tesla vehicles' range to

53

Plaintiffs and Class Members, as described herein.

211.  Plaintiffs and Class Members considered the Tesla vehicles' driving range to be an important factor when purchasing their Tesla vehicles. The vehicle's advertised range is material to the average, reasonable consumer.

212.  Tesla knew or reasonably should have known, that the average, reasonable consumer would be misled by Tesla's misleading and deceptive advertisements and statements, which falsely exaggerate the true nature of its vehicles' range.

213.  Plaintiffs and Class Members justifiably relied on Tesla's misrepresentations and omissions and were actually misled and deceived and were induced by Tesla to purchase the vehicles. Had Tesla truthfully advertised the vehicle's range, Plaintiffs and Class Members would have either not purchased the vehicles, or else would have paid substantially less for them

214.  As a result of Tesla's conduct, Plaintiffs and Class Members have been damaged in an amount to be determined at trial.

<u>**SEVENTH CLAIM FOR RELIEF**</u>
**VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT**
**Cal. Civ. Code § 1750,** *et seq.*
**(By Plaintiffs Porter, Perez, and Estepanian on Behalf of the California Class)**

215.  Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

216.  Tesla is a "person" as that term is defined in California Civil Code § 1761(c).

217.  Plaintiffs Porter, Perez, and Estepanian and California Class Members are "consumers" as that term is defined in California Civil Code § 1761(d).

218.  Tesla engaged in unfair and deceptive acts in violation of the California Legal Remedies Act ("CLRA") by the practices described above, and by knowingly and intentionally misleading (through statements and omissions) Plaintiffs Porter, Perez, and Estepanian and California Class Members in a material way in the process of purchasing the Tesla vehicles by advertising estimated vehicle ranges that were exaggerated or otherwise could not be met under normal driving conditions, without explaining or warning consumers of that fact. These acts and

practices violate, at a minimum, the following sections of the CLRA:

> California Civil Code § 1770(a)(2) Misrepresenting the source, sponsorship, approval or certification of goods or services;
>
> California Civil Code § 1770(a)(5) Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;
>
> California Civil Code § 1770(a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and
>
> California Civil Code § 1770(a)(9) Advertising goods and services with the intent not to sell them as advertised.

219.    Tesla's unfair or deceptive acts or practices occurred repeatedly in Tesla's trade or business and were capable of deceiving, and did deceive, a substantial portion of the purchasing public.

220.    Throughout the relevant period, Tesla knew or reasonably should have known that the Tesla vehicles failed to deliver the advertised estimated vehicle range under normal driving conditions.

221.    Tesla was under a duty to Plaintiffs Porter, Perez, and Estepanian and California Class Members to disclose the true nature of the estimated vehicle range of the Tesla vehicles because:

> a.    Tesla was in a superior position to know the true state of facts about the vehicle range of the Tesla vehicles;
>
> b.    Plaintiffs Porter, Perez, and Estepanian and the California Class Members could not reasonably have been expected to learn or discover that the vehicle range was exaggerated and could not be met under normal driving conditions and thus were not in accordance with Tesla's advertisements and representations;

c.    Tesla knew that Plaintiffs Porter, Perez, and Estepanian and the California Class Members could not reasonably have been expected to learn or discover the true state of facts about the vehicle range; and

d.    Tesla actively concealed and failed to disclose the fact that its advertised estimated vehicle ranges were exaggerated or otherwise could not be met under normal driving conditions from Plaintiffs Porter, Perez, and Estepanian and the California Class.

222.    In exaggerating the true state of facts for the vehicle range at the time of sale, Tesla has knowingly and intentionally misrepresented material facts and breached its duty not to do so.

223.    Plaintiffs Porter, Perez, and Estepanian and California Class Members considered the Tesla vehicles' driving range to be an important factor when purchasing their Tesla vehicles. The vehicle's advertised range is material to the average, reasonable consumer.

224.    The misrepresented facts concerning the vehicle range are also material because they concern central functions of the electric vehicles (*e.g.*, the distance the vehicle can travel before needing to be recharged).

225.    Finally, the facts concerning the vehicle range that Tesla exaggerated in its advertisements to customers are also material because they contradict affirmative representations about Tesla vehicle range.

226.    Had Tesla disclosed the true vehicle range in its advertising, on its website's listing of Tesla vehicles for sale or the website's custom order tool, or through its dealerships, Plaintiffs Porter, Perez, and Estepanian and the California Class Members would have learned of the true vehicle range and would have acted differently. Had Plaintiffs Porter, Perez, and Estepanian and California Class Members known about the true state of facts of the vehicle range capabilities of Tesla vehicles, they either would not have purchased the vehicles or else would have paid substantially less for them. Accordingly, Plaintiffs Porter, Perez, and Estepanian and

California Class Members overpaid for their Tesla vehicles and did not receive the benefit of their bargain.

227.    Plaintiffs Porter, Perez, and Estepanian plausibly would have learned of the true state of facts of the vehicle range if Tesla had accurately represented it through its advertising or to the sales representatives at Tesla dealerships. Plaintiffs Porter, Perez, and Estepanian and the other California Class Members' injuries were proximately caused by Tesla's fraudulent and deceptive business practices.

228.    Pursuant to California Civil Code § 1782(a), Plaintiffs Porter, Perez, and Estepanian provided Tesla with notice of its violations under the CLRA on August 2, 2023. Therefore, Plaintiffs Porter, Perez, and Estepanian, on behalf of themselves and California Class Members, seek injunctive relief and damages under the CLRA.

229.    Plaintiffs Porter, Perez, and Estepanian have attached their Declarations of Venue as Collective Exhibit A to this Amended Complaint, establishing that this Action has been properly commenced in this District, because a significant portion of the relevant facts occurred in Sonoma County and other counties in the State of California. *See* Collective Exhibit A.

230.    Pursuant to California Civil Code § 1780, Plaintiffs Porter, Perez, and Estepanian seek an order enjoining Tesla from the unlawful practices described above and a declaration that Tesla's conduct violated the CLRA.

231.    Plaintiffs Porter, Perez, and Estepanian, on behalf of themselves and California Class Members, seek equitable relief as well as actual damages, punitive damages, and attorneys' fees and costs.

### EIGHTH CLAIM FOR RELIEF
**VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**Cal. Bus. & Prof. Code § 17200,** *et seq.*
**(By Plaintiffs Porter, Perez, and Estepanian on Behalf of the California Class)**

232.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

233.    The California Unfair Competition Law ("UCL") prohibits acts of "unfair

57

competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

234.    Tesla has engaged in unfair competition and unfair, unlawful, or fraudulent business practices by the conduct and statements described above, and by knowingly and intentionally misleading (through statements and omissions) Plaintiffs Porter, Perez, and Estepanian and California Class Members about the true nature of the vehicle range (and the costs and diminished value of the Tesla vehicles as a result of Tesla's conduct). Tesla knew or reasonably should have known about the true nature of the vehicle range throughout the relevant period. Tesla should have disclosed accurate and truthful information concerning the vehicle range in its advertising and through its dealerships. Tesla was in a superior position to know the true facts related to the vehicle range, and Plaintiffs Porter, Perez, and Estepanian and California Class Members could not reasonably be expected to learn or discover the true facts related to the vehicle range.

235.    These acts and practices have deceived Plaintiffs Porter, Perez, and Estepanian and are likely to deceive the public. In misrepresenting the vehicle range, Tesla breached its duties to disclose these facts, violated the UCL, and caused injuries to Plaintiffs Porter, Perez, and Estepanian and California Class Members.

236.    Plaintiffs Porter, Perez, and Estepanian and California Class Members considered the Tesla vehicles' driving range to be an important factor when purchasing their Tesla vehicles. The vehicle's advertised range is material to the average, reasonable consumer.

237.    The misrepresented facts concerning the vehicle range are also material because they concern central functions of the electric vehicles (*e.g.*, the distance the vehicle can travel before needing to be recharged).

238.    Had Tesla disclosed the true vehicle range in its advertising, on its website's listing of Tesla vehicles for sale or the website's custom order tool, or through its dealerships, Plaintiffs Porter, Perez, and Estepanian and the California Class Members would have learned

of the true vehicle range and would have acted differently. Had Plaintiffs Porter, Perez, and Estepanian and California Class Members known about the true state of facts of the vehicle range capabilities of Tesla vehicles, they either would not have purchased the vehicles or else would have paid substantially less for them. Accordingly, Plaintiffs Porter, Perez, and Estepanian and California Class Members overpaid for their Tesla vehicles and did not receive the benefit of their bargain.

239. The injuries suffered by Plaintiffs Porter, Perez, and Estepanian and California Class Members greatly outweigh by any potential countervailing benefit, if any, to consumers or to competition. And such injuries are not of a kind that Plaintiffs Porter, Perez, and Estepanian and California Class Members should have, or could have, reasonably avoided.

240. Tesla's acts and practices are unlawful because they violate California Civil Code §§ 1668, 1709, 1710, and 1750, *et seq.*, and California Commercial Code § 2313.

241. Plaintiffs Porter, Perez, and Estepanian, on behalf of themselves and California Class Members, seek to enjoin further unlawful, unfair and/or fraudulent acts or practices by Tesla, to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under California Business & Professions Code § 17200 and under California law.

## NINTH CLAIM FOR RELIEF
### VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW
**Cal. Bus. & Prof. Code § 17500, *et seq.***
**(By Plaintiffs Porter, Perez, and Estepanian on Behalf of the California Class)**

242. Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

243. The California False Advertising Law ("FAL") states: ""It is unlawful for any . . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever,

59

including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

244.    Tesla caused to be made or disseminated throughout California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Tesla, to be untrue and misleading (through statements and omissions) to consumers, including Plaintiffs Porter, Perez, and Estepanian and California Class Members.

245.    Tesla has violated the FAL because the misrepresentations and omissions regarding the vehicle range in its vehicles as set forth in this Amended Complaint were material and likely to deceive a reasonable consumer.

246.    Plaintiffs Porter, Perez, and Estepanian and California Class Members considered the Tesla vehicles' driving range to be an important factor when purchasing their Tesla vehicles. The vehicle's advertised range is material to the average, reasonable consumer.

247.    The misrepresented facts concerning the vehicle range are also material because they concern central functions of the electric vehicles (*e.g.*, the distance the vehicle can travel before needing to be recharged).

248.    Plaintiffs Porter, Perez, and Estepanian and California Class Members have suffered an injury in fact, including the losses of money or property, as a result of Tesla's unfair, unlawful, and/or deceptive practices.

249.    Had Tesla disclosed the true vehicle range in its advertising, on its website's listing of Tesla vehicles for sale or the website's custom order tool, or through its dealerships, Plaintiffs Porter, Perez, and Estepanian and the California Class Members would have learned of the true vehicle range and would have acted differently. Had Plaintiffs Porter, Perez, and Estepanian and California Class Members known about the true state of facts of the vehicle range capabilities of Tesla vehicles, they either would not have purchased the vehicles or else would

have paid substantially less for them. Accordingly, Plaintiffs Porter, Perez, and Estepanian and California Class Members overpaid for their Tesla vehicles and did not receive the benefit of their bargain.

250. All of the wrongful conduct alleged herein occurred in the conduct of Tesla's business.

251. Plaintiffs Porter, Perez, and Estepanian, on behalf of themselves and California Class Members, seek to enjoin further unlawful, unfair and/or fraudulent acts or practices by Tesla, to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under California Business & Professions Code § 17200 and under California law.

**TENTH CLAIM FOR RELIEF**
**VIOLATIONS OF THE FLORIDA DECEPTIVE**
**AND UNFAIR TRADE PRACTICE ACT**
**Fla. Stat. § 501.201, *et seq.***
**(By Plaintiff Romanez on Behalf of the Florida Class)**

252. Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

253. This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* (the "FDUTPA"). The stated purpose of this Act is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." *Id.* § 501.202(2).

254. Plaintiff Romanez and Florida Class Members are "consumers" and the transactions at issue in this Amended Complaint constitute "trade or commerce" as defined by FDUTPA. *See id.* § 501.203(7)-(8).

255. FDUTPA declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Id.* § 501.204(1).

61

256.   Tesla violated FDUTPA by engaging in the conduct described herein, which constitutes unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

257.   In violation of FDUTPA, Tesla employed fraud, deception, false promise, and the knowing concealment, suppression, or omission of material facts in its sale and advertisement of Tesla vehicles in the State of Florida.

258.   Tesla has engaged in unfair, deceptive, and unconscionable practices by:

a.   Marketing and selling the Tesla vehicles without disclosing that the advertised range of the vehicles was exaggerated and/or not based on normal driving conditions; and

b.   Refusing to consider customer complaints regarding the vehicles failing to deliver the advertised range, or otherwise refusing to complete service appointments—or canceling such appointments altogether—regarding the vehicles failing to reliver the advertised range, as part of Tesla's "diversion" policy.

259.   Tesla's failure to disclose that the advertised range was exaggerated and/or not based on normal driving conditions was a material omission that would influence a reasonable consumer's decision whether to purchase the Tesla vehicles.

260.   Plaintiff Romanez and Florida Class Members relied on Tesla to truthfully reveal that its vehicles were unlikely to deliver the advertised ranges, because the advertised ranges were exaggerated and/or not based on normal driving conditions. Plaintiff Romanez and Florida Class Members suffered financial damages as a result of this reliance.

261.   Had Plaintiff Romanez and the Florida Class Members been adequately informed that the Tesla vehicles' advertised ranges were exaggerated and/or not based on normal driving conditions, they would have taken steps to avoid damages by not purchasing them or paying less for them.

262.   Tesla's actions in connection with the advertisement, marketing, and sale of the Tesla vehicles as set forth herein evidences a lack of good faith, honesty in fact, and observance

of fair dealing, so as to constitute unconscionable commercial practices in violation of the FDUTPA.

263.     Tesla was aware, or otherwise should have been aware, that its vehicles could not deliver the advertised ranges, because the advertised ranges were exaggerated and/or not based on normal driving conditions. Despite this knowledge, Tesla advertised, marketed, and sold the Tesla vehicles without revealing such material facts.

264.     As a direct and proximate result of Tesla's violations of the FDUTPA, Plaintiff Romanez and the Florida Class Members have been injured in an amount to be proven at trial.

265.     Plaintiff Romanez, on behalf of himself and Florida Class Members, seeks equitable relief as well as actual damages, punitive damages, and attorneys' fees and costs and all other relief allowed under Florida law.

**ELEVENTH CLAIM FOR RELIEF**
**VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD**
**AND DECEPTIVE PRACTICES ACT**
**815 Ill. Comp. Stat. § 505/1, *et seq.***
**(By Plaintiff Kupriiets on Behalf of the Illinois Class)**

266.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

267.     The Illinois Consumer Fraud and Deceptive Business Practices Act prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce, including among others, "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, . . . whether any person has in fact been misled, deceived, or damaged thereby." 815 Ill. Comp. Stat. § 505/2. The Act also prohibits suppliers from representing that their goods are of a particular quality or grade that they are not.

268.     The Tesla vehicles are "merchandise" as defined in 815 Ill. Comp. Stat. S 505/1(b).  Tesla is a "person" as defined in 815 Ill. Comp. Stat. § 505/1(c).  Plaintiff Kupriiets and the Illinois Class Members are "consumers" as defined in 815 Ill. Comp. Stat. § 505/1(e).

At all times relevant Plaintiff Kupriiets and Illinois Class Members were citizens and residents of the state of Illinois.

269.    Tesla has engaged in deception, fraud, unfair practices, and concealment by its conduct and omissions described above, and by knowingly and intentionally concealing from Plaintiff Kupriiets and Illinois Class Members the fact that the vehicles' advertised range was exaggerated and/or not based on normal driving conditions. Accordingly, Tesla engaged in unfair or deceptive acts or practices as defined in 815 Ill. Comp. Stat. § 505/2, including:

a.    Representing (through its concealment of and failure to disclose the fact that the vehicles' advertised range was exaggerated and/or not based on normal driving conditions) that the Tesla vehicles have characteristics, uses, benefits, and qualities which they do not have;

b.    Representing (through its concealment of and failure to disclose the fact that the vehicles' advertised range was exaggerated and/or not based on normal driving conditions) that the Tesla vehicles are of a particular standard and quality when they are not;

c.    Advertising the Tesla vehicles with the intent not to sell them as advertised; and

d.    Otherwise engaging in conduct likely to deceive.

270.    The facts concealed or not disclosed by Tesla to Plaintiff Kupriiets and Illinois Class Members are material because they concern central functions of the electrical vehicles (*e.g.*, the distance the vehicle can travel before needing to be recharged). Further, such facts are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase a Tesla vehicle or pay a lesser price. Had Tesla truthfully disclosed that the advertised range of its vehicles was exaggerated and/or not based on normal driving conditions, Plaintiff Kupriiets and Illinois Class Members would have learned of these facts. Had Plaintiff Kupriiets and Illinois Class Members known that the advertised range of Tesla vehicles was exaggerated and/or not based on normal driving conditions, they would not have purchased the Tesla vehicles or would have paid less for them.

271.    Plaintiff Kupriiets and Illinois Class Members were injured as a result of Tesla's conduct in that Plaintiff Kupriiets and other Illinois Class Members purchased Tesla vehicles that could not deliver the advertised range, overpaid for the vehicles, and did not receive the benefit of their bargain. These injuries are the direct and natural consequence of Tesla's omissions regarding the fact that the advertised range in its vehicles is exaggerated and/or not based on normal driving conditions. By omitting or concealing such information in advertising, marketing, and selling the Tesla vehicles, Tesla's statements were untrue or misleading. Further, by omitting or concealing such information when customers complained, voiced concerns, or sought service regarding the range of their vehicles, Tesla's statements were untrue or misleading.

272.    The injuries suffered by Plaintiff Kupriiets and Illinois Class Members greatly outweigh by any potential countervailing benefit, if any, to consumers or to competition. And such injuries are not of a kind that Plaintiff Kupriiets and Illinois Class Members should have, or could have, reasonably avoided.

273.    The injuries of Plaintiff Kupriiets and Illinois Class Members were proximately caused by Tesla's fraudulent and deceptive business practices, and they are entitled to relief under the Act.

274.    Tesla's conduct in this regard was willful, outrageous, and in reckless indifference to the rights of Plaintiff Kupriiets and other Illinois Class Members and, as such, warrants the imposition of punitive damages.

275.    Plaintiff Kupriiets, on behalf of himself and Illinois Class Members, seeks equitable relief as well as actual damages, punitive damages, and attorneys' fees and costs and all other relief allowed under Illinois law.

**TWELFTH CLAIM FOR RELIEF**
**VIOLATIONS OF THE ILLINOIS UNIFORM**
**DECEPTIVE TRADE PRACTICES ACT**
**815 Ill. Comp. Stat. § 510/1, *et seq.***
**(By Plaintiff Kupriiets on Behalf of the Illinois Class)**

65

276.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

277.    The Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. S 510/2, prohibits deceptive trade practices, including among others, "(2) caus[ing] likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; . . . (5) represent[ing] that goods or services are of a particular standard, quality, or grade . . . if they are of another; . . . (9) advertis[ing] goods or services with intent not to sell them as advertised; . . . [and] (12) engag[ing] in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

278.    Tesla is a "person" as defined in 815 Ill. Comp. Stat. § 510/1(5).

279.    Tesla has engaged in deception, fraud, unfair practices, and concealment by its conduct and omissions described above, and by knowingly and intentionally concealing the fact that the advertised range in its vehicles was exaggerated and/or not based on normal driving conditions. Accordingly, Tesla engaged in unfair or deceptive acts or practices as defined in 815 Ill. Comp. Stat. § 505/2, including:

a.    Representing (through its concealment of and failure to disclose the fact that the vehicles' advertised range was exaggerated and/or not based on normal driving conditions) that the Tesla vehicles have characteristics, uses, benefits, and qualities which they do not have;

b.    Representing (through its concealment of and failure to disclose the fact that the vehicles' advertised range was exaggerated and/or not based on normal driving conditions) that the Tesla vehicles are of a particular standard and quality when they are not;

c.    Advertising the Tesla vehicles with the intent not to sell them as advertised; and

d.    Otherwise engaging in conduct likely to deceive.

280.    The facts concealed or not disclosed by Tesla to Plaintiff Kupriiets and the Illinois Class Members are material because they concern central functions of the electrical vehicles

66

(*e.g.*, the distance the vehicle can travel before needing to be recharged). Further, such facts are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase a Tesla vehicle or pay a lesser price. Had Plaintiff Kupriiets and Illinois Class Members known that the advertised range of Tesla vehicles was exaggerated and/or not based on normal driving conditions, they would not have purchased the Tesla vehicles or would have paid less for them.

281.    Plaintiff Kupriiets and Illinois Class Members were injured as a result of Tesla's conduct in that Plaintiff Kupriiets and other Illinois Class Members purchased Tesla vehicles that could not deliver the advertised range, overpaid for the vehicles, and did not receive the benefit of their bargain. These injuries are the direct and natural consequence of Tesla's omissions regarding the fact that the advertised range in its vehicles is exaggerated and/or not based on normal driving conditions. By omitting or concealing such information in advertising, marketing, and selling the Tesla vehicles, Tesla's statements were untrue or misleading. Further, by omitting or concealing such information when customers complained, voiced concerns, or sought service regarding the range of their vehicles, Tesla's statements were untrue or misleading.

282.    The injuries suffered by Plaintiff Kupriiets and Illinois Class Members greatly outweigh by any potential countervailing benefit, if any, to consumers or to competition. And such injuries are not of a kind that Plaintiff Kupriiets and Illinois Class Members should have, or could have, reasonably avoided.

283.    The injuries of Plaintiff Kupriiets and Illinois Class Members were proximately caused by Tesla's fraudulent and deceptive business practices, and they are entitled to relief under the Act.

284.    Tesla willfully engaged in its deceptive trade practices, as described above and, as such, warrants an award of attorneys' fees and costs.

285.    Plaintiff Kupriiets, on behalf of himself and Illinois Class Members, seeks equitable relief as well as actual damages and attorneys' fees and costs and all other relief

allowed under Illinois law.

## THIRTEENTH CLAIM FOR RELIEF
### VIOLATIONS OF THE MASSACHUSETTS CONSUMER PROTECTION ACT
#### Mass. Gen. Laws ch. 93A, *et seq.*
#### (By Plaintiff Kreuzer on Behalf of the Massachusetts Class)

286.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

287.    Plaintiff Kreuzer, the Massachusetts Class Members, and Tesla are "persons" within the meaning of Mass. Gen. Laws ch. 93A, § 1.

288.    Plaintiff Kreuzer and Massachusetts Class Members purchased one or more Tesla vehicles.

289.    As detailed above, in the course of Tesla's business, Tesla engaged in unfair and deceptive acts in violation of the Massachusetts Consumer Protection Act, Section 2, such as fraudulently misleading Plaintiff Kreuzer and Massachusetts Class Members.

290.    Tesla's unfair or deceptive acts or practices occurred repeatedly in Tesla's trade or business and were capable of deceiving—and did deceive—a substantial portion of the purchasing public.

291.    Tesla knew or reasonably should have known that the advertised range for the Tesla vehicles was exaggerated and/or that the Tesla vehicles failed to deliver the advertised estimated vehicle range under normal driving conditions.

292.    Tesla was under a duty to Plaintiff Kreuzer and the Massachusetts Class Members to disclose the true nature and quality of the Tesla vehicles because:

      a.    Tesla was in a superior position to know the true state of facts about the Tesla vehicles;

      b.    Plaintiff Kreuzer and Massachusetts Class Members could not reasonably have been expected to learn or discover that the vehicle range was exaggerated and could not be met under normal driving conditions and

68

thus were not in accordance with Tesla's advertisements and representations;

c.  Tesla knew that Plaintiff Kreuzer and Massachusetts Class Members could not reasonably have been expected to learn or discover the true state of facts about the vehicle range; and

d.  Tesla actively concealed and failed to disclose the fact that its advertised estimated vehicle ranges were exaggerated or otherwise could not be met under normal driving conditions from Plaintiff Kreuzer and Massachusetts Class Members.

293.  In misrepresenting the range capabilities of the Tesla vehicles and failing to disclose the true quality and nature of the Tesla vehicles, Tesla has misrepresented and/or concealed material facts and breached its duty not to do so.

294.  The facts concealed or not disclosed by Tesla to Plaintiff Kreuzer and the Massachusetts Class Members are material because they concern central functions of the electrical vehicles (*e.g.*, the distance the vehicle can travel before needing to be recharged). Further, such facts are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase a Tesla vehicle or pay a lesser price. Had Plaintiff Kreuzer and Massachusetts Class Members known that the advertised range of Tesla vehicles was exaggerated and/or not based on normal driving conditions, they would not have purchased the Tesla vehicles or would have paid less for them.

295.  The actions and transactions constituting Tesla's unfair or deceptive acts or practices occurred primarily and substantially within the Commonwealth of Massachusetts. Mass. Gen. Laws ch. 93A, § 11.

296.  The injuries of Plaintiff Kreuzer and Massachusetts Class Members were proximately caused by Tesla's unfair and deceptive business practices, and they are entitled to relief under the Act.

297.    Plaintiff Kreuzer, on behalf of himself and Massachusetts Class Members, has provided Tesla and its counsel with notice of its violations of the Massachusetts Consumer Protection Act, pursuant to Mass. Gen. Laws ch. 93A, § 9.

298.    Plaintiff Kreuzer, on behalf of himself and Massachusetts Class Members, raises this claim now as part of this Amended Complaint in order to comply with a stipulated schedule agreed to by counsel for the parties and to provide notice to the Court that he intends to raise this claim seeking injunctive relief, monetary damages, and attorneys' fees and costs, following the 30-day notice period required by the Massachusetts Consumer Protection Act. Accordingly, Plaintiff Kreuzer reserves his right to amend this Amended Complaint following the expiration of the 30-day notice period.

299.    Because Tesla's deceptive acts were willful or knowing violations of the Massachusetts Consumer Protection Act, or should Tesla refuse to grant relief upon Plaintiff Kreuzer's demand in bad faith with knowledge or reason to know that the acts or practices complained of violated Section 2 of the Massachusetts Consumer Protection Act, Plaintiff Kreuzer and Massachusetts Class Members are entitled to up to three but not less than two times actual damages or twenty-five dollars, whichever is greater. Alternatively, Plaintiff Kreuzer and Massachusetts Class Members are entitled to actual damages or twenty-five dollars ($25), whichever is greater.

300.    Following expiration of the notice period, Plaintiff Kreuzer, on behalf of himself and Massachusetts Class Members, will seek injunctive relief, actual damages, statutory damages, and attorneys' fees and costs and all other relief allowed under Massachusetts law.

**FOURTEENTH CLAIM FOR RELIEF**
**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349**
**FOR UNFAIR AND DECEPTIVE TRADE PRACTICES**
**N.Y. Gen Bus. Law § 349, *et seq.***
**(By Plaintiff Nadir on Behalf of the New York Class)**

70

301.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

302.    N.Y. Gen. Bus. Law § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service[.]"

303.    Tesla's actions occurred in the conduct of business, trade, or commerce.

304.    The sale and distribution of the Tesla vehicles in New York was a consumer-oriented act within the meaning of N.Y. Gen. Bus. Law § 349.

305.    Tesla's conduct, as described herein, constitutes "deceptive acts or practices" within the meaning of N.Y. Gen. Bus. Law § 349.

306.    Tesla violated N.Y. Gen. Bus. Law § 349 by representing that the Tesla vehicles had characteristics, uses, or benefits which they did not have, or that the Tesla vehicles were of a particular standard, quality, or grade when they were not.

307.    Specifically, Tesla misrepresented the capabilities and characteristics of the Tesla vehicles by exaggerating the range capabilities of its vehicles to consumers, with intent to mislead and deceive consumers, including Plaintiff Nadir and New York Class Members. Through this conduct, Tesla misrepresented the true state of facts of the vehicle range capabilities of Tesla vehicles.

308.    Further, Tesla made material omissions of fact concerning the range capabilities of its vehicles by not revealing that the advertised range was exaggerated and not based on normal driving conditions, with intent to mislead and deceive consumers, including Plaintiff Nadir and New York Class Members. Through this conduct, Tesla concealed the true state of facts of the vehicle range capabilities of Tesla vehicles.

309.    Through its misrepresentations, omissions, and concealment of information concerning the range capabilities of its vehicles, Tesla's statements—in the form of advertising, marketing, and descriptions to consumers—were untrue or misleading. Tesla's statements, scheme, and concealment of the true state of facts of the vehicle range capabilities of Tesla vehicles were material to Plaintiff Nadir and New York Class Members.

71

310.   Tesla intended that Plaintiff Nadir and New York Class Members would rely upon Tesla's deceptive conduct and concealment of the true state of facts of the vehicle range capabilities of Tesla vehicles. Consumers, including Plaintiff Nadir and New York Class Members, did in fact rely upon such deceptive conduct, and were deceived.

311.   The facts concealed or not disclosed by Tesla to Plaintiff Nadir and the New York Class Members are material because they concern central functions of the electrical vehicles (*e.g.*, the distance the vehicle can travel before needing to be recharged). Further, such facts are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase a Tesla vehicle or pay a lesser price. Had Plaintiff Nadir and New York Class Members known that the advertised range of Tesla vehicles was exaggerated and/or not based on normal driving conditions, they would not have purchased the Tesla vehicles or would have paid less for them.

312.   Tesla knew or reasonably should have known about the true nature of the vehicle range throughout the relevant period. Tesla should have disclosed accurate and truthful information concerning the vehicle range in its advertising and through its dealerships. Tesla was in a superior position to know the true facts related to the vehicle range, and Plaintiff Nadir and New York Class Members could not reasonably be expected to learn or discover the true facts related to the vehicle range.

313.   Tesla had an ongoing duty to Plaintiff Nadir and New York Class Members to refrain from unfair and deceptive practices under N.Y. Gen. Bus. Law § 349 in the course of its business. Specifically, Tesla owed Plaintiff Nadir and New York Class Members a duty to disclose all material facts concerning the Tesla vehicles, including the true state of facts of the vehicle range capabilities of Tesla vehicles, because Tesla possessed exclusive knowledge, and it intentionally concealed it from Plaintiff Nadir and the New York Class Members.

314.   Tesla's violations of N.Y. Gen. Bus. Law § 349 present a continuing risk to Plaintiff Nadir and the New York Class Members, as well as to the general public. Tesla's unlawful acts and practices complained of herein negatively impact the public interest.

315.   The injuries of Plaintiff Nadir and New York Class Members were proximately

72

caused by Tesla's unfair and deceptive trade practices and statutory violations, and they are entitled to relief under the law.

316.    Plaintiff Nadir and New York Class members have suffered lost or diminished use, enjoyment, and utility of their Tesla vehicles resulting from Tesla's violations of N.Y. Gen. Bus. Law § 349.

317.    Through its conduct, Tesla has engaged in unfair or deceptive acts and practices in violation of N.Y. Gen. Bus. Law § 349, and such violations have injured Plaintiff Nadir and New York Class Members. Accordingly, Plaintiff Nadir, on behalf of himself and New York Class Members seeks actual damages or fifty dollars ($50), whichever is greater, for each violation.

318.    Through its conduct, Tesla willfully or knowingly engaged in deceptive acts and practices, including through its omissions. Accordingly, a punitive award is appropriate, such that the damages be increased in an amount three times actual damages up to one thousand dollars ($1,000), for each violation.

319.    Plaintiff Nadir, on behalf of himself and New York Class Members, seeks injunctive relief as well as actual damages, statutory damages, punitive damages, and attorneys' fees and costs and all other relief allowed under New York law.

**FIFTEENTH CLAIM FOR RELIEF**
**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350**
**FOR FALSE ADVERTISING**
**N.Y. Gen. Bus. Law § 350, *et seq.***
**(By Plaintiff Nadir on Behalf of the New York Class)**

320.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

321.    N.Y. Gen. Bus. Law §350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service[.]" False advertising means "advertising, including labeling, of a commodity . . . [that is] misleading in a material respect." N.Y. Gen. Bus. Law § 350-a. The omission of material facts also constitutes false advertising.

73

*Id.*

322.   Tesla's actions occurred in the conduct of business, trade, or commerce.

323.   The sale and distribution of the Tesla vehicles in New York was a consumer-oriented act within the meaning of N.Y. Gen. Bus. Law § 350.

324.   Tesla's conduct, as described herein, constitutes "false advertising" within the meaning of N.Y. Gen. Bus. Law § 350, because Tesla publicly disseminated and continues to disseminate to consumers materially misleading false statements, labeling, and information regarding the range capabilities and characteristics of the Tesla vehicles through its advertising, marketing, labeling, packaging, and other representations (including through omissions).

325.   Tesla violated N.Y. Gen. Bus. Law § 350 by causing to be made or disseminating through New York statements—in the form of advertising, marketing, and descriptions to consumers—that were untrue or misleading to consumers, including Plaintiff Nadir and New York Class Members.

326.   Specifically, Tesla misrepresented the capabilities and characteristics of the Tesla vehicles by exaggerating the range capabilities of its vehicles to consumers, with intent to mislead and deceive consumers, including Plaintiff Nadir and New York Class Members. Through this conduct, Tesla misrepresented the true state of facts of the vehicle range capabilities of Tesla vehicles.

327.   Further, Tesla made material omissions of fact concerning the range capabilities of its vehicles by not revealing that the advertised range was exaggerated and not based on normal driving conditions, with intent to mislead and deceive consumers, including Plaintiff Nadir and New York Class Members. Through this conduct, Tesla concealed the true state of facts of the vehicle range capabilities of Tesla vehicles.

328.   Through its misrepresentations, omissions, and concealment of information concerning the range capabilities of its vehicles, Tesla's statements—in the form of advertising, marketing, and descriptions to consumers—were untrue or misleading. Tesla's statements,

scheme, and concealment of the true state of facts of the vehicle range capabilities of Tesla vehicles were material to Plaintiff Nadir and New York Class Members.

329.    Tesla intended that Plaintiff Nadir and New York Class Members would rely upon Tesla's deceptive conduct and concealment of the true state of facts of the vehicle range capabilities of Tesla vehicles. Consumers, including Plaintiff Nadir and New York Class Members, did in fact rely upon such deceptive conduct and false advertising, and were deceived.

330.    The facts concealed or not disclosed by Tesla to Plaintiff Nadir and the New York Class Members are material because they concern central functions of the electrical vehicles (*e.g.*, the distance the vehicle can travel before needing to be recharged). Further, such facts are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase a Tesla vehicle or pay a lesser price. Had Plaintiff Nadir and New York Class Members known that the advertised range of Tesla vehicles was exaggerated and/or not based on normal driving conditions, they would not have purchased the Tesla vehicles or would have paid less for them.

331.    Tesla knew or reasonably should have known about the true nature of the vehicle range throughout the relevant period. Tesla should have disclosed accurate and truthful information concerning the vehicle range in its advertising and through its dealerships. Tesla was in a superior position to know the true facts related to the vehicle range, and Plaintiff Nadir and New York Class Members could not reasonably be expected to learn or discover the true facts related to the vehicle range.

332.    Tesla had an ongoing duty to Plaintiff Nadir and New York Class Members to refrain from unfair and deceptive practices under N.Y. Gen. Bus. Law § 349 in the course of its business. Specifically, Tesla owed Plaintiff Nadir and New York Class Members a duty to disclose all material facts concerning the Tesla vehicles, including the true state of facts of the vehicle range capabilities of Tesla vehicles, because Tesla possessed exclusive knowledge, and it intentionally concealed it from Plaintiff Nadir and the New York Class Members.

333.    Tesla's violations of N.Y. Gen. Bus. Law § 350 present a continuing risk to Plaintiff Nadir and the New York Class Members, as well as to the general public. Tesla's

deceptive acts and practices and false advertising complained of herein negatively impact the public interest.

334. The injuries of Plaintiff Nadir and New York Class Members were proximately caused by Tesla's false advertising and statutory violations, and they are entitled to relief under the law.

335. Plaintiff Nadir and New York Class members have suffered lost or diminished use, enjoyment, and utility of their Tesla vehicles resulting from Tesla's violations of N.Y. Gen. Bus. Law § 350.

336. Through its conduct, Tesla has engaged in false advertising in violation of N.Y. Gen. Bus. Law § 350, and such violations have injured Plaintiff Nadir and New York Class Members. Accordingly, Plaintiff Nadir, on behalf of himself and New York Class Members seeks actual damages or five hundred dollars ($500), whichever is greater, for each violation.

337. Through its conduct, Tesla willfully or knowingly engaged in false advertising, including through its omissions. Accordingly, a punitive award is appropriate, such that the damages be increased in an amount three times actual damages up to ten thousand dollars ($10,000), for each violation.

338. Plaintiff Nadir, on behalf of himself and New York Class Members, seeks injunctive relief as well as actual damages, statutory damages, punitive damages, and attorneys' fees and costs and all other relief allowed under New York law.

### SIXTEENTH CLAIM FOR RELIEF
### VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT
### Wash. Rev. Code § 19.86.010, *et seq.*
### (By Plaintiff Brown on Behalf of the Washington Class)

339. Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

340. Tesla is a "person" within the meaning of Wash. Rev. Code § 19.86.010(2).

341. Tesla conducts "trade" and "commerce" within the meaning of Wash. Rev. Code § 19.86.010(2).

342.    Tesla engaged in unfair and deceptive acts in violation of the Washington Consumer Protection Act by the practices described above, and by knowingly and intentionally misleading (through statements and omissions) Plaintiff Brown and Washington Class Members in a material way in the process of purchasing the Tesla vehicles by advertising estimated vehicle ranges that were exaggerated or otherwise could not be met under normal driving conditions, without explaining or warning consumers of that fact.

343.    Tesla's unfair or deceptive acts or practices occurred repeatedly in Tesla's trade or business and were capable of deceiving, and did deceive, a substantial portion of the purchasing public.

344.    Throughout the relevant period, Tesla knew or reasonably should have known that the Tesla vehicles failed to deliver the advertised estimated vehicle range under normal driving conditions.

345.    Tesla was under a duty to Plaintiff Brown and Washington Class Members to disclose the true nature of the estimated vehicle range of the Tesla vehicles because:

a.    Tesla was in a superior position to know the true state of facts about the vehicle range of the Tesla vehicles;

b.    Plaintiff Brown and the Washington Class Members could not reasonably have been expected to learn or discover that the vehicle range was exaggerated and could not be met under normal driving conditions and thus were not in accordance with Tesla's advertisements and representations;

c.    Tesla knew that Plaintiff Brown and the Washington Class Members could not reasonably have been expected to learn or discover the true state of facts about the vehicle range; and

d.    Tesla actively concealed and failed to disclose the fact that its advertised estimated vehicle ranges were exaggerated or otherwise could not be met

1                    under normal driving conditions from Plaintiff Brown and the

2                    Washington Class.

3       346.    In exaggerating the true state of facts for the vehicle range at the time of sale,

4 Tesla has knowingly and intentionally misrepresented material facts and breached its duty not to

5 do so.

6       347.    Plaintiff Brown and Washington Class Members considered the Tesla vehicles'

7 driving range to be an important factor when purchasing their Tesla vehicles. The vehicle's

8 advertised range is material to the average, reasonable consumer.

9       348.    The facts concealed or not disclosed by Tesla to Plaintiff Brown and the

10 Washington Class Members are material because they concern central functions of the electrical

11 vehicles (*e.g.*, the distance the vehicle can travel before needing to be recharged). Further, such

12 facts are material in that a reasonable consumer would have considered them to be important in

13 deciding whether to purchase a Tesla vehicle or pay a lesser price. Had Plaintiff Brown and the

14 Washington Class Members known that the advertised range of Tesla vehicles was exaggerated

15 and/or not based on normal driving conditions, they would not have purchased the Tesla vehicles

16 or would have paid less for them.

17       349.    Plaintiff Brown and Washington Class Members plausibly would have learned of

18 the true state of facts of the vehicle range if Tesla had accurately represented it through its

19 advertising or to the sales representatives at Tesla dealerships. Plaintiff Brown and the other

20 Washington Class Members' injuries were proximately caused by Tesla's fraudulent and

21 deceptive business practices.

22       350.    The injuries suffered by Plaintiff Brown and Washington Class Members greatly

23 outweigh by any potential countervailing benefit, if any, to consumers or to competition. And

24 such injuries are not of a kind that Plaintiff Brown and Washington Class Members should have,

25 or could have, reasonably avoided.

26

27

351.    The injuries of Plaintiff Brown and Washington Class Members were proximately caused by Tesla's fraudulent and deceptive business practices, and they are entitled to relief under the Act.

352.    Tesla's unfair or deceptive acts or practices have occurred in its trade or business and affect the public interest because they were and are capable of deceiving a substantial portion of the public and expose them to safety hazards. Tesla's conduct is ongoing and has a substantial likelihood of being repeated. There is a likelihood Tesla's conduct will injure other members of the public.

353.    Apart from the capacity of Tesla's unfair and deceptive acts and practices to injure other members of the public on a continuing basis, such acts and practices also offend the public policy of Washington. Wash. Rev. Code §§ 46.70.005, 46.70.101, and 46.70.180, 46.70.310.

202.    Plaintiff Brown, on behalf of himself and Washington Class Members, seeks equitable relief as well as actual damages, statutory damages, and attorneys' fees and costs and all other relief allowed under Washington law.

### SEVENTEENTH CLAIM FOR RELIEF
**UNJUST ENRICHMENT**
**(By All Plaintiffs on Behalf of All Classes)**

202.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

203.    Plaintiffs and Class Members conferred a benefit on Tesla by purchasing the Tesla vehicles.

204.    Tesla had knowledge that this benefit was conferred upon it.

205.    Because of its wrongful acts and misrepresentations and omissions, Tesla charged a higher price for the vehicles than the vehicles' true value and Tesla obtained money which rightfully belongs to Plaintiffs and Class Members.

206.    Tesla has been unjustly enriched at the expense of Plaintiffs and Class Members,

1   and its retention of this benefit under the circumstances would be inequitable.

2       207.   Plaintiffs seek an order requiring Tesla to make restitution to Plaintiffs and Class

3   Members.

4   **PRAYER FOR RELIEF**

5       WHEREFORE, Plaintiffs, on behalf of themselves and members of the proposed Classes,

6   respectfully request that the Court:

7       a.    Determine that the claims alleged herein may be maintained as a class action

8       under Federal Rule of Civil Procedure 23, and issue an order certifying one or

9       more classes as defined above;

10       b.    Appoint Plaintiffs as the representatives of the Classes and their counsel as Class

11       counsel;

12       c.    Award all actual, general, special, incidental, statutory, punitive, and

13       consequential damages and restitution to which Plaintiffs and the Class Members

14       are entitled;

15       d.    Award pre-judgment and post-judgment interest on such monetary relief;

16       e.    Grant appropriate injunctive and/or declaratory relief, including, without

17       limitation, an order that enjoins Tesla from falsely advertising the estimated

18       ranges of its model vehicles;

19       f.    Award reasonable attorneys' fees and costs; and

20       g.    Grant such further relief that this Court deems appropriate.

21   **DEMAND FOR JURY TRIAL**

22       Plaintiffs demand a trial by jury on all issues so triable.

23

24   DATED: October 23, 2023

25                   /s/ *William A. Ladnier*
                Adam A. Edwards*

26                   William A. Ladnier (CA Bar No. 330334)
                Virginia Ann Whitener*

27   80

**MILBERG COLEMAN BRYSON
    PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel: (865) 247-0080
Fax: (865) 522-0049
aedwards@milberg.com
wladnier@milberg.com
gwhitener@milberg.com

Alex R. Straus (CA Bar No. 321366)
**MILBERG COLEMAN BRYSON
    PHILLIPS GROSSMAN, PLLC**
280 s. Beverly Drive, PH Suite
Beverly Hills, CA 90212
Tel: (866) 252-0878
Fax: (310) 496-3176
astraus@milberg.com

Mitchell Breit*
**MILBERG COLEMAN BRYSON
    PHILLIPS GROSSMAN, PLLC**
405 E. 50th Street
New York, NY 1002
Tel: (347) 668-8445
mbreit@milberg.com

*Admitted pro hac vice*

*Attorneys for Plaintiffs
and the Proposed Class*

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 4:23-CV-03878-YGR