MORGAN, LEWIS & BOCKIUS LLP
David L. Schrader, Bar No. 149638
david.schrader@morganlewis.com
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA  90071-3132
Tel: +1.213.612.2500
Fax: +1.213.612.2501

Mark A. Feller, Bar No. 319789
mark.feller@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA  94105-1126
Tel: +1.415.442.1000
Fax: +1.415.442.1001

Brian M. Ercole
(admitted *pro hac vice*)
brian.ercole@morganlewis.com
Matthew M. Papkin
(admitted *pro hac vice*)
matthew.papkin@morganlewis.com
600 Brickell Ave, Suite 1600
Miami, FL  33131-3075
Tel: +1.305.415.3000
Fax: +1.305.415.3001

Attorneys for Defendant
TESLA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES PORTER, BRYAN PEREZ, DRO ESRAEILI ESTEPANIAN, DENNIS ROMANEZ, ARTEM KUPRIIETS, NEIL KREUZER, WAFAY NADIR, AND KENNETH BROWN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TESLA, INC., a Delaware Corporation,<br><br>Defendant. | Case No. 4:23-cv-03878-YGR<br><br>**ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED**<br><br>[Related case: *Irena Zaks and Gary Zaks v. Tesla, Inc.*, Northern District of California, Case No. 3:23-cv-05556-AGT]<br><br>Compl. Filed:     August 2, 2023 |

Pursuant to Northern District Civil Local Rule 3-12 and 7-11, Defendant Tesla, Inc. ("Tesla") submits this administrative motion to deem this action related to a later-filed action – captioned *Irena Zaks and Gary Zaks, on behalf of themselves and the general public v. Tesla, Inc. d/b/a in California as Tesla Motors, Inc. and Does 1 to 100*, 3:23-cv-05556-AGT (N.D. Cal.), removed from state court to the Northern District of California on October 27, 2023 ("the *Zaks* Action").  Attached as **Exhibit A** is a copy of the Complaint filed in the *Zaks* Action.  Plaintiffs in the *Zaks* Action have indicated they do not oppose relation of the cases, but do not waive, and expressly preserve, any rights or arguments that the Court lacks jurisdiction over their case. Plaintiffs in the *Porter* and *Van Diest* Actions stated that they do not oppose this Motion, and counsel for plaintiffs in the *Corona* Action have acknowledged in the parties' case management report that the *Zaks* Action is a related case.[1]

Under Local Rule 3-12(a), an "action is related to another when:  (1) [t]he actions concern substantially the same parties, property, transaction or event; and (2) [i]t appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges."  *Id.*  Both requirements are met here.

**First**, this case, the two other related actions (assigned to this Court), and the *Zaks* Action concern substantially similar parties, factual allegations, vehicles, and claims:[2]

- The Court has already found that two other similar actions are related within the meaning of Rule 3-12 – *Alejandro Corona et al. v. Tesla, Inc.*, Case No. 4:23-cv-03902-YGR ("*Corona* Action") and *Samuel Van Diest et al. v. Tesla, Inc.*, Case No. 4:23-cv-4098-YGR ("*Van Diest* Action").  (ECF No. 27 ("Related Case Order").)  Each case is based on the same central theory of liability as the *Zaks* Action:  that Tesla allegedly made inaccurate representations regarding its vehicles' driving ranges;

---

[1]     *Corona* Action, ECF No. 20, at 9 ("Related Cases"); *see also Van Diest* Action, ECF No. 24, at 13 ("Related Cases"); *Porter* Action, ECF No. 37, at 13 ("Related Cases").

[2]     By filing this motion, Tesla is not waiving any defenses to this action, the *Zaks* Action, or the *Corona* and *Van Diest* Actions, including that plaintiffs have not stated a valid claim, the claims are subject to arbitration, and any claims cannot be brought and are not suitable for resolution on behalf of a class.

- The *Corona* Action and the *Zaks* Action both assert UCL claims and seek public injunctive relief – an injunction on behalf of themselves and the general public.  Dkt. No. 1 in the *Corona* Action (*Corona* Plaintiffs' Complaint), ¶¶ 4, 18 and 31; Ex. A, ¶¶ 3, 6, 67-71, and 75;

- Tesla is the sole defendant in this case and the *Zaks* Action (as well as the *Corona* and *Van Diest* Actions), and each case is brought, in part, by California owners of Tesla vehicles.  Dkt. No. 35 (Plaintiffs' Amended Complaint), ¶¶ 12-14 (Plaintiffs Porter, Perez and Estepanian are California residents); Ex. A, ¶¶ 3-4 (plaintiffs are California residents);

- This action and the *Zaks* Action arise from the same set of alleged facts.  Plaintiffs in both cases allege that they purchased Tesla vehicles between 2021 and 2023.  Dkt. No. 35 ¶¶ 12-19; Ex. A, ¶¶ 3-6.  Plaintiffs in both cases allege that Tesla made inaccurate representations regarding the driving range of its vehicles as their core claim.  *See* Dkt. No. 35 ¶¶ 1, 10, 126; Ex. A, ¶¶ 1, 58, 62, 65, 71.  And Plaintiffs in both cases seek injunctive relief based on Tesla's alleged practice of supposedly misrepresenting to consumers the mileage driving range of its electric vehicles.  Dkt. No. 35 ¶ 228; Ex. A ¶¶ 1-2, 67-70;

- In both this action and the *Zaks* Action, Plaintiffs rely upon the same newspaper article regarding Tesla vehicle ranges, which was published shortly before these cases were filed.  *See* Dkt. No. 35 ¶¶ 68-81, 86; Ex. A ¶¶ 13-15, 20, 27-28, 33, 36-37, 42-44, 50-51 (citing to same article); and

- Both cases assert consumer protection claims, including a claim under California's Unfair Competition Law ("UCL"), and pursue relief under the UCL.  *See* Dkt. No. 35 ¶¶ 232-241 (UCL claim); Ex. A, ¶¶ 59-71 (UCL claim).  The UCL claims also are asserted in the *Corona* Action and the *Van Diest* Action.

***Second***, given the substantial overlap between these matters (and the related *Corona* and *Van Diest* Actions already transferred to this Court), both judicial economy and party resources would be best served by assignment to this Court.  As this Court recognized through its prior

1   Related Case Order (ECF No. 27), it would be grossly inefficient and burdensome for two judges

2   to separately evaluate and address similar legal issues arising out of plaintiffs' similar factual

3   allegations against the same defendant.  In addition, transfer to this Court will avoid the risk of

4   potentially inconsistent rulings and results.

5       Accordingly, Tesla respectfully requests that the Court find that this Action and the *Zaks*

6   Action are related cases and have them presided over by this Court.

7

8   Dated: November 3, 2023          MORGAN, LEWIS & BOCKIUS LLP
                                     David L. Schrader
9                                    Brian M. Ercole
                                     Mark A. Feller
10                                   Matthew M. Papkin

11

12                                   By   */s/ David L. Schrader*
                                         David L. Schrader

13                                   *Attorneys for Defendant Tesla, Inc.*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

**POMERANTZ LLP**
Jordan L. Lurie, (SBN 130013)
jllurie@pomlaw.com
Ari Y. Basser, (SBN 272618)
abasser@pomlaw.com
1100 Glendon Avenue
15th Floor Los Angeles, CA 90024
Telephone: (310) 432-8492

**LAW OFFICES OF ZEV B. ZYSMAN, APC**
Zev B. Zysman (SBN 176805)
zev@zysmanlawca.com
15760 Ventura Boulevard, Suite 700
Encino, CA  91436
Telephone: (818) 783 8836

Attorneys for Plaintiffs Irena Zaks
and Gary Zaks

## SUPERIOR COURT OF CALIFORNIA

### COUNTY OF ALAMEDA

| | |
|---|---|
| IRENA ZAKS and GARY ZAKS, on behalf of members of the general public, | Case No. |
| Plaintiffs, | **COMPLAINT FOR:** |
| vs. | **PUBLIC INJUNCTIVE RELIEF PURSUANT TO CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200, ET SEQ.** |
| TESLA, INC. d/b/a in California as TESLA MOTORS, INC.  and Does 1 to 100, | |
| Defendants. | |

COMPLAINT

1    Plaintiffs Irena Zaks and Gary Zaks ("Plaintiffs"), on behalf of members of the general

2    public, bring this action under California law against Defendant Tesla, Inc. d/b/a Tesla Motors,

3    Inc. ("Defendant" or "Tesla"), upon information and belief, except as to their own actions, the

4    investigation of their counsel, and the facts that are a matter of public record, and alleges as

5    follows:

**INTRODUCTION**

7    1.    This action, brought pursuant to the California's unfair business practices

8    statutes, California Business and Professions Code Section 17200, *et seq.* (the "UCL"), seeks

9    public injunctive relief only to protect members of the general public in California, including

10   potential customers of Defendant, from the threat of future injury for unfair business practices

11   resulting from Tesla's unfair and deceptive marketing of its electric vehicles' range.

12   Specifically, Plaintiffs seek to compel Tesla to disclose to the public that, with respect to Tesla

13   Model 3, S, Y and X (collectively the "Tesla Vehicles"): (1) Tesla's advertised total mileage

14   range for the Tesla Vehicles is based on charging the Vehicle to 100%, but Tesla discourages

15   charging its vehicles to 100%; therefore, Tesla's advertised mileage range for the Tesla Vehicles

16   is misleading; (2) the range of the Tesla Vehicles can drop by up to 50% in cold weather,

17   compared to advertised ranges; and (3) that the ranges of the Tesla Vehicles were not estimated

18   based on U.S. Environmental Protection Agency ("EPA") standardized formulae—despite

19   Tesla advertising the range estimates as "EPA estimates"—but instead based on Tesla's own

20   proprietary software method and algorithms for calculating range, which allowed for a more

21   aggressive estimate of total electric vehicle range.

22   2.    As this action seeks public injunctive relief only, and Tesla's arbitration

23   agreement bars public injunctive relief in any forum, Tesla's arbitration agreement is not

24   enforceable as to this claim, and this action is not precluded by Tesla's arbitration agreement

25   pursuant to *McGill v. Citbank, N.A.*, 2 Cal.5th 945 (2017).

**PARTIES**

27   3.    Plaintiff Irena Zaks is, and at all times relevant hereto has been, an individual

28   residing in Los Angeles, California.  At all times relevant, Irena Zaks has owned a 2022 Tesla

Model S Long Range vehicle purchased from Tesla Motors, Inc.   Irena Zaks lost money or property as a result of Tesla's misconduct as alleged herein in that she would not have purchased her vehicle or would have paid less for it, had Tesla not acted as alleged herein. Accordingly, Irena Zaks has standing to seek public injunctive relief.

4.      Plaintiff Gary Zaks is, and at all times relevant hereto has been, an individual residing in Los Angeles.  Gary Zaks is the husband of Plaintiff Irena Zaks, is the primary driver of the vehicle and uses the vehicle primarily for home and personal use, and has an ownership in the vehicle.  Both Irena Zaks and Gary Zaks are financially responsible for the vehicle, which includes but is not limited to paying for the cost of operating the vehicle. Irena Zaks and Gary Zaks have both incurred an increase in the cost of operating the vehicle due to its reduced range.

5.      The reduced range of the vehicle has impacted Plaintiffs' cost of operating the vehicle in various ways. Plaintiffs have had to charge the vehicle more frequently, leading to increased electricity costs over time. With its reduced range, Plaintiffs' vehicle has depreciated and will continue to depreciate in value faster than those that maintain a longer range. The vehicle's reduced range has also caused "range anxiety," where Plaintiffs are constantly concerned about running out of battery before reaching their destination. This has caused them to take longer routes to ensure they pass by charging stations or avoid certain trips altogether. These longer routes have caused increased monetary costs.

6.      Gary Zaks complained directly to Tesla regarding the issues alleged herein.  At all times relevant, Gary Zaks has owned a 2022 Tesla Model S Long Range vehicle purchased from Tesla Motors, Inc.  Gary Zaks lost money or property as a result of Tesla's misconduct as alleged herein in that he would not have purchased his vehicle or would have paid less for it, had Tesla not acted as alleged herein.  Accordingly, Gary Zaks has standing to seek public injunctive relief.

7.      Defendant Tesla is a Delaware corporation, with its principal place of business in Austin, Texas.  Tesla maintains manufacturing facilities in Fremont, California, where it produces the Tesla Model 3, S, Y and X. Tesla designs, manufactures, advertises, markets, and sells its electric vehicles, including the Tesla Vehicles, throughout the United States and

worldwide.  At all relevant times hereto, Tesla has conducted business within the State of California.

## JURISDICTION AND VENUE

8.      This action is brought pursuant to the UCL.  The remedies sought by Plaintiff exceed the minimal jurisdictional limits of the Superior Court and will be established according to proof at trial. This Court has jurisdiction over this action pursuant to the California Constitution, Article VI, section 10. The California statutes under which this action is brought do not specify any other basis for jurisdiction.

9.      This Court has jurisdiction over Tesla because it sells the Tesla Vehicles in the State of California. Furthermore, Tesla has intentionally availed itself of the California market so as to render the exercise of jurisdiction over Tesla by the California courts consistent with traditional notions of fair play and substantial justice.

10.     Plaintiffs' knowledge of the alleged unfair business practices means that Plaintiffs lack Article III standing for injunctive relief in federal court because they are already on notice of Tesla's unfair and deceptive conduct alleged herein.

11.     Venue is proper in this County because California Code of Civil Procedure sections 395 and 395.5, and case law interpreting those sections, provide that if a foreign business fails to designate with the office of the California Secretary of State a principal place of business in California, it is subject to being sued in any county in the State that plaintiff desires.

12.      On information and belief, Defendant is a foreign business entity, and has failed to designate a principal place of business in California with the office of the Secretary of State as of the date this Complaint was filed.  Thus, Defendant has no right to any particular venue and Plaintiffs may file this complaint in any county in California.  *See Hardin v. San Jose City Lines,* 103 Cal. App. 2d 688, 689 (1951); *see also Easton v. Sup.Ct. (Schneider Bros., Inc.),* 12 Cal. App. 3d 243, 246-247 (1970).  Moreover, venue is proper in this County because Defendant maintains significant operations and transacts substantial business in Fremont, which is in this County, Defendant entered into transactions and received substantial profits from motor vehicle purchase agreements with persons, including Plaintiffs, in this County, and

because numerous members of the general public, whom this lawsuit is intended to protect, are located here.

### TESLA'S MISCONDUCT

13.    On July 27, 2023, Reuters published a Special Report entitled "Tesla Created Secret Team to Suppress Thousands of Driving Range Complaints."  In the lead paragraph, Reuters asserted that "About a decade ago, Tesla rigged the dashboard readouts in its electric cars to provide 'rosy' projections of how far owners can drive before needing to recharge, a source told Reuters. The automaker last year became so inundated with driving-range complaints that it created a special team to cancel owners' service appointments."

14.    The Reuters Special Report states that, according to Reuters' interviews with three automotive experts who have tested or studied the Tesla's vehicles, the Tesla Vehicles often fail to achieve their advertised range estimates and the projections provided by the cars' own equipment. Tesla hyped the range of its futuristic Tesla Vehicles, raising consumer expectations beyond what the cars can deliver.

15.    The Reuters Special Report asserts that "Tesla years ago began exaggerating its vehicles' potential driving distance – by rigging their range-estimating software. The company decided about a decade ago, for marketing purposes, to write algorithms for its range meter that would show drivers "rosy" projections for the distance it could travel on a full battery, according to a person familiar with an early design of the software for its in-dash readouts. Then, when the battery fell below 50% of its maximum charge, the algorithm would show drivers more realistic projections for their remaining driving range, this person said. To prevent drivers from getting stranded as their predicted range started declining more quickly, Teslas were designed with a "safety buffer," allowing about 15 miles (24 km) of additional range even after the dash readout showed an empty battery, the source said."  According to Reuters, the directive to present the optimistic range estimates came from Tesla Chief Executive Elon Musk, this person said.   "Elon wanted to show good range numbers when fully charged," the person said, adding: "When you buy a car off the lot seeing 350-mile, 400-mile range, it makes you feel

good." Tesla's intentional inflation of in-dash range-meter projections and the creation of its range-complaints diversion team have not been previously reported.

16.     At the time Tesla programmed in the rosy range projections, it was selling only two models: the two-door Roadster, its first vehicle, which was later discontinued; and the Model S, a luxury sport sedan launched in 2012. It now sells four models: two cars, the 3 and S; and two crossover SUVs, the X and Y. Tesla plans the return of the Roadster, along with a "Cybertruck" pickup.

17.     Driving range is among the most important factors in consumer decisions on which electric car to buy, or whether to buy one at all. So-called range anxiety – the fear of running out of power before reaching a charger – has been a primary obstacle to boosting electric-vehicle sales.

18.     The Tesla Vehicles provide range estimates in real-time. The intention is to provide the driver with real-time updates on the electric vehicle battery's performance, which directly correlates to the range the vehicle can be driven. Accurate range estimates help to ensure that, as the battery drains, the driver knows to pull over at a charging station before the battery drains completely, leaving the driver and occupants stranded. Inaccurate range estimates can, indeed, lead a driver to being stranded, as the battery drains completely—and unexpectedly, based upon inaccurate range information.

19.     Tesla vehicles provide range estimates in two ways. First, through a meter on the screen that is always displayed. This meter can be toggled to indicate either the electric vehicle battery percentage remaining or the range (measured in miles or kilometers) remaining. Second, through the vehicle's navigation system, which estimates the range (indicated in battery percentage) remaining, as compared to the set destination. However, if no destination is input into the navigation system, the vehicle will not indicate a range estimate through this latter method.

20.     While Reuters could not determine whether Tesla still uses algorithms that boost in-dash range estimates, according to Reuters, automotive testers and regulators continue to flag the company for exaggerating the distance its vehicles can travel before their batteries run out.

21.     Following purchase, each Tesla Vehicle sets a suggested charge limit—that is, an upper limit to stop charging the battery. For example, if an 80% limit is set, the battery will continue to charge until it reaches 80% capacity, then will stop charging. This effectively ensures that the battery cannot be fully charged to 100%.

22.     A consumer can manually override the charge limit. However, Tesla recommends that consumers not exceed the suggested charge limit. Tesla specifically suggests that consumers "[c]harge the battery to the appropriate charge limit for your vehicle based on the installed battery."

23.     Tesla suggests that Tesla owners should charge their vehicle to full 100% capacity only sparingly. In fact, Tesla's chief executive officer, Elon Musk, suggests that owners should only charge to 90% or 95% when necessary.

24.     Setting charge limits directly impacts total range. Tesla's advertised total range of its vehicles are based on a full charge. However, because Tesla discourages owners from ever charging their vehicles to 100%, it is increasingly difficult—if not impossible—to ever reach that advertised range. For example, setting the vehicle's charge limit at 80% can reduce the total range by hundreds of miles, compared to the advertised range. Based upon Tesla's suggested charge limits, Tesla vehicles cannot reach the total ranges Tesla advertises.  Notably, while Tesla openly advertises its total range estimates (which already are exaggerated) to consumers at the point of purchase, it does not indicate to consumers that they can expect to limit the vehicle's total range by setting charge limits.

25.     Moreover, Tesla exaggerates its Vehicles' range.

26.     Indeed, in 2023, South Korean regulators, cited Tesla for false advertising. The Korea Fair Trade Commission (KFTC) found that Tesla failed to tell customers that cold weather can drastically reduce its cars' range. It cited tests by the country's environment ministry that showed Tesla cars lost up to 50.5% of the company's claimed ranges in cold weather. The KFTC also flagged certain statements on Tesla's website, including one that claimed about a particular model: "You can drive 528 km (328 miles) or longer on a single charge." Regulators required Tesla to remove the "or longer" phrase. Korean regulators required

1   Tesla to publicly admit it had misled consumers. Musk and two local executives did so in a June

2   19 statement, acknowledging "false/exaggerated advertising." South Korean also regulators

3   fined Tesla about $2.1 million for falsely advertised driving ranges on its local website between

4   August 2019 and December 2022.

5          27.     Further, the EPA has required Tesla since the 2020 model year to reduce the

6   range estimates the automaker wanted to advertise for six of its vehicles by an average of 3%.

7   The EPA told Reuters, however, that it expects some variation between the results of separate

8   tests conducted by automakers and the agency.

9          28.     Similarly, Reuters reported that data collected in 2022 and 2023 from more than

10  8,000 Teslas by Recurrent, a Seattle-based EV analytics company, showed that the cars'

11  dashboard range meters did not change their estimates to reflect hot or cold outside

12  temperatures, which can greatly reduce range.  Recurrent found that Tesla's four models almost

13  always calculated that they could travel more than 90% of their advertised EPA range estimates

14  regardless of external temperatures. Scott Case, Recurrent's chief executive, told Reuters that

15  Tesla's range meters also ignore many other conditions affecting driving distance.

16         29.     Electric cars can lose driving range for a lot of the same reasons as gasoline cars

17  — but to a greater degree. The cold is a particular drag on EVs, slowing the chemical and

18  physical reactions inside their batteries and requiring a heating system to protect them. Other

19  drains on the battery include hilly terrain, headwinds, a driver's lead foot and running the

20  heating or air-conditioning inside the cabin.

21         30.     Tesla vehicles provide range estimates in two ways: One through a dashboard

22  meter of current range that's always on, and a second projection through its navigation system,

23  which works when a driver inputs a specific destination. The navigation system's range

24  estimate, Case said, does account for a wider set of conditions, including temperature. While

25  those estimates are "more realistic," they still tend to overstate the distance the car can travel

26  before it needs to be recharged, he said.

27         31.     Recurrent tested other automakers' in-dash range meters – including the Ford

28  Mustang Mach-E, the Chevrolet Bolt and the Hyundai Kona – and found them to be more

accurate. The Kona's range meter generally underestimated the distance the car could travel, the tests showed. Recurrent conducted the study with the help of a National Science Foundation grant. Tesla, Case said, has consistently designed the range meters in its cars to deliver aggressive rather than conservative estimates: "That's where Tesla has taken a different path from most other automakers."

32.    Like their gas-powered counterparts, new electric vehicles are required by U.S. federal law to display a label with fuel-efficiency information. In the case of EVs, this is stated in miles-per-gallon equivalent (MPGe), allowing consumers to compare them to gasoline or diesel vehicles. The labels also include estimates of total range: how far an EV can travel on a full charge, in combined city and highway driving.

33.    EV makers have a choice in how to calculate a model's range. They can use a standard EPA formula that converts fuel-economy results from city and highway driving tests to calculate a total range figure. Or automakers can conduct additional tests to come up with their own range estimate. The only reason to conduct more tests is to generate a more favorable estimate, said Gregory Pannone, a retired auto-industry veteran cited by Reuters.  Pannone, co-authored a study of 21 different brands of electric vehicles, published in April 2023 by SAE International, an engineering organization. The research found that, on average, the cars fell short of their advertised ranges by 12.5% in highway driving. Pannone told Reuters that three Tesla models posted the worst performance, falling short of their advertised ranges by an average of 26%.

34.    Tesla does not use EPA's standardized formula for any of its Vehicles. Instead, Tesla conducts its own additional range tests on all of its models, resulting in inflated estimates compared to the ranges drivers actually experience.

35.    By contrast, many other automakers, including Ford, Mercedes and Porsche, continue to rely on the EPA's standardized formula to calculate potential range, according to agency data for 2023 models.  Doing so ensures that the potential range advertised to consumers reflects more conservative estimates based on real-world driving conditions, Pannone said.

36.     Whatever an automaker decides, the EPA must approve the window-sticker numbers. The agency told Reuters it conducts its own tests on 15% to 20% of new electric vehicles each year as part of an audit program and has tested six Tesla models since the 2020 model year.

37.     EPA data obtained by Reuters through the Freedom of Information Act showed that the audits resulted in Tesla being required to lower all the cars' estimated ranges by an average of 3%. The projected range for one vehicle, the 2021 Model Y Long Range AWD (all-wheel drive), dropped by 5.15%. The EPA said all the changes to Tesla's range estimates were made before the company used the figures on window stickers.

38.     The EPA said it has seen "everything" in its audits of EV manufacturers' range testing, including low and high estimates from other automakers. "That is what we expect when we have new manufacturers and new technologies entering the market and why EPA prioritizes" auditing them, the agency said.

39.     The EPA cautioned that individuals' actual experience with vehicle efficiency might differ from the estimates the agency approves. Independent automotive testers commonly examine the EPA-approved fuel-efficiency or driving range claims against their own experience in structured tests or real-world driving. Often, they get different results, as in the case of Tesla vehicles.

40.     Pannone called Tesla "the most aggressive" electric-vehicle manufacturer when it comes to range calculations. "I'm not suggesting they're cheating," Pannone said of Tesla. "What they're doing, at least minimally, is leveraging the current procedures more than the other manufacturers."

41.     Jonathan Elfalan, vehicle testing director for the automotive website Edmunds.com, reached a similar conclusion to Pannone after an extensive examination of vehicles from Tesla and other major automakers, including Ford, General Motors, Hyundai and Porsche.  All five Tesla models tested by Edmunds failed to achieve their advertised range, the website reported in February 2021. All but one of 10 other models from other manufacturers exceeded their advertised range.  Tesla complained to Edmunds that the test failed to account

for the safety buffer programmed into Tesla's in-dash range meters. So, Edmunds did further testing, this time running the vehicles, as Tesla requested, past the point where their range meters indicated the batteries had run out.

42.     Only two of six Teslas tested matched their advertised range, Edmunds reported in March 2021. The tests found no fixed safety buffer. Edmunds has continued to test electric vehicles, using its own standard method, to see if they meet their advertised range estimates. As of July, no Tesla vehicle had, Elfalan said.  "They've gotten really good at exploiting the rule book and maximizing certain points to work in their favor involving EPA tests," Elfalan told Reuters. The practice can "misrepresent what their customers will experience with their vehicles."

43.     Mercedes-Benz told Reuters it uses the EPA's formula because it believes it provides a more accurate estimate. "We follow a certification strategy that reflects the real-world driving behavior of our customers in the best possible way," the German carmaker said in a statement quoted by Reuters.

44.     To address an overwhelming number of customer complaints regarding driving range and request for service appointments to address the issue, in the summer of 2022, Tesla created a "Diversion Team" in Los Vegas to handle only range cases, according to the people familiar with the matter, as cited by Reuters.  Diversion Team employees were instructed to thwart any customers complaining about poor driving range from bringing their vehicles in for service and to cancel as many range-related appointments as possible.

45.     The office atmosphere at times resembled that of a telemarketing boiler room. A supervisor had purchased the metallophone – a xylophone with metal keys – that employees struck to celebrate appointment cancellations, according to the people familiar with the office's operations.

46.     Advisers would normally run remote diagnostics on customers' cars and try to call them, the people said. They were trained to tell customers that the EPA-approved range estimates were just a prediction, not an actual measurement, and that batteries degrade over time, which can reduce range. Advisors would offer tips on extending range by changing

COMPLAINT

driving habits. If the remote diagnostics found anything else wrong with the vehicle that was not related to driving range, advisors were instructed not to tell the customer, one of the sources said. Managers told them to close the cases.

47.     Tesla also updated its phone app so that any customer who complained about range could no longer book service appointments, one of the sources said. Instead, they could request that someone from Tesla contact them. It often took several days before owners were contacted because of the large backlog of range complaints, the source said.

48.     The update routed all U.S. range complaints to the Nevada diversion team, which started in Las Vegas and later moved to the nearby suburb of Henderson. The team was soon fielding up to 2,000 cases a week, which sometimes included multiple complaints from customers frustrated they couldn't book a service appointment, one of the people said.

49.     The team was expected to close about 750 cases a week. To accomplish that, office supervisors told advisers to call a customer once and, if there was no answer, to close the case as unresponsive, the source said. When customers did respond, advisers were told to try to complete the call in no more than five minutes.

50.     In late 2022, managers aiming to quickly close cases told advisors to stop running remote diagnostic tests on the vehicles of owners who had reported range problems, according to one of the people familiar with the diversion team's operations. "Thousands of customers were told there is nothing wrong with their car" by advisors who had never run diagnostics, the person said. Reuters could not establish how long the practice continued.

51.     Tesla recently stopped using its diversion team in Nevada to handle range-related complaints, according to the person familiar with the matter. Virtual service advisors in an office in Utah are now handling range cases, the person said. Reuters could not determine why the change was made.

52.     Tesla was aware that its advertised electric vehicle ranges for the Tesla Vehicles were exaggerated and exceeded the actual range of the vehicle when driven in real-world driving conditions. Tesla, which employs its own proprietary method for calculating the range of its electric vehicles, was aware that this method of calculation produced aggressive and

exaggerated range estimates. Further, Tesla was aware that various driving and environmental factors negatively impacted the electric vehicle's range and that these factors were likely to occur in real-world driving conditions.

53.     Nevertheless, despite knowing this, Tesla did not inform consumers of this information when advertising their electric vehicle range estimates. For example, Tesla could have warned potential purchasers that cold weather would drastically lower the electric vehicle's range, but Tesla did not issue such a warning, instead only advertising an exaggerated range estimate.

54.     Tesla also was aware that its advertised range estimates were based on driving the electric vehicle with a full 100% charge of the electric vehicle battery. However, because Tesla suggests to customers that they establish a charge limit on their vehicles well-below full capacity, Tesla was aware that, in reality, customers would be unable to ever actually experience the full advertised range.

55.     Tesla should have warned potential purchasers that the ranges of the Tesla Vehicles could be negatively impacted by various driving and environmental factors that were likely to exist; but Tesla did not.

56.     Tesla should have warned potential purchasers that the ranges of the Tesla Vehicles were estimated based on full 100% battery charge, but that Tesla suggested that its model vehicles not be charged to full 100% battery charge on a regular basis.

57.     Tesla should have warned potential purchasers that the ranges of the Tesla Vehicles were not estimated based on EPA standardized formulae—despite Tesla advertising the range estimates as "EPA estimates"—but instead based on Tesla's own proprietary method and algorithms for calculating range, which allowed for a more aggressive estimate of total electric vehicle range.

58.     Tesla's conduct in falsely advertising its estimated vehicle ranges harmed Plaintiff at the point of sale and continues to harm members of the general public.

///

///

**FIRST CAUSE OF ACTION**

**Violation of California Unfair Competition Law**

**(Cal. Bus. & Prof. Code §§ 17200, *et seq*.)**

59.     Plaintiffs re-allege and incorporate by reference each allegation set forth above.

60.     The UCL prohibits "acts of unfair competition," including "any unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Defendant has committed acts of unfair competition proscribed by the UCL, including the acts and practices alleged herein.

61.     The UCL imposes strict liability. Plaintiffs need not prove that Defendant intentionally or negligently engaged in unfair and deceptive business practices – only that such practices occurred.

62.     Tesla has engaged in unfair competition and unfair and deceptive business practices by the conduct and statements described above, and by knowingly and intentionally misleading Plaintiffs and the public about the true nature of the range of the Tesla Vehicles. Tesla knew or reasonably should have known about the true nature of the vehicle range throughout the relevant period. Tesla should have disclosed accurate and truthful information concerning the vehicle range in its advertising and through its authorized dealerships. Tesla was in a superior position to know the true facts related to the vehicle range, and Plaintiffs and the general public could not reasonably be expected to learn or discover the true facts related to the Tesla Vehicles' range.

63.     These acts and practices have deceived Plaintiffs and are likely to deceive members of the general public.

64.     Plaintiffs and members of the general public consider the Tesla vehicles' driving range to be an important factor (if not the most important factor) when purchasing their Tesla Vehicles. The Vehicles' advertised range is material to the average, reasonable consumer.

65.     The misrepresented facts concerning the vehicle range are also material because they concern central functions of the electric vehicles (*e.g*., the distance the vehicle can travel before needing to be recharged).

66.     Had Tesla disclosed the true vehicle range in its advertising, on its website's listing of Tesla vehicles for sale or the website's custom order tool, or through its authorized dealerships, Plaintiffs and other members of the consuming public would have learned of the true vehicle range and would have acted differently. Had Plaintiffs known about the true state of facts of the vehicle range capabilities of Tesla vehicles, they would not have purchased their vehicle or else would have paid substantially less for it. Accordingly, Plaintiffs overpaid for their Tesla vehicle and did not receive the benefit of their bargain.

67.     The injuries suffered by Plaintiffs, and the future injuries that members of the public will sustain absent public injunctive relief, are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiffs should have, or could have, reasonably avoided, or members of the public can avoid absent public injunctive relief.

68.     One form of injunctive relief provided under the UCL is "public injunctive relief." Accordingly, as Defendant's misconduct primarily affects members of the general public, Plaintiffs seek public injunctive relief for the benefit of the general public.

69.     Indeed, by definition, the injunctive relief provided by the UCL has as its primary purpose and effect of prohibiting unfair and deceptive acts that threaten future injury to the general public.

70.     Further, as alleged above, Plaintiffs seek to enjoin future violations of California's consumer protection statute, the UCL, which by its very nature is relief oriented to, and for the benefit of, the general public. An injunction under the UCL is for the benefit of the general public and is designed to prevent further harm to the public at large. Defendant's misconduct is continuing, and Plaintiffs' requested relief has the primary purpose and effect of protecting the public from Defendant's ongoing harm. All members of the public can become customers of Defendant at some time in the future, and even if they do not, this does not negate the fact that public injunctive relief will nevertheless offer benefits to the general public.

71.     Indeed, Plaintiffs have already been harmed by and are on notice of Tesla's unfair and deceptive conduct. Accordingly, a public injunction of Tesla's unfair and deceptive

practices will not directly benefit Plaintiffs because they have already been harmed and are already aware of the misconduct, and will have the primary purpose and effect of protecting members of the general public.

72.     In addition, the issues and claims alleged herein are matters of significant public interest and are likely to recur. Enjoining Defendant's conduct in violation of the UCL, a California statute intended to protect members of the consuming public, unquestionably is in the public interest.

73.     As a direct and proximate result of Defendant's acts and practices in violation of the UCL, Plaintiffs have suffered injury in fact and lost money or property as set forth above.

74.     Defendant's acts of unfair competition as set forth above present a continuing threat to the consuming public and will persist and continue to do so unless and until this Court issues appropriate injunctive relief. Plaintiffs also seek attorneys' fees and costs pursuant to, *inter alia*, C.C.P. § 1021.5.

75.     Accordingly, public injunctive relief is necessary and appropriate.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, for the benefit of the general public, pray for public injunctive relief, and further pray for relief and judgment against Defendant follows:

1.     For an Order requiring that, *inter alia*, Defendant, on a going forward basis, disclose that (1) Tesla's advertised total mileage range for the Tesla Vehicles is based on charging the Vehicle to 100%, but Tesla discourages charging its vehicles to 100%; therefore, Tesla's advertised mileage range for the Tesla Vehicles is misleading; (2) the range of the Tesla Vehicles can drop by up to 50% in cold weather, comparted to advertised ranges for the Subject Vehicles; and (3) that the ranges of the Tesla Vehicles were not estimated based on EPA standardized formulae—despite Tesla advertising the range estimates as "EPA estimates"—but instead based on Tesla's own proprietary method for calculating range, which allowed for a more aggressive estimate of total electric vehicle range

2.     For an award of attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5, or as may otherwise be allowed by law;

3.  For leave to amend the Complaint to conform to the evidence produced at trial; and,

4.  For all other relief as may be appropriate under the circumstances.

Dated: September 12, 2023                    Respectfully submitted,


**POMERANTZ LLP**
**LAW OFFICES OF ZEV B. ZYSMAN, APC**


By: _____ /s/ Ari Y. Basser _____
Jordan L. Lurie
Zev B. Zysman
Ari Y. Basser


*Attorneys for Plaintiffs*

COMPLAINT