# EXHIBIT 11



# Motor Vehicle Order Agreement

## Vehicle Configuration

**Customer**

Sam Van Diest

███████████████████████

**Order Number**  RN115021663

**Order Fee**  $100

**Order placed with electronically accepted terms**  05/21/2021

Price indicated does not include taxes and governmental fees, which will be calculated as your delivery date nears. You will be responsible for these additional taxes and fees.

| Description | Price (USD) |
|---|---|
| Model 3 | $35,000 |
| Long Range All-Wheel Drive | $13,990 |
| Pearl White Paint | Included |
| 18" Aero Wheels | Included |
| All Black Premium Interior | Included |
| Autopilot | Included |
| **Subtotal** | **$48,990** |
| Destination and Documentation Fee | $1,200 |
| Order Fee | $100 |
| **Total** | **$50,290** |



## Motor Vehicle Order Agreement
### Terms & Conditions

**Documentation.**  Your Motor Vehicle Order Agreement (the "Agreement") is made up of the following documents:

1. <u>Vehicle Configuration</u>:  The Vehicle Configuration describes the vehicle that you configured and ordered, including pricing (excluding taxes and official or government fees).

2. <u>Final Price Sheet</u>:  The Final Price Sheet will be provided to you as your delivery date nears. It will include final pricing based on your final Vehicle Configuration and will include taxes and official or governmental fees.

3. <u>Terms & Conditions</u>:  These Terms & Conditions are effective as of the date you place your order and make your Order Fee (the "Order Date").

**Agreement to Purchase.**  You agree to purchase the vehicle (the "Vehicle") described in your Vehicle Configuration from Tesla, Inc. or its affiliate ("we," "us" or "our"), pursuant to the terms and conditions of this Agreement. Your Vehicle is priced and configured based on features and options available at the time of order and you can confirm availability with a Tesla representative. Options, features or hardware released or changed after you place your order may not be included in or available for your Vehicle. If you are purchasing a used Vehicle, it may exhibit signs of normal wear and tear in line with its respective age and mileage.

**Purchase Price, Taxes and Official Fees.**  The purchase price of the Vehicle is indicated in your Vehicle Configuration. This purchase price does not include taxes and official or government fees, which could amount to up to 10% or more of the Vehicle purchase price. Because these taxes and fees are constantly changing and will depend on many factors, such as where you register the Vehicle, they will be calculated closer to the time of delivery and indicated on your Final Price Sheet. You are responsible for paying these additional taxes and fees. If Tesla is registering your Vehicle, this will be due when you pay the purchase price. If you are registering your Vehicle in a self-registration state, the sales tax and state-applicable registration fees may be due at time of registration. If you present a check for any payment, we may process the payment as a normal check transaction, or we may use information from your check to make a one-time electronic fund transfer from your account, in which case your bank account will reflect this transaction as an Electronic Fund Transfer. If you are purchasing a used Vehicle, your Order Deposit will be applied to your Purchase Price.

**Order Process; Cancellation; Changes.**  After you submit your completed order, we will begin the process of preparing and coordinating your Vehicle delivery. At this point, you agree that any paid Order Fee, Order Deposit and Transportation fee have been earned. If you cancel your order or breach this Agreement and we cancel your order, you agree that we may retain as liquidated damages the Order Fee, Order Deposit and Transportation Fee, to the extent not otherwise prohibited by law. You acknowledge that the Order Fee, Order Deposit and Transportation Fee are a fair and reasonable estimate of the actual damages we have incurred or may incur in transporting, remarketing, and reselling the Vehicle, costs which are otherwise impracticable or extremely difficult to determine. If you make changes to your order, you may be subject to potential price increases for any pricing adjustments made since your original Order Date. Any changes made by you to your Vehicle Configuration, including changes to the delivery location or estimated delivery date, will be reflected in a subsequent Vehicle Configuration that will form part of this Agreement. The Order Fee, Order Deposit, Transportation Fee and this Agreement are not made or entered into in anticipation of or pending any conditional sale contract.

**Model S Plaid+ Order Process; Cancellation; Changes.**  After you submit your completed order, and the options you selected become available in production, we will invite you to complete the configuration of your Vehicle. We will then issue you the Vehicle Configuration and Final Price Sheet based on your final configuration. Until you complete your Vehicle configuration, your order will be considered a pre-order and you may cancel it at any time, in which case you will receive a full refund of any paid Order Deposit. If you cancel your order or you breach this Agreement and we cancel your order after you complete your Vehicle configuration, you agree that the Order Deposit has been earned and that we may retain the Order Deposit as liquidated damages, to the extent not otherwise prohibited by law. You acknowledge that the Order Deposit is a fair and reasonable estimate of the actual damages we have incurred or may incur in transporting, remarketing, and reselling the Vehicle, costs which are otherwise impracticable or extremely difficult to determine. If you make changes to your order, you may be subject to potential price increases for any pricing adjustments made since your original Order Date. Any changes made by you to your Vehicle Configuration, including changes to the delivery location or estimated delivery date, will be reflected in a subsequent Vehicle Configuration that will form part of this Agreement. The Order Deposit and this Agreement are not made or entered into in anticipation of or pending any conditional sale contract.



**Delivery; Transfer of Title.**  If you are picking up your Vehicle in a state where we are licensed to sell the Vehicle, we will notify you of when we expect your Vehicle to be ready for delivery at your local Tesla Delivery Center, or other location as we may agree to. You agree to schedule and take delivery of your Vehicle within three (3) days of this date. If you do not respond to our notification or are unable to take delivery within the specified period, your Vehicle may be made available for sale to other customers. For new vehicles, if you do not take delivery within three (3) months of our first attempt to notify you, Tesla may cancel your order and keep your Order Fee.

If you wish to pick up or take delivery of your Vehicle in a state where we are not licensed to sell the Vehicle, or if you and Tesla otherwise agree, Tesla will, on your behalf and at your cost, coordinate the shipment of your Vehicle to you, generally from our factory in California or another state where we are licensed to sell the Vehicle. In such a case, you agree that this is a shipment contract under which Tesla will coordinate the shipping of the Vehicle to you via a third-party common carrier or other mode of transport. You agree that delivery of the Vehicle, including the transfer of title and risk of loss to you, will occur at the time your Vehicle is loaded onto the transport (i.e., FOB shipping point). During such transit, your Vehicle will be insured at no cost to you, and you will be the beneficiary of any claims for damage to the Vehicle or losses occurring while the Vehicle is in transit. To secure your final payment and performance under the terms of this Agreement, we will retain a security interest in the Vehicle and all proceeds therefrom until your obligations have been fulfilled.

If you choose to pick up or take delivery of your Vehicle in a state in which we are not licensed to sell the Vehicles, the Vehicle may be delivered or shipped to you from a state in which Tesla likewise does not have a license to sell the Vehicles. In such a case, you agree that the sale is transacted, and legal title to the Vehicle transfers to you, in the State of California, at the later of the time that (i) you make your final payment to Tesla in California or (ii) Tesla approves your purchase from a sales or delivery location in California (if applicable).

The estimated delivery date of your Vehicle, if provided, is only an estimate as we do not guarantee when your Vehicle will actually be delivered. Your actual delivery date is dependent on many factors, including your Vehicle's configuration and manufacturing availability.

**Incentives.**  Tesla makes no promises, warranties or guarantees regarding your eligibility for any incentives, rebates and tax credits (the "Incentives") related to the Vehicle. If Tesla has credited your Purchase Price for the amount of an Incentive, but you do not qualify for the Incentive at no fault of Tesla's, you shall reimburse Tesla for the amount of the credit.

**Premium Connectivity.**  A trial of Premium Connectivity will be included following delivery of the Vehicle. Once this trial is over as detailed at www.tesla.com/support/connectivity, you may subscribe to Premium Connectivity or your Vehicle will return to Standard Connectivity. Features included in Premium Connectivity are subject to change and may be limited or unavailable due to Obsolete Hardware. You understand and agree that the cellular or other network needed for any Connectivity is provided by your local telecommunications company and other external providers, and that we are not liable for any parts, software, upgrades or any other costs (including labor) needed to use or maintain network connectivity or compatibility with any features or services externally supplied to the Vehicle. Any connectivity issues (including for quality, functionality or coverage) or gaps in service unrelated to a hardware fault or failure are not covered by Tesla warranties.

**Obsolete Hardware and Future Firmware Updates.**  The Vehicle will regularly receive over-the-air software updates that add new features and enhance existing ones over Wi-Fi. Future software updates may not be provided for your Vehicle, or may not include all existing or new features or functionality, due to your Vehicle's age, configuration, data storage capacity or parts, after the expiration of your Warranty. We are not liable for any parts or labor or any other cost needed to update or retrofit the Vehicle so that it may receive these updates, or any Vehicle issues occurring after the installation of any software updates due to obsolete, malfunctioning (except as covered by your Warranty) or damaged hardware.

**Privacy Policy; Payment Terms for Services; Supercharger Fair Use Policy.**  Tesla's Customer Privacy Policy; Payment Terms for Services and Supercharger Fair Use Policy are incorporated into this Agreement and can be viewed at www.tesla.com/about/legal.

**Warranty.**  You will receive the Tesla New Vehicle Limited Warranty or the Tesla Used Vehicle Limited Warranty, as applicable, at or prior to the time of Vehicle delivery or pickup. You may also obtain a written copy of your warranty from us upon request or from our website.

**Limitation of Liability.**  We are not liable for any incidental, special or consequential damages arising out of this Agreement. Your sole and exclusive remedy under this Agreement will be limited to reimbursement of your Order Fee, Order Deposit and Transportation Fee.



**Agreement to Arbitrate.** Please carefully read this provision, which applies to any dispute between you and Tesla, Inc. and its affiliates, (together "Tesla").

If you have a concern or dispute, please send a written notice describing it and your desired resolution to resolutions@tesla.com.

If not resolved within 60 days, you agree that any dispute arising out of or relating to any aspect of the relationship between you and Tesla will not be decided by a judge or jury but instead by a single arbitrator in an arbitration administered by the American Arbitration Association (AAA) under its Consumer Arbitration Rules. This includes claims arising before this Agreement, such as claims related to statements about our products.

We will pay all AAA fees for any arbitration, which will be held in the city or county of your residence. To learn more about the Rules and how to begin an arbitration, you may call any AAA office or go to www.adr.org.

The arbitrator may only resolve disputes between you and Tesla, and may not consolidate claims without the consent of all parties. The arbitrator cannot hear class or representative claims or requests for relief on behalf of others purchasing or leasing Tesla vehicles. In other words, you and Tesla may bring claims against the other only in your or its individual capacity and not as a plaintiff or class member in any class or representative action. If a court or arbitrator decides that any part of this agreement to arbitrate cannot be enforced as to a particular claim for relief or remedy, then that claim or remedy (and only that claim or remedy) must be brought in court and any other claims must be arbitrated.

If you prefer, you may instead take an individual dispute to small claims court.

You may opt out of arbitration within 30 days after signing this Agreement by sending a letter to: Tesla, Inc.; P.O. Box 15430; Fremont, CA 94539-7970, stating your name, Vehicle Identification Number, and intent to opt out of the arbitration provision. If you do not opt out, this agreement to arbitrate overrides any different arbitration agreement between us, including any arbitration agreement in a lease or finance contract.

**No Resellers; Discontinuation; Cancellation.** Tesla and its affiliates sell cars directly to end-consumers, and we may unilaterally cancel any order that we believe has been made with a view toward resale of the Vehicle or that has otherwise been made in bad faith. We may also cancel your order and refund your Order Fee, Order Deposit and Transportation Fee if we discontinue a product, feature or option after the time you place your order or if we determine that you are acting in bad faith.

**Default and Remedies.** You will be in default of this Agreement if you provide false or misleading information in your order, or do anything else the law says is a default. If you are in default, we may, after any legally required notice or waiting period: (i) do anything to protect our interest in the Vehicle, including repossessing the Vehicle using legally permitted means, (ii) locate and disable the Vehicle electronically using our remote dynamic vehicle connection described in our Privacy Policy, (iii) sue you for damages or to get the Vehicle back, and/or (iv) charge you for amounts we spend taking these actions.

**Governing Law; Integration; Assignment.** Except as provided below, the terms of this Agreement are governed by, and to be interpreted according to, the laws of the State in which we are licensed to sell motor vehicles that is nearest to your address indicated on your Vehicle Configuration. Prior agreements, oral statements, negotiations, communications or representations about the Vehicle sold under this Agreement are superseded by this Agreement. Terms relating to the purchase not expressly contained herein are not binding. We may assign this Agreement at our discretion to one of our affiliated entities.

**State-Specific Provisions.** You acknowledge that you have read and understand the provisions applicable to you in the State-Specific Provisions attachment to this Agreement.

This Agreement is entered into and effective as of the date you accept this Agreement, by electronic means or otherwise. By confirming and accepting this Agreement, you agree to the terms and conditions of this Agreement.



**State Specific Provisions**

---

For **NEW YORK** residents: If the Vehicle is not delivered in accordance with the Agreement within 30 days following the estimated delivery date, you have the right to cancel the Agreement and receive a full refund, unless the delay in delivery is attributable to you.

For **MASSACHUSETTS** residents: ATTENTION PURCHASER: All vehicles are WARRANTED as a matter of state law. They must be fit to be driven safely on the roads and must remain in good running condition for a reasonable period of time. If you have significant problems with the Vehicle or if it will not pass a Massachusetts inspection, you should notify us immediately. We may be required to fix the car or refund your money. THIS WARRANTY IS IN ADDITION TO ANY OTHER WARRANTY GIVEN BY US.

For **MICHIGAN** residents and purchasers: The terms of this Agreement are governed by, and are to be interpreted according to, Michigan law. The sale of your vehicle will be transacted outside of Michigan, and in a state in which Tesla has a license to sell vehicles, as explained in the body of the Agreement.

For **WASHINGTON, D.C.** residents:

<u>NOTICE TO PURCHASER</u>

IF, AFTER A REASONABLE NUMBER OF ATTEMPTS, THE MANUFACTURER, ITS AGENT, OR AUTHORIZED DEALER IS UNABLE TO REPAIR OR CORRECT ANY NON-CONFORMITY, DEFECT, OR CONDITION WHICH RESULTS IN SIGNIFICANT IMPAIRMENT OF THE MOTOR VEHICLE, THE MANUFACTURER, AT THE OPTION OF THE CONSUMER, SHALL REPLACE THE MOTOR VEHICLE WITH A COMPARABLE MOTOR VEHICLE, OR ACCEPT RETURN OF THE MOTOR VEHICLE FROM THE CONSUMER AND REFUND TO THE CONSUMER THE FULL PURCHASE PRICE, INCLUDING ALL SALES TAX, LICENSE FEES, REGISTRATION FEES, AND ANY SIMILAR GOVERNMENT CHARGES. IF YOU HAVE ANY QUESTIONS CONCERNING YOUR RIGHTS, YOU MAY CONTACT THE DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS.

Seller certifies that the information contained in the itemization of the purchase price, including the Vehicle Configuration, and required by Chapter 3 (Buying, Selling and Financing Motor Vehicles) of Title 16 of the Code of D.C. Municipal Regulations, is true to the best of our knowledge.

For **RHODE ISLAND** residents: Rhode Island law requires that all motor vehicles sold at retail must be in such condition as to pass a State safety inspection at the time of sale so as to protect consumers.

# EXHIBIT 12



# Motor Vehicle Order Agreement

## Vehicle Configuration

**Customer Information**

Sergey Khalikulov



| Description | Total in USD |
|---|---|
| Model 3 Long Range All-Wheel Drive | $47,600 |
| Deep Blue Metallic Paint | Included |
| 19'' Sport Wheels | Included |
| All Black Premium Interior | Included |
| Autopilot | Included |
| Acceleration Boost | Included |
| Full Self-Driving Capability | Included |
| **Subtotal** | **$47,600** |
| Transport Fee to delivery location near 94103 | $500 |
| **Total** | **$48,100** |

| | |
|---|---|
| **Order Number** | RN118192658 |
| **Non Refundable Order Payment** | $500 |
| **Transport Fee** | $500 |
| **Order placed with electronically accepted terms** | 12/14/2022 |

Price indicated does not include taxes and governmental fees, which will be calculated as your delivery date nears. You will be responsible for these additional taxes and fees.



# Motor Vehicle Order Agreement
## Terms & Conditions

**Documentation.** Your Motor Vehicle Order Agreement (the "Agreement") is made up of the following documents:

1. **Vehicle Configuration:** The Vehicle Configuration describes the vehicle that you configured and ordered, including pricing (excluding taxes and official or government fees).
2. **Final Price Sheet:** The Final Price Sheet will be provided to you as your delivery date nears. It will include final pricing based on your final Vehicle Configuration and will include taxes and official or governmental fees.
3. **Terms & Conditions:** These Terms & Conditions are effective as of the date you place your order and make your Order Fee (the "Order Date").

**Agreement to Purchase.** You agree to purchase the vehicle (the "Vehicle") described in your Vehicle Configuration from Tesla, Inc. or its affiliate ("we," "us" or "our"), pursuant to the terms and conditions of this Agreement. Your Vehicle is priced and configured based on features and options available at the time of order and you can confirm availability with a Tesla representative. Options, features or hardware released or changed after you place your order may not be included in or available for your Vehicle. If you are purchasing a used Vehicle, it may exhibit signs of normal wear and tear in line with its respective age and mileage.

**Purchase Price, Taxes and Official Fees.** The purchase price of the Vehicle is indicated in your Vehicle Configuration. This purchase price does not include taxes and official or government fees, which could amount to up to 10% or more of the Vehicle purchase price. Because these taxes and fees are constantly changing and will depend on many factors, such as where you register the Vehicle, they will be calculated closer to the time of delivery and indicated on your Final Price Sheet. You are responsible for paying these additional taxes and fees. If Tesla is registering your Vehicle, this will be due when you pay the purchase price. If you are registering your Vehicle in a self-registration state, the sales tax and state-applicable registration fees may be due at time of registration. If you present a check for any payment, we may process the payment as a normal check transaction, or we may use information from your check to make a one-time electronic fund transfer from your account, in which case your bank account will reflect this transaction as an Electronic Fund Transfer. If you are purchasing a used Vehicle, your Order Deposit will be applied to your Purchase Price.

**Order Process; Cancellation; Changes.** After you submit your completed order, we will begin the process of preparing and coordinating your Vehicle delivery. At this point, you agree that any paid Order Fee, Order Deposit and Transportation fee have been earned. If you cancel your order or breach this Agreement and we cancel your order, you agree that we may retain as liquidated damages the Order Fee, Order Deposit and Transportation Fee, to the extent not otherwise prohibited by law. You acknowledge that the Order Fee, Order Deposit and Transportation Fee are a fair and reasonable estimate of the actual damages we have incurred or may incur in transporting, remarketing, and reselling the Vehicle, costs which are otherwise impracticable or extremely difficult to determine. If you make changes to your order, you may be subject to potential price increases for any pricing adjustments made since your original Order Date. Any changes made by you to your Vehicle Configuration, including changes to the delivery location or estimated delivery date, will be reflected in a subsequent Vehicle Configuration that will form part of this Agreement. The Order Fee, Order Deposit, Transportation Fee and this Agreement are not made or entered into in anticipation of or pending any conditional sale contract.

**Delivery; Transfer of Title.** If you are picking up your Vehicle in a state where we are licensed to sell the Vehicle, we will notify you of when we expect your Vehicle to be ready for delivery at your local Tesla Delivery Center, or other location as we may agree to. You agree to schedule and take delivery of your Vehicle within three (3) days of this date. If you do not respond to our notification or are unable to take delivery within the specified period, your Vehicle may be made available for sale to other customers. For new vehicles, if you do not take delivery within fourteen (14) days of our first attempt to notify you, Tesla may cancel your order and keep your Order Fee.

If you wish to pick up your Vehicle in a state where we are not licensed to sell the Vehicle, or if you and Tesla otherwise agree, Tesla will, on your behalf and at your cost, coordinate the shipment of your Vehicle to you, generally from our factory in California or another state where we are licensed to sell the Vehicle. In such a case, you agree that this is a shipment contract under which Tesla will coordinate the shipping of the Vehicle to you via a third-party common carrier or other mode of transport. You agree that delivery of the Vehicle, including the transfer of title and risk of loss to you, will occur at the time your Vehicle is loaded onto the transport (i.e., FOB shipping point). During such transit, your Vehicle will be insured at no cost to you, and you will be the beneficiary of any claims for damage to the Vehicle or losses occurring while the Vehicle is in transit. To secure your final payment and performance under the terms of this Agreement, we will retain a security interest in the Vehicle and all proceeds therefrom until your obligations have been fulfilled.



If you choose to pick up your Vehicle in a state in which we are not licensed to sell the Vehicles, the Vehicle may be delivered or shipped to you from a state in which Tesla likewise does not have a license to sell the Vehicles. In such a case, you agree that the sale is transacted, and legal title to the Vehicle transfers to you, in the State of California, at the later of the time that (i) you make your final payment to Tesla in California or (ii) Tesla approves your purchase from a sales or delivery location in California (if applicable).

The estimated delivery date of your Vehicle, if provided, is only an estimate as we do not guarantee when your Vehicle will actually be delivered. Your actual delivery date is dependent on many factors, including your Vehicle's configuration and manufacturing availability.

**Incentives.** Tesla makes no promises, warranties or guarantees regarding fund availability or your eligibility for any incentives, rebates and tax credits (the "Incentives") related to the Vehicle. If Tesla has credited your Purchase Price for the amount of an Incentive, but you do not qualify for the Incentive, you shall reimburse Tesla for the amount of the credit.

---

**Agreement to Arbitrate.** Please carefully read this provision, which applies to any dispute between you and Tesla, Inc. and its affiliates, (together "Tesla").

If you have a concern or dispute, please send a written notice describing it and your desired resolution to resolutions@tesla.com.

If not resolved within 60 days, you agree that any dispute arising out of or relating to any aspect of the relationship between you and Tesla will not be decided by a judge or jury but instead by a single arbitrator in an arbitration administered by the American Arbitration Association (AAA) under its Consumer Arbitration Rules. This includes claims arising before this Agreement, such as claims related to statements about our products. You further agree that any disputes related to the arbitrability of your claims will be decided by the court rather than an arbitrator, notwithstanding AAA rules to the contrary.

To initiate the arbitration, you will pay the filing fee directly to AAA and we will pay all subsequent AAA fees for the arbitration, except you are responsible for your own attorney, expert, and other witness fees and costs unless otherwise provided by law. If you prevail on any claim, we will reimburse you your filing fee. The arbitration will be held in the city or county of your residence. To learn more about the Rules and how to begin an arbitration, you may call any AAA office or go to www.adr.org.

The arbitrator may only resolve disputes between you and Tesla, and may not consolidate claims without the consent of all parties. The arbitrator cannot hear class or representative claims or requests for relief on behalf of others purchasing or leasing Tesla vehicles. In other words, you and Tesla may bring claims against the other only in your or its individual capacity and not as a plaintiff or class member in any class or representative action. If a court or arbitrator decides that any part of this agreement to arbitrate cannot be enforced as to a particular claim for relief or remedy, then that claim or remedy (and only that claim or remedy) must be brought in court and any other claims must be arbitrated.

If you prefer, you may instead take an individual dispute to small claims court.

You may opt out of arbitration within 30 days after signing this Agreement by sending a letter to: Tesla, Inc.; P.O. Box 15430; Fremont, CA 94539-7970, stating your name, Order Number or Vehicle Identification Number, and intent to opt out of the arbitration provision. If you do not opt out, this agreement to arbitrate overrides any different arbitration agreement between us, including any arbitration agreement in a lease or finance contract.

---

**Connectivity.** Standard Connectivity is included in your Vehicle, at no additional cost, for eight (8) years beginning on the first day your Vehicle was delivered as new by Tesla, or the first day it is put into service (for example used as a demonstrator or company vehicle), whichever comes first. A trial of Premium Connectivity will be included following delivery of the Vehicle. Once this trial is over as detailed at www.tesla.com/support/connectivity, you may subscribe to Premium Connectivity or your Vehicle will return to Standard Connectivity. Features included in Premium Connectivity are subject to change and may be limited or unavailable due to Obsolete Hardware. You understand and agree that the cellular or other network needed for any Connectivity is provided by your local telecommunications company and other external providers, and that we are not liable for any parts, software, upgrades or any other costs (including labor) needed to use or maintain network connectivity or compatibility with any features or services externally supplied to the Vehicle. Any connectivity issues (including for quality, functionality or coverage) or gaps in service unrelated to a hardware fault or failure are not covered by Tesla warranties.



**Obsolete Hardware and Future Firmware Updates.** The Vehicle will regularly receive over-the-air software updates that add new features and enhance existing ones over Wi-Fi. Future software updates may not be provided for your Vehicle, or may not include all existing or new features or functionality, due to your Vehicle's age, configuration, data storage capacity or parts, after the expiration of your Warranty. We are not liable for any parts or labor or any other cost needed to update or retrofit the Vehicle so that it may receive these updates, or any Vehicle issues occurring after the installation of any software updates due to obsolete, malfunctioning (except as covered by your Warranty) or damaged hardware.

**Privacy Policy; Payment Terms for Services; Supercharger Fair Use Policy.** Tesla's Customer Privacy Policy; Payment Terms for Services and Supercharger Fair Use Policy are incorporated into this Agreement and can be viewed at www.tesla.com/about/legal.

**Warranty.** You will receive access to the Tesla New Vehicle Limited Warranty or the Tesla Used Vehicle Limited Warranty, as applicable, at or prior to the time of Vehicle delivery or pickup. The warranty version applicable to your Vehicle is that which was in effect when the Vehicle was first delivered or picked up from Tesla directly, including by any previous owners. You may also obtain a written copy of your warranty from us upon request and view the current version at our website.

**Limitation of Liability.** We are not liable for any incidental, special or consequential damages arising out of this Agreement. Your sole and exclusive remedy under this Agreement will be limited to reimbursement of your Order Fee, Order Deposit and Transportation Fee.

**No Resellers; Discontinuation; Cancellation.** Tesla and its affiliates sell cars directly to end-consumers, and we may unilaterally cancel any order that we believe has been made with a view toward resale of the Vehicle or that has otherwise been made in bad faith, and we'll keep your Order Fee, Order Deposit and Transportation Fee. This includes orders for which a third-party is facilitating or brokering the sale, or if the vehicles are to be exported to somewhere other than where you tell us you will be registering the Vehicle. We may also cancel your order and refund your Order Fee, Order Deposit and Transportation Fee if we discontinue a product, feature or option after the time you place your order. We work to fulfill your order as quickly as we can. If you become unresponsive to us or fail to complete a requested action to progress towards delivery of your Vehicle, we may cancel your order and keep your Order Fee, Order Deposit and Transportation Fee. Alternatively, Tesla may give you the option to reconfigure your Vehicle at the current pricing.

**Default and Remedies.** You will be in default of this Agreement if you provide false or misleading information in your order, or do anything else the law says is a default. If you are in default, we may, after any legally required notice or waiting period: (i) do anything to protect our interest in the Vehicle, including repossessing the Vehicle using legally permitted means, (ii) locate and disable the Vehicle electronically using our remote dynamic vehicle connection described in our Privacy Policy, (iii) sue you for damages or to get the Vehicle back, and/or (iv) charge you for amounts we spend taking these actions.

**Governing Law; Integration; Assignment.** Except as provided below, the terms of this Agreement are governed by, and be interpreted according to, the laws of the State in which we are licensed to sell motor vehicles that is nearest to your address indicated on your Vehicle Configuration. Prior agreements, oral statements, negotiations, communications or representations about the Vehicle sold under this Agreement are superseded by this Agreement. Terms relating to the purchase not expressly contained herein are not binding. We may assign this Agreement at our discretion to one of our affiliated entities.

**State-Specific Provisions.** You acknowledge that you have read and understand the provisions applicable to you in the State-Specific Provisions attachment to this Agreement.

This Agreement is entered into and effective as of the date you accept this Agreement, by electronic means or otherwise. By confirming and accepting this Agreement, you agree to the terms and conditions of this Agreement.



## State Specific Provisions

For **NEW YORK** residents: If the Vehicle is not delivered in accordance with the Agreement within 30 days following the estimated delivery date, you have the right to cancel the Agreement and receive a full refund, unless the delay in delivery is attributable to you.

If this motor vehicle is classified as a used motor vehicle, the dealer named above certifies that the entire vehicle is in condition and repair to render, under normal use, satisfactory and adequate service upon the public highway at the time of delivery.

The dealer named above further certifies that this vehicle complies with the inflatable restraint system requirements found in section 419-a of New York State Vehicle and Traffic Law.

The amount indicated on the sales contract or lease agreement for registration and title fees is an estimate. In some instances, it may exceed the actual fees due the Commissioner of Motor Vehicles. The dealer will automatically, and within 60 days of securing such registration and title, refund any amount overpaid for such fees.

For **MASSACHUSETTS** residents: ATTENTION PURCHASER: All vehicles are WARRANTED as a matter of state law. They must be fit to be driven safely on the roads and must remain in good running condition for a reasonable period of time. If you have significant problems with the Vehicle or if it will not pass a Massachusetts inspection, you should notify us immediately. We may be required to fix the car or refund your money. THIS WARRANTY IS IN ADDITION TO ANY OTHER WARRANTY GIVEN BY US.

For **MICHIGAN** residents and purchasers: The terms of this Agreement are governed by, and are to be interpreted according to, Michigan law. The sale of your vehicle will be transacted outside of Michigan, and in a state in which Tesla has a license to sell vehicles, as explained in the body of the Agreement.

For **WASHINGTON, D.C.** residents:

<u>NOTICE TO PURCHASER</u>

IF, AFTER A REASONABLE NUMBER OF ATTEMPTS, THE MANUFACTURER, ITS AGENT, OR AUTHORIZED DEALER IS UNABLE TO REPAIR OR CORRECT ANY NON-CONFORMITY, DEFECT, OR CONDITION WHICH RESULTS IN SIGNIFICANT IMPAIRMENT OF THE MOTOR VEHICLE, THE MANUFACTURER, AT THE OPTION OF THE CONSUMER, SHALL REPLACE THE MOTOR VEHICLE WITH A COMPARABLE MOTOR VEHICLE, OR ACCEPT RETURN OF THE MOTOR VEHICLE FROM THE CONSUMER AND REFUND TO THE CONSUMER THE FULL PURCHASE PRICE, INCLUDING ALL SALES TAX, LICENSE FEES, REGISTRATION FEES, AND ANY SIMILAR GOVERNMENT CHARGES. IF YOU HAVE ANY QUESTIONS CONCERNING YOUR RIGHTS, YOU MAY CONTACT THE DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS.

Seller certifies that the information contained in the itemization of the purchase price, including the Vehicle Configuration, and required by Chapter 3 (Buying, Selling and Financing Motor Vehicles) of Title 16 of the Code of D.C. Municipal Regulations, is true to the best of our knowledge.

For **RHODE ISLAND** residents: Rhode Island law requires that all motor vehicles sold at retail must be in such condition as to pass a State safety inspection at the time of sale so as to protect consumers.



For VIRGINIA residents: IF YOU ARE FINANCING THIS VEHICLE, PLEASE READ THIS NOTICE: YOU ARE PROPOSING TO ENTER INTO A RETAIL INSTALLMENT SALES CONTRACT WITH THE DEALER. PART OF YOUR CONTRACT INVOLVES FINANCING THE PURCHASE OF YOUR VEHICLE. IF YOU ARE FINANCING THIS VEHICLE AND THE DEALER INTENDS TO TRANSFER YOUR FINANCING TO A FINANCE PROVIDER SUCH AS A BANK, CREDIT UNION OR OTHER LENDER, YOUR VEHICLE PURCHASE DEPENDS ON THE FINANCE PROVIDER'S APPROVAL OF YOUR PROPOSED RETAIL INSTALLMENT SALES CONTRACT. IF YOUR RETAIL INSTALLMENT SALES CONTRACT IS APPROVED WITHOUT A CHANGE THAT INCREASES THE COST OR RISK TO YOU OR THE DEALER, YOUR PURCHASE CANNOT BE CANCELLED. IF YOUR RETAIL INSTALLMENT SALES CONTRACT IS NOT APPROVED, THE DEALER WILL NOTIFY YOU VERBALLY OR IN WRITING. YOU CAN THEN DECIDE TO PAY FOR THE VEHICLE IN SOME OTHER WAY OR YOU OR THE DEALER CAN CANCEL YOUR PURCHASE. IF THE SALE IS CANCELLED, YOU NEED TO RETURN THE VEHICLE TO THE DEALER WITHIN 24 HOURS OF VERBAL OR WRITTEN NOTICE IN THE SAME CONDITION IT WAS GIVEN TO YOU, EXCEPT FOR NORMAL WEAR AND TEAR. ANY DOWN PAYMENT OR TRADE-IN YOU GAVE THE DEALER WILL BE RETURNED TO YOU. IF YOU DO NOT RETURN THE VEHICLE WITHIN 24 HOURS OF VERBAL OR WRITTEN NOTICE OF CANCELLATION, THE DEALER MAY LOCATE THE VEHICLE AND TAKE IT BACK WITHOUT FURTHER NOTICE TO YOU AS LONG AS THE DEALER FOLLOWS THE LAW AND DOES NOT CAUSE A BREACH OF THE PEACE WHEN TAKING THE VEHICLE BACK. IF THE DEALER DOES NOT RETURN YOUR DOWN PAYMENT AND ANY TRADE-IN WHEN THE DEALER GETS THE VEHICLE BACK IN THE SAME CONDITION IT WAS GIVEN TO YOU, EXCEPT FOR NORMAL WEAR AND TEAR, THE DEALER MAY BE LIABLE TO YOU UNDER THE VIRGINIA CONSUMER PROTECTION ACT.

# EXHIBIT 13

RN116649464-1655578268
This is a retention copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

**LAW 553-CA-ARB-e 7/16**

# RETAIL INSTALLMENT SALE CONTRACT – SIMPLE FINANCE CHARGE (WITH ARBITRATION PROVISION)

| Dealer Number | Contract Number | R.O.S. Number | Stock Number |
|---|---|---|---|

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| James Porter ▮▮▮▮▮▮ | | Tesla Motors Inc. 45500 Fremont Blvd Fremont, CA 94538 Alameda |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on all pages of this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New Used | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| New | 2022 | Tesla Model Y | 15 | ▮▮▮▮▮▮7940 | Personal, family or household unless otherwise indicated below. ☐ business or commercial |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 7,133.30 is |
|---|---|---|---|---|
| 3.74 % | $ 8,010.56 (e) | $ 66,940.00 (e) | $ 74,950.56 (e) | $ 82,083.86 (e) |

(e) means an estimate

### YOUR PAYMENT SCHEDULE WILL BE:

| | Number of Payments: | Amount of Payments: | When Payments Are Due: |
|---|---|---|---|
| One Payment of | N/A | N/A | N/A |
| One Payment of | N/A | N/A | N/A |
| One Payment of | N/A | N/A | N/A |
| | 72 | 1,040.98 | Monthly beginning 08/02/2022 |
| | N/A | N/A | N/A |
| One final payment | N/A | N/A | N/A |

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge of 5% of the part of the payment that is late.
**Prepayment.** If you pay early, you may be charged a minimum finance charge.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date, minimum finance charges, and security interest.

### STATEMENT OF INSURANCE

**NOTICE.** No person is required as a condition of financing the purchase of a motor vehicle to purchase or negotiate any insurance through a particular insurance company, agent or broker. You are not required to buy any other insurance to obtain credit. Your decision to buy or not buy other insurance will not be a factor in the credit approval process.

#### Vehicle Insurance

| | | Term | Premium |
|---|---|---|---|
| $ N/A Ded. Comp., Fire & Theft | | N/A Mos. | $ N/A |
| $ N/A Ded. Collision | | N/A Mos. | $ N/A |
| Bodily Injury $ N/A Limits | | N/A Mos. | $ N/A |
| Property Damage $ N/A Limits | | N/A Mos. | $ N/A |
| Medical N/A | | N/A Mos. | $ N/A |
| Total Vehicle Insurance Premiums | | | $ N/A |

UNLESS A CHARGE IS INCLUDED IN THIS AGREEMENT FOR PUBLIC LIABILITY OR PROPERTY DAMAGE INSURANCE, PAYMENT FOR SUCH COVERAGE IS NOT PROVIDED BY THIS AGREEMENT.

You may buy the physical damage insurance this contract requires from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit.

Buyer X *James Porter*
Co-Buyer X ▮▮▮▮▮▮
Seller X *Yaron Klein*

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on page 7 of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X *James Porter*
Co-Buyer Signs X ▮▮▮▮▮▮

## AUTO BROKER FEE DISCLOSURE

If this contract reflects the retail sale of a new motor vehicle, the sale is not subject to a fee received by an autobroker from us unless the following box is checked:

☐ Name of autobroker receiving fee, if applicable: _____ N/A _____

This retention copy was created on Jun 18, 2022 07:54:11 PM for Tesla, Inc..

RN116649464-1655578268
This is a retention copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.
Case 4:23-cv-03878-YGR   Document 45   Filed 11/22/23   Page 16 of 65

**ITEMIZATION OF THE AMOUNT FINANCED** (Seller may keep part of the amounts paid to others.)

**1. Total Cash Price**

| | | |
|---|---|---|
| A. Cash Price of Motor Vehicle and Accessories | $ 66,940.00 | (A) |
|   1. Cash Price Vehicle | $ 66,940.00 | |
|   2. Cash Price Accessories | $ N/A | |
|   3. Other (Nontaxable) | | |
|     Describe _____ N/A _____ | $ N/A | |
|     Describe _____ N/A _____ | $ N/A | |
| B. Document Processing Charge (not a governmental fee) | $ N/A | (B) |
| C. Emissions Testing Charge (not a governmental fee) | $ N/A | (C) |
| D. (Optional) Theft Deterrent Device(s) | | |
|   1. (paid to) _____ N/A _____ | $ N/A | (D1) |
|   2. (paid to) _____ N/A _____ | $ N/A | (D2) |
|   3. (paid to) _____ N/A _____ | $ N/A | (D3) |
| E. (Optional) Surface Protection Product(s) | | |
|   1. (paid to) _____ N/A _____ | $ N/A | (E1) |
|   2. (paid to) _____ N/A _____ | $ N/A | (E2) |
| F. EV Charging Station (paid to) _____ N/A _____ | $ N/A | (F) |
| G. Sales Tax (on taxable items in A through F) | $ 6,359.30 | (G) |
| H. Electronic Vehicle Registration or Transfer Charge (not a governmental fee) (paid to) _____ Tesla, Inc. _____ | $ 31.00 | (H) |
| I. (Optional) Service Contract(s) | | |
|   1. (paid to) _____ N/A _____ | $ N/A | (I1) |
|   2. (paid to) _____ N/A _____ | $ N/A | (I2) |
|   3. (paid to) _____ N/A _____ | $ N/A | (I3) |
|   4. (paid to) _____ N/A _____ | $ N/A | (I4) |
|   5. (paid to) _____ N/A _____ | $ N/A | (I5) |
| J. Prior Credit or Lease Balance (e) paid by Seller to | | |
|   Vehicle 1 _____ Vehicle 2 _____ N/A _____ | $ 0.00 | (J) |
|   (see downpayment and trade-in calculation) | | |
| K. (Optional) Debt Cancellation Agreement | $ N/A | (K) |
| L. (Optional) Used Vehicle Contract Cancellation Option Agreement | $ N/A | (L) |
| M. Other (paid to) _____ N/A _____ | $ N/A | (M) |
|   For _____ N/A _____ | | |
| N. Other (paid to) _____ N/A _____ | $ N/A | (N) |
|   For _____ N/A _____ | | |
| **Total Cash Price** (A through N) | $ 73,330.30 | (1) |

**2. Amounts Paid to Public Officials**

| | | |
|---|---|---|
| A. Vehicle License Fees | $ 434.00 | (A) |
| B. Registration/Transfer/Titling Fees | $ 302.00 | (B) |
| C. California Tire Fees | $ 7.00 | (C) |
| D. Other _____ N/A _____ | $ | (D) |
| **Total Official Fees** (A through D) | $ 743.00 | (2) |

**3. Amount Paid to Insurance Companies**

| | | |
|---|---|---|
| (Total premiums from Statement of Insurance) | $ N/A | (3) |

**4.** ☐ State Emissions Certification Fee or ☐ State Emissions Exemption Fee    $ N/A    (4)

**5. Subtotal** (1 through 4)    $ 74,073.30    (5)

**6. Total Downpayment**

| | | |
|---|---|---|
| A. Total Agreed Value of Property Being Traded-In (see Trade-In Vehicle(s)): | $ 0.00 | (A) |
|   Vehicle 1 $ 0.00    Vehicle 2 $ N/A | | |
| B. Total Less Prior Credit or Lease Balance (e) | $ 0.00 | (B) |
|   Vehicle 1 $ 0.00    Vehicle 2 $ N/A | | |
| C. Total Net Trade-In (A–B) (indicate if negative number) | $ 0.00 | (C) |
|   Vehicle 1 $ 0.00    Vehicle 2 $ N/A | | |
| D. Deferred Downpayment Payable to Seller | $ N/A | (D) |
| E. Manufacturer's Rebate | $ 750.00 | (E) |
| F. Other _____ N/A _____ | $ | (F) |
| G. Cash, Cash Equivalent, Check, Credit Card, or Debit Card | $ 6,383.30 | (G) |
| **Total Downpayment** (C through G) | $ 7,133.30 | (6) |

(If negative, enter zero on line 6 and enter the amount less than zero as a positive number on line 1J above)

**7. Amount Financed** (5 less 6)    $ 66,940.00    (7)

---

**SERVICE CONTRACT(S)** You want to purchase the service contract(s) written with the following company(ies) for the term(s) shown below for the charge(s) shown in item 11.

| | | |
|---|---|---|
| I1 Company | N/A | |
| Term N/A Mos. or N/A Miles | | |
| I2 Company | N/A | |
| Term N/A Mos. or N/A Miles | | |
| I3 Company | N/A | |
| Term N/A Mos. or N/A Miles | | |
| I4 Company | N/A | |
| Term N/A Mos. or N/A Miles | | |
| I5 Company | N/A | |
| Term N/A Mos. or N/A Miles | | |

**Buyer X** _____ N/A _____

---

**OPTIONAL DEBT CANCELLATION AGREEMENT.** A debt cancellation agreement is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy debt cancellation, the charge is shown in item 1K of the Itemization of Amount Financed. See your debt cancellation agreement for details on the terms and conditions it provides. It is a part of this contract.

Term _____ N/A _____ Mos. _____ N/A _____

Debt Cancellation Agreement

I want to buy a debt cancellation agreement.

**Buyer Signs X** _____ N/A _____

---

**Trade-In Vehicle(s)**

**1. Vehicle 1**

Year N/A   Make N/A
Model N/A   Odometer N/A
VIN _____

| | | |
|---|---|---|
| a. Agreed Value of Property | $ | 0.00 |
| b. Buyer/Co-Buyer Retained Trade Equity | $ | N/A |
| c. Agreed Value of Property Being Traded-In (a–b) | $ | 0.00 |
| d. Prior Credit or Lease Balance | $ | 0.00 |
| e. Net Trade-In (c–d) (must be ≥ 0 for buyer/co-buyer to retain equity) | $ | 0.00 |

**2. Vehicle 2**

Year N/A   Make N/A
Model N/A   Odometer N/A
VIN _____

| | | |
|---|---|---|
| a. Agreed Value of Property | $ | N/A |
| b. Buyer/Co-Buyer Retained Trade Equity | $ | N/A |
| c. Agreed Value of Property Being Traded-In (a–b) | $ | N/A |
| d. Prior Credit or Lease Balance | $ | N/A |
| e. Net Trade-In (c–d) (must be ≥ 0 for buyer/co-buyer to retain equity) | $ | N/A |

| | | |
|---|---|---|
| **Total Agreed Value of Property Being Traded-In** (1c+2c) | $ | 0.00 * |
| **Total Prior Credit or Lease Balance** (1d+2d) | $ | 0.00 * |
| **Total Net Trade-In** (1e+2e) | $ | 0.00 * |

(*See item 6A–6C in the Itemization of Amount Financed)

---

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 7, is paid in full on or before _____ N/A _____ , Year _____ N/A _____

SELLER'S INITIALS _____ N/A _____

This retention copy was created on Jun 18, 2022 07:54:11 PM for Tesla, Inc..

RN116649464-1655578268    This is a retention copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 4:23-cv-03878-YGR · Document 45 · Filed 11/22/23 · Page 17 of 65

**Trade-In Payoff Agreement:** Seller relied on information from you and/or the lienholder or lessor of your trade-in vehicle(s) to arrive at the payoff amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s). You understand that the amount quoted is an estimate.

Seller agrees to pay the payoff amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s) to the lienholder or lessor of the trade-in vehicle(s), or its designee. If the actual payoff amount is more than the amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s), you must pay the Seller the excess on demand. If the actual payoff amount is less than the amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s), Seller will refund to you any overage Seller receives from your prior lienholder or lessor. Except as stated in the "NOTICE" on page 5 of this contract, any assignee of this contract will not be obligated to pay the Prior Credit or Lease Balance shown in Trade-In Vehicle(s) or any refund.

Buyer Signature X _____    Co-Buyer Signature X _____

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to the contract must be in writing and both you and we must sign it. No oral changes are binding.

Buyer Signs X *James Porter*    Co-Buyer Signs X _____

**SELLER'S RIGHT TO CANCEL** If Buyer and Co-Buyer sign here, the provisions of the Seller's Right to Cancel section on page 5 of this contract giving the Seller the right to cancel if Seller is unable to assign this contract to a financial institution will apply.

Buyer X *James Porter*    Co-Buyer X _____

THE MINIMUM PUBLIC LIABILITY INSURANCE LIMITS PROVIDED IN LAW MUST BE MET BY EVERY PERSON WHO PURCHASES A VEHICLE. IF YOU ARE UNSURE WHETHER OR NOT YOUR CURRENT INSURANCE POLICY WILL COVER YOUR NEWLY ACQUIRED VEHICLE IN THE EVENT OF AN ACCIDENT, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
   WARNING:
   YOUR PRESENT POLICY MAY NOT COVER COLLISION DAMAGE OR MAY NOT PROVIDE FOR FULL REPLACEMENT COSTS FOR THE VEHICLE BEING PURCHASED. IF YOU DO NOT HAVE FULL COVERAGE, SUPPLEMENTAL COVERAGE FOR COLLISION DAMAGE MAY BE AVAILABLE TO YOU THROUGH YOUR INSURANCE AGENT OR THROUGH THE SELLING DEALER. HOWEVER, UNLESS OTHERWISE SPECIFIED, THE COVERAGE YOU OBTAIN THROUGH THE DEALER PROTECTS ONLY THE DEALER, USUALLY UP TO THE AMOUNT OF THE UNPAID BALANCE REMAINING AFTER THE VEHICLE HAS BEEN REPOSSESSED AND SOLD.
   FOR ADVICE ON FULL COVERAGE THAT WILL PROTECT YOU IN THE EVENT OF LOSS OR DAMAGE TO YOUR VEHICLE, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
   THE BUYER SHALL SIGN TO ACKNOWLEDGE THAT HE/SHE UNDERSTANDS THESE PUBLIC LIABILITY TERMS AND CONDITIONS.

S/S X *James Porter*    X _____

**Electronic Contracting and Signature Acknowledgment.** You agree that (i) this contract is an electronic contract executed by you using your electronic signature, (ii) your electronic signature signifies your intent to enter into this contract and that this contract be legally valid and enforceable in accordance with its terms to the same extent as if you had executed this contract using your written signature and (iii) the authoritative copy of this contract ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by us for the storage of authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the foregoing, if the Authoritative Copy is converted by printing a paper copy which is marked by us as the original (the "Paper Contract"), then you acknowledge and agree that (1) your signing of this contract with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this contract, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, your obligations will be evidenced by the Paper Contract alone.

## CREDIT DISABILITY INSURANCE NOTICE
### CLAIM PROCEDURE

If you become disabled, you must tell us right away. (You are advised to send this information to the same address to which you are normally required to send your payments, unless a different address or telephone number is given to you in writing by us as the location where we would like to be notified.) We will tell you where to get claim forms. You must send in the completed form to the insurance company as soon as possible and tell us as soon as you do.

If your disability insurance covers all of your missed payment(s), WE CANNOT TRY TO COLLECT WHAT YOU OWE OR FORECLOSE UPON OR REPOSSESS ANY COLLATERAL UNTIL THREE CALENDAR MONTHS AFTER your first missed payment is due or until the insurance company pays or rejects your claim, whichever comes first. We can, however, try to collect, foreclose, or repossess if you have any money due and owing us or are otherwise in default when your disability claim is made or if a senior mortgage or lien holder is foreclosing.

If the insurance company pays the claim within the three calendar months, we must accept the money as though you paid on time. If the insurance company rejects the claim within the three calendar months or accepts the claim within the three calendar months on a partial disability and pays less than for a total disability, you will have 35 days from the date that the rejection or the acceptance of the partial disability claim is sent to pay past due payments, or the difference between the past due payments and what the insurance company pays for the partial disability, plus late charges. You can contact us, and we will tell you how much you owe. After that time, we can take action to collect or foreclose or repossess any collateral you may have given.

If the insurance company accepts your claim but requires that you send in additional forms to remain eligible for continued payments, you should send in these completed additional forms no later than required. If you do not send in these forms on time, the insurance company may stop paying, and we will then be able to take action to collect or foreclose or repossess any collateral you may have given.

*LAW 553-CA-ARB-e 7/16 v1*    Page 3 of 7

This retention copy was created on Jun 18, 2022 07:54:11 PM for Tesla, Inc..

RN116649464-1655578268
This is a retention copy of the Electronic Original® document managed by the eCore™ On Demand (EOD™) Service.

Case 4:23-cv-03878-YGR   Document 45   Filed 11/22/23   Page 18 of 65

**OTHER IMPORTANT AGREEMENTS**

1. **FINANCE CHARGE AND PAYMENTS**
   a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed. Seller - Creditor may receive part of the Finance Charge.
   b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.
   c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.
   d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment. As of the date of your payment, if the minimum finance charge is greater than the earned Finance Charge, you may be charged the difference; the minimum finance charge is as follows: (1) $25 if the original Amount Financed does not exceed $1,000, (2) $50 if the original Amount Financed is more than $1,000 but not more than $2,000, or (3) $75 if the original Amount Financed is more than $2,000.

2. **YOUR OTHER PROMISES TO US**
   a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

   > **GAP LIABILITY NOTICE**
   > In the event of theft or damage to your vehicle that results in a total loss, there may be a gap between the amount you owe under this contract and the proceeds of your insurance settlement and deductible. THIS CONTRACT PROVIDES THAT YOU ARE LIABLE FOR THE GAP AMOUNT. An optional debt cancellation agreement for coverage of the gap amount may be offered for an additional charge.

   b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.
   c. **Security Interest.**
      You give us a security interest in:
      • The vehicle and all parts or goods put on it;
      • All money or goods received (proceeds) for the vehicle;
      • All insurance, maintenance, service, or other contracts we finance for you; and
      • All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.
   This secures payment of all you owe on this contract. It also secures your other agreements in this contract as the law allows. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

   d. **Insurance you must have on the vehicle.** You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium for the insurance and a finance charge computed at the Annual Percentage Rate shown on page 1 of this contract or, at our option, the highest rate the law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.
   e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

3. **IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**
   a. **You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also take the steps described below.
   b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once, subject to any right the law gives you to reinstate this contract.
      Default means:
      • You do not pay any payment on time;
      • You give false, incomplete, or misleading information on a credit application;
      • You start a proceeding in bankruptcy or one is started against you or your property;
      • The vehicle is lost, damaged or destroyed; or
      • You break any agreements in this contract.
   The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.
   c. **You may have to pay collection costs.** You will pay our reasonable costs to collect what you owe, including attorney fees, court costs, collection agency fees, and fees paid for other reasonable collection efforts. You agree to pay a charge not to exceed $15 if any check you give to us is dishonored.
   d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.
   e. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). You may redeem the vehicle by paying all you owe, or you may have the right to reinstate this contract and redeem the vehicle by paying past due payments and any late charges, providing proof of insurance, and/or taking other action to cure the default. We will provide you all notices required by law to tell you when and how much to pay and/or what action you must take to redeem the vehicle.

This retention copy was created on Jun 18, 2022 07:54:11 PM for Tesla, Inc..

RN116649464-1655578268

This is a retention copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 4:23-cv-03878-YGR   Document 45   Filed 11/22/23   Page 19 of 65

**f.** **We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.

We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at the Annual Percentage Rate shown on page 1 of this contract, not to exceed the highest rate permitted by law, until you pay.

**g.** **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

**4.** **WARRANTIES SELLER DISCLAIMS**

**If you do not get a written warranty, and the Seller does not enter into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.**

This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide. If the Seller has sold you a certified used vehicle, the warranty of merchantability is not disclaimed.

**5.** **Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**

**Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.**

**6.** **SERVICING AND COLLECTION CONTACTS**

You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you. **You agree that you will within a reasonable time notify us of any change in your name, address, or employment.**

**7.** **APPLICABLE LAW**

Federal law and California law apply to this contract. If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

**8.** **WARRANTIES OF BUYER**

You promise you have given true and correct information in your application for credit, and you have no knowledge that will make that information untrue in the future. We have relied on the truth and accuracy of that information in entering into this contract. Upon request, you will provide us with documents and other information necessary to verify any item contained in your credit application.

You waive the provisions of Calif. Vehicle Code Section 1808.21 and authorize the California Department of Motor Vehicles to furnish your residence address to us.

---

**Seller's Right to Cancel**

a. Seller agrees to deliver the vehicle to you on the date this contract is signed by Seller and you. You understand that it may take some time for Seller to verify your credit and assign the contract. You agree that if Seller is unable to assign the contract to any one of the financial institutions with whom Seller regularly does business under an assignment acceptable to Seller, Seller may cancel the contract.

b. Seller shall give you written notice (or in any other manner in which actual notice is given to you) within 10 days of the date this contract is signed if Seller elects to cancel. Upon receipt of such notice, you must immediately return the vehicle to Seller in the same condition as when sold, reasonable wear and tear excepted. Seller must give back to you all consideration received by Seller, including any trade-in vehicle.

c. If you do not immediately return the vehicle, you shall be liable for all expenses incurred by Seller in taking the vehicle from you, including reasonable attorney's fees.

d. While the vehicle is in your possession, all terms of the contract, including those relating to use of the vehicle and insurance for the vehicle, shall be in full force and you shall assume all risk of loss or damage to the vehicle. You must pay all reasonable costs for repair of any damage to the vehicle until the vehicle is returned to Seller.

---

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

*LAW 553-CA-ARB-e 7/16 v1*      Page 5 of 7

This retention copy was created on Jun 18, 2022 07:54:11 PM for Tesla, Inc..

RN116649464-1655578268
This is a retention copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.
Case 4:23-cv-03878-YGR   Document 45   Filed 11/22/23   Page 20 of 65

N/A

---

**Notice to buyer: (1) Do not sign this agreement before you read it or if it contains any blank spaces to be filled in. (2) You are entitled to a completely filled in copy of this agreement. (3) You can prepay the full amount due under this agreement at any time. (4) If you default in the performance of your obligations under this agreement, the vehicle may be repossessed and you may be subject to suit and liability for the unpaid indebtedness evidenced by this agreement.**

If you have a complaint concerning this sale, you should try to resolve it with the seller.
Complaints concerning unfair or deceptive practices or methods by the seller may be referred to the city attorney, the district attorney, or an investigator for the Department of Motor Vehicles, or any combination thereof. After this contract is signed, the seller may not change the financing or payment terms unless you agree in writing to the change. You do not have to agree to any change, and it is an unfair or deceptive practice for the seller to make a unilateral change.

Buyer Signature X *James Porter*                    Co-Buyer Signature X ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

### *The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

| | |
|---|---|
| **THERE IS NO COOLING-OFF PERIOD UNLESS YOU OBTAIN A CONTRACT CANCELLATION OPTION**<br>California law does not provide for a "cooling-off" or other cancellation period for vehicle sales. Therefore, you cannot later cancel this contract simply because you change your mind, decide the vehicle costs too much, or wish you had acquired a different vehicle. After you sign below, you may only cancel this contract with the agreement of the seller or for legal cause, such as fraud. However, California law does require a seller to offer a two-day contract cancellation option on used vehicles with a purchase price of less than forty thousand dollars ($40,000), subject to certain statutory conditions. This contract cancellation option requirement does not apply to the sale of a recreational vehicle, a motorcycle, or an off-highway motor vehicle subject to identification under California law. See the vehicle contract cancellation option agreement for details. | YOU AGREE TO THE TERMS OF THIS CONTRACT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT. YOU ACKNOWLEDGE THAT YOU HAVE READ ALL PAGES OF THIS CONTRACT, INCLUDING THE ARBITRATION PROVISION ON PAGE 7 OF THIS CONTRACT, BEFORE SIGNING BELOW. YOU CONFIRM THAT YOU RECEIVED A COMPLETELY FILLED-IN COPY WHEN YOU SIGNED IT. |

**Buyer Signature X** *James Porter*      Date 06/18/2022   **Co-Buyer Signature X** ▓▓▓▓▓▓▓▓▓▓   Date N/A

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other Owner Signature X ____N/A____   Address ____N/A____

---

**GUARANTY:** To induce us to sell the vehicle to Buyer, each person who signs as a Guarantor individually guarantees the payment of this contract. If Buyer fails to pay any money owing on this contract, each Guarantor must pay it when asked. Each Guarantor will be liable for the total amount owing even if other persons also sign as Guarantor, and even if Buyer has a complete defense to Guarantor's demand for reimbursement. Each Guarantor agrees to be liable even if we do one or more of the following: (1) give the Buyer more time to pay one or more payments; (2) give a full or partial release to any other Guarantor; (3) release any security; (4) accept less from the Buyer than the total amount owing; or (5) otherwise reach a settlement relating to this contract or extend the contract. Each Guarantor acknowledges receipt of a completed copy of this contract and guaranty at the time of signing.

Guarantor waives notice of acceptance of this Guaranty, notice of the Buyer's non-payment, non-performance, and default; and notices of the amount owing at any time, and of any demands upon the Buyer.

Guarantor X ____N/A____   Date N/A        Guarantor X ____N/A____   Date N/A

Address ____N/A____                      Address ____N/A____

---

Seller Signs   Tesla Motors Inc.                  Date 06/18/2022   By X *Yaron Klein*                    Title Treasurer

This retention copy was created on Jun 18, 2022 07:54:11 PM for Tesla, Inc..

RN116649464-1655578268

This is a retention copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

## ARBITRATION PROVISION
### PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS

1. **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**
2. **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**
3. **DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019 (www.adr.org), or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless the law or the rules of the chosen arbitration organization require us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.



This retention copy was created on Jun 18, 2022 07:54:11 PM for Tesla, Inc..

# EXHIBIT 14

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

# NOTICE

**This document must be printed using a color printer. Under California law certain provisions within a Motor Vehicle Retail Installment Sales Contract must appear in red.**

**Failure to print this document with a color printer may result in liability on your part. Wolters Kluwer Financial Services is not responsible for any losses resulting from the failure to print this document with a color printer.**



The original document is owned by Tesla, Inc. and this copy was created on Aug 07, 2023 05:29:35 PM.

RN116783605-1658948392
Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.
Case 4:23-cv-03878-YGR Document 45 Filed 11/22/23 Page 24 of 65

**LAW 553-CA-ARB-eps 7/16**

## RETAIL INSTALLMENT SALE CONTRACT – SIMPLE FINANCE CHARGE (WITH ARBITRATION PROVISION)

| Dealer Number | Contract Number | R.O.S. Number | Stock Number |
|---|---|---|---|

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| Dro Esraeiliestepanian ██████████████ | | Tesla Motors Inc. 45500 Fremont Blvd Fremont, CA 94538 Alameda |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on all pages of this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New Used | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| New | 2022 | Tesla Model 3 | 15 | ██████████4096 | Personal, family or household unless otherwise indicated below. ☐ business or commercial |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 9,348.85 |
|---|---|---|---|---|
| 5.49 % | $ 9,327.08 (e) | $ 52,999.00 (e) | $ 62,326.08 (e) | $ 71,674.93 (e) |

(e) means an estimate

#### YOUR PAYMENT SCHEDULE WILL BE:

| | Number of Payments: | Amount of Payments: | When Payments Are Due: |
|---|---|---|---|
| One Payment of | N/A | N/A | N/A |
| One Payment of | N/A | N/A | N/A |
| One Payment of | N/A | N/A | N/A |
| | 72 | $ 865.64 | Monthly beginning 09/01/2022 |
| | N/A | N/A | N/A |
| One final payment | N/A | N/A | N/A |

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge of 5% of the part of the payment that is late.
**Prepayment.** If you pay early, you may be charged a minimum finance charge.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date, minimum finance charges, and security interest.

### STATEMENT OF INSURANCE

**NOTICE.** No person is required as a condition of financing the purchase of a motor vehicle to purchase or negotiate any insurance through a particular insurance company, agent or broker. You are not required to buy any other insurance to obtain credit. Your decision to buy or not buy other insurance will not be a factor in the credit approval process.

**Vehicle Insurance**

| | Term | Premium |
|---|---|---|
| $ N/A Ded. Comp., Fire & Theft | N/A Mos. | $ N/A |
| $ N/A Ded. Collision | N/A Mos. | $ N/A |
| Bodily Injury $ N/A Limits | N/A Mos. | $ N/A |
| Property Damage $ N/A Limits | N/A Mos. | $ N/A |
| Medical N/A | N/A Mos. | $ N/A |

Total Vehicle Insurance Premiums $ N/A

UNLESS A CHARGE IS INCLUDED IN THIS AGREEMENT FOR PUBLIC LIABILITY OR PROPERTY DAMAGE INSURANCE, PAYMENT FOR SUCH COVERAGE IS NOT PROVIDED BY THIS AGREEMENT.

You may buy the physical damage insurance this contract requires from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit.

Buyer X *Dro Esraeiliestepanian*
Co-Buyer X ██████████████
Seller X *Emmanuelle Stewart*

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on page 7 of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X *Dro Esraeiliestepanian*
Co-Buyer Signs X ██████████████

### AUTO BROKER FEE DISCLOSURE

If this contract reflects the retail sale of a new motor vehicle, the sale is not subject to a fee received by an autobroker from us unless the following box is checked.
☐ Name of autobroker receiving fee, if applicable: N/A

RN116783605-1658948392
Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

**ITEMIZATION OF THE AMOUNT FINANCED** (Seller may keep part of the amounts paid to others.)

1. **Total Cash Price**
   A. Cash Price of Motor Vehicle and Accessories ........................ $ 55,940.00 (A)
      1. Cash Price Vehicle .......................................... $ 55,940.00
      2. Cash Price Accessories ...................................... $ N/A
      3. Other (Nontaxable)
         Describe _____ N/A _____ $ N/A
         Describe _____ N/A _____ $ N/A
   B. Document Processing Charge (not a governmental fee) ........... $ N/A (B)
   C. Emissions Testing Charge (not a governmental fee) ............. $ N/A (C)
   D. (Optional) Theft Deterrent Device(s)
      1. (paid to) _____ N/A _____ $ N/A (D1)
      2. (paid to) _____ N/A _____ $ N/A (D2)
      3. (paid to) _____ N/A _____ $ N/A (D3)
   E. (Optional) Surface Protection Product(s)
      1. (paid to) _____ N/A _____ $ N/A (E1)
      2. (paid to) _____ N/A _____ $ N/A (E2)
   F. EV Charging Station (paid to) _____ N/A _____ $ N/A (F)
   G. Sales Tax (on taxable items in A through F) ................... $ 5,733.85 (G)
   H. Electronic Vehicle Registration or Transfer Charge
      (not a governmental fee) (paid to)  Tesla, Inc.  $ 31.00 (H)
   I. (Optional) Service Contract(s)
      1. (paid to) _____ N/A _____ $ N/A (I1)
      2. (paid to) _____ N/A _____ $ N/A (I2)
      3. (paid to) _____ N/A _____ $ N/A (I3)
      4. (paid to) _____ N/A _____ $ N/A (I4)
      5. (paid to) _____ N/A _____ $ N/A (I5)
   J. Prior Credit or Lease Balance (e) paid by Seller to
      Vehicle 1 _____ N/A _____ Vehicle 2 $ 0.00 (J)
      (see downpayment and trade-in calculation)
   K. (Optional) Debt Cancellation Agreement .......................... $ N/A (K)
   L. (Optional) Used Vehicle Contract Cancellation Option Agreement .. $ N/A (L)
   M. Other (paid to) _____ N/A _____ $ N/A (M)
      For _____ N/A _____
   N. Other (paid to) _____ N/A _____ $ N/A (N)
      For _____ N/A _____
   **Total Cash Price** (A through N) ................................ $ 61,704.85 (1)

2. **Amounts Paid to Public Officials**
   A. Vehicle License Fees ............................................ $ 362.00 (A)
   B. Registration/Transfer/Titling Fees ............................. $ 274.00 (B)
   C. California Tire Fees ............................................ $ 7.00 (C)
   D. Other  N/A
   **Total Official Fees** (A through D) ............................. $ 643.00 (2)

3. **Amount Paid to Insurance Companies**
   (Total premiums from Statement of Insurance) ..................... $ N/A (3)

4. ☐ State Emissions Certification Fee or ☐ State Emissions Exemption Fee ... $ N/A (4)

5. **Subtotal** (1 through 4) ........................................ $ 62,347.85 (5)

6. **Total Downpayment**
   A. Total Agreed Value of Property Being Traded-In (see Trade-In Vehicle(s)): $ 0.00 (A)
      Vehicle 1 $ 0.00   Vehicle 2 $ N/A
   B. Total Less Prior Credit or Lease Balance (e) ................... $ 0.00 (B)
      Vehicle 1 $ 0.00   Vehicle 2 $ N/A
   C. Total Net Trade-In (A–B) (indicate if negative number) ........ $ 0.00 (C)
      Vehicle 1 $ 0.00   Vehicle 2 $ N/A
   D. Deferred Downpayment Payable to Seller ......................... $ N/A (D)
   E. Manufacturer's Rebate .......................................... $ 750.00 (E)
   F. Other _____ N/A _____ $ N/A (F)
   G. Cash, Cash Equivalent, Check, Credit Card, or Debit Card ....... $ 8,598.85 (G)
   **Total Downpayment** (C through G) ............................... $ 9,348.85 (6)
   (If negative, enter zero on line 6 and enter the amount less than zero as a positive number on line 1J above)

7. **Amount Financed** (5 less 6) ................................... $ 52,999.00 (7)

---

**OPTIONAL SERVICE CONTRACT(S)** You want to purchase the service contract(s) written with the following company(ies) for the term(s) shown below for the charge(s) shown in item 1I.

| | | | | |
|---|---|---|---|---|
| I1 Company | N/A | | | |
| Term | N/A | Mos. or | N/A | Miles |
| I2 Company | N/A | | | |
| Term | N/A | Mos. or | N/A | Miles |
| I3 Company | N/A | | | |
| Term | N/A | Mos. or | N/A | Miles |
| I4 Company | N/A | | | |
| Term | N/A | Mos. or | N/A | Miles |
| I5 Company | N/A | | | |
| Term | N/A | Mos. or | N/A | Miles |
| Buyer X | | | | |

**OPTIONAL DEBT CANCELLATION AGREEMENT.** A debt cancellation agreement is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy debt cancellation, the charge is shown in item 1K of the Itemization of Amount Financed. See your debt cancellation agreement for details on the terms and conditions it provides. It is a part of this contract.

Term  N/A  Mos.  N/A
Debt Cancellation Agreement

I want to buy a debt cancellation agreement.

**Buyer Signs X**  N/A

**Trade-In Vehicle(s)**

1. Vehicle 1
   Year N/A  Make N/A
   Model N/A  Odometer N/A
   VIN N/A
   a. Agreed Value of Property  $ 0.00
   b. Buyer/Co-Buyer Retained Trade Equity $ N/A
   c. Agreed Value of Property
      Being Traded-In (a–b)  $ 0.00
   d. Prior Credit or Lease Balance  $ 0.00
   e. Net Trade-In (c–d) (must be ≥ 0
      for buyer/co-buyer to retain equity) $ 0.00

2. Vehicle 2
   Year N/A  Make N/A
   Model N/A  Odometer N/A
   VIN N/A
   a. Agreed Value of Property  $ N/A
   b. Buyer/Co-Buyer Retained Trade Equity $ N/A
   c. Agreed Value of Property
      Being Traded-In (a–b)  $ N/A
   d. Prior Credit or Lease Balance  $ N/A
   e. Net Trade-In (c–d) (must be ≥ 0
      for buyer/co-buyer to retain equity) $ N/A

Total Agreed Value of Property
   Being Traded-In (1c+2c)  $ 0.00 *
Total Prior Credit or Lease
   Balance (1d+2d)  $ 0.00 *
Total Net Trade-In (1e+2e)  $ 0.00 *
(*See item 6A–6C in the Itemization of Amount Financed)

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 7, is paid in full on or before _____ N/A _____ , Year _____
SELLER'S INITIALS  N/A

---

The original document is owned by Tesla, Inc. and this copy was created on Aug 07, 2023 05:29:35 PM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

RN116783605-1658948392

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 4:23-cv-03878-YGR   Document 45   Filed 11/22/23   Page 26 of 65

**Trade-In Payoff Agreement:** Seller relied on information from you and/or the lienholder or lessor of your trade-in vehicle(s) to arrive at the payoff amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s). You understand that the amount quoted is an estimate.

Seller agrees to pay the payoff amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s) to the lienholder or lessor of the trade-in vehicle(s), or its designee. If the actual payoff amount is more than the amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s), you must pay the Seller the excess on demand. If the actual payoff amount is less than the amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s), Seller will refund to you any overage Seller receives from your prior lienholder or lessor. Except as stated in the "NOTICE" on page 5 of this contract, any assignee of this contract will not be obligated to pay the Prior Credit or Lease Balance shown in Trade-In Vehicle(s) or any refund.

Buyer Signature X ▊▊▊▊▊▊▊▊                    Co-Buyer Signature X ▊▊▊▊▊▊▊▊

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to the contract must be in writing and both you and we must sign it. No oral changes are binding.

Buyer Signs X *Dro Esraeliestepanian*                    Co-Buyer Signs X ▊▊▊▊▊▊▊▊

**SELLER'S RIGHT TO CANCEL.** If Buyer and Co-Buyer sign here, the provisions of the Seller's Right to Cancel section on page 5 of this contract giving the Seller the right to cancel if Seller is unable to assign this contract to a financial institution will apply.

Buyer X *Dro Esraeliestepanian*                    Co-Buyer X ▊▊▊▊▊▊▊▊

THE MINIMUM PUBLIC LIABILITY INSURANCE LIMITS PROVIDED IN LAW MUST BE MET BY EVERY PERSON WHO PURCHASES A VEHICLE. IF YOU ARE UNSURE WHETHER OR NOT YOUR CURRENT INSURANCE POLICY WILL COVER YOUR NEWLY ACQUIRED VEHICLE IN THE EVENT OF AN ACCIDENT, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
  WARNING:
  YOUR PRESENT POLICY MAY NOT COVER COLLISION DAMAGE OR MAY NOT PROVIDE FOR FULL REPLACEMENT COSTS FOR THE VEHICLE BEING PURCHASED. IF YOU DO NOT HAVE FULL COVERAGE, SUPPLEMENTAL COVERAGE FOR COLLISION DAMAGE MAY BE AVAILABLE TO YOU THROUGH YOUR INSURANCE AGENT OR THROUGH THE SELLING DEALER. HOWEVER, UNLESS OTHERWISE SPECIFIED, THE COVERAGE YOU OBTAIN THROUGH THE DEALER PROTECTS ONLY THE DEALER, USUALLY UP TO THE AMOUNT OF THE UNPAID BALANCE REMAINING AFTER THE VEHICLE HAS BEEN REPOSSESSED AND SOLD.
  FOR ADVICE ON FULL COVERAGE THAT WILL PROTECT YOU IN THE EVENT OF LOSS OR DAMAGE TO YOUR VEHICLE, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
  THE BUYER SHALL SIGN TO ACKNOWLEDGE THAT HE/SHE UNDERSTANDS THESE PUBLIC LIABILITY TERMS AND CONDITIONS.

S/S X *Dro Esraeliestepanian*                    X ▊▊▊▊▊▊▊▊

## CREDIT DISABILITY INSURANCE NOTICE
## CLAIM PROCEDURE

If you become disabled, you must tell us right away. (You are advised to send this information to the same address to which you are normally required to send your payments, unless a different address or telephone number is given to you in writing by us as the location where we would like to be notified.) We will tell you where to get claim forms. You must send in the completed form to the insurance company as soon as possible and tell us as soon as you do.

If your disability insurance covers all of your missed payment(s), WE CANNOT TRY TO COLLECT WHAT YOU OWE OR FORECLOSE UPON OR REPOSSESS ANY COLLATERAL UNTIL THREE CALENDAR MONTHS AFTER your first missed payment is due or until the insurance company pays or rejects your claim, whichever comes first. We can, however, try to collect, foreclose, or repossess if you have any money due and owing us or are otherwise in default when your disability claim is made or if a senior mortgage or lien holder is foreclosing.

If the insurance company pays the claim within the three calendar months, we must accept the money as though you paid on time. If the insurance company rejects the claim within the three calendar months or accepts the claim within the three calendar months on a partial disability and pays less than for a total disability, you will have 35 days from the date that the rejection or the acceptance of the partial disability claim is sent to pay past due payments, or the difference between the past due payments and what the insurance company pays for the partial disability, plus late charges. You can contact us, and we will tell you how much you owe. After that time, we can take action to collect or foreclose or repossess any collateral you may have given.

If the insurance company accepts your claim but requires that you send in additional forms to remain eligible for continued payments, you should send in these completed additional forms no later than required. If you do not send in these forms on time, the insurance company may stop paying, and we will then be able to take action to collect or foreclose or repossess any collateral you may have given.

The original document is owned by Tesla, Inc. and this copy was created on Aug 07, 2023 05:29:35 PM.

RN116783605-1658948392
Case 4:23-cv-03878-YGR   Document 45   Filed 11/22/23   Page 27 of 65
Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.
OTHER IMPORTANT AGREEMENTS

**1. FINANCE CHARGE AND PAYMENTS**

**a. How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed. Seller - Creditor may receive part of the Finance Charge.

**b. How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.

**c. How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

**d. You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment. As of the date of your payment, if the minimum finance charge is greater than the earned Finance Charge, you may be charged the difference; the minimum finance charge is as follows: (1) $25 if the original Amount Financed does not exceed $1,000, (2) $50 if the original Amount Financed is more than $1,000 but not more than $2,000, or (3) $75 if the original Amount Financed is more than $2,000.

**2. YOUR OTHER PROMISES TO US**

**a. If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

---
**GAP LIABILITY NOTICE**
In the event of theft or damage to your vehicle that results in a total loss, there may be a gap between the amount you owe under this contract and the proceeds of your insurance settlement and deductible. THIS CONTRACT PROVIDES THAT YOU ARE LIABLE FOR THE GAP AMOUNT. An optional debt cancellation agreement for coverage of the gap amount may be offered for an additional charge.
---

**b. Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

**c. Security Interest.**
You give us a security interest in:
- The vehicle and all parts or goods put on it;
- All money or goods received (proceeds) for the vehicle;
- All insurance, maintenance, service, or other contracts we finance for you; and
- All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract as the law allows. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

**d. Insurance you must have on the vehicle.** You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium for the insurance and a finance charge computed at the Annual Percentage Rate shown on page 1 of this contract or, at our option, the highest rate the law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

**e. What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

**3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**

**a. You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also take the steps described below.

**b. You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once, subject to any right the law gives you to reinstate this contract.
Default means:
- You do not pay any payment on time;
- You give false, incomplete, or misleading information on a credit application;
- You start a proceeding in bankruptcy or one is started against you or your property;
- The vehicle is lost, damaged or destroyed; or
- You break any agreements in this contract.

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

**c. You may have to pay collection costs.** You will pay our reasonable costs to collect what you owe, including attorney fees, court costs, collection agency fees, and fees paid for other reasonable collection efforts. You agree to pay a charge not to exceed $15 if any check you give to us is dishonored.

**d. We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

**e. How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). You may redeem the vehicle by paying all you owe, or you may have the right to reinstate this contract and redeem the vehicle by paying past due payments and any late charges, providing proof of insurance, and/or taking other action to cure the default. We will provide you all notices required by law to tell you when and how much to pay and/or what action you must take to redeem the vehicle.

The original document is owned by Tesla, Inc. and this copy was created on Aug 07, 2023 05:29:35 PM.

RN116783605-1658948392

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD®) Service.

Case 4:23-cv-03878-YGR   Document 45   Filed 11/22/23   Page 28 of 65

f.  **We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.

We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at the Annual Percentage Rate shown on page 1 of this contract, not to exceed the highest rate permitted by law, until you pay.

g.  **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

4.  **WARRANTIES SELLER DISCLAIMS**
    **If you do not get a written warranty, and the Seller does not enter into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.**
    This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide. If the Seller has sold you a certified used vehicle, the warranty of merchantability is not disclaimed.

5.  **Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**
    **Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.**

6.  **SERVICING AND COLLECTION CONTACTS**
    You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you. **You agree that you will within a reasonable time notify us of any change in your name, address, or employment.**

7.  **APPLICABLE LAW**
    Federal law and California law apply to this contract. If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

8.  **WARRANTIES OF BUYER**
    You promise you have given true and correct information in your application for credit, and you have no knowledge that will make that information untrue in the future. We have relied on the truth and accuracy of that information in entering into this contract. Upon request, you will provide us with documents and other information necessary to verify any item contained in your credit application.

You waive the provisions of Calif. Vehicle Code Section 1808.21 and authorize the California Department of Motor Vehicles to furnish your residence address to us.

### Seller's Right to Cancel

a.  Seller agrees to deliver the vehicle to you on the date this contract is signed by Seller and you. You understand that it may take some time for Seller to verify your credit and assign the contract. You agree that if Seller is unable to assign the contract to any one of the financial institutions with whom Seller regularly does business under an assignment acceptable to Seller, Seller may cancel the contract.

b.  Seller shall give you written notice (or in any other manner in which actual notice is given to you) within 10 days of the date this contract is signed if Seller elects to cancel. Upon receipt of such notice, you must immediately return the vehicle to Seller in the same condition as when sold, reasonable wear and tear excepted. Seller must give back to you all consideration received by Seller, including any trade-in vehicle.

c.  If you do not immediately return the vehicle, you shall be liable for all expenses incurred by Seller in taking the vehicle from you, including reasonable attorney's fees.

d.  While the vehicle is in your possession, all terms of the contract, including those relating to use of the vehicle and insurance for the vehicle, shall be in full force and you shall assume all risk of loss or damage to the vehicle. You must pay all reasonable costs for repair of any damage to the vehicle until the vehicle is returned to Seller.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

Buyer Signs X  *Dra Esraeliestepanian*                 Co-Buyer Signs X                            *LAW 553-CA-ARB-eps 7/16 v1*   Page 5 of 7

The original document is owned by Tesla, Inc. and this copy was created on Aug 07, 2023 05:29:35 PM.

RN116783605-1658948392

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 4:23-cv-03878-YGR   Document 45   Filed 11/22/23   Page 29 of 65

**Notice to buyer: (1) Do not sign this agreement before you read it or if it contains any blank spaces to be filled in. (2) You are entitled to a completely filled in copy of this agreement. (3) You can prepay the full amount due under this agreement at any time. (4) If you default in the performance of your obligations under this agreement, the vehicle may be repossessed and you may be subject to suit and liability for the unpaid indebtedness evidenced by this agreement.**

If you have a complaint concerning this sale, you should try to resolve it with the seller.

Complaints concerning unfair or deceptive practices or methods by the seller may be referred to the city attorney, the district attorney, or an investigator for the Department of Motor Vehicles, or any combination thereof. After this contract is signed, the seller may not change the financing or payment terms unless you agree in writing to the change. You do not have to agree to any change, and it is an unfair or deceptive practice for the seller to make a unilateral change.

Buyer Signature X *Dro Esraeiliestepanian*          Co-Buyer Signature X

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

THERE IS NO COOLING-OFF PERIOD UNLESS YOU OBTAIN A CONTRACT CANCELLATION OPTION

California law does not provide for a "cooling-off" or other cancellation period for vehicle sales. Therefore, you cannot later cancel this contract simply because you change your mind, decide the vehicle costs too much, or wish you had acquired a different vehicle. After you sign below, you may only cancel this contract with the agreement of the seller or for legal cause, such as fraud. However, California law does require a seller to offer a two-day contract cancellation option on used vehicles with a purchase price of less than forty thousand dollars ($40,000), subject to certain statutory conditions. This contract cancellation option requirement does not apply to the sale of a recreational vehicle, a motorcycle, or an off-highway motor vehicle subject to identification under California law. See the vehicle contract cancellation option agreement for details.

YOU AGREE TO THE TERMS OF THIS CONTRACT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT. YOU ACKNOWLEDGE THAT YOU HAVE READ ALL PAGES OF THIS CONTRACT, INCLUDING THE ARBITRATION PROVISION ON PAGE 7 OF THIS CONTRACT, BEFORE SIGNING BELOW. YOU CONFIRM THAT YOU RECEIVED A COMPLETELY FILLED-IN COPY WHEN YOU SIGNED IT.

Buyer Signature X *Dro Esraeiliestepanian*   Date 07/29/2022   Co-Buyer Signature X _____   Date N/A

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other Owner Signature X   N/A                    Address   N/A

GUARANTY: To induce us to sell the vehicle to Buyer, each person who signs as a Guarantor individually guarantees the payment of this contract. If Buyer fails to pay any money owing on this contract, each Guarantor must pay it when asked. Each Guarantor will be liable for the total amount owing even if other persons also sign as Guarantor, and even if Buyer has a complete defense to Guarantor's demand for reimbursement. Each Guarantor agrees to be liable even if we do one or more of the following: (1) give the Buyer more time to pay one or more payments; (2) give a full or partial release to any other Guarantor; (3) release any security; (4) accept less from the Buyer than the total amount owing; or (5) otherwise reach a settlement relating to this contract or extend the contract. Each Guarantor acknowledges receipt of a completed copy of this contract and guaranty at the time of signing.

Guarantor waives notice of acceptance of this Guaranty, notice of the Buyer's non-payment, non-performance, and default; and notices of the amount owing at any time, and of any demands upon the Buyer.

Guarantor X   N/A                 Date   N/A      Guarantor X   N/A                 Date   N/A

Address   N/A                                    Address   N/A

Seller Signs   Tesla Motors Inc.                 Date 07/29/2022   By X *Emmanuelle Stewart*          Title Assistant Secretary

Buyer Signs X *Dro Esraeiliestepanian* _____   Co-Buyer Signs X _____

The original document is owned by Tesla, Inc. and this copy was created on Aug 07, 2023 05:29:35 PM.

RN116783605-1658948392

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 4:23-cv-03878-YGR   Document 45   Filed 11/22/23   Page 30 of 65

## ARBITRATION PROVISION

### PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS

1. **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**

2. **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**

3. **DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019 (www.adr.org), or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless the law or the rules of the chosen arbitration organization require us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.

| Seller assigns its interest in this contract to **Tesla Finance LLC** | | (Assignee) under the terms of Seller's agreement(s) with Assignee. |
| --- | --- | --- |
| ☐ Assigned with recourse | ☒ Assigned without recourse | ☐ Assigned with limited recourse |
| Seller **Tesla Motors Inc.** | By *Emmanuelle Stewart* | Title | Assistant Secretary |

Buyer Signs X *Dro Esraeliestapanian*          Co-Buyer Signs X

**LAW** FORM NO. 553-CA-ARB-eps (REV. 7/16)
©2016 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

The original document is owned by Tesla, Inc. and this copy was created on Aug 07, 2023 05:29:35 PM.

# EXHIBIT 15

RN118578058-1679673578    This is a retention copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 4:23-cv-03878-YGR    Document 45    Filed 11/22/23    Page 32 of 65

**LAW 553-IL-ARB-e 8/22**

## RETAIL INSTALLMENT CONTRACT - SIMPLE FINANCE CHARGE
### (WITH ARBITRATION PROVISION)

Contract Number:

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| ARTEM KUPRIIETS<br>1413 E EVERGREEN DR APT 104<br>PALATINE, IL 60074<br><br>Cell: N/A<br>Email: N/A | <br><br><br>Cell: N/A<br>Email: N/A | Tesla Inc.<br>320 West Golf Road<br>Schaumburg, IL 60195<br>Cook |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit for the deferred payment price under the agreements in this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. If any amount remains unpaid fifteen days after the final payment due date, we will assess finance charges on the unpaid balance at the Annual Percentage Rate shown in the Truth-In-Lending Disclosures. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| New | 2023 | Tesla<br><br>Model Y | 15 | ███████7946 | Personal, family, or household unless otherwise indicated below<br>☐ business<br>☐ agricultural ☐ |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $ 5,401.73 is |
|---|---|---|---|---|
| 5.44 % | $ 10,639.52 | $ 60,130.00 | $ 70,769.52 | $ 76,171.25 |

(e) means an estimate

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | $ 982.91 | Monthly beginning 05/12/2023 |
| N/A | $ N/A | N/A |
| | | N/A |

**Late Charge.** If payment is not received in full within ___10___ days after it is due, you will pay a late charge of $ ___10___ or 5% of the part of the payment that is late, whichever is greater.

**Prepayment.** If you pay early, you will not have to pay a penalty.

**Security Interest.** You are giving a security interest in the vehicle being purchased.

**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

**Returned Payment Charge:** If any check or other draft you give us is dishonored, or any electronic payment is returned unpaid, you will pay us a charge of $25 or, at our option, an amount in excess of $25 for our costs and expenses, including reasonable attorney's fees incurred in collection of the check or draft. We will make written demand on you if we elect to pursue a nonlitigated collection action against you for our costs and expenses in excess of $25.

**APPLICABLE LAW**
Federal law and the law of the state of Illinois apply to this contract.

☐ **VENDOR'S SINGLE INTEREST INSURANCE (VSI insurance):** If the preceding box is checked, the Creditor requires VSI insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft, concealment, skip). VSI insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. **You may choose the insurance company through which the VSI insurance is obtained.** If you elect to purchase VSI insurance through the Creditor, **the cost of this insurance is $** N/A and is also shown in Item 4B of the Itemization of Amount Financed. The coverage is for the initial term of the contract.

### FOR USED VEHICLES ONLY

**Illinois law requires that this vehicle will be free of a defect in a power train component for 15 days or 500 miles after delivery, whichever is earlier, except with regard to particular defects disclosed on the first page of this agreement. "Power train component" means the engine block, head, all internal engine parts, oil pan and gaskets, water pump, intake manifold, transmission, and all internal transmission parts, torque converter, drive shaft, universal joints, rear axle and all rear axle internal parts, and rear wheel bearings. You (the consumer) will have to pay up to $100 for each of the first 2 repairs if the warranty is violated.**

**ATTENTION CONSUMER: SIGN HERE ONLY IF THE SELLER HAS TOLD YOU THAT THIS VEHICLE HAS THE FOLLOWING PROBLEM OR PROBLEMS AND YOU AGREE TO BUY THE VEHICLE ON THOSE TERMS:**
**ATENCIÓN CONSUMIDOR: FIRME AQUÍ SOLAMENTE SI EL VENDEDOR LE HA DICHO QUE EL VEHÍCULO TIENE EL/LOS SIGUIENTE(S) PROBLEMA(S) Y USTED ESTÁ DE ACUERDO EN COMPRAR EL VEHÍCULO SEGÚN ESTOS TÉRMINOS:**

1. N/A    2. N/A    3. N/A

X _____N/A_____     X _____N/A_____
Buyer Signs (Date)     Co-Buyer Signs (Date)

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on page 5 of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X _ARTEM KUPRIIETS_     Co-Buyer Signs X _____

LAW 553-IL-ARB-e 8/22 v1    Page 1 of 6

This retention copy was created on Mar 28, 2023 05:35:54 PM for Tesla, Inc..

RN118578058-1679673578
This is an Electronic copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.
Case 4:23-cv-03878-YGR   Document 45   Filed 11/22/23   Page 33 of 65

## ITEMIZATION OF AMOUNT FINANCED

**1** Cash Price (including $ _____4,359.43_____ sales tax)   $ _____64,489.43_____ (1)

**2** Total Downpayment =

Trade-In   _____N/A_____   _____N/A_____   _____N/A_____
(Year)   (Make)   (Model)

Gross Trade-In Allowance   0.00
Less Pay Off Made By Seller to _____N/A_____   0.00
Equals Net Trade In   0.00
+ Other _____N/A_____   N/A
+ Other _____N/A_____   N/A
+ Other _____N/A_____   N/A

(If total downpayment is negative, enter "0" and see 4K below)   $ _____5,401.73_____ (2)

**3** Unpaid Balance of Cash Price (1 minus 2)   $ _____59,087.70_____ (3)

**4** Other Charges Including Amounts Paid to Others on Your Behalf (Seller may keep part of these amounts):

**A** Cost of Optional Credit Insurance Paid to Insurance Company or Companies.

Life   $ _____N/A_____   Term _____N/A_____
Disability   $ _____N/A_____   Term _____N/A_____   $ _____N/A_____

**B** Vendor's Single Interest Insurance Paid to Insurance Company   $ _____N/A_____

**C** Other Optional Insurance Paid to Insurance Company or Companies   $ _____N/A_____

**D** Optional Gap Contract   $ _____N/A_____

**E** Official Fees Paid to Government Agencies

to _____N/A_____   for _____N/A_____   $ _____N/A_____
to _____N/A_____   for _____N/A_____   _____N/A_____
to _____N/A_____   for _____N/A_____   _____N/A_____

**F** Government Taxes Not Included in Cash Price   _____N/A_____

**G** Government License and/or Registration Fees

Registration Fees   $ _____1,007.30_____

**H** Optional ERT Fee Paid To   Dealertrack   35.00

**I** Government Certificate of Title Fees   _____N/A_____

**J** To Seller for Documentary Fee   _____N/A_____

DOCUMENTARY FEE. A DOCUMENTARY FEE IS NOT AN OFFICIAL FEE. A DOCUMENTARY FEE IS NOT REQUIRED BY LAW, BUT MAY BE CHARGED TO BUYERS FOR HANDLING DOCUMENTS AND PERFORMING SERVICES RELATED TO CLOSING OF A SALE. THE BASE DOCUMENTARY FEE BEGINNING JANUARY 1, 2020, WAS $300. THE MAXIMUM AMOUNT THAT MAY BE CHARGED FOR A DOCUMENTARY FEE IS THE BASE DOCUMENTARY FEE OF $300, WHICH SHALL BE SUBJECT TO AN ANNUAL RATE ADJUSTMENT EQUAL TO THE PERCENTAGE OF CHANGE IN THE BUREAU OF LABOR STATISTICS CONSUMER PRICE INDEX. THIS NOTICE IS REQUIRED BY LAW.

**K** Other Charges (Seller must identify who is paid and describe purpose)

to _____N/A_____   for Prior Credit or Lease Balance _____N/A_____   $ _____N/A_____
to _____N/A_____   for _____N/A_____   _____N/A_____
to _____N/A_____   for _____N/A_____   _____N/A_____
to _____N/A_____   for _____N/A_____   _____N/A_____
to _____N/A_____   for _____N/A_____   _____N/A_____
to _____N/A_____   for _____N/A_____   _____N/A_____
to _____N/A_____   for _____N/A_____   _____N/A_____
to _____N/A_____   for _____N/A_____   _____N/A_____
to _____N/A_____   for _____N/A_____   _____N/A_____

Total Other Charges and Amounts Paid to Others on Your Behalf   $ _____1,042.30_____ (4)

**5** Amount Financed (3 + 4)   $ _____60,130.00_____ (5)

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before
_____N/A_____, Year _____N/A_____. SELLER'S INITIALS _____N/A_____

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term _____N/A_____ Mos.   Name of Gap Contract _____N/A_____

I want to buy a gap contract.

Buyer Signs X _____

---

FOR THE PHYSICAL DAMAGE INSURANCE YOU MAY BUY THE PHYSICAL DAMAGE INSURANCE THIS CONTRACT REQUIRES FROM ANYONE YOU CHOOSE WHO IS ACCEPTABLE TO US. You may also provide the physical damage insurance through an existing policy owned or controlled by you that is acceptable to us.

You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest Insurance is checked on page 1.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

### Check the insurance you want and sign below:

### Optional Credit Insurance

☐ Credit Life:   ☐ Buyer   ☐ Co-Buyer   ☐ Both
☐ Credit Disability: ☐ Buyer   ☐ Co-Buyer   ☐ Both

Premium:

Credit Life $ _____N/A_____
Credit Disability $ _____N/A_____

Insurance Company Name _____N/A_____

Home Office Address _____N/A_____

**CREDIT LIFE INSURANCE AND CREDIT DISABILITY INSURANCE ARE NOT REQUIRED TO OBTAIN CREDIT.** Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

### Other Optional Insurance

_____N/A_____
Type of Insurance   Term

Premium $ _____N/A_____
Insurance Company Name _____N/A_____

Home Office Address _____N/A_____

_____N/A_____
Type of Insurance   Term

Premium $ _____N/A_____
Insurance Company Name _____N/A_____

Home Office Address _____N/A_____

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the optional credit insurance and the other insurance checked above.

X _____N/A_____   _____N/A_____
Buyer Signature   Date

X _____N/A_____   _____N/A_____
Co-Buyer Signature   Date

**THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS.**

You understand that Seller or its affiliates, or any holder of the contract or its affiliates, may receive consideration or something of value in connection with the sale of insurance purchased with this retail installment contract.

RN118578058-1679673578

This is a retention copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

OTHER IMPORTANT AGREEMENTS

Case 4:23-cv-03878-YGR   Document 45   Filed 11/22/23   Page 34 of 65

**1. FINANCE CHARGE AND PAYMENTS**

**a. How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

Fifteen days after the final installment is due as originally scheduled or deferred, we will compute and charge interest on any balance remaining unpaid, including any unpaid default charges or deferment charges, at the Annual Percentage Rate shown on page 1 of this contract.

**b. How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose as the law allows.

**c. How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment, or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

**d. You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

**2. YOUR OTHER PROMISES TO US**

**a. If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

**b. Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

**c. Security Interest.**

You give us a security interest in:
- The vehicle and all parts or goods put on it;
- All money or goods received (proceeds) for the vehicle;
- All insurance, maintenance, service, or other contracts we finance for you; and
- All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

**d. Insurance you must have on the vehicle.**

You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. You agree to name us on your insurance policy as loss payee. The insurance must cover our interest in the vehicle. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

**Unless you provide us with evidence of the insurance coverage required by this contract, we may buy insurance at your expense to protect our interests in the vehicle. This insurance may, but need not, protect your interests. The coverage that we buy may not pay any claim that you make or any claim that is made against you in connection with the vehicle. You may later cancel any insurance we buy, but only after providing us with evidence that you have obtained insurance as required by this contract. If we buy insurance for the vehicle, you will be responsible for the costs of that insurance, including finance charges and any other charges we may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. We may add the costs of the insurance to your total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own.**

If we buy insurance, the charge will be the premium for the insurance and a finance charge computed at the Annual Percentage Rate shown on page 1 of this contract or, at our option, the rate we are charging when we buy the insurance.

**e. What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

**3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**

**a. You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also take the steps described below.

**b. You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once subject to any right the law gives you to reinstate this contract.

Default means:
- You do not pay any payment on time;
- You give false, incomplete, or misleading information during credit application;
- You start a proceeding in bankruptcy or one is started against you or your property; or
- You break any agreements in this contract.

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

**c. You may have to pay collection costs.** If we hire an attorney to collect what you owe, you will pay our reasonable attorney's fee as the law allows. If a judgment is entered against you, you will pay any court costs the court awards us.

**d. We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device (such as GPS), you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you. If you do not ask for these items back, we may dispose of them as the law allows.

**e. How you can get the vehicle back if we take it.** If we repossess the vehicle, in many situations, the law gives you the right to pay to get it back. We will tell you what you have to do to get the vehicle back.

**f. We will sell the vehicle if you do not get it back.** If you do not do what is required to get the vehicle back, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.

We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

This retention copy was created on Mar 28, 2023 05:35:54 PM for Tesla, Inc..

RN118578058-1679673578    This is a retention copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 4:23-cv-03878-YGR   Document 45   Filed 11/22/23   Page 35 of 65

g. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

## 4. WARRANTIES SELLER DISCLAIMS

**If the vehicle you purchased is a new vehicle, unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or fitness for a particular purpose.**

**If the vehicle you purchased is a used vehicle, unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no express warranties on the vehicle, and there will be no implied warranties of fitness for a particular purpose. The vehicle is subject to an implied warranty of merchantability, but only to the extent required by Illinois law. The implied warranty of merchantability expires at midnight of the 15th calendar day after delivery of the vehicle or until the vehicle is driven 500 miles after delivery, whichever is earlier. This implied warranty of merchantability does not extend to damage that occurs after the sale that results from: (1) off-road use; (2) racing; (3) towing; (4) abuse; (5) misuse; (6) neglect; (7) failure to perform regular maintenance; and (8) failure to maintain adequate oil, coolant, and other required fluids or lubricants.**

The above provisions do not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

## 5. **Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

**Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.**

## 6. SERVICING AND COLLECTION CONTACTS

In consideration of our extension of credit to you, you agree to provide us your contact information for our servicing and collection purposes. You agree that we may use this information to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you. You agree to allow our agents and service providers to contact you as agreed above.

You agree that you will, within a reasonable time, notify us of any change in your contact information.

## 7. NEGATIVE CREDIT REPORT NOTICE

**We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.**

**Electronic Contracting and Signature Acknowledgment.** You agree that (i) this contract is an electronic contract executed by you using your electronic signature, (ii) your electronic signature signifies your intent to enter into this contract and that this contract is legally valid and enforceable in accordance with its terms to the same extent as if you had executed this contract using your written signature and (iii) the authoritative copy of this contract ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by us for the storage of authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the foregoing, if the Authoritative Copy is converted by printing a paper copy which is marked by us as the original (the "Paper Contract"), then you acknowledge and agree that (1) your signing of this contract with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this contract, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, your obligations will be evidenced by the Paper Contract alone.



---

NOTICE OF POSSIBLE REFUND OF CREDIT LIFE OR DISABILITY INSURANCE PREMIUM: (1) IF YOU HAVE PURCHASED EITHER CREDIT LIFE OR CREDIT DISABILITY INSURANCE, OR BOTH, TO GUARANTEE PAYMENTS BEING MADE IN CASE OF YOUR DEATH OR DISABILITY, ON YOUR VEHICLE PURCHASED UNDER AN INSTALLMENT SALES CONTRACT, YOU MAY BE ENTITLED TO A PARTIAL REFUND OF YOUR PREMIUM IF YOU PAY OFF YOUR INSTALLMENT LOAN EARLY. (2) IN CASE OF EARLY COMPLETE PAYMENT OF YOUR LOAN, YOU SHOULD CONTACT THE SELLER OF YOUR CREDIT LIFE OR CREDIT DISABILITY INSURANCE TO SEE IF A REFUND IS DUE. IF YOUR VEHICLE DEALER FINANCED YOUR LOAN, THE SELLER OF YOUR CREDIT LIFE OR CREDIT DISABILITY INSURANCE IS YOUR VEHICLE DEALER.

---

This retention copy was created on Mar 28, 2023 05:35:54 PM for Tesla, Inc..

RN118578058-1679673578

This is a retention copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 4:23-cv-03878-YGR   Document 45   Filed 11/22/23   Page 36 of 65

# ARBITRATION PROVISION

## PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS

1. **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN YOU AND US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**

2. **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**

3. **DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, any allegation of waiver of rights under this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this Vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator only on an individual basis and not as a plaintiff in a collective or representative action, or a class representative or member of a class on any class claim. The arbitrator may not preside over a consolidated, representative, class, collective, injunctive, or private attorney general action. You expressly waive any right you may have to arbitrate a consolidated, representative, class, collective, injunctive, or private attorney general action. You or we may choose the American Arbitration Association (www.adr.org) or National Arbitration and Mediation (www.namadr.com) as the arbitration organization to conduct the arbitration. If you and we agree, you or we may choose a different arbitration organization. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this transaction was originated. We will pay the filing, administration, service, or case management fee and the arbitrator or hearing fee up to a maximum of $5,000, unless the law or the rules of the chosen arbitration organization require us to pay more. You and we will pay the filing, administration, service, or case management fee and the arbitrator or hearing fee over $5,000 in accordance with the rules and procedures of the chosen arbitration organization. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. §§ 1 et seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate any related or unrelated claims by filing an action in small claims court, or by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual or statutory public injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. You agree that you expressly waive any right you may have for a claim or dispute to be resolved on a class basis in court or in arbitration. If a court or arbitrator finds that this class arbitration waiver is unenforceable for any reason with respect to a claim or dispute in which class allegations have been made, the rest of this Arbitration Provision shall also be unenforceable.

*LAW 553-IL-ARB-e 8/22 v1*     Page 5 of 6

This retention copy was created on Mar 28, 2023 05:35:54 PM for Tesla, Inc..

RN118578058-1679673578

This is a retention copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

☐ If this box is checked, the following late charge applies to vehicles purchased primarily for business use.

If a payment is not received in full within ___N/A___ days after it is due, you will pay a late charge of $ ___N/A___ or ___N/A___ % of the part of the payment that is late, whichever is less.

If this box is not checked, the late charge in the "Federal Truth-In-Lending Disclosures" still applies.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

### DISCLOSURE OF 36% RATE CAP

A retailer shall not contract for or receive charges exceeding a 36% annual percentage rate on the unpaid balance of the amount financed for a retail installment contract, as calculated under the Illinois Predatory Loan Prevention Act (PLPA APR).

Any retail installment contract with a PLPA APR over 36% is null and void, such that no person or entity shall have any right to collect, attempt to collect, receive, or retain any principal, fee, interest, or charges related to the retail installment contract.

The annual percentage rate disclosed in any retail installment contract may be lower than the PLPA APR.

X *ARTEM KUPRIIETS*                                     X

Buyer Signature                          Co-Buyer Signature (If Applicable)

***The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.***

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.      Buyer Signs **X** *ARTEM KUPRIIETS*

If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

See the rest of this contract for other important agreements.

**Notice to the buyer.**

**1. Do not sign this agreement before you read it or if it contains any blank spaces. 2. You are entitled to an exact copy of the agreement you sign. 3. Under the law you have the right, among others, to pay in advance the full amount due and to obtain under certain conditions a partial refund of the finance charge.**

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledge that you have read all pages of this contract, including the arbitration provision on page 5, before signing below. You confirm that you received a completely filled-in copy when you signed it.

### RETAIL INSTALLMENT CONTRACT

Buyer Signs **X** *ARTEM KUPRIIETS*   Date  03/28/2023   Co-Buyer Signs **X**                        Date  N/A

Buyer Printed Name   ARTEM KUPRIIETS               Co-Buyer Printed Name   N/A

If the "business" use box is checked in "Primary Use for Which Purchased": Print Name   N/A                    Title   N/A

**Co-Buyer** A co-buyer is a person who agrees to be primarily responsible for paying the entire debt and who (1) actually receives the vehicle or (2) is a parent or spouse of the buyer, or (3) will be listed as an owner on the vehicle's title. By signing above, the co-buyer confirms that the co-buyer will actually receive possession of the vehicle or will use it, or that the co-buyer is a parent or spouse of the buyer, or will be listed as an owner on the vehicle's title.

**Guarantor** A guarantor is a person who may be responsible for paying the entire debt if we cannot collect the amount owed from the buyer and any co-buyer.

Guarantor Signs **X**   N/A              Date  N/A   Address   N/A

I hereby guarantee the collection of the above described amount upon failure of the seller named herein to collect said amount from the buyer named herein. I also consent to the Creditor having a security interest in the vehicle.

**Other Owners** An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this Contract.

Other Owner Signs **X**   N/A              Date  N/A   Address   N/A

Seller signs   Tesla Inc.        By **X** *Troy Jones*        Title   President

# NO PUBLIC LIABILITY INSURANCE ISSUED WITH THIS TRANSACTION

**LAW** FORM NO. 553-IL-ARB-e (REV 8/22)
©2022 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR
FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

LAW 553-IL-ARB-e 8/22 v1      Page 6 of 6

This retention copy was created on Mar 28, 2023 05:35:54 PM for Tesla, Inc..

# EXHIBIT 16

RN116790088-1655999172
This is a retention copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.
Case 4:23-cv-03878-YGR   Document 45   Filed 11/22/23   Page 39 of 65
*LAW* 553-MA-ARB-e 11/19

## RETAIL INSTALLMENT SALE CONTRACT – SIMPLE FINANCE CHARGE
## (WITH ARBITRATION PROVISION)

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| Bruna Kreuzer | Neil B Kreuzer | Tesla Motors MA, Inc. 840 Providence Highway Dedham, MA 02026 Norfolk |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| New | 2022 | Tesla Model 3 | 5YJ3E1EB7NF271936 | Personal, family, or household unless otherwise indicated below ☐ business ☐ agricultural ☐ ____ N/A |

### TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $3,683.75 is |
|---|---|---|---|---|
| 4.78 % | $ 8,796.72 | $ 56,940.00 | $ 65,736.72 | $ 69,420.47 |

(e) means an estimate

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | $ 913.01 | Monthly beginning 08/09/2022 |
| N/A | $ N/A | N/A |
| | | N/A |

**Late Charge.** If payment is not received in full within 15 days after it is due, you will pay a late charge of 5% of the part of the payment that is late. The charge will not exceed $5 if you bought the vehicle primarily for personal, family, or household use.

**Prepayment.** If you pay early, you will not have to pay a penalty.

**Security Interest.** You are giving a security interest in the vehicle being purchased.

**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

**Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**

**Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.**

☐ VENDOR'S SINGLE INTEREST INSURANCE (VSI insurance): If the preceding box is checked, the Creditor requires VSI insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft, concealment, skip). VSI insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. **You may choose the insurance company through which the VSI insurance is obtained.** If you elect to purchase VSI insurance through the Creditor, **the cost of this insurance is $** N/A **and is also shown in** Item 4B of the Itemization of Amount Financed. The coverage is for the initial term of the contract.

### NO COOLING OFF PERIOD

**State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.**

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on page 5 of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X _Bruna Kreuzer_          Co-Buyer Signs X _Neil B Kreuzer_

This retention copy was created on Jun 25, 2022 11:30:56 AM for Tesla, Inc..

RN116790088-1655999172
This is a retention copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 4:23-cv-03878-YGR   Document 45   Filed 11/22/23   Page 40 of 65

**ITEMIZATION OF AMOUNT FINANCED**

1  Cash Price (including $ _3,558.75_ sales tax) ............ $ _60,498.75_ (1)

2  Total Downpayment =

Trade-In   _N/A_        _N/A_         _N/A_
       (Year)    (Make)      (Model)

Gross Trade-In Allowance              $ _0.00_

Less Pay Off Made By Seller to    _N/A_   $ _0.00_

Equals Net Trade In                $ _0.00_

+ Cash                      $ _3,683.75_

+ Other       _N/A_          $ _N/A_

+ Other       _N/A_          $ _N/A_

+ Other       _N/A_          $ _N/A_

(If total downpayment is negative, enter "0" and see 4I below) .... $ _3,683.75_ (2)

3  Unpaid Balance of Cash Price (1 minus 2) .......... $ _56,815.00_ (3)

4  Other Charges Including Amounts Paid to Others on Your Behalf
(Seller may keep part of these amounts):

A  Cost of Optional Credit Insurance Paid to Insurance Company or Companies.

Life                       $ _N/A_

Accident and Health        $ _N/A_

Involuntary Unemployment Insurance   $ _N/A_    _N/A_

B  Vendor's Single Interest Insurance Paid to Insurance Company    _N/A_

C  Other Optional Insurance Paid to Insurance Company or Companies    _N/A_

D  Optional Gap Contract               _N/A_

E  Official Fees Paid to Government Agencies

to _N/A_   for _N/A_   $ _N/A_

to _N/A_   for _N/A_   $ _N/A_

to _N/A_   for _N/A_   $ _N/A_

F  Government Taxes Not Included in Cash Price    _N/A_

G  Government License and/or Registration Fees

Registration Fees            $ _125.00_

H  Government Certificate of Title Fees    $ _N/A_

I  Other Charges (Seller must identify who is paid and describe purpose)

to _N/A_   for Prior Credit or Lease Balance   $ _N/A_

to _N/A_   for _N/A_   $ _N/A_

to _N/A_   for _N/A_   $ _N/A_

to _N/A_   for _N/A_   $ _N/A_

to _N/A_   for _N/A_   $ _N/A_

to _N/A_   for _N/A_   $ _N/A_

Total Other Charges and Amounts Paid to Others on Your Behalf .... $ _125.00_ (4)

5  Amount Financed (3 + 4) .......... $ _56,940.00_ (5)

---

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before _N/A_ , Year _N/A_ . SELLER'S INITIALS _N/A_

---

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term _N/A_ Mos.    _N/A_
                        Name of Gap Contract

I want to buy a gap contract.

Buyer Signs X _N/A_

---

**Returned Check Charge:** You agree to pay a charge of $ _10_ if any check you give to us is dishonored.

---

Insurance. You may buy the physical damage insurance this contract requires from anyone you choose who is acceptable to us. You may also provide the physical damage insurance through an existing policy owned or controlled by you that is acceptable to us. You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest is required is checked on page 1 of this contract.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

**Check the insurance you want and sign below:**

**Optional Credit Insurance**

☐ Credit Life:   ☐ Buyer   ☐ Co-Buyer   ☐ Both

☐ Credit Accident and Health: ☐ Buyer ☐ Co-Buyer ☐ Both

☐ Credit Involuntary Unemployment Insurance:
          ☐ Buyer   ☐ Co-Buyer   ☐ Both

Premium:

Credit Life $ _N/A_

Credit Accident and Health $ _N/A_

Credit Involuntary Unemployment Insurance $ _N/A_

Insurance Company Name _N/A_

Home Office Address _N/A_

Credit life insurance, credit accident and health insurance, and credit involuntary unemployment insurance are not required to obtain credit. Your decision to buy or not to buy credit life insurance, credit accident and health insurance, and credit involuntary unemployment insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit accident and health insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance, credit accident and health insurance and credit involuntary unemployment insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

**YOU CANNOT BE DENIED CREDIT SIMPLY BECAUSE YOU CHOOSE NOT TO BUY CREDIT INSURANCE. CREDIT LIFE INSURANCE AND CREDIT ACCIDENT AND HEALTH INSURANCE AND CREDIT INVOLUNTARY UNEMPLOYMENT INSURANCE ARE NOT REQUIRED TO OBTAIN CREDIT. INSURANCE WILL NOT BE PROVIDED UNLESS YOU SIGN AND AGREE TO PAY THE ADDITIONAL CHARGE.**

**Other Optional Insurance**

☐ _N/A_      _N/A_
   Type of Insurance        Term

Premium $ _N/A_

Insurance Company Name _N/A_

Home Office Address _N/A_

☐ _N/A_      _N/A_
   Type of Insurance        Term

Premium $ _N/A_

Insurance Company Name _N/A_

Home Office Address _N/A_

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost. I want the insurance checked above.

X _N/A_     _N/A_
Buyer Signature          Date

X _N/A_     _N/A_
Co-Buyer Signature        Date

**THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS.**

LAW 553-MA-ARB-e 11/19 v1    Page 2 of 5

This retention copy was created on Jun 25, 2022 11:30:56 AM for Tesla, Inc..

RN116790088-1655999172
This is a retention copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.
OTHER IMPORTANT AGREEMENTS
Case 4:23-cv-02878-YGR   Document 45   Filed 11/22/23   Page 41 of 65

**1. FINANCE CHARGE AND PAYMENTS**

**a. How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

**b. How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose as the law allows.

**c. How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

**d. You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

**2. YOUR OTHER PROMISES TO US**

**a. If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

**b. Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

**c. Security Interest.**
You give us a security interest in:
- The vehicle and all parts or goods put on it;
- All money or goods received (proceeds) for the vehicle;
- All insurance, maintenance, service, or other contracts we finance for you; and
- All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

**d. Insurance you must have on the vehicle.**
You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. You agree to name us on your insurance policy as an additional insured and as loss payee. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium for the insurance and a finance charge computed at the Annual Percentage Rate shown on page 1 of this contract or, at our option, the highest rate the law permits.

**e. What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

**3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**

**a. You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.

If you pay late, we may also take the steps described below.

**b. You may have to pay all you owe at once.** If you break your promises (default) and the default is material, we may demand that you pay all you owe at once after we give you any notice and opportunity to cure the default the law requires. Default means:

- You pay any payment more than 15 days late or not at all; or
- You start a proceeding in bankruptcy or one is started against you or your property; you give false, incomplete, or misleading information during credit application; or you break any agreements in this contract; except that if you bought the vehicle primarily for personal, family or household purposes, we will only treat these events as defaults if they substantially impair the value of the collateral.

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

**c. You may have to pay collection costs.** If we hire an attorney to collect what you owe, you will pay the attorney's reasonable fee and court costs, as the law allows.

**d. We may take the vehicle from you.** If you default and the default is material, we may take (repossess) the vehicle from you after we give you any notice and opportunity to cure the default the law requires. We may only take the vehicle if we do so peacefully and the law allows it. If the vehicle is purchased primarily for personal, family, or household use, we may not enter property you own or rent to take the vehicle unless you consent at that time or a court decides we may repossess the vehicle. If your vehicle has an electronic tracking device (such as GPS), you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you. If you do not ask for these items back, we may dispose of them as the law allows.

**e. How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.

**f. We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.

We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it as the law allows. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If the money from the sale is not enough to pay the amount you owe, you must pay the rest to us, unless both of the following things are true: (i) you bought the vehicle primarily for personal, family or household use; and (ii) the balance you owed on this contract was $2,000 or less at the time you defaulted or surrendered the vehicle. If both of these things are true, you will not owe the rest. If either of these things is not true you will owe us the rest as the law allows. If you owe the rest and do not pay it when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

This retention copy was created on Jun 25, 2022 11:30:56 AM for Tesla, Inc..

RN116790088-1655999172    This is a retention copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 4:23-cv-03878-YGR   Document 45   Filed 11/22/23   Page 42 of 65

**g.** **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

**4.** **WARRANTIES SELLER DISCLAIMS**
The following paragraph does not affect any warranties covering the vehicle that the vehicle manufacturer may provide. It does **not** apply at all if you bought the vehicle primarily for personal, family, or household use.
**Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.**

**5.** **SERVICING AND COLLECTION CONTACTS**
You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

**6.** **APPLICABLE LAW**
Federal law and the law of the state of Massachusetts apply to this contract.

**Electronic Contracting and Signature Acknowledgment.** You agree that (i) this contract is an electronic contract executed by you using your electronic signature, (ii) your electronic signature signifies your intent to enter into this contract and that this contract be legally valid and enforceable in accordance with its terms to the same extent as if you had executed this contract using your written signature and (iii) the authoritative copy of this contract ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by us for the storage of authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the foregoing, if the Authoritative Copy is converted by printing a paper copy which is marked by us as the original (the "Paper Contract"), then you acknowledge and agree that (1) your signing of this contract with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this contract, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, your obligations will be evidenced by the Paper Contract alone.



This retention copy was created on Jun 25, 2022 11:30:56 AM for Tesla, Inc..

RN116790088-1655999172

This is a retention copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

## ARBITRATION PROVISION

### PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS

1. **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**

2. **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**

3. **DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association (www.adr.org) or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website. Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless the law or the rules of the chosen arbitration organization require us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.

---

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

---

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.    Buyer Signs X *Bruna Kreuzer*    Co-Buyer Signs X *Neil B Kreuzer*
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
**See the rest of this contract for other important agreements.**

**NOTICE TO THE BUYER: 1. Do not sign this contract if any of the spaces intended for the agreed terms to the extent of then available information are left blank. 2. You are entitled to an exact copy of the contract you signed. 3. Under the law, you have the following rights, among others: -- (a) to pay off in advance the full amount due and to obtain a partial refund of the finance charge; (b) to redeem the property if repossessed for a default; (c) to require, under certain conditions, a resale of the property if repossessed.**

**You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledge that you have read all pages of this contract, including the arbitration provision above, before signing below. You confirm that you received a completely filled-in copy when you signed it.**

| | | |
|---|---|---|
| Buyer Signs X *Bruna Kreuzer*  Date 06/25/2022 | Co-Buyer Signs X *Neil B Kreuzer*  Date 06/25/2022 | |
| Buyer Printed Name **Bruna Kreuzer** | Co-Buyer Printed Name **Neil B Kreuzer** | |

If the "business" use box is checked in "Primary Use for Which Purchased": Print Name _____    Title N/A

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X _____ N/A    Address _____ N/A

Seller signs **Tesla Motors MA, Inc.**    Date 06/25/2022    By X *Yaron Klein*    Title CFO/Treasurer

---

**LAW** FORM NO. 553-MA-ARB-e (REV 11/19)
©2019 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.    *LAW 553-MA-ARB-e 11/19 v1*    Page 5 of 5

This retention copy was created on Jun 25, 2022 11:30:56 AM for Tesla, Inc..

# EXHIBIT 17

**LAW 553-NY-B-A-eps 10/18**

## RETAIL INSTALMENT CONTRACT
### SIMPLE FINANCE CHARGE (WITH ARBITRATION PROVISION)

Dealer Number _____   Contract Number _____

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| Wafay Abdul Nadir ▮▮▮▮ | | Tesla Motors New York LLC<br>1000 Nesconset Highway<br>Nesconset, NY 11767<br>Suffolk |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used/Demo | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| New | 2021 | Tesla Model Y | ▮▮▮▮9462 | Personal, family, or household unless otherwise indicated below<br>☐ business<br>☐ agricultural  ☐ N/A |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $13,408.39 is |
|---|---|---|---|---|
| 2.84 % | $ 4,271.40 | $ 47,421.00 | $ 51,692.40 | $ 65,100.79 |

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on page 5 of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X  *Wafay Abdul Nadir*

Co-Buyer Signs X ▮▮▮▮

### Your Payment Schedule Will Be:
(e) means an estimate

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | $ 717.95 | Monthly beginning  06/21/2021 |
| N/A | N/A | N/A |

Or As Follows:

N/A

**GAP Waiver Notice**
☒ If this box is checked, and if the vehicle is a total loss because it is confiscated, damaged, or stolen, you will not be liable for the gap amount. The gap amount is the excess, if any, of (1) the amount you would owe under this contract as of the date of loss if the vehicle were not a total loss and you were to prepay the contract in full (less any refunds we get for cancelling optional insurance, maintenance, service or other contracts), over (2) the sum of (a) any past due payments and other amounts due because you broke promises in this contract and (b) the actual cash value of the vehicle immediately before the loss.

**Late Charge.** If payment is not received in full within __10__ days after it is due, you will pay a late charge of $ __1.00__ or __5__ % of the part of the payment that is late, whichever is __greater__ .

**Prepayment.** If you pay early, you will not have to pay a penalty.

**Security Interest.** You are giving a security interest in the vehicle being purchased.

**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

### WARRANTIES
The following paragraph does not affect any warranties covering the vehicle that the manufacturer may provide or limit any rights you may have under the Lemon Laws or, for used vehicles, under the certificate of servicibility that was included in your purchase contract. The following paragraph also does not apply if a used vehicle is a used vehicle you bought in New York City.

**Unless the Seller makes a written warranty or enters into a service contract within 90 days of the date of this contract, the Seller makes no warranties on the vehicle. Making no warranties means that you get no express warranties, and no implied warranties of merchantability or fitness for a particular purpose.**

The following notice only applies to used vehicles bought in New York City:

### IMPORTANT NOTICE TO BUYER
**(A) STATE LAW REQUIRES THAT SELLERS OF SECOND-HAND CARS CERTIFY IN WRITING TO THE BUYER THAT EACH CAR IS IN SAFE CONDITION AT THE TIME OF SALE.**
**(B) THIS CERTIFICATION IS A GUARANTEE THAT THE CAR IS IN SAFE CONDITION AT THE TIME OF SALE.**
**(C) YOU HAVE A RIGHT TO REQUEST THE DEALER TO REPAIR OR TO PAY IN FULL FOR REPAIRS OF ANY UNSAFE CONDITION IN THE CAR WHICH DOES NOT COMPLY WITH THIS CERTIFICATION.**
**(D) THIS BUSINESS IS LICENSED BY THE DEPARTMENT OF CONSUMER AFFAIRS, 42 BROADWAY, NEW YORK, NEW YORK 10004. COMPLAINT PHONE: (212) 639-9675.**

Buyer Signs X  *Wafay Abdul Nadir*   Co-Buyer Signs X ▮▮▮▮

## ITEMIZATION OF AMOUNT FINANCED

1 Cash Price (including $ __4,811.89__ sales tax)                                           $ __60,601.89__ (1)

2 Total Downpayment =

Your trade-in is a __N/A__ | __N/A__ | __N/A__ | __N/A__
Year | Make | Model | Vehicle Identification No.

Gross Trade-In Allowance                                                              $ __0.00__

Less Prior Credit or Lease Balance (e)                                                $ __0.00__

Equals Net Trade In                                                                   $ __0.00__

+ Cash                                                                                $ __13,408.39__

+ Other __N/A__                                                                       $ __N/A__

+ Other __N/A__                                                                       $ __N/A__

(If total downpayment is negative, enter "0" and see 4I below)                        $ __13,408.39__ (2)

3 Unpaid Balance of Cash Price (1 minus 2)                                            $ __47,193.50__ (3)

4 Other Charges Including Amounts Paid to Others on Your Behalf

(Seller may keep part of these amounts):

A Cost of Optional Credit Insurance

Paid to Insurance Company or Companies

Life                                                 $ __N/A__

Disability                                           $ __N/A__       $ __N/A__

B Vendor's Single Interest Insurance Paid to Insurance Company                        $ __N/A__

C Other Optional Paid to Insurance Company or Companies                               $ __N/A__

D Fees Paid to Government Agencies

to __N/A__ for __N/A__                                                                $ __N/A__

to __N/A__ for __N/A__                                                                $ __N/A__

E Government Taxes Not Included in Cash Price                                         $ __N/A__

F Government License and/or Registration Fees

Registration Fees                                                                    $ __227.50__

G Government Certificate of Title Fees                                                $ __N/A__

H Government Waste Tire Management Fee                                                $ __N/A__

I Other Charges (Seller must identify who is paid and describe purpose)

to __N/A__ for Prior Credit or Lease Balance (e)                                     $ __N/A__

to __CT DMV Consultants__ for __N/A__                                                $ __N/A__

to __N/A__ for __N/A__                                                               $ __N/A__

to __N/A__ for __N/A__                                                               $ __N/A__

to __N/A__ for __N/A__                                                               $ __N/A__

to __N/A__ for __N/A__                                                               $ __N/A__

to __N/A__ for __N/A__                                                               $ __N/A__

to __N/A__ for __N/A__                                                               $ __N/A__

to __N/A__ for __N/A__                                                               $ __N/A__

Total Other Charges and Amounts Paid to Others on Your Behalf                        $ __227.50__ (4)

5 Amount Financed (3 + 4)                                                             $ __47,421.00__ (5)

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before

__N/A__ , Year __N/A__ . SELLER'S INITIALS __N/A__

☐ VENDOR'S SINGLE INTEREST INSURANCE (VSI insurance): If the preceding box is checked, the Creditor requires VSI insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft). VSI insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. **You may choose the insurance company through which the VSI insurance is obtained.** If you elect to purchase VSI insurance through the Creditor, **the cost of this insurance is $** __N/A__ and is also shown in item 4B of the Itemization of Amount Financed. The coverage is for the initial term of the contract.

**Returned Check Charge:** You agree to pay a charge of $ __20__ if any check you give us is dishonored.

---

Insurance: You may buy the physical damage insurance this contract requires from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest Insurance is required is checked below.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

### Check the insurance you want and sign below:

### Optional Credit Insurance

☐ Credit Life: ☐ Buyer ☐ Co-Buyer ☐ Both

☐ Credit Disability: ☐ Buyer ☐ Co-Buyer ☐ Both

Premium:

Credit Life $ __N/A__

Credit Disability $ __N/A__

Insurance Company Name

__N/A__

Home Office Address

__N/A__

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

### Other Optional Insurance

☐

__N/A__ | __N/A__

Type of Insurance | Term

Premium $ __N/A__

Insurance Company Name

__N/A__

Home Office Address

__N/A__

☐

__N/A__ | __N/A__

Type of Insurance | Term

Premium $ __N/A__

Insurance Company Name

__N/A__

Home Office Address

__N/A__

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the insurance checked above.

**X** __N/A__                                              __N/A__

Buyer Signature                                            Date

**X** __N/A__                                              __N/A__

Co-Buyer Signature                                         Date

**THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS.**

---

Buyer Signs X _Wafay Abdul Nadir_                   Co-Buyer Signs X ▨▨▨▨▨                    *LAW 553-NY-B-A-eps 10/18 v1*    Page 2 of 6

## NO COOLING OFF PERIOD UNLESS YOU HAVE A CONTRACT CANCELLATION OPTION

**State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales. It also does not apply if you buy a used vehicle from a Seller-Creditor located in New York City and you did not decline your option to cancel. The laws of New York City provide a two-day cancellation option if you buy a used vehicle. This cancellation option is subject to certain conditions. See the NYC Used Car Contract Cancellation Option agreement for details.**

☐ If checked, your last installment payment under this contract is a balloon payment ("Balloon Payment"). You have the option to do one or more of the following, as checked, at the time the Balloon Payment is due:

a) ☐ You may pay your Balloon Payment when due.

b) ☐ You may refinance the Balloon Payment. See paragraph 1.e. below for details.

c) ☐ You may sell the vehicle back to us. See paragraph 1.e. below for details. If you exercise this option, $ __N/A__ per mile for each mile in excess of __N/A__ miles shown on the odometer will be deducted from the sale price. The sale price will also be adjusted for excess wear and use as provided in paragraph 1.e.

**Trade-In Payoff Agreement:** Seller relied on information from you and/or the lienholder or lessor of your trade-in vehicle to arrive at the payoff amount shown in item 2 of the Itemization of Amount Financed as the "Prior Credit or Lease Balance." You understand that the amount quoted is an estimate.
If the actual payoff amount is more than the amount shown in 2 you must pay the Seller the excess on demand. If the actual payoff amount is less than the amount shown in 2 Seller will refund to you any overage Seller receives from your prior lienholder or lessor.

Buyer Signature X �myay▬▬▬▬▬▬▬▬▬▬▬▬▬   Co-Buyer Signature X ▬▬▬▬▬▬▬▬▬▬▬▬▬

## OTHER IMPORTANT AGREEMENTS

### 1. FINANCE CHARGE AND PAYMENTS

**a. How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

**b. How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.

**c. How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

**d. You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts you owe up to the date of your payment.

**e. Balloon Payment Options.** Your Balloon Payment is due and payable as disclosed above. Because the contract is a simple finance charge contract, your Balloon Payment may differ from the amount shown depending on your payment habits. If checked above, you have the following options.

*Pay in Full.* You may pay the Balloon Payment in full when due.

*Refinance.* You may refinance the Balloon Payment unless you are in default under the contract. If we have advanced funds to cure any default, you must pay us back before the refinancing. You also must provide proof of insurance acceptable to us before the refinancing. The annual percentage rate for the refinancing will be the lower of the rate agreed to by you and us at the time of refinancing or the maximum rate permitted by law. The term of the refinancing will be based on the amount refinanced, the rate, and the amount of the monthly payment. The refinanced monthly payment will be the same as in this contract if the refinanced amount will be fully paid within 36 months of the due date of the Balloon Payment. Otherwise, the monthly payment amount will be the amount needed to fully pay the refinanced amount within 36 months of the due date of the Balloon Payment. If you wish to refinance, you must notify us in writing. The notice must be received no later than 30 days prior to the due date of the Balloon Payment. If you choose to refinance the Balloon Payment at the time the Balloon Payment is due, we will provide you with the disclosures required under the federal Truth in Lending Act in the agreement to refinance we make with you. Both you and we must sign the agreement to refinance.

*Sell Back.* You may sell the vehicle to us for an amount equal to the Balloon Payment. You must pay us any other amount owed under the contract. The amount you owe will be based, in part, on the vehicle's mileage. You also must pay us the estimated costs of all repairs to the vehicle that are the result of excess mileage and excess wear and use, as described on this page. You must take the vehicle for inspection, to a place we select, no later than 15 days prior to the Balloon Payment due date. After the inspection, if you decide to sell the vehicle to us, you must deliver the vehicle to us no later than the Balloon Payment due date. At that time, you must also give us a title, which shows no liens other than our lien, transferring ownership to us or a person we select. After the inspection, if you decide not to sell the vehicle to us, you must immediately contact us and tell us whether you want to pay or refinance the last installment payment.

You must pay us the excess mileage fee shown above. You are also responsible for repairs of all damage to the vehicle that is the result of excess wear and use. These repairs include, but are not limited to:

- Replace any tire not part of a matching set of four or any tire which has less than 1/8 inch of remaining tread.
- Repair all mechanical defects.
- Repair or replace all dented, scratched, chipped, rusted or mismatched body panels, paint or vehicle identification items; all dented, scratched, rusted, pitted, broken or missing trim and grill work; all scratched, cracked, pitted or broken glass; all faulty window mechanisms; all stains, burns or worn areas; and all damage which would be covered by collision or comprehensive insurance whether or not such insurance is actually in force.

Buyer Signs X *Wafay Abdul Nadir* _____   Co-Buyer Signs X ▬▬▬▬▬▬▬▬▬   *LAW 553-NY-B-A.eps 10/18 v1*   Page 3 of 6

If you have had made the repairs before inspection of the vehicle you will owe the estimated costs of such repairs, even if the repairs are not made prior to your sale of the vehicle to us. If you disagree with the estimated costs of repairs, you may have the repairs made at your expense prior to your sale of the vehicle to us.

## 2. YOUR OTHER PROMISES TO US

**a. If the vehicle is damaged, destroyed, or missing.** The following paragraph does not apply if the box in the GAP Waiver Notice on page 1 of this contract is checked.

You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing. The terms and conditions of your liability if the vehicle is damaged, destroyed, or missing are described in a separate document you sign. The document is a part of this contract.

**b. Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

**c. Security Interest.**

You give us a security interest in:
- The vehicle and all parts or goods put on it;
- All money or goods received (proceeds) for the vehicle;
- All insurance, maintenance, service, or other contracts we finance for you; and
- All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

**d. Insurance you must have on the vehicle.**

You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium for the insurance and a finance charge computed at the Annual Percentage Rate shown on page 1 of this contract.

If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

**e. What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, we may subtract the refund from what you owe.

## 3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES

**a. You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.

If you pay late, we may also take the steps described below.

**b. You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once subject to any right you have to reinstate the contract for less (see below). Default means:
- You do not pay any payment on time;
- You give false, incomplete, or misleading information on a credit application;
- You start a proceeding in bankruptcy or one is started against you or your property; or
- You break any agreements in this contract.

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Prepaid Finance Charge and the Finance Charge, any late charges, and any amounts due because you defaulted.

**c. You may have to pay collection costs.** If we hire an attorney who is not our salaried employee to collect what you owe, you will pay the attorney's fee and court costs as permitted by law. The maximum attorney's fee you will pay will be 15% of the amount you owe.

**d. We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

**e. How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back. If two things are true, you have the right to get the vehicle back by paying all past due payments, any late charges, and any expenses we incurred related to retaking the vehicle, holding it, and preparing it for sale (reinstate). First, you must have bought the vehicle primarily for personal, family, or household use. Second, your only default is a failure to pay an instalment payment on time. Otherwise, we will tell you how much to pay to get the vehicle back. Your right to get the vehicle back ends when we sell it.

**f. We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.

We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

**g. What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

Buyer Signs X  *Wafay Abdul Nadir*          Co-Buyer Signs X ▮▮▮▮▮▮▮▮▮▮▮▮          *LAW 553-NY-B-A-eps 10/18 v1*          Page 4 of 6

**4.    SERVICING AND COLLECTION CONTACTS**
You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

**5.    Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**

Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

**6.    APPLICABLE LAW**
Federal law and the law of the state of our address shown on page 1 of this contract apply to this contract.

---

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

---

**ARBITRATION PROVISION**
**PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS**
1.  **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**
2.  **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**
3.  **DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019 (www.adr.org), or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless the law or the rules of the chosen arbitration organization require us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.

***The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.***

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.   Buyer Signs **X** *Wafay Abdul Nadir*   Co-Buyer Signs **X**

If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

**See the rest of this contract for other important agreements.**

**NOTICE TO BUYER: 1. Do not sign this agreement before you read it or if it contains any blank space. 2. You are entitled to a completely filled in copy of the agreement. 3. Under the law, you have a right to pay off in advance the full amount due. If you do so, you may, depending on the nature of the credit service charge, either (a) prepay without penalty, or (b) under certain circumstances obtain a rebate of the credit service charge. 4. According to law, you have the privilege of purchasing the insurance on the motor vehicle provided for in this contract from an agent or broker of your own selection.**

**You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledge that you have read all pages of this contract, including the arbitration provision on page 5, before signing below. You confirm that you received a completely filled-in copy when you signed it.**

**RETAIL INSTALMENT CONTRACT**

Buyer Signs **X** *Wafay Abdul Nadir*   Date 05/07/2021   Co-Buyer Signs **X**                    Date N/A

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here **X** N/A     Address _____ N/A

Seller signs **Tesla Motors New York LLC**   Date 05/07/2021   By **X** *Yaron Klein*     Title CFO/Treasurer

Seller assigns its interest in this contract to   JPMorgan Chase Bank, N.A.     (Assignee) under the terms of Seller's agreement(s) with Assignee.

☐ Assigned with recourse      ☒ Assigned without recourse           ☐ Assigned with limited recourse

Seller **Tesla Motors New York LLC**      By   *Yaron Klein*       Title CFO/Treasurer

**ILAW** FORM NO. 553-NY-B-A-eps (REV 10/18)
©2018 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR
FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

# EXHIBIT 18

RN115021663-1624715486

This is a retention copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 4:23-cv-03878-YGR   Document 45   Filed 11/22/23   Page 52 of 65

LAW   553-CA-ARB-e 7/16

# RETAIL INSTALLMENT SALE CONTRACT – SIMPLE FINANCE CHARGE (WITH ARBITRATION PROVISION)

Dealer Number _____   Contract Number _____   R.O.S. Number _____   Stock Number _____

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| Samuel Albert Van Diest | | Tesla Motors Inc. 45500 Fremont Blvd. Fremont, CA 94538 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle below on credit under the agreements on all pages of this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New Used | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| New | 2021 | Tesla Model 3 | 15 | ███████████03904 | Personal, family or household unless otherwise indicated below. ☐ business or commercial |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $6,099.66 is |
|---|---|---|---|---|
| 2.49 % | $ 3,864.84 (e) | $ 49,107.00 (e) | $ 52,971.84 (e) | $ 59,071.50 (e) |

(e) means an estimate

### YOUR PAYMENT SCHEDULE WILL BE:

| Number of Payments: | Amount of Payments: | When Payments Are Due: |
|---|---|---|
| One Payment of | N/A | N/A | N/A |
| One Payment of | N/A | N/A | N/A |
| One Payment of | N/A | N/A | N/A |
| 72 | 735.72 | Monthly beginning 08/12/2021 |
| | N/A | N/A | N/A |
| One final payment | N/A | N/A | N/A |

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge of 5% of the part of the payment that is late.
**Prepayment.** If you pay early, you may be charged a minimum finance charge.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date, minimum finance charges, and security interest.

### STATEMENT OF INSURANCE

**NOTICE.** No person is required as a condition of financing the purchase of a motor vehicle to purchase or negotiate any insurance through a particular insurance company, agent or broker. You are not required to buy any other insurance to obtain credit. Your decision to buy or not buy other insurance will not be a factor in the credit approval process.

**Vehicle Insurance**

| | Term | Premium |
|---|---|---|
| $ N/A Ded. Comp., Fire & Theft | N/A Mos. | $ N/A |
| $ N/A Ded. Collision | N/A Mos. | $ |
| Bodily Injury $ N/A Limits | N/A Mos. | $ |
| Property Damage $ N/A Limits | N/A Mos. | $ |
| Medical N/A | N/A Mos. | $ |
| Total Vehicle Insurance Premiums | | $ |

UNLESS A CHARGE IS INCLUDED IN THIS AGREEMENT FOR PUBLIC LIABILITY OR PROPERTY DAMAGE INSURANCE, PAYMENT FOR SUCH COVERAGE IS NOT PROVIDED BY THIS AGREEMENT.

You may buy the physical damage insurance this contract requires from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit.

Buyer X *Samuel Albert Van Diest*
Co-Buyer X
Seller X *Alexander Paul Ascencia*

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on page 7 of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X *Samuel Albert Van Diest*
Co-Buyer Signs X

## AUTO BROKER FEE DISCLOSURE

If this contract reflects the retail sale of a new motor vehicle, the sale is not subject to a fee received by an autobroker from us unless the following box is checked:

☐ Name of autobroker receiving fee, if applicable: _____ N/A

LAW 553-CA-ARB-e 7/16 v1   Page 1 of 7

This retention copy was created on Jun 28, 2021 08:33:50 PM for Tesla, Inc..

RN115021663-1624715486

This is a retention copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 4:23-cv-03878-YGR   Document 45   Filed 11/22/23   Page 53 of 65

**ITEMIZATION OF THE AMOUNT FINANCED** (Seller may keep part of the amounts paid to others.)

**1. Total Cash Price**

A. Cash Price of Motor Vehicle and Accessories .......................... $ 50,290.00 (A)

  1. Cash Price Vehicle ................................... $ 50,290.00

  2. Cash Price Accessories ............................... $ N/A

  3. Other (Nontaxable)

    Describe _____ N/A _____ $ N/A

    Describe _____ N/A _____ $ N/A

B. Document Processing Charge (not a governmental fee) ............ $ N/A (B)

C. Emissions Testing Charge (not a governmental fee) ............... $ N/A (C)

D. (Optional) Theft Deterrent Device(s)

  1. (paid to) _____ N/A _____ $ N/A (D1)

  2. (paid to) _____ N/A _____ $ N/A (D2)

  3. (paid to) _____ N/A _____ $ N/A (D3)

E. (Optional) Surface Protection Product(s)

  1. (paid to) _____ N/A _____ $ N/A (E1)

  2. (paid to) _____ N/A _____ $ N/A (E2)

F. EV Charging Station (paid to) _____ N/A _____ $ N/A (F)

G. Sales Tax (on taxable items in A through F) ....................... $ 4,274.66 (G)

H. Electronic Vehicle Registration or Transfer Charge
(not a governmental fee) (paid to)   Tesla, Inc.   $ 30.00 (H)

I. (Optional) Service Contract(s)

  1. (paid to) _____ N/A _____ $ N/A (I1)

  2. (paid to) _____ N/A _____ $ N/A (I2)

  3. (paid to) _____ N/A _____ $ N/A (I3)

  4. (paid to) _____ N/A _____ $ N/A (I4)

  5. (paid to) _____ N/A _____ $ N/A (I5)

J. Prior Credit or Lease Balance (e) paid by Seller to
Vehicle 1 _____ Vehicle 2 N/A _____ $ 0.00 (J)

  (see downpayment and trade-in calculation)

K. (Optional) Debt Cancellation Agreement ........................... $ N/A (K)

L. (Optional) Used Vehicle Contract Cancellation Option Agreement .. $ N/A (L)

M. Other (paid to) _____ N/A _____ $ N/A (M)

  For _____ N/A _____

N. Other (paid to) _____ N/A _____ $ N/A (N)

  For _____ N/A _____

**Total Cash Price** (A through N) ................................ $ 54,594.66 (1)

**2. Amounts Paid to Public Officials**

A. Vehicle License Fees ............................................. $ 327.00 (A)

B. Registration/Transfer/Titling Fees ............................... $ 278.00 (B)

C. California Tire Fees .............................................. $ 7.00 (C)

D. Other N/A _____

**Total Official Fees** (A through D) ............................. $ 612.00 (2)

**3. Amount Paid to Insurance Companies**

(Total premiums from Statement of Insurance) ...................... $ N/A (3)

**4.** ☐ State Emissions Certification Fee or ☐ State Emissions Exemption Fee $ N/A (4)

**5. Subtotal** (1 through 4) ...................................... $ 55,206.66 (5)

**6. Total Downpayment**

A. Total Agreed Value of Property Being Traded-In (see Trade-In Vehicle(s)): $ 0.00 (A)

  Vehicle 1 $ 0.00    Vehicle 2 $ N/A

B. Total Less Prior Credit or Lease Balance (e) .................... $ 0.00 (B)

  Vehicle 1 $ 0.00    Vehicle 2 $ N/A

C. Total Net Trade-In (A–B) (indicate if negative number) .......... $ 0.00 (C)

  Vehicle 1 $ 0.00    Vehicle 2 $ N/A

D. Deferred Downpayment Payable to Seller .......................... $ N/A (D)

E. Manufacturer's Rebate ........................................... $ 1,500.00 (E)

F. Other N/A _____ $ N/A (F)

G. Cash, Cash Equivalent, Check, Credit Card, or Debit Card ........ $ 4,599.66 (G)

**Total Downpayment** (C through G) ............................... $ 6,099.66 (6)

(If negative, enter zero on line 6 and enter the amount less than zero as a positive number on line 1J above)

**7. Amount Financed** (5 less 6) ................................. $ 49,107.00 (7)

---

**OPTIONAL SERVICE CONTRACT(S)** You want to purchase the service contract(s) written with the following company(ies) for the term(s) shown below for the charge(s) shown in item 11.

I1 Company _____ N/A _____

Term ___ N/A ___ Mos. or ___ N/A ___ Miles

I2 Company _____ N/A _____

Term ___ N/A ___ Mos. or ___ N/A ___ Miles

I3 Company _____ N/A _____

Term ___ N/A ___ Mos. or ___ N/A ___ Miles

I4 Company _____ N/A _____

Term ___ N/A ___ Mos. or ___ N/A ___ Miles

I5 Company _____ N/A _____

Term ___ N/A ___ Mos. or ___ N/A ___ Miles

Buyer X _____

**OPTIONAL DEBT CANCELLATION AGREEMENT.** A debt cancellation agreement is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy debt cancellation, the charge is shown in item 1K of the Itemization of Amount Financed. See your debt cancellation agreement for details on the terms and conditions it provides. It is a part of this contract.

Term _____ N/A ___ Mos. _____

                        Debt Cancellation Agreement

I want to buy a debt cancellation agreement.

**Buyer Signs X** _____ N/A _____

**Trade-In Vehicle(s)**

**1. Vehicle 1**

Year ___ N/A ___ Make _____ N/A _____

Model _____ N/A _____ Odometer ___ N/A ___

VIN _____

a. Agreed Value of Property ........................ $ 0.00

b. Buyer/Co-Buyer Retained Trade Equity ........... $ N/A

c. Agreed Value of Property
Being Traded-In (a–b) ............................ $ 0.00

d. Prior Credit or Lease Balance ................... $ 0.00

e. Net Trade-In (c–d) (must be ≥ 0
for buyer/co-buyer to retain equity) ............. $ 0.00

**2. Vehicle 2**

Year ___ N/A ___ Make _____ N/A _____

Model _____ N/A _____ Odometer ___ N/A ___

VIN _____

a. Agreed Value of Property ........................ $ N/A

b. Buyer/Co-Buyer Retained Trade Equity ........... $ N/A

c. Agreed Value of Property
Being Traded-In (a–b) ............................ $ N/A

d. Prior Credit or Lease Balance ................... $ N/A

e. Net Trade-In (c–d) (must be ≥ 0
for buyer/co-buyer to retain equity) ............. $ N/A

**Total Agreed Value of Property
Being Traded-In** (1c+2c) ......................... $ 0.00 *

**Total Prior Credit or Lease
Balance** (1d+2d) ................................. $ 0.00 *

**Total Net Trade-In** (1e+2e) .................... $ 0.00 *

(*See item 6A–6C in the Itemization of Amount Financed)

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 7, is paid in full on or before _____ N/A _____ , Year ___ N/A ___

SELLER'S INITIALS _____ N/A _____

LAW 553-CA-ARB-e 7/16 v1     Page 2 of 7

This retention copy was created on Jun 28, 2021 08:33:50 PM for Tesla, Inc..

RN115021663-1624715486
This is a retention copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.
Case 4:23-cv-03878-YGR   Document 45   Filed 11/22/23   Page 54 of 65

**Trade-In Payoff Agreement:** Seller relied on information from you and/or the lienholder or lessor of your trade-in vehicle(s) to arrive at the payoff amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s). You understand that the amount quoted is an estimate.

Seller agrees to pay the payoff amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s) to the lienholder or lessor of the trade-in vehicle(s), or its designee. If the actual payoff amount is more than the amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s), you must pay the Seller the excess on demand. If the actual payoff amount is less than the amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s), Seller will refund to you any overage Seller receives from your prior lienholder or lessor. Except as stated in the "NOTICE" on page 5 of this contract, any assignee of this contract will not be obligated to pay the Prior Credit or Lease Balance shown in Trade-In Vehicle(s) or any refund.

Buyer Signature X _____     Co-Buyer Signature X _____

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to the contract must be in writing and both you and we must sign it. No oral changes are binding.

Buyer Signs X *Samuel Albert Van Diest*     Co-Buyer Signs X _____

**SELLER'S RIGHT TO CANCEL** If Buyer and Co-Buyer sign here, the provisions of the Seller's Right to Cancel section on page 5 of this contract giving the Seller the right to cancel if Seller is unable to assign this contract to a financial institution will apply.

Buyer X *Samuel Albert Van Diest*     Co-Buyer X _____

THE MINIMUM PUBLIC LIABILITY INSURANCE LIMITS PROVIDED IN LAW MUST BE MET BY EVERY PERSON WHO PURCHASES A VEHICLE. IF YOU ARE UNSURE WHETHER OR NOT YOUR CURRENT INSURANCE POLICY WILL COVER YOUR NEWLY ACQUIRED VEHICLE IN THE EVENT OF AN ACCIDENT, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
    WARNING:
    YOUR PRESENT POLICY MAY NOT COVER COLLISION DAMAGE OR MAY NOT PROVIDE FOR FULL REPLACEMENT COSTS FOR THE VEHICLE BEING PURCHASED. IF YOU DO NOT HAVE FULL COVERAGE, SUPPLEMENTAL COVERAGE FOR COLLISION DAMAGE MAY BE AVAILABLE TO YOU THROUGH YOUR INSURANCE AGENT OR THROUGH THE SELLING DEALER. HOWEVER, UNLESS OTHERWISE SPECIFIED, THE COVERAGE YOU OBTAIN THROUGH THE DEALER PROTECTS ONLY THE DEALER, USUALLY UP TO THE AMOUNT OF THE UNPAID BALANCE REMAINING AFTER THE VEHICLE HAS BEEN REPOSSESSED AND SOLD.
    FOR ADVICE ON FULL COVERAGE THAT WILL PROTECT YOU IN THE EVENT OF LOSS OR DAMAGE TO YOUR VEHICLE, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
    THE BUYER SHALL SIGN TO ACKNOWLEDGE THAT HE/SHE UNDERSTANDS THESE PUBLIC LIABILITY TERMS AND CONDITIONS.

S/S X *Samuel Albert Van Diest*     X _____

**Electronic Contracting and Signature Acknowledgment.** You agree that (i) this contract is an electronic contract executed by you using your electronic signature, (ii) your electronic signature signifies your intent to enter into this contract and that this contract be legally valid and enforceable in accordance with its terms to the same extent as if you had executed this contract using your written signature and (iii) the authoritative copy of this contract ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by us for the storage of authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the foregoing, if the Authoritative Copy is converted by printing a paper copy which is marked by us as the original (the "Paper Contract"), then you acknowledge and agree that (1) your signing of this contract with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this contract, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, your obligations will be evidenced by the Paper Contract alone.

### CREDIT DISABILITY INSURANCE NOTICE
### CLAIM PROCEDURE

If you become disabled, you must tell us right away. (You are advised to send this information to the same address to which you are normally required to send your payments, unless a different address or telephone number is given to you in writing by us as the location where we would like to be notified.) We will tell you where to get claim forms. You must send in the completed form to the insurance company as soon as possible and tell us as soon as you do.

If your disability insurance covers all of your missed payment(s), WE CANNOT TRY TO COLLECT WHAT YOU OWE OR FORECLOSE UPON OR REPOSSESS ANY COLLATERAL UNTIL THREE CALENDAR MONTHS AFTER your first missed payment is due or until the insurance company pays or rejects your claim, whichever comes first. We can, however, try to collect, foreclose, or repossess if you have any money due and owing us or are otherwise in default when your disability claim is made or if a senior mortgage or lien holder is foreclosing.

If the insurance company pays the claim within the three calendar months, we must accept the money as though you paid on time. If the insurance company rejects the claim within the three calendar months or accepts the claim within the three calendar months on a partial disability and pays less than for a total disability, you will have 35 days from the date that the rejection or the acceptance of the partial disability claim is sent to pay past due payments, or the difference between the past due payments and what the insurance company pays for the partial disability, plus late charges. You can contact us, and we will tell you how much you owe. After that time, we can take action to collect or foreclose or repossess any collateral you may have given.

If the insurance company accepts your claim but requires that you send in additional forms to remain eligible for continued payments, you should send in these completed additional forms no later than required. If you do not send in these forms on time, the insurance company may stop paying, and we will then be able to take action to collect or foreclose or repossess any collateral you may have given.

This retention copy was created on Jun 28, 2021 08:33:50 PM for Tesla, Inc..

This is an Electronic Original® document managed by the eCore™ On Demand (EOD™) Service.

## 1. FINANCE CHARGE AND PAYMENTS

**a. How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed. Seller - Creditor may receive part of the Finance Charge.

**b. How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.

**c. How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

**d. You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment. As of the date of your payment, if the minimum finance charge is greater than the earned Finance Charge, you may be charged the difference; the minimum finance charge is as follows: (1) $25 if the original Amount Financed does not exceed $1,000, (2) $50 if the original Amount Financed is more than $1,000 but not more than $2,000, or (3) $75 if the original Amount Financed is more than $2,000.

## 2. YOUR OTHER PROMISES TO US

**a. If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

---

**GAP LIABILITY NOTICE**
In the event of theft or damage to your vehicle that results in a total loss, there may be a gap between the amount you owe under this contract and the proceeds of your insurance settlement and deductible. THIS CONTRACT PROVIDES THAT YOU ARE LIABLE FOR THE GAP AMOUNT. An optional debt cancellation agreement for coverage of the gap amount may be offered for an additional charge.

---

**b. Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

**c. Security Interest.**
You give us a security interest in:
- The vehicle and all parts or goods put on it;
- All money or goods received (proceeds) for the vehicle;
- All insurance, maintenance, service, or other contracts we finance for you; and
- All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract as the law allows. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

**d. Insurance you must have on the vehicle.**
You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium for the insurance and a finance charge computed at the Annual Percentage Rate shown on page 1 of this contract or, at our option, the highest rate the law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

**e. What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

## 3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES

**a. You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also take the steps described below.

**b. You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once, subject to any right the law gives you to reinstate this contract.
Default means:
- You do not pay any payment on time;
- You give false, incomplete, or misleading information on a credit application;
- You start a proceeding in bankruptcy or one is started against you or your property;
- The vehicle is lost, damaged or destroyed; or
- You break any agreements in this contract.

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

**c. You may have to pay collection costs.** You will pay our reasonable costs to collect what you owe, including attorney fees, court costs, collection agency fees, and fees paid for other reasonable collection efforts. You agree to pay a charge not to exceed $15 if any check you give to us is dishonored.

**d. We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

**e. How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). You may redeem the vehicle by paying all you owe, or you may have the right to reinstate this contract and redeem the vehicle by paying past due payments and any late charges, providing proof of insurance, and/or taking other action to cure the default. We will provide you all notices required by law to tell you when and how much to pay and/or what action you must take to redeem the vehicle.

This retention copy was created on Jun 28, 2021 08:33:50 PM for Tesla, Inc..

RN115021663-1624715486
This is a retention copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.
Case 4:23-cv-03878-YGR   Document 45   Filed 11/22/23   Page 56 of 65

**f.** **We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.

We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at the Annual Percentage Rate shown on page 1 of this contract, not to exceed the highest rate permitted by law, until you pay.

**g.** **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

**4.** **WARRANTIES SELLER DISCLAIMS**
**If you do not get a written warranty, and the Seller does not enter into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.**
This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide. If the Seller has sold you a certified used vehicle, the warranty of merchantability is not disclaimed.

**5.** **Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**
Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

**6.** **SERVICING AND COLLECTION CONTACTS**
You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you. **You agree that you will within a reasonable time notify us of any change in your name, address, or employment.**

**7.** **APPLICABLE LAW**
Federal law and California law apply to this contract. If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

**8.** **WARRANTIES OF BUYER**
You promise you have given true and correct information in your application for credit, and you have no knowledge that will make that information untrue in the future. We have relied on the truth and accuracy of that information in entering into this contract. Upon request, you will provide us with documents and other information necessary to verify any item contained in your credit application.

You waive the provisions of Calif. Vehicle Code Section 1808.21 and authorize the California Department of Motor Vehicles to furnish your residence address to us.

---

**Seller's Right to Cancel**

a. Seller agrees to deliver the vehicle to you on the date this contract is signed by Seller and you. You understand that it may take some time for Seller to verify your credit and assign the contract. You agree that if Seller is unable to assign the contract to any one of the financial institutions with whom Seller regularly does business under an assignment acceptable to Seller, Seller may cancel the contract.

b. Seller shall give you written notice (or in any other manner in which actual notice is given to you) within 10 days of the date this contract is signed if Seller elects to cancel. Upon receipt of such notice, you must immediately return the vehicle to Seller in the same condition as when sold, reasonable wear and tear excepted. Seller must give back to you all consideration received by Seller, including any trade-in vehicle.

c. If you do not immediately return the vehicle, you shall be liable for all expenses incurred by Seller in taking the vehicle from you, including reasonable attorney's fees.

d. While the vehicle is in your possession, all terms of the contract, including those relating to use of the vehicle and insurance for the vehicle, shall be in full force and you shall assume all risk of loss or damage to the vehicle. You must pay all reasonable costs for repair of any damage to the vehicle until the vehicle is returned to Seller.

---

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

This retention copy was created on Jun 28, 2021 08:33:50 PM for Tesla, Inc..

RN115021663-1624715486

This is a retention copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 4:23-cv-03878-YGR   Document 45   Filed 11/22/23   Page 57 of 65

**Notice to buyer: (1) Do not sign this agreement before you read it or if it contains any blank spaces to be filled in. (2) You are entitled to a completely filled in copy of this agreement. (3) You can prepay the full amount due under this agreement at any time. (4) If you default in the performance of your obligations under this agreement, the vehicle may be repossessed and you may be subject to suit and liability for the unpaid indebtedness evidenced by this agreement.**

If you have a complaint concerning this sale, you should try to resolve it with the seller.

Complaints concerning unfair or deceptive practices or methods by the seller may be referred to the city attorney, the district attorney, or an investigator for the Department of Motor Vehicles, or any combination thereof. After this contract is signed, the seller may not change the financing or payment terms unless you agree in writing to the change. You do not have to agree to any change, and it is an unfair or deceptive practice for the seller to make a unilateral change.

Buyer Signature X _Samuel Albert Van Diest_                    Co-Buyer Signature X

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

**THERE IS NO COOLING-OFF PERIOD UNLESS YOU OBTAIN A CONTRACT CANCELLATION OPTION**

California law does not provide for a "cooling-off" or other cancellation period for vehicle sales. Therefore, you cannot later cancel this contract simply because you change your mind, decide the vehicle costs too much, or wish you had acquired a different vehicle. After you sign below, you may only cancel this contract with the agreement of the seller or for legal cause, such as fraud. However, California law does require a seller to offer a two-day contract cancellation option on used vehicles with a purchase price of less than forty thousand dollars ($40,000), subject to certain statutory conditions. This contract cancellation option requirement does not apply to the sale of a recreational vehicle, a motorcycle, or an off-highway motor vehicle subject to identification under California law. See the vehicle contract cancellation option agreement for details.

YOU AGREE TO THE TERMS OF THIS CONTRACT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT. YOU ACKNOWLEDGE THAT YOU HAVE READ ALL PAGES OF THIS CONTRACT, INCLUDING THE ARBITRATION PROVISION ON PAGE 7 OF THIS CONTRACT, BEFORE SIGNING BELOW. YOU CONFIRM THAT YOU RECEIVED A COMPLETELY FILLED-IN COPY WHEN YOU SIGNED IT.

**Buyer Signature X** _Samuel Albert Van Diest_   Date 06/28/2021   **Co-Buyer Signature X**                    Date N/A

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other Owner Signature X                    N/A                    Address                    N/A

**GUARANTY:** To induce us to sell this vehicle to Buyer, each person who signs as a Guarantor individually guarantees the payment of this contract. If Buyer fails to pay any money owing on this contract, each Guarantor must pay it when asked. Each Guarantor will be liable for the total amount owing even if other persons also sign as Guarantor, and even if Buyer has a complete defense to Guarantor's demand for reimbursement. Each Guarantor agrees to be liable even if we do one or more of the following: (1) give the Buyer more time to pay one or more payments; (2) give a full or partial release to any other Guarantor; (3) release any security; (4) accept less from the Buyer than the total amount owing; or (5) otherwise reach a settlement relating to this contract or extend the contract. Each Guarantor acknowledges receipt of a completed copy of this contract and guaranty at the time of signing.

Guarantor waives notice of acceptance of this Guaranty, notice of the Buyer's non-payment, non-performance, and default; and notices of the amount owing at any time, and of any demands upon the Buyer.

Guarantor X                 N/A                  Date   N/A        Guarantor X                 N/A                  Date   N/A

Address                     N/A                                  Address                     N/A

Seller Signs   Tesla Motors Inc.                Date 06/28/2021   By X _Alexander Paul Ascencio_        Title Operations Supervisor

*LAW 553-CA-ARB-e 7/16 v1*   Page 6 of 7

This retention copy was created on Jun 28, 2021 08:33:50 PM for Tesla, Inc..

RN115021663-1624715486
This is a retention copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.
Case 4:23-cv-03878-YGR   Document 45   Filed 11/22/23   Page 58 of 65

## ARBITRATION PROVISION

### PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS

1. **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**

2. **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**

3. **DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019 (www.adr.org), or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless the law or the rules of the chosen arbitration organization require us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.



**FORM NO. 553-CA-ARB-e** (REV. 7/16)
©2016 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR
FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

*LAW 553-CA-ARB-e 7/16 v1*    Page 7 of 7

This retention copy was created on Jun 28, 2021 08:33:50 PM for Tesla, Inc..

# EXHIBIT 19

This is a retention copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

**LAW 553-CA-ARB-e 8/22**

# RETAIL INSTALLMENT SALE CONTRACT – SIMPLE FINANCE CHARGE (WITH ARBITRATION PROVISION)

| Buyer Name and Address (Including County and Zip Code) SERGEY KHALIKULOV | Co-Buyer Name and Address (Including County and Zip Code) JORDAN NICOLE AMANN | Seller-Creditor (Name and Address) Tesla Motors Inc. 45500 Fremont Blvd Fremont, CA 94538 Alameda |
|---|---|---|

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| Used | 2020 | Tesla Model 3 | 13050 | 0589 | Personal, family, or household unless otherwise indicated below ☐ business or commercial |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $35,999.63 |
|---|---|---|---|---|
| 6.89 % | $ 3,840.64 (e) | $ 16,904.00 (e) | $ 20,744.64 (e) | $ 56,744.27 (e) is |

(e) means an estimate

**STATEMENT OF INSURANCE**

NOTICE. No person is required as a condition of financing the purchase of a motor vehicle to purchase or negotiate any insurance through a particular insurance company, agent or broker. You are not required to buy any other insurance to obtain credit. Your decision to buy or not buy other insurance will not be a factor in the credit approval process.

### Vehicle Insurance

| | | | | | Premium |
|---|---|---|---|---|---|
| $ N/A | Ded, Comp., Fire & Theft | N/A Mos. | $ | | N/A |
| $ N/A | Ded, Collision | N/A Mos. | $ | | N/A |
| Bodily Injury $ N/A | Limits | N/A Mos. | $ | | N/A |
| Property Damage $ N/A | Limits | N/A Mos. | $ | | N/A |
| Medical | | N/A Mos. | $ | | N/A |
| N/A | | | | | |
| Total Vehicle Insurance Premiums | | | $ | | N/A |

UNLESS A CHARGE IS INCLUDED IN THIS AGREEMENT FOR PUBLIC LIABILITY OR PROPERTY DAMAGE INSURANCE, PAYMENT FOR SUCH COVERAGE IS NOT PROVIDED BY THIS AGREEMENT.

You may buy the physical damage insurance this contract requires from anyone you choose who is acceptable to us. You may also provide the physical damage insurance through an existing policy owned or controlled by you that is acceptable to us. You are not required to buy any other insurance to obtain credit.

Buyer X *SERGEY KHALIKULOV*

Co-Buyer X *JORDAN NICOLE AMANN*

Seller X *Troy Jones*

**YOUR PAYMENT SCHEDULE WILL BE:**

| Number of Payments: | Amount of Payments: | When Payments Are Due: |
|---|---|---|
| One Payment of | $ N/A | N/A |
| One Payment of | $ N/A | N/A |
| One Payment of | $ N/A | N/A |
| 72 | $ 288.12 | Monthly beginning 02/06/2023 |
| N/A | $ N/A | N/A |
| One final payment | $ N/A | N/A |

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge of 5% of the part of the payment that is late.
**Prepayment.** If you pay early, you may be charged a minimum finance charge.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date, minimum finance charges, and security interest.

**Trade-In Payoff Agreement:** Seller relied on information from you and/or the lienholder or lessor of your trade-in vehicle(s) to arrive at the payoff amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s). You understand that the amount quoted is an estimate.

Seller agrees to pay the payoff amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s) to the lienholder or lessor of the trade-in vehicle(s), or its designee. If the actual payoff amount is more than the amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s), you must pay the Seller the excess on demand. If the actual payoff amount is less than the amount shown as the Prior Credit or Lease Balance in Trade-In Vehicle(s), Seller will refund to you any overage Seller receives from your prior lienholder or lessor. Except as stated in the "NOTICE" on page 5 of this contract, any assignee of this contract will not be obligated to pay the Prior Credit or Lease Balance shown in Trade-In Vehicle(s) or any refund.

Buyer Signature X _____ Co-Buyer Signature X _____

## AUTO BROKER FEE DISCLOSURE

If this contract reflects the retail sale of a new motor vehicle, the sale is not subject to a fee received by an autobroker from us unless the following box is checked:

☐ Name of autobroker receiving fee, if applicable: N/A

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on page 5 of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X *SERGEY KHALIKULOV* Co-Buyer Signs X *JORDAN NICOLE AMANN*

This retention copy was created on Dec 23, 2022 02:16:09 PM for Tesla, Inc..

RN118192658-1671665762

This is a retention copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 4:23-cv-03878-YGR   Document 45   Filed 11/22/23   Page 61 of 65

**ITEMIZATION OF THE AMOUNT FINANCED** (Seller may keep part of the amounts paid to others.)

**1. Total Cash Price**

| | | | |
|---|---|---|---|
| A. Cash Price of Motor Vehicle and Accessories | | $ 48,100.00 | (A) |
|   1. Cash Price Vehicle | $ 48,100.00 | | |
|   2. Cash Price Accessories | $ N/A | | |
|   3. Other (Nontaxable) Describe N/A | $ N/A | | |
|   4. Other (Nontaxable) Describe N/A | $ N/A | | |
| B. Document Processing Charge (not a governmental fee) | | $ N/A | (B) |
| C. Emissions Testing Charge (not a governmental fee) | | $ N/A | (C) |
| D. (Optional) Theft Deterrent Device(s) | | | |
|   1. (paid to) N/A | | $ N/A | (D1) |
|   2. (paid to) N/A | | $ N/A | (D2) |
|   3. (paid to) N/A | | $ N/A | (D3) |
| E. (Optional) Surface Protection Product(s) | | | |
|   1. (paid to) N/A | | $ N/A | (E1) |
|   2. (paid to) N/A | | $ N/A | (E2) |
| F. EV Charging Station (paid to) N/A | | $ N/A | (F) |
| G. Sales Tax (on taxable items in A through F) | | $ 4,148.63 | (G) |
| H. Electronic Vehicle Registration or Transfer Charge (not a governmental fee) (paid to) Tesla, Inc. | | $ 31.00 | (H) |
| I. (Optional) Service Contract(s) | | | |
|   1. (paid to) N/A | | $ N/A | (I1) |
|   2. (paid to) N/A | | $ N/A | (I2) |
|   3. (paid to) N/A | | $ N/A | (I3) |
|   4. (paid to) N/A | | $ N/A | (I4) |
|   5. (paid to) N/A | | $ N/A | (I5) |
| J. Prior Credit or Lease Balance (e) paid by Seller to N/A (see downpayment and trade-in calculation) | | $ 0.00 | (J) |
| K. Prior Credit or Lease Balance (e) paid by Seller to N/A (see downpayment and trade-in calculation) | | $ N/A | (K) |
| L. (Optional) Debt Cancellation Agreement | | $ N/A | (L) |
| M. (Optional) Used Vehicle Contract Cancellation Option Agreement | | $ N/A | (M) |
| N. Other paid to N/A For N/A | | $ N/A | (N) |
| O. Other paid to N/A For N/A | | $ N/A | (O) |
| **Total Cash Price** (A through O) | | $ 52,279.63 | (1) |

**2. Amounts Paid to Public Officials**

| | | |
|---|---|---|
| A. Vehicle License Fees | $ 313.00 | (A) |
| B. Registration/Transfer/Titling Fees | $ 311.00 | (B) |
| C. California Tire Fees | $ 0.00 | (C) |
| D. Other N/A | $ N/A | (D) |
| **Total Official Fees** (A through D) | $ 624.00 | (2) |

**3. Amount Paid to Insurance Companies** (Total premiums from Statement of Insurance) — $ N/A (3)

**4.** ☐ **State Emissions Certification Fee or** ☐ **State Emissions Exemption Fee** — $ N/A (4)

**5. Subtotal** (1 through 4) — $ 52,903.63 (5)

**6. Total Downpayment**

| | | |
|---|---|---|
| A. Total Agreed Value of Property Being Traded-In (see Trade-In Vehicle(s)): | | |
|   Vehicle 1 $ 0.00 Vehicle 2 $ N/A | $ 0.00 | (A) |
| B. Total Less Prior Credit or Lease Balance (e) | | |
|   Vehicle 1 $ 0.00 Vehicle 2 $ N/A | $ 0.00 | (B) |
| C. Total Net Trade-In (A–B) | | |
|   Vehicle 1 $ 0.00 Vehicle 2 $ N/A | $ 0.00 | (C) |
| D. Deferred Downpayment Payable to Seller | $ N/A | (D) |
| E. Manufacturer's Rebate | $ N/A | (E) |
| F. Other N/A | $ N/A | (F) |
| G. Other N/A | $ N/A | (G) |
| H. Other N/A | $ N/A | (H) |
| I. Cash, Cash Equivalent, Check, Credit Card, or Debit Card | $ 35,999.63 | (I) |
| **Total Downpayment** (C through I) | $ 35,999.63 | (6) |

(If negative, enter zero on line 6 and enter the amount less than zero as a positive number on line 1J and/or 1K above)

**7. Amount Financed** (5 less 6) — $ 16,904.00 (7)

**OPTIONAL DEBT CANCELLATION AGREEMENT.** A debt cancellation agreement is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy debt cancellation, the charge is shown in item 1L of the Itemization of Amount Financed. See your debt cancellation agreement for details on the terms and conditions it provides. It is a part of this contract.

Term N/A Mos. ____N/A____
Debt Cancellation Agreement

I want to buy a debt cancellation agreement.

**Buyer Signs X** N/A

---

**OPTIONAL SERVICE CONTRACT(S)** You want to purchase the service contract(s) written with the following company(ies) for the term(s) shown below for the charge(s) shown in item 1I.

| | | | |
|---|---|---|---|
| I1 Company | N/A | | |
| Term N/A | Mos. or | N/A | Miles |
| I2 Company | N/A | | |
| Term N/A | Mos. or | N/A | Miles |
| I3 Company | N/A | | |
| Term N/A | Mos. or | N/A | Miles |
| I4 Company | N/A | | |
| Term N/A | Mos. or | N/A | Miles |
| I5 Company | N/A | | |
| Term N/A | Mos. or | N/A | Miles |

**Buyer X** N/A

---

**Trade-In Vehicle(s)**

**1. Vehicle 1**

| | | | | |
|---|---|---|---|---|
| Year N/A | Make | N/A | | |
| Model | N/A | Odometer | N/A | |
| VIN | N/A | | | |
| a. Agreed Value of Property | | $ | 0.00 | |
| b. Buyer/Co-Buyer Retained Trade Equity | $ | N/A | | |
| c. Agreed Value of Property Being Traded-In (a–b) | | $ | 0.00 | |
| d. Prior Credit or Lease Balance | | $ | 0.00 | |
| e. Net Trade-In (c–d) (must be ≥ 0 for buyer/co-buyer to retain equity) | | $ | 0.00 | |

**2. Vehicle 2**

| | | | | |
|---|---|---|---|---|
| Year N/A | Make | N/A | | |
| Model | N/A | Odometer | N/A | |
| VIN | N/A | | | |
| a. Agreed Value of Property | | $ | N/A | |
| b. Buyer/Co-Buyer Retained Trade Equity | $ | N/A | | |
| c. Agreed Value of Property Being Traded-In (a–b) | | $ | N/A | |
| d. Prior Credit or Lease Balance | | $ | N/A | |
| e. Net Trade-In (c–d) (must be ≥ 0 for buyer/co-buyer to retain equity) | $ | | N/A | |

| | | |
|---|---|---|
| **Total Agreed Value of Property Being Traded-In** (1c+2c) | $ 0.00 | * |
| **Total Prior Credit or Lease Balance** (1d+2d) | $ 0.00 | * |
| **Total Net Trade-In** (1e+2e) | $ 0.00 | * |

(*See item 6A–6C in the Itemization of Amount Financed.)

---

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 7, is paid in full on or before N/A , Year N/A .

**SELLER'S INITIALS** N/A

*LAW 553-CA-ARB-e 8/22 v2*

This retention copy was created on Dec 23, 2022 02:16:09 PM for Tesla, Inc..

RN118192658-1671665762
Case 4:23-cv-03878-YGR   Document 45   Filed 11/22/23   Page 62 of 65

This is a retention copy of the Electronic Original® document managed by the eCore™ On Demand (EOD™) Service.

**OTHER IMPORTANT AGREEMENTS**

**1.    FINANCE CHARGE AND PAYMENTS**

**a.    How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed. Seller - Creditor may receive part of the Finance Charge.

**b.    How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose as the law allows.

**c.    How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

**d.    You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment. As of the date of your payment, if the minimum finance charge is greater than the earned Finance Charge, you may be charged the difference; the minimum finance charge is as follows: (1) $25 if the original Amount Financed does not exceed $1,000, (2) $50 if the original Amount Financed is more than $1,000 but not more than $2,000, or (3) $75 if the original Amount Financed is more than $2,000.

**2.    YOUR OTHER PROMISES TO US**

**a.    If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

> **GAP LIABILITY NOTICE**
> In the event of theft or damage to your vehicle that results in a total loss, there may be a gap between the amount you owe under this contract and the proceeds of your insurance settlement and deductible. THIS CONTRACT PROVIDES THAT YOU ARE LIABLE FOR THE GAP AMOUNT. An optional debt cancellation agreement for coverage of the gap amount may be offered for an additional charge.

**b.    Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

**c.    Security Interest.**
You give us a security interest in:
- The vehicle and all parts or goods put on it;
- All money or goods received (proceeds) for the vehicle;
- All insurance, maintenance, service, or other contracts we finance for you; and
- All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract as the law allows. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

**d.    Insurance you must have on the vehicle.**
You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. You agree to name us on your insurance policy as loss payee. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium for the insurance and a finance charge computed at the Annual Percentage Rate shown on page 1 of this contract or, at our option, the highest rate the law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

**e.    What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

**3.    IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**

**a.    You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also take the steps described below.

**b.    You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once, subject to any right the law gives you to reinstate this contract.
Default means:
- You do not pay any payment on time;
- You give false, incomplete, or misleading information during credit application;
- You start a proceeding in bankruptcy or one is started against you or your property;
- The vehicle is lost, damaged, or destroyed; or
- You break any agreements in this contract.

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

**c.    You may have to pay collection costs.** You will pay our reasonable costs to collect what you owe, including attorney fees, court costs, collection agency fees, and fees paid for other reasonable collection efforts. You agree to pay a charge not to exceed $15 if any check you give to us is dishonored.

**d.    We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device (such as GPS), you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you. If you do not ask for these items back, we may dispose of them as the law allows.

**e.    How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). You may redeem the vehicle by paying all you owe, or you may have the right to reinstate this contract and redeem the vehicle by paying past due payments and any late charges, providing proof of insurance, and/or taking other action to cure the default. We will provide you all notices required by law to tell you when and how much to pay and/or what action you must take to redeem the vehicle.

This retention copy was created on Dec 23, 2022 02:16:09 PM for Tesla, Inc..

RN118192658-1671665762
This is a retention copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.
Case 4:23-cv-03878-YGR   Document 45   Filed 11/22/23   Page 63 of 65

**f.** **We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.

We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at the Annual Percentage Rate shown on page 1 of this contract, not to exceed the highest rate permitted by law, until you pay.

**g.** **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

## 4. WARRANTIES SELLER DISCLAIMS

**If you do not get a written warranty, and the Seller does not enter into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.**

This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide. If the Seller has sold you a certified used vehicle, the warranty of merchantability is not disclaimed.

## 5. Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

## 6. SERVICING AND COLLECTION CONTACTS

In consideration of our extension of credit to you, you agree to provide us your contact information for our servicing and collection purposes. You agree that we may use this information to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you. **You agree that you will within a reasonable time notify us of any change in your name, address, or employment. You also agree to allow our agents and service providers to contact you as agreed above.**

## 7. APPLICABLE LAW

Federal law and California law apply to this contract. If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

## 8. WARRANTIES OF BUYER

You promise you have given true and correct information during your application for credit, and you have no knowledge that will make that information untrue in the future. We have relied on the truth and accuracy of that information in entering into this contract. Upon request, you will provide us with documents and other information necessary to verify any item contained in your credit application.

You waive the provisions of Calif. Vehicle Code Section 1808.21 and authorize the California Department of Motor Vehicles to furnish your residence address to us.

### CREDIT DISABILITY INSURANCE NOTICE
### CLAIM PROCEDURE

If you become disabled, you must tell us right away. (You are advised to send this information to the same address to which you are normally required to send your payments, unless a different address or telephone number is given to you in writing by us as the location where we would like to be notified.) We will tell you where to get claim forms. You must send in the completed form to the insurance company as soon as possible and tell us as soon as you do.

If your disability insurance covers all of your missed payment(s), WE CANNOT TRY TO COLLECT WHAT YOU OWE OR FORECLOSE UPON OR REPOSSESS ANY COLLATERAL UNTIL THREE CALENDAR MONTHS AFTER your first missed payment is due or until the insurance company pays or rejects your claim, whichever comes first. We can, however, try to collect, foreclose, or repossess if you have any money due and owing us or are otherwise in default when your disability claim is made or if a senior mortgage or lien holder is foreclosing.

If the insurance company pays the claim within the three calendar months, we must accept the money as though you paid on time. If the insurance company rejects the claim within the three calendar months or accepts the claim within the three calendar months on a partial disability and pays less than for a total disability, you will have 35 days from the date that the rejection or the acceptance of the partial disability claim is sent to pay past due payments, or the difference between the past due payments and what the insurance company pays for the partial disability, plus late charges. You can contact us, and we will tell you how much you owe. After that time, we can take action to collect or foreclose or repossess any collateral you may have given.

If the insurance company accepts your claim but requires that you send in additional forms to remain eligible for continued payments, you should send in these completed additional forms no later than required. If you do not send in these forms on time, the insurance company may stop paying, and we will then be able to take action to collect or foreclose or repossess any collateral you may have given.

**Electronic Contracting and Signature Acknowledgment.** You agree that (i) this contract is an electronic contract executed by you using your electronic signature, (ii) your electronic signature signifies your intent to enter into this contract and that this contract be legally valid and enforceable in accordance with its terms to the same extent as if you had executed this contract using your written signature and (iii) the authoritative copy of this contract ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by us for the storage of authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the foregoing, if the Authoritative Copy is converted to paper copy which is marked by us as the original (the "Paper Contract"), then you acknowledge and agree that (1) your signing of this contract with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this contract, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, your obligations shall be evidenced by the Paper Contract alone.

This retention copy was created on Dec 23, 2022 02:16:09 PM for Tesla, Inc..

RN118192658-1671665762
This is a retention copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 4:23-cv-03878-YGR   Document 45   Filed 11/22/23   Page 64 of 65

**Seller's Right to Cancel**

a. Seller agrees to deliver the vehicle to you on the date this contract is signed by Seller and you. You understand that it may take some time for Seller to verify your credit and assign the contract. You agree that if Seller is unable to assign the contract to any one of the financial institutions with whom Seller regularly does business under an assignment acceptable to Seller, Seller may cancel the contract.

b. Seller shall give you written notice (or in any other manner in which actual notice is given to you) within 10 days of the date this contract is signed if Seller elects to cancel. Upon receipt of such notice, you must immediately return the vehicle to Seller in the same condition as when sold, reasonable wear and tear excepted. Seller must give back to you all consideration received by Seller, including any trade-in vehicle.

c. If you do not immediately return the vehicle, you shall be liable for all expenses incurred by Seller in taking the vehicle from you, including reasonable attorney's fees.

d. While the vehicle is in your possession, all terms of the contract, including those relating to use of the vehicle and insurance for the vehicle, shall be in full force and you shall assume all risk of loss or damage to the vehicle. You must pay all reasonable costs for repair of any damage to the vehicle until the vehicle is returned to Seller.

---

**ARBITRATION PROVISION**
**PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS**

1. **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN YOU AND US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**

2. **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**

3. **DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, any allegation of waiver of rights under this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this Vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator only on an individual basis and not as a plaintiff in a collective or representative action, or a class representative or member of a class on any class claim. The arbitrator may not preside over a consolidated, representative, class, collective, injunctive, or private attorney general action. You expressly waive any right you may have to arbitrate a consolidated, representative, class, collective, injunctive, or private attorney general action. You or we may choose the American Arbitration Association (www.adr.org) or National Arbitration and Mediation (www.namadr.com) as the arbitration organization to conduct the arbitration. If you and we agree, you or we may choose a different arbitration organization. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this transaction was originated. We will pay the filing, administration, service, or case management fee and the arbitrator or hearing fee up to a maximum of $5,000, unless the law or the rules of the chosen arbitration organization require us to pay more. You and we will pay the filing, administration, service, or case management fee and the arbitrator or hearing fee over $5,000 in accordance with the rules and procedures of the chosen arbitration organization. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. §§ 1 et seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate any related or unrelated claims by filing any action in small claims court, or by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual or statutory public injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. You agree that you expressly waive any right you may have for a claim or dispute to be resolved on a class basis in court or in arbitration. If a court or arbitrator finds that this class arbitration waiver is unenforceable for any reason with respect to a claim or dispute in which class allegations have been made, the rest of this Arbitration Provision shall also be unenforceable.

---

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

This retention copy was created on Dec 23, 2022 02:16:09 PM for Tesla, Inc..

RN118192658-1671665762
This is a retention copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.
Case 4:23-cv-03878-YGR   Document 45   Filed 11/22/23   Page 65 of 65

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to the contract must be in writing and both you and we must sign it. No oral changes are binding.

Buyer Signs X *SERGEY KHALIKULOV*     Co-Buyer Signs X *JORDAN NICOLE AMANN*

**SELLER'S RIGHT TO CANCEL** If Buyer and Co-Buyer sign here, the provisions of the Seller's Right to Cancel section on page 5 of this contract giving the Seller the right to cancel if Seller is unable to assign this contract to a financial institution will apply.

Buyer X *SERGEY KHALIKULOV*     Co-Buyer X *JORDAN NICOLE AMANN*

THE MINIMUM PUBLIC LIABILITY INSURANCE LIMITS PROVIDED IN LAW MUST BE MET BY EVERY PERSON WHO PURCHASES A VEHICLE. IF YOU ARE UNSURE WHETHER OR NOT YOUR CURRENT INSURANCE POLICY WILL COVER YOUR NEWLY ACQUIRED VEHICLE IN THE EVENT OF AN ACCIDENT, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
WARNING:
YOUR PRESENT POLICY MAY NOT COVER COLLISION DAMAGE OR MAY NOT PROVIDE FOR FULL REPLACEMENT COSTS FOR THE VEHICLE BEING PURCHASED. IF YOU DO NOT HAVE FULL COVERAGE, SUPPLEMENTAL COVERAGE FOR COLLISION DAMAGE MAY BE AVAILABLE TO YOU THROUGH YOUR INSURANCE AGENT OR THROUGH THE SELLING DEALER. HOWEVER, UNLESS OTHERWISE SPECIFIED, THE COVERAGE YOU OBTAIN THROUGH THE DEALER PROTECTS ONLY THE DEALER, USUALLY UP TO THE AMOUNT OF THE UNPAID BALANCE REMAINING AFTER THE VEHICLE HAS BEEN REPOSSESSED AND SOLD.
FOR ADVICE ON FULL COVERAGE THAT WILL PROTECT YOU IN THE EVENT OF LOSS OR DAMAGE TO YOUR VEHICLE, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
THE BUYER SHALL SIGN TO ACKNOWLEDGE THAT HE/SHE UNDERSTANDS THESE PUBLIC LIABILITY TERMS AND CONDITIONS.

S/S X *SERGEY KHALIKULOV*     X *JORDAN NICOLE AMANN*

N/A

**Notice to buyer:** (1) Do not sign this agreement before you read it or if it contains any blank spaces to be filled in. (2) You are entitled to a completely filled in copy of this agreement. (3) You can prepay the full amount due under this agreement at any time. (4) If you default in the performance of your obligations under this agreement, the vehicle may be repossessed and you may be subject to suit and liability for the unpaid indebtedness evidenced by this agreement.

If you have a complaint concerning this sale, you should try to resolve it with the seller.
Complaints concerning unfair or deceptive practices or methods by the seller may be referred to the city attorney, the district attorney, or an investigator for the Department of Motor Vehicles, or any combination thereof. After this contract is signed, the seller may not change the financing or payment terms unless you agree in writing to the change. You do not have to agree to any change, and it is an unfair or deceptive practice for the seller to make a unilateral change.

Buyer Signature X *SERGEY KHALIKULOV*     Co-Buyer Signature X *JORDAN NICOLE AMANN*

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

**THERE IS NO COOLING-OFF PERIOD UNLESS YOU OBTAIN A CONTRACT CANCELLATION OPTION**
California law does not provide for a "cooling-off" or other cancellation period for vehicle sales. Therefore, you cannot later cancel this contract simply because you change your mind, decide the vehicle costs too much, or wish you had acquired a different vehicle. After you sign below, you may only cancel this contract with the agreement of the seller or for legal cause, such as fraud. However, California law does require a seller to offer a two-day contract cancellation option on used vehicles with a purchase price of less than forty thousand dollars ($40,000), subject to certain statutory conditions. This contract cancellation option requirement does not apply to the sale of a recreational vehicle, a motorcycle, or an off-highway motor vehicle subject to identification under California law. See the vehicle contract cancellation option agreement for details.

YOU AGREE TO THE TERMS OF THIS CONTRACT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT. YOU ACKNOWLEDGE THAT YOU HAVE READ ALL PAGES OF THIS CONTRACT, INCLUDING THE ARBITRATION PROVISION ON PAGE 5, BEFORE SIGNING BELOW. YOU CONFIRM THAT YOU RECEIVED A COMPLETELY FILLED-IN COPY WHEN YOU SIGNED IT.

Buyer Signature X *SERGEY KHALIKULOV*     Date 12/23/2022     Co-Buyer Signature X *JORDAN NICOLE AMANN*     Date 12/23/2022

Buyer Printed Name   SERGEY KHALIKULOV     Co-Buyer Printed Name   JORDAN NICOLE AMANN

If the "business" use box is checked in "Primary Use for Which Purchased": Print Name ___

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. Another owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other Owner Signature X   N/A     Address   N/A

**GUARANTY:** To induce us to sell the vehicle to Buyer, each person who signs as a Guarantor individually guarantees the payment of this contract. If Buyer fails to pay any money owing on this contract, each Guarantor must pay it when asked. Each Guarantor will be liable for the total amount owing even if other persons also sign as Guarantor, and even if Buyer has a complete defense to Guarantor's demand for reimbursement. Each Guarantor agrees to be liable even if we do one or more of the following: (1) give the Buyer more time to pay one or more payments; (2) give a full or partial release to any other Guarantor; (3) release any security; (4) accept less from the Buyer than the total amount owing; or (5) otherwise reach a settlement relating to this contract or extend the contract. Each Guarantor acknowledges receipt of a completed copy of this contract and guaranty at the time of signing.

Guarantor waives notice of acceptance of this Guaranty, notice of the Buyer's non-payment, non-performance, and default; and notices of the amount owing at any time, and of any demands upon the Buyer.

Guarantor X   N/A     Date   N/A     Guarantor X   N/A     Date   N/A
Address   N/A     Address   N/A

Seller Signs   Tesla Motors Inc.     Date 12/23/2022   By X *Troy Jones*     Title   President

FORM NO. 553-CA-ARB-e (REV. 8/22)
©2022 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR
FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.