Adam A. Edwards (*pro hac vice*)
aedwards@milberg.com
William A. Ladnier (CA Bar No. 330334)
wladnier@milberg.com
**MILBERG COLEMAN BRYSON**
 **PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel: (865) 247-0080
Fax: (865) 522-0049

Mitchell Breit (*pro hac vice*)
mbreit@milberg.com
**MILBERG COLEMAN BRYSON**
 **PHILLIPS GROSSMAN, PLLC**
405 E. 50th Street
New York, NY 1002
Tel: (347) 668-8445

(Additional attorneys
included in signature block)

*Attorneys for Plaintiffs*
*and the Proposed Classes*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES PORTER, BRYAN PEREZ, DRO ESRAEILI ESTEPANIAN, DENNIS ROMANEZ, ARTEM KUPRIIETS, NEIL KREUZER, WAFAY NADIR, and KENNETH BROWN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TESLA, INC. d/b/a TESLA MOTORS, INC.,<br><br>Defendant. | Case No. 4:23-cv-03878-YGR<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT TESLA, INC.'S MOTION TO COMPEL ARBITRATION OF PLAINTIFFS' CLAIMS ON AN INDIVIDUAL BASIS**<br><br>Judge:    Hon. Yvonne Gonzalez Rogers<br><br>Hearing Date: January 30, 2024, at 2:00 p.m.<br>Oakland Federal District Courthouse<br>Courtroom 1, Fourth Floor<br>1301 Clay Street<br>Oakland, CA 94612 |

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................. 1

II.    FACTUAL BACKGROUND ................................................................................ 2

III.   LEGAL STANDARD ........................................................................................... 4

IV.    ARGUMENT ........................................................................................................ 5

    A.    The Court Must Decide the Question of Arbitrability. .................................. 5

    B.    Tesla's Arbitration Provision in Its 2021 and 2022 Order Agreements
          Improperly Deprives Consumers of the Right to Seek Public Injunctive
          Relief in Any Forum and Is Therefore Unenforceable Under *McGill*. ....................... 8

          1.    *McGill* prohibits waivers of the right to seek public injunctive relief
               in any forum. ................................................................................. 9

          2.    Tesla's arbitration provision is unenforceable under *McGill*. .......................... 11

               a.    Tesla's arbitration provision improperly waives the right to
                    seek public injunctive relief in any forum. ............................... 12

               b.    Plaintiffs seek public injunctive relief on behalf of the general
                    public. .......................................................................................... 14

          3.    Because the waiver is invalid, the entire UCL, CLRA, and FAL claims
               for relief must be severed for judicial determination—not just the request
               for public injunctive relief. ......................................................... 19

V.     CONCLUSION .................................................................................................... 22

Plaintiffs' Response in Opposition to Defendant
Tesla, Inc.'s Motion to Compel Arbitration
Case No. 4:23-cv-03878-YGR

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Armstrong v. Michaels Stores, Inc.,* 59 F.4th 1011 (9th Cir. 2023)................................5

*AT & T Mobility LLC v. Concepcion,* 131 S. Ct. 1740 (2011) ......................................4

*Blair v. Rent-A-Center, Inc.*, 928 F.3d 819 (9th Cir. 2019)..................................*passim*

*Brennan v. Opus Bank,* 796 F.3d 1125 (9th Cir. 2015) ................................................7

*Corona v. Tesla, Inc.*, No. 4:23-cv-03902-YGR (N.D. Cal.)..........................14, 19, 20

*Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240 (N.D. Cal. 2019)........................7

*Freeman Invs, L.P. v. Pacific Life Insc. Co.*, 704 F.3d 1110 (9th Cir. 2013) ...........18

*Hiatt v. Tesla Inc.,* No. 21-00098 LEK-KJM, 2021 WL 6052266 (D. Haw. 2021) .....7

*In re StubHub Refund Litig.*, 2022 WL 1028711 (N.D. Cal. Apr. 6, 2022)..................22

*In re Stubhub Refund Litig.,* No. 20-md-02951-HSG, 2021 WL 5447006
    (N.D. Cal. Nov. 22, 2021) ..................................................................................16

*In re Tesla Driver Assistance Systems Litig.,* No. 22-cv-05240-HSG,
    2023 WL 6391477 (N.D. Cal. Sept. 30, 2023) ...................................................6

*Ingalls v. Spotify USA, Inc.,* No. C 16-03533-WHA, 2016 WL 6679561
    (N.D. Cal. Nov. 14, 2016) ...................................................................................7

*Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348 (2014)......................................11

*Jack v. Ring LLC*, 91 Cal. App. 5th 1186 (Cal. Ct. App. 2023) ..................................6

*Lee v. Tesla, Inc.,* No. SACV2000570JVSKESX,
    2020 WL 10573281 (C.D. Cal. Oct. 1, 2020).................................2, 13, 16, 18

*MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024 (N.D. Cal. 2022)....11, 13, 16, 18

*Maldonado v. Fast Auto Loans, Inc.*, 60 Cal. App. 5th 710 (2021)........................17, 18

*McArdle v. AT&T Mobility, LLC,* No. 17-17246, 772 Fed. App'x 575
    (9th Cir. 2019)...............................................................................................10, 17

*McArdle v. AT&T Mobility LLC*, No. 09-cv-01117-CW, 2017 WL 4354998
    (N.D. Cal. Oct. 2, 2017) ....................................................................................13

ii

*McBurnie v. Acceptance Now, LLC,* No. 3:21-cv-01429-JD, 2022 WL 17342195
  (N.D. Cal. Nov. 30, 2022).................................................................................11, 22

*McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017) ......................................................*passim*

*Mejia v. Dacm, Inc.*, No. G058112, 2020 WL 5525793
  (Cal. Ct. App. Aug. 24, 2020)......................................................................15, 17, 18

*Morgan v. Sundance, Inc.,* 142 S. Ct. 1708 (2022)...........................................................5

*Nguyen v. Tesla, Inc.,* No. 819CV01422JLSJDE, 2020 WL 2114937
  (C.D. Cal. Apr. 6, 2020 ..........................................................................2, 13, 16, 18

*Int'l Norcent Tech. v. Koninklijke Philips Elecs. N.V.*, No. CV 07-00043,
  2007 WL 4976364 (C.D. Cal. Oct. 29, 2007)............................................................18

*Olosoni v. HRB Tax Grp., Inc.,* No. 19-cv-03610-SK, 2019 WL 7576680
  (N.D. Cal. Nov. 5, 2019).......................................................................................17

*Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425 (9th Cir. 2015) ..............................4

*Tillage et a. v. Comcast Corp. et al.,* No. 18-15288, 722 Fed. App'x 569
  (9th Cir. 2019)..................................................................................................10

*Tompkins v. 23andMe, Inc.,* No. 5:13-CV-05682-LHK, 2014 WL 2903752
  (N.D. Cal. June 25, 2014).......................................................................................8

*Vasquez v. Cebridge Telecom CA*, No. 21-cv-06400-EMC, 2021 WL 5113217
  (N.D. Cal. Nov. 3, 2021).......................................................................................16

*Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906 (2022)...........................10, 11


**Statutes**

9 U.S.C. § 2 .................................................................................................4, 10

Cal. Civ. Code § 3513 ..........................................................................................9

Cal. Lab. Code § 2698 ........................................................................................11

Civil Code § 3513 ...............................................................................................9

iii

## I.      **INTRODUCTION**

Plaintiffs James Porter, Bryan Perez, Dro Esraeili Estepanian, Dennis Romanez, Artem Kupriiets, Neil Kreuzer, Wafay Nadir, and Kenneth Brown (collectively, "Plaintiffs") bring claims against Defendant Tesla, Inc. ("Tesla") for the deceptive marketing of its electric vehicles. Specifically, Plaintiffs allege that Tesla deceives the consuming public by advertising that its electric vehicles have driving range capabilities that the vehicles do not have under normal driving conditions. Tesla maintains this deception by displaying inflated range projections to drivers through its software. Further, as Plaintiffs allege, when Tesla owners complain to Tesla that their vehicles were not achieving the advertised range, Tesla engaged in a scheme to summarily dispose of such complaints and cancel service appointments, while explaining to customers that the advertised range of vehicles could not be achieved under normal driving conditions. Such conduct misrepresents the true range capabilities of Tesla vehicles, inducing consumers to purchase the vehicles—or pay more for the vehicles than they otherwise would—had Tesla truthfully advertised the range capabilities of its vehicles under normal driving conditions.

Plaintiffs brought claims on behalf of themselves, a national class, and multiple state classes, including on behalf of consumers in California, Florida, Illinois, Massachusetts, New York, and Washington. Plaintiffs raised claims for breach of express and implied warranties, breach of contract, fraud, negligent misrepresentation, unjust enrichment, and for violation of various state consumer protection laws, including under California's Consumer Legal Remedies Act ("CLRA"), Unfair Competition Law ("UCL"), and False Advertising Law ("FAL"), among other state law violations. Through their claims, Plaintiffs seek damages, restitution, and injunctive relief to enjoin Tesla's continuing deceptive conduct against the general public.

Tesla moves to compel Plaintiffs "to pursue their unmeritorious claims . . . in individual arbitration proceedings pursuant to their agreements with Tesla," in an effort to avoid classwide liability for its deceptive conduct. Def.'s Mot. to Compel Arbitration ("Def.'s Br."), ECF No. 43,

at 1.[1] Putting aside Tesla's assertion that Plaintiffs' claims are "unmeritorious"—a contention for which Tesla provides no support in its motion, and with which Plaintiffs strongly disagree— Tesla's motion must be denied. A review of the Arbitration Provision at issue is dispositive. The Arbitration Provision improperly and unlawfully deprives Plaintiffs (and any other consumer seeking to order or purchase a Tesla vehicle) from seeking public injunctive relief in any forum. The provision, therefore, violates the California Supreme Court's decision in *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017). Since that decision, when reviewing numerous arbitration provisions similar to Tesla's here—all of which seek to restrict a consumer's ability to seek public injunctive relief and to bring a representative action—multiple courts have upheld the *McGill* rule of ensuring a forum for representative action on behalf of the general consuming public. Indeed, two courts have already determined that Tesla's Arbitration Provision violates *McGill*. *See Nguyen v. Tesla, Inc.,* No. 819CV01422JLSJDE, 2020 WL 2114937 (C.D. Cal. Apr. 6, 2020) and *Lee v. Tesla, Inc.,* No. SACV2000570JVSKESX, 2020 WL 10573281 (C.D. Cal. Oct. 1, 2020). This Court should reach the same result.

Because Tesla's Arbitration Provision violates California law, the Court should deny Tesla's Motion to Compel Arbitration. At a minimum, the Court should sever Plaintiffs' claims under the CLRA, UCL, and FAL—because these claims seek public injunctive relief on behalf of California's general public—and allow these claims to continue to be litigated in this Court.

## II.    FACTUAL BACKGROUND

Between December 2020 and May 2023, Plaintiffs all purchased their vehicles new from Tesla. *See* First Am. Class Action Compl. ("FAC"), ¶¶ 12-19. Each of the Plaintiffs considered the range capabilities of Tesla vehicles to be one of the most important factors when choosing to purchase their Tesla vehicles. *Id.* ¶¶ 136, 148, 159, 171, 183, 196, 210, 220. Moreover, each of

---

[1] Citations to the pages of electronically filed documents are to the page of the document itself, rather than to the page assigned by the Court's electronic filing system.

the Plaintiffs purchased their vehicles based on Tesla's misrepresentations regarding the range capabilities of the Tesla vehicles. *See id.* ¶¶ 127-222. As Plaintiffs allege, had Tesla truthfully revealed the actual range capabilities of Tesla vehicles prior to their purchase, they either would not have purchased their vehicles, or else would have paid substantially less for them. *Id.* ¶¶ 137, 149, 160, 172, 184, 197, 211, 221.

All Plaintiffs purchased their Tesla vehicles by ordering the vehicles on Tesla's website. In doing so, each of the Plaintiffs signed an Order Agreement. *See* Sinha Decl., ECF No. 43-3, ¶ 4. Multiple versions of the Order Agreement exist, but each contains an "Agreement to Arbitrate" (the "Arbitration Provision"), which remains materially identical across both relevant versions (with one notable exception). The earlier version of the Order Agreement, which applied prior to its revision in June 2022, was signed by Plaintiffs Porter, Perez, Estepanian, Romanez, Kreuzer, and Nadir. *See* Ahluwalia Decl., ECF No. 44, ¶¶ 4-7, 9-10. This version provided in relevant part:

> **Agreement to Arbitrate.** Please carefully read this provision, which applies to any dispute between you and Tesla, Inc. and its affiliates, (together "Tesla").
> * * *
> [Y]ou agree that any dispute arising out of or relating to any aspect of the relationship between you and Tesla will not be decided by a judge or jury but instead by a single arbitrator in an arbitration administered by the American Arbitration Association (AAA) under its Consumer Arbitration Rules. This includes claims arising before this Agreement, such as claims related to statements about our products.
> * * *
> The arbitrator may only resolve disputes between you and Tesla, and may not consolidate claims without the consent of all parties. *The arbitrator cannot hear class or representative claims or requests for relief on behalf of others purchasing or leasing Tesla vehicles.* In other words, you and Tesla may bring claims against the other only in your or its individual capacity and not as a plaintiff or class member in any class or representative action. *If a court or arbitrator decides that any part of this agreement to arbitrate cannot be enforced as to a particular claim for relief or remedy, then that claim or remedy (and only that claim or remedy) must be brought in court and **any other claims must be arbitrated***.
> * * *
> You may opt out of arbitration within 30 days after signing this Agreement by sending a letter to: Tesla, Inc.; P.O. Box 15430; Fremont, CA 94539-7970, stating

your name, Vehicle Identification Number, and intent to opt out of the arbitration provision. *If you do not opt out, this agreement to arbitrate overrides any different arbitration agreement between us, including any arbitration agreement in a lease or finance contract.*

*See id.*, Exs. 1-4, 6-9 (emboldened and italicized emphases added). The later version of the Order Agreement was signed by Plaintiffs Kupriiets and Brown. As noted, although the "Agreement to Arbitrate" remained materially identical in both versions, there was one notable exception. The revised Order Agreement now made clear that the court—not the arbitrator—must determine issues of arbitrability: "You further agree that any disputes related to the arbitrability of your claims will be decided by the court rather than an arbitrator, notwithstanding AAA rules to the contrary." *See id.*, Ex. 5, at 3; Ex. 10, at 3.

None of the Plaintiffs opted out of the respective arbitration provisions. Thus, both the 2021 and 2022 Order Agreements' arbitration provisions control and "override" the subsequent Sales Agreements entered into with Tesla, and any arbitration agreement in the Sales Agreements is, per the terms of the Order Agreement, irrelevant and not controlling. *See, e.g.*, *id.*, Ex. 1, at 3; Ex. 5, at 3 ("If you do not opt out, this agreement to arbitrate overrides any different arbitration agreement between us, including any arbitration agreement in a lease or finance contract").

## III.   **LEGAL STANDARD**

The provides that agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The final clause of § 2, its savings clause, 'permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Sakkab v. Luxottica Retail N. Am., Inc.,* 803 F.3d 425, 432 (9th Cir. 2015) (quoting *AT & T Mobility LLC v. Concepcion,* 131 S. Ct. 1740, 1746 (2011)). The Ninth Circuit has made clear that "the *McGill* rule is a generally applicable contract defense derived from long-

established California public policy" and "a ground for the revocation of any contract." *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819, 828 (9th Cir. 2019).

The United States Supreme Court recently held that the FAA prohibits courts from adopting any "special, arbitration-preferring procedural rules" that "tilt the playing field in favor of (or against) arbitration." *Morgan v. Sundance, Inc.,* 142 S. Ct. 1708, 1713-14 (2022). This new precedent is significant because it supersedes prior case law suggesting that there is a liberal policy in favor of arbitration, or that the FAA requires the court to construe contracts in favor of arbitration. *Id.* at 1713 (clarifying that the pro-arbitration "federal policy is about treating arbitration contracts like all others, not about fostering arbitration"). Rather, a court must consider an arbitration clause just as it would consider any other contract term. *Id.* ("Accordingly, a court must hold a party to its arbitration contract just as the court would to any other kind. But a court may not devise novel rules to favor arbitration over litigation."); *see also Armstrong v. Michaels Stores, Inc.,* 59 F.4th 1011, 1015 (9th Cir. 2023) (recognizing in light of *Morgan*'s holding, "that there is no longer a thumb on the scale in favor of arbitration").

## IV.   **ARGUMENT**

Plaintiffs' claims are not subject to arbitration because both the 2021 and 2022 versions of Tesla's Order Agreements that Plaintiffs signed violate *McGill* and are unenforceable because the Arbitration Provisions deprive consumers of the right to seek public injunctive relief.

### A.   **The Court Must Decide the Question of Arbitrability.**

As an initial matter, the question of whether Tesla's Arbitration Provision is enforceable must be answered by this Court. Despite the provision's clear language, Tesla argues to the contrary. Def.'s Br. 19-22. Tesla asserts that those Plaintiffs who signed the 2021 version of the Order Agreement—that is, Plaintiffs Porter, Estepanian, Perez, Romanez, Kruezer, and Nadir— have necessarily conceded that arbitrability should be decided by the arbitrator, because the Arbitration Provision in the 2021 Order Agreement incorporated AAA rules. *See id.* at 19-21. But the incorporation of AAA's Consumer Arbitration Rules was not "clear and unmistakable," as

Tesla suggests. *Id.* at 19. If anything, this attempted delegation was thwarted by the Arbitration

Provision's inclusion of a materially *conflicting* clause, which explicitly contemplates preserving

questions of arbitrability for the court:

> *If a court or arbitrator decides that any part of this agreement to arbitrate cannot*
> *be enforced* as to a particular claim for relief or remedy, then that claim or remedy
> (and only that claim or remedy) must be brought in court and any other claims must
> be arbitrated.

*See* Ahluwalia Decl., Ex. 11, at 4 (emphasis added).

Indeed, Tesla's argument directly contradicts a court's recent determination that this very

language gave the court—not the arbitrator—the authority to determine arbitrability. Very

recently, Judge Haywood S. Gilliam, Jr. of the Northern District of California reviewed this same

language and rejected Tesla's argument that its incorporation of the AAA rules was sufficient to

delegate arbitrability given the "inherent tension" in Tesla's arbitration provision. *In re Tesla*

*Driver Assistance Systems Litig.,* No. 22-cv-05240-HSG, 2023 WL 6391477 at *5-6 (N.D. Cal.

Sept. 30, 2023). The court explained:

> Although incorporation of the AAA rules may on its own constitute "clear and
> unmistakable evidence" of the parties' intent to delegate arbitrability issues, the
> arbitration agreement here leaves open the possibility that a court could decide such
> issues too. The Court is not persuaded by Defendant's suggestions that these
> provisions should be read in isolation, and they provide no rationale for how to
> harmonize them.

*Id.* at *6. This Court should similarly conclude that it is impossible to reconcile Tesla's express

provision that permits arbitrability issues to be decided by "a court or arbitrator," and such

language defeats any "clear and unmistakable evidence" of an intent to delegate arbitrability. *See*

*also Jack v. Ring LLC*, 91 Cal. App. 5th 1186, 1199 (Cal. Ct. App. 2023) (finding arbitration

provision ambiguous where express delegation clause conflicted with severability clause and

holding that because "the arbitration provision points in two directions on the question whether a

court or an arbitrator is to decide the enforceability of the agreement to arbitrate . . . we cannot

conclude the parties clearly and unmistakably delegated to the arbitrator exclusive authority to

decide whether the arbitration provision is valid under *McGill*"); *id.* at 1201-02 (finding "the reference to the JAMS Rules does not cure the ambiguity created by the severability clause/poison pill"). And although Tesla asserts that courts have already found that this Order Agreement delegated arbitrability through incorporation of the AAA rules, neither of those decisions discussed the material conflict Plaintiffs (and Judge Gilliam) identify herein. *See, e.g.,* Schrader Decl., ECF No. 43-2, Ex. A (*Lambrix* Order); *see also Hiatt v. Tesla Inc.,* No. 21-00098 LEK-KJM, 2021 WL 6052266 at *4 (D. Haw. 2021). Courts that have directly considered this question—either in similar agreements or in Tesla's own arbitration provision—have squarely rejected Tesla's position.

Further, while Tesla is correct that the Ninth Circuit has recognized that incorporation of the AAA rules *could* be "clear and unmistakable evidence" of delegation, *see* Def.'s Br. 20 (citing *Brennan v. Opus Bank,* 796 F.3d 1125, 1130 (9th Cir. 2015)), "[w]here at least one party is unsophisticated, judges *in this district* routinely find that the incorporation of the AAA rules is insufficient to establish a clear and unmistakable agreement to arbitrate arbitrability." *Magill v. Wells Fargo Bank, N.A.,* No. 4:21-cv-01877-YGR, 2021 WL 6199649, *5 (N.D. Cal. June 25, 2021) (Gonzalez Rogers, J.) (emphasis added) (rejecting that incorporation of AAA rules clearly and unmistakably delegated issues of arbitrability because bank customers "could not be expected to understand that the incorporation of the AAA rules would mean that the overwhelming majority of disputes arising out of the Account Agreement would be resolved by an arbitrator"); *Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1253 (N.D. Cal. 2019) (noting that, "[f]or an unsophisticated plaintiff to discover she had agreed to delegate questions of arbitrability, she would need to locate the arbitration rules at issue, find and read the relevant rules governing delegation, and then understand the importance of a specific rule granting the arbitrator jurisdiction over questions of validity—a question the Supreme Court itself has deemed 'rather arcane'" (citation omitted)); *Ingalls v. Spotify USA, Inc.,* No. C 16-03533-WHA, 2016 WL 6679561, *3-4 (N.D. Cal. Nov. 14, 2016) (noting that "every district court decision in our circuit

to address the question since *Brennan* has held that incorporation of the AAA rules was insufficient to establish delegate arbitrability in consumer contracts involving at least one unsophisticated party"); *Tompkins v. 23andMe, Inc.,* No. 5:13-CV-05682-LHK, 2014 WL 2903752, at \*11-12 (N.D. Cal. June 25, 2014) (holding incorporation of AAA rules was insufficient to establish delegation in contract between a DNA testing service and individual consumers).

This same argument, however, does not apply to Plaintiffs Kupriiets and Brown, who signed the 2022 Order Agreement. The Arbitration Provision in that agreement expressly provides that "disputes related to the arbitrability of your claims will be decided *by the court rather than the arbitrator*, notwithstanding AAA rules to the contrary." *See* Ahluwalia Decl. ¶¶ 8, 11; Ex. 5, at 3; Ex. 10, at 3 (emphasis added). And Tesla admits this. Def.'s Br. 19-20 n.8; *see also id.* at 7. Nevertheless, Tesla contends that Plaintiff Kupriiets agreed to delegate arbitrability by way of the Sales Agreement. Def.'s Br. 21-22.[2] The Court can easily dispose of this argument because the Arbitration Provision in the Order Agreement clearly and explicitly "overrides" the Arbitration Provision within the Sale Agreement. *See* Ahluwalia Decl., Ex. 5, at 3.[3]

Thus, in the absence of a "clear and unmistakable" intent to delegate, all questions of arbitrability are for this Court alone.

**B.      Tesla's Arbitration Provision in Its 2021 and 2022 Order Agreements Improperly Deprives Consumers of the Right to Seek Public Injunctive Relief in Any Forum and Is Therefore Unenforceable Under *McGill*.**

Tesla's 2021 and 2022 Order Agreements impermissibly deprive Plaintiffs of their right to seek public injunctive relief—in both arbitration and in court—and they, thus, run afoul of the

---

[2] Tesla also asserts Plaintiffs Porter, Estepanian, and Nadir have delegated the determination of arbitrability to the arbitrator through their signing of a Tesla Sale Agreement. Def.'s Br. 21-22.

[3] The Arbitration Provision in the Order Agreements Plaintiffs Porter, Estepanian, and Nadir signed likewise explicitly "override" that within the Sale Agreement. *See* Ahluwalia Decl., Ex. 1, at 3; Ex. 3, at 6; 9, at 3.

California Supreme Court's decision in *McGill*. As such, Tesla's Arbitration Provision must be held unenforceable, allowing the entirety of Plaintiffs' claims seeking such relief to continue to be litigated in this Court.

### 1. *McGill* prohibits waivers of the right to seek public injunctive relief in any forum.

In *McGill,* the Supreme Court of California unanimously held that a contract provision purporting to prevent a consumer from seeking public injunctive relief in any forum is unenforceable. "Public injunctive relief" is relief that "has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." *McGill*, 2 Cal. 5th at 951. The issue before the court was whether the arbitration provision in question "is valid and enforceable insofar as it purports to waive [plaintiffs'] right to seek public injunctive relief *in any forum.*" *Id.* at 956 (emphasis in original). After finding that the complaint did, in fact, seek public injunctive relief, and that such relief was available under the CLRA, UCL, and FAL, the court concluded that the "arbitration provision here at issue is invalid and unenforceable under state law insofar as it purports to waive [plaintiffs'] statutory right to seek such relief." *Id.* at 958-61.

To reach this result, the court relied on California Civil Code § 3513, which provides that "a law established for a public reason cannot be contravened by private agreement." *Id.* at 961 (citing Cal. Civ. Code § 3513). The court explained that because the relief available under the CLRA, UCL, and the FAL is "primarily for the benefit of the general public," any waiver of the right to seek public injunctive relief under those statutes "would seriously compromise the public purposes the statutes were intended to serve." *Id.* Accordingly, under *McGill*, "a provision in any contract—even a contract that has no arbitration provision—that purports to waive, in all fora, the statutory right to seek public injunctive relief under the UCL, the CLRA, or the [FAL] is invalid and unenforceable under California law." *McGill*, 2 Cal.5th at 962.

The Ninth Circuit subsequently affirmed the *McGill* ruling in *Blair*, 928. F.3d at 828. In *Blair*, the plaintiff entered into an agreement with Rent-A-Center to rent household items through

set installment payments, and after all payments are made on time or if the consumer is able to pay the full cash price early, the consumer takes ownership of the item. *Id.* at 822. The plaintiff challenged this practice by asserting that Rent-A-Center charged total payment and cash price amounts that far exceeded the price of the items, in violation of various consumer protection laws. *Id.* at 822-23. The plaintiff sought public injunctive relief. *Id.* at 823. However, the arbitration provision in the agreement stated that "[t]here will be no right or authority for any dispute to be brought, heard, or arbitrated as a class, collective, mass, private attorney general, or representative action." *Id.* at 823. The Ninth Circuit denied the defendant's motion to compel arbitration based on its ruling that "[t]he *McGill* rule is a generally applicable defense derived from long-established California public policy. It is a 'ground[] . . . for the revocation of any contract' and falls within the FAA's savings clause at the first step of the preemption analysis," which "permits agreements to arbitrate to be invalidated by generally applicable contract defenses." *Id.* at 825, 828 (citing 9 U.S.C. § 2).

The Ninth Circuit issued similar opinions in *McArdle v. AT&T Mobility, LLC,* 772 Fed. App'x 575 (9th Cir. 2019), *cert. denied*, No. 19-1078, 140 S. Ct. 2827 (U.S. June 1, 2020) (concurrently filed opinion adopting holding in *Blair*); *see also Tillage v. Comcast Corp.*, 772 Fed. App'x 569 (9th Cir. 2019), *cert. denied*, No. 19-1066, 140 S. Ct. 2827 (U.S. June 1, 2020) (same). The defendants unsuccessfully sought certiorari review by the Supreme Court of the United States in *McArdle* and *Tillage*. The Supreme Court's denial of certiorari leaves the *McGill* rule intact and binding on courts within the Ninth Circuit.

Tesla likely will attempt to argue that the United State Supreme Court's recent decision in *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906 (2022), overruled *McGill* or abrogated *Blair.* But this is not the case, and the Court should reject such an argument. In *Viking River*, the Supreme Court reviewed California's Private Attorneys General Act ("PAGA"), Cal. Lab. Code § 2698, *et seq.*, which provides employees the authority to sue their employer on a representative basis, and the subsequent California rule that held arbitration agreements that purport to waive

this PAGA right were unenforceable, *Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348, 383 (2014). *Viking River,* 142 S. Ct. at 1919-20. The Supreme Court abrogated *Iskanian* by holding "*Iskanian*'s rule that PAGA actions cannot be divided into individual and non-individual claims is preempted" because it "unduly circumscribes the freedom of parties to determine the issues subject to arbitration" where "[t]he only way for parties to agree to arbitrate *one* of an employee's PAGA claims is to also agree to arbitrate *all other* PAGA claims in the same arbitral proceeding." *Id.* at 1913, 1923-34 (citations and internal quotation marks omitted). What *Viking River* did *not* address was whether a request for public injunctive relief was arbitrable, or whether to overturn or abrogate *McGill*, *Blair*. The factual circumstances at issue here, and the law governing them, are separate and apart from those the *Viking River* Court considered. Indeed, courts in this district have repeatedly, and correctly, held that *Viking River* had zero impact on either *McGill* or *Blair. See, e.g.*, *McBurnie v. Acceptance Now, LLC,* No. 3:21-cv-01429-JD, 2022 WL 17342195, at *4 (N.D. Cal. Nov. 30, 2022), *appeal filed* Dec. 6, 2022 (denying arbitration on waiver grounds, in part, because defendant's "suggestion that *Viking River* effected a sea change in the enforceability of the arbitration agreement [under *McGill* and *Blair*] is questionable at best" because "*Viking River* abrogated a different California rule that invalidated agreements to arbitrate only individual PAGA claims for Labor Code violations" and "*McGill* did not involve PAGA or present the same ostensible dilemma"); *MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1038-39 (N.D. Cal. 2022), *appeal filed* July 13, 2022 (finding arbitration provision in wireless service customer agreement prohibiting public injunctive relief was substantively unconscionable and unenforceable under *McGill* overrules or undermines *McGill*'s core holding that an arbitration agreement cannot prohibit a party from seeking public injunctive relief in any forum").

### 2.   Tesla's arbitration provision is unenforceable under *McGill*.

Tesla's Arbitration Provision broadly requires the arbitration of "any dispute arising out of or relating to any aspect of the relationship" between Plaintiffs and Tesla only:

---

11

> **Agreement to Arbitrate.** Please carefully read this provision, which applies to any dispute between you and Tesla, Inc. and its affiliates, (together "Tesla"). . . . you agree that any dispute arising out of or relating to any aspect of the relationship between you and Tesla will not be decided by a judge or jury but instead by a single arbitrator in an arbitration. . . . This includes claims arising before this Agreement, such as claims related to statements about our products.

*E.g.*, Ahluwalia Decl., Ex. 1, at 3 (2021 Order Agreement); Ex. 5, at 3 (2022 Order Agreement). A plain reading of the Arbitration Provision demonstrates that it compels *all* disputes to arbitration—even those seeking public injunctive relief as a remedy. And Tesla does not dispute that the Arbitration Provision would do just that. *See* Def.'s Br. 22-23.

Further, the Order Agreements contain a waiver that expressly bars an arbitrator from resolving such disputes that are representative in nature and restricts the arbitrator's ability to award public injunctive relief:

> The arbitrator may only resolve disputes between you and Tesla, and may not consolidate claims without the consent of all parties. *The arbitrator cannot hear class or representative claims or requests for relief on behalf of others purchasing or leasing Tesla vehicles. In other words, you and Tesla may bring claims against the other only in your or its individual capacity and not as a plaintiff or class member in any class or representative action.* If a court or arbitrator decides that any part of this agreement to arbitrate cannot be enforced as to a particular claim for relief or remedy, then that claim or remedy (and only that claim or remedy) must be brought in court and any other claims must be arbitrated.

*E.g.*, Ahluwalia Decl., Ex. 1, at 3 (2021 Order Agreement); Ex. 5, at 3 (2022 Order Agreement) (emphasis added). Reading these provisions clearly demonstrates that the Arbitration Provision improperly waives Plaintiffs' right to seek public injunctive relief in any forum.

### a.     Tesla's arbitration provision improperly waives the right to seek public injunctive relief in any forum.

*McGill* is controlling and invalidates the Arbitration Provision in this case. Tesla's Arbitration Provision explicitly limits the arbitrator from making decisions or awarding relief that benefits anyone other than Plaintiffs: "The arbitrator cannot hear class or representative claims or requests for relief on behalf of others." *Id.* Combined with the requirement that "any dispute

arising out of or relating to any aspect of the relationship" between Plaintiffs and Tesla, "includ[ing] claims arising before this Agreement," the Arbitration Provision violates *McGill* because it waives Plaintiffs' right to seek public injunctive relief in any forum. *Id.*

The overwhelming majority of courts that have reviewed arbitration provisions containing the same or substantially similar operative language—including two California district courts who already held that Tesla's Arbitration Provision violated *McGill*—have concluded that similar arbitration provisions that bar representative, class, and collective actions and limit the arbitrator to awarding relief on an individual basis only are unenforceable because they prohibit the right to seek public injunctive relief. *See, e.g.*, *Nguyen,* 2020 WL 2114937 at *5 (holding that "[a]lthough [Tesla's] provision does not say so explicitly, its various proscriptions combine to preclude consumer-signatories from seeking public injunctive relief *in any forum,* rendering the provision unenforceable under *McGill*); *Lee*, 2020 WL 10573281 at *7-8 (concluding the same provision to be "void" and against public policy as to California plaintiffs under *McGill*); *MacClelland*, 609 F. Supp. 3d at 1037 (holding arbitration provision with language that "preclude[ed] injunctive relief benefitting anyone other than the individual claimant . . . prevents Plaintiff from seeking public injunctive relief in any forum, a right which cannot be denied whether in arbitration or otherwise"); *Blair*, 928 F.3d at 823 (finding agreement barred public injunctive relief in any forum when it provided that arbitration "shall be conducted on an individual basis" and prohibited the arbitrator from awarding relief that would "affect [individuals] other than you"); *McArdle v. AT&T Mobility LLC*, No. 09-cv-01117-CW, 2017 WL 4354998, at *4-5 (N.D. Cal. Oct. 2, 2017) (finding agreement providing that the arbitrator could "award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim," when read "[i]n combination with the agreement . . . that all claims and disputes, broadly defined, would be arbitrated, . . . constitutes a waiver of public injunctive relief in all for a that violates the *McGill* rule"), *aff'd mem.* 772 Fed. App'x 575 (9th Cir. 2019). Each of these decisions, which involved either identical or similar language to

that used by Tesla, compels a finding that Tesla's Arbitration Provision squarely violates *McGill* by improperly waiving the right to seek public injunctive relief in any forum.

Indeed, in a tacit recognition of the fact that its arbitration provision does not allow an arbitrator to award public injunctive relief, Tesla notably did not move to compel arbitration in the related *Corona* case, which seeks only public injunctive relief, even though an agreement to arbitrate almost certainly exists with those plaintiffs as well. *See Corona v. Tesla, Inc.*, No. 4:23-cv-03902-YGR (N.D. Cal.), ECF No. 26 (moving to dismiss but not bringing a motion to compel arbitration). Because Tesla's Arbitration Provision compels all claims to arbitration, yet only allows Plaintiffs to pursue relief individually in that forum, the provision bars Plaintiffs' right to seek public injunctive relief in any forum and therefore violates *McGill.* It must be invalidated.

### b. Plaintiffs seek public injunctive relief on behalf of the general public.

As the Ninth Circuit held in *Blair*, an injunction under the UCL or CLRA that seeks "the elimination of deceptive practices" is, by definition, "public injunctive relief." *Id.* at 824. Here, Plaintiffs' First Amended Complaint includes requests for injunctive relief under California law to prevent Tesla from continuing to deceive and mislead both current and prospective Tesla owners—that is, the general public—about its vehicles' driving range, which is "relief oriented to and for the benefit of the general public." *See id.* at 831 n.3; *see also, e.g.*, FAC, ¶¶ 228, 230, 241, 251;[4] *id.* at 80 (Prayer for Relief). The FAC establishes that "Tesla made material misrepresentations and omission of fact in its advertising and marketing of the Tesla vehicles by exaggerating the range capabilities of its electric vehicles," which had "the effect of deceiving consumers into believing that the vehicles have a much greater vehicle range than what could be

---

[4] Beginning on page 52 in the FAC, following Paragraph 272, the subsequent paragraphs are numbered beginning at 202—an error which later repeats. Plaintiffs refer to Paragraphs 228, 230, 241, and 251, on pages 57, 59, and 61. Plaintiffs will refer to relevant paragraphs by their paragraph number (even if incorrectly numbered) and the page of the FAC on which they appear, so as to avoid all confusion.

achieved under normal driving conditions." *Id.* ¶¶ 203-04 (at p. 53). The FAC describes how Tesla represents its vehicles' driving ranges (falsely) to the consuming public through its website and vehicle order webpages. *See id.* ¶¶ 33-45. Moreover, Tesla displays real-time range estimates for drivers on the vehicle's computer display. *Id.* ¶¶ 46-49. But, again, Tesla misrepresents the range to drivers, providing a "rosy" projection that is not based on real-time, normal driving conditions. *See id.* ¶¶ 67-71. Tesla has continued to engage in this deceptive conduct even after regulators have found that they misled consumers based on this same "false/exaggerated advertising." *Id.* ¶¶ 82-84 (noting that South Korean regulators found that Tesla misled consumers based on these same advertising tactics). Even when Tesla owners complain to this day and the range of their vehicles not matching—or even approaching—the advertised range, Tesla summarily disposes of these complaints and cancels range-related service appointments, thereby continuing this active deception against the consuming public. *See id.* ¶¶ 85-101; *see also* ¶ 204 (at p. 53) ("Tesla's conduct was and *continues to be* fraudulent because it has the effect of deceiving consumers." (emphasis added)). This deception is not minor; an electric vehicle's range is one of the most important features that consumers generally consider when purchasing an electric vehicle. *Id.* ¶¶ 4-5, 136, 148, 159, 171, 183, 196, 210, 220. Tesla's deception, particularly about such an important vehicle attribute, causes consumers to purchase Tesla vehicles that they otherwise would not have purchased—or pay more for the Tesla vehicles than they otherwise would have, had they known the truth about the vehicles' true range capabilities. *E.g.*, *id.* ¶¶ 9, 119, 125, 137, 149, 160, 172, 184, 197, 211, 221, 206 (at p. 53), 213 (at p. 54), 226 (at p. 56), 238 (at p. 59), 249 (at pp. 60-61). Accordingly, because the injunction requested "does not limit itself to relief only for class members or some other small group of individuals[,] it encompasses consumers generally." *Mejia v. Dacm, Inc.*, No. G058112, 2020 WL 5525793, *7 (Cal. Ct. App. Aug. 24, 2020) (internal quotation marks and citations omitted).

The overwhelming weight of legal authority is in accord that allegations like Plaintiffs' claims here sufficiently create a request for public injunctive relief. *See e.g., Nguyen,* 2020 WL

2114937, at \*4 (rejecting Tesla's argument that Nguyen's "laser-focus[] on obtaining monetary relief" forecloses his request for public injunctive relief where the "FAC contains plenty of references to the public harm Plaintiffs allege that Tesla has been causing," including Nguyen's request to rectify Tesla's misleading advertisements and marketing disseminated throughout California and the United States, including those misrepresentations that were "publicly displayed on Tesla's website"); *Lee*, 2020 WL 10573281, at \*7 (finding it sufficient to establish a request for public injunctive relief where plaintiff sought "an injunction regarding Tesla's allegedly misleading marketing practices" which, if granted, "the public would likely benefit"); *MacClelland*, 609 F. Supp. 3d at 1038 (finding request "to enjoin Verizon from falsely advertising the prices of its wireless service plans to members of the general public via public injunctions under the UCL, FAL, and CLRA—the very same statutes and type of relief at issue in *McGill*" was a "paradigmatic example of public injunctive relief"); *In re Stubhub Refund Litig.,* No. 20-md-02951-HSG, 2021 WL 5447006 at \*11 (N.D. Cal. Nov. 22, 2021) ("Although some of the relief Plaintiffs seek may only benefit Plaintiffs or Stubhub consumers who have purchased tickets through Stubhub [e.g., an injunction requiring Stubhub to honor its refund policy, to preclude Stubhub from unilaterally changing the terms of the guarantee, or to provide clear, conspicuous, and extensive corrective advertising regarding the guarantee], the Court finds that Plaintiffs are also seeking this 'paradigmatic example' of public injunctive relief to preclude Defendant from misrepresenting to the general public the protections afforded by its FanProtectTM Guarantee"); *Vasquez v. Cebridge Telecom CA*, No. 21-cv-06400-EMC, 2021 WL 5113217 (N.D. Cal. Nov. 3, 2021) (seeking public injunctions under the UCL, CLRA, and FAL because claims were "expressly aimed at enjoining Suddenlink's false advertising to the general public" where he requested enjoining "advertising or quoting an internet service plan price" without the deceptive Network Enhancement Fee; "advertising or representing that the prices of its internet service plans are fixed and will not increase during a specified promotional period"; "stating to members of the public that the Network Service Fee" is a tax, government fee,

regulatory fee, or out of Suddenlink's control); *Blair*, 928 F.3d at 831 n.3 (holding plaintiff seeks public injunctive relief where she seeks "to enjoin future violations of California's consumer protection statutes"); *Mejia*, 2020 WL 5525793 at *7 (seeking public injunctive relief where plaintiff's prayer sought to enjoin defendant from selling motor vehicles in the state of California without first providing the consumer with disclosures mandated by the Civil Code in a single document because he does not limit relief "for class members or some other small group of individuals; it encompasses 'consumers' generally"); *Maldonado v. Fast Auto Loans, Inc.*, 60 Cal. App. 5th 710, 722 (2021), *cert. denied*, No. 21-31, 142 S. Ct. 708 (2021) (seeking public injunctive relief because "it is enough that the requested relief has the purpose and effect of protecting the public from [defendant lender's] ongoing harm"); *McArdle*, 772 F. App'x 575 (affirming district court's finding that plaintiff was pursuing public injunctive relief where plaintiff was seeking to enjoin defendant from "charg[ing] exorbitant fees for international cellular telephone service"); *Olosoni v. HRB Tax Grp., Inc.,* No. 19-cv-03610-SK, 2019 WL 7576680 at *4 (N.D. Cal. Nov. 5, 2019) (finding plaintiffs pleaded public injunctive relief where they sought to alter "broadly-directed advertising" regarding defendant's "free filing" offers that were "designed to lure in a large swath of the general public," regardless if only some of whom were eligible for the product advertised).

Tesla may argue that Plaintiffs fail to "properly" seek public injunctive relief because they do not explicitly bring such a request. This would be incorrect. Courts addressing requests for public injunctive relief under the CLRA, UCL, and FAL do not require that a plaintiff make an express request, where the plaintiffs "seek[] to enjoying future violations of California's consumer protection statutes, relief oriented to and for the benefit of the general public." *E.g.*, *Blair*, 928 F.3d at 831 n.3. Where plaintiffs have alleged that "Tesla caused to be made or disseminated throughout California and the United States, through advertising [and] marketing . . . statements that were untrue or misleading," courts have found that plaintiffs validly sought public injunctive relief. *Nguyen*, 2020 WL 2114937, at *4; *see also Lee*, 2020 WL 10573281, at

*7 (finding plaintiff's request for "an injunction regarding Tesla's allegedly misleading marketing practices" sufficiently constituted request for public injunctive relief). Here, Plaintiffs have alleged that "Tesla's conduct was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the vehicles have a much greater vehicle range than what could be achieved under normal driving conditions." FAC ¶ 204 (at p. 53). Plaintiffs also allege that Tesla's deceptive practices—by making material misrepresentations and omissions of fact in its advertising and marketing, *id.* ¶ 203 (at p. 53)—"were capable of deceiving, and did deceive, a substantial portion of the purchasing public," *id.* ¶ 219 (at p. 55). As a result, Plaintiffs seek injunctive relief under the CLRA, UCL, and FAL, to enjoin Tesla from continuing its deceptive and fraudulent marketing. *Id.* ¶¶ 228, 230 (at p. 57), 241 (at p. 59), 251 (at p. 61). Further, in the FAC's Prayer for Relief, Plaintiffs request that the Court "[g]rant appropriate injunctive and/or declaratory relief, including . . . an order that enjoins Tesla from falsely advertising the estimated ranges of its model vehicles." *Id.* at 80; *see also Mejia*, 2020 WL 5525793 at *7 (finding adequate a public injunctive relief request based on plaintiff's prayer seeking to enjoin defendant's conduct). Tesla's deceptive conduct impacts the public as a whole. If granted, Plaintiffs' "requested [injunctive] relief has the purpose and effect of protecting the public" from Tesla's ongoing deceptive conduct. *Maldonado*, 60 Cal. App. 5th at 722. Plaintiffs' requests for injunctive relief are "paradigmatic examples" of public injunctive relief. *See MacClelland*, 609 F. Supp. 3d at 1038.[5]

---

[5] The "gravamen or essence" of Plaintiffs' current requests for injunctive relief under the CLRA, UCL, and FAL are, when "fairly read as a whole," seeking to protect the general public from Tesla's ongoing deceptive conduct. *See Freeman Invs, L.P. v. Pacific Life Insc. Co.*, 704 F.3d 1110, 1115 (9th Cir. 2013); *see also Int'l Norcent Tech. v. Koninklijke Philips Elecs. N.V.*, No. CV 07-00043, 2007 WL 4976364, at *8 n.60 (C.D. Cal. Oct. 29, 2007) (noting that plaintiffs need not specifically allege "magic words," where the complaint, "when fairly read as a whole," supports the claim (citations omitted)). To the extent the Court disagrees, Plaintiffs request leave to amend to add explicit requests for public injunctive relief under the CLRA, UCL, and FAL.

As such, because Plaintiffs seek to eliminate the public dissemination of deceptive misinformation regarding Tesla's range and to enjoin Tesla from future violations of California's consumer protection statutes, Plaintiffs seek public injunctive relief.

> **3.      Because the waiver is invalid, the entire UCL, CLRA, and FAL claims for relief must be severed for judicial determination—not just the request for public injunctive relief.**

Finally, the conclusion that Tesla's arbitration provision violates *McGill* means that Plaintiffs' claims under the CLRA, UCL, and FAL all belong in this Court per the terms of the agreement. Tesla's Arbitration Provision states:

> If a court or arbitrator decides that any part of this agreement to arbitrate cannot be enforced as to a particular claim for relief or remedy, then that claim or remedy (and only that claim or remedy) must be brought in court and any other claims must be arbitrated.

*E.g.*, Ahluwalia Decl., Ex. 1, at 3 (2021 Order Agreement); Ex. 5, at 3 (2022 Order Agreement). This language dictates that Plaintiffs' other claims that do not seek to enjoin Tesla's deceptive conduct—their claims for breach of express and implied warranties, for breach of contract, for fraud, and for negligent misrepresentation—must be arbitrated.[6] However, these arbitrable claims

---

[6] Plaintiffs' other claims under state consumer protection laws—including under the Florida Deceptive and Unfair Trade Practice Act, the Illinois Consumer Fraud and Deceptive Practices Act, the Illinois Uniform Deceptive Trade Practices Act, the Massachusetts Consumer Protection Act, New York's General Business Law sections 349 and 350, and the Washington Consumer Protection Act—all seek equitable or injunctive relief to enjoin Tesla's deceptive and fraudulent conduct against the consuming public in these states. FAC ¶¶ 265 (at p. 63), 275 (at p. 65), 285 (at pp. 67-68), 300, (at p. 70), 319 (at p. 73), 338 (at p. 76), 202 (at p. 78). Similarly, the plaintiffs in the related *Corona* case brought claims for public injunctive relief under California's UCL and New York's General Business Law section 349. *See Corona v. Tesla, Inc.*, No. 4:23-cv-03902-YGR (N.D. Cal.), Compl., ECF No. 1, ¶¶ 1, 4, 28, 31-33, 36, 39. Notably, Tesla did not move to compel arbitration of any of the *Corona* plaintiffs' claims, despite their having agreed to arbitrate. *Id.*, ECF No. 26 (moving to dismiss but not bringing a motion to compel arbitration despite noting that *Corona* plaintiffs were attempting to "avoid [their contractual obligation to arbitrate claims relating to their vehicle purchases"). Tesla likely refused to move to compel arbitration of the *Corona* plaintiffs' injunctive relief claims under California and New York law because they were not likely to be arbitrable, because doing so would deny consumers a representative action for seeking public injunctive relief. The same applies here, at a minimum, to Plaintiffs Porter's,

19

should be severed from Plaintiffs' claims seeking injunctive and equitable relief, including Plaintiffs' CLRA, UCL, and FAL claims, which must be fully litigated in this Court.

Plaintiffs anticipate that Tesla will argue, as it did in *Nguyen* and *Lee,* that only Plaintiffs' request for public injunctive relief should remain in Court, while the remainder of Plaintiffs' CLRA, UCL, and FAL claims should be arbitrated, including liability and all other remedies sought for such claims. But this is belied by the text of the Arbitration Provision itself, which does not contemplate splitting causes of action such that liability determinations are determined separately from the relief awarded. While Tesla could have drafted its provision to provide for such a scenario, it did not. Instead, it instructs the opposite: only "*other claims*,"—that is, causes of action other than those seeking public injunctive relief, must be arbitrated.

Tesla's pronouncement that "other claims" be arbitrated—and not other remedies—is dispositive. As the Ninth Circuit held when evaluating a similar severance provision, a "claim" refers to an entire cause of action, not simply a request for relief. In *Blair*, the Ninth Circuit rejected the defendant's argument that the court should sever liability from the remedy. 928 F.3d at 831. In so holding, the court noted, "[The defendant] reads 'claim for relief' in the severance clause to refer only to a particular remedy, not to the underlying claim" but this reading was "unnatural and unpersuasive." *Id.* Thus, when Tesla states that "*other claims* must be arbitrated," and not "other remedies," this reasonably refers to Plaintiffs' breach of warranty, breach of contract, fraud, and negligent misrepresentation claims, and not Plaintiffs' request for damages under the CLRA, UCL, and FAL (or other claims seeking injunctive relief on behalf of the public). Indeed, Tesla's decision not to use the phrase "other claims or remedies"—a phrase it used *twice* previously in the same sentence—must be understood to be intentional.

---

Perez's, and Estepanian's CLRA, UCL, and FAL claims, and to Plaintiff Nadir's General Business Law sections 349 and 350 claims, all of which seek injunctive relief on behalf of the general public—and would potentially apply to all other Plaintiffs' claims under their state's consumer protection laws, because they all likewise seek injunctive relief on behalf of the general public.

Predictably, Tesla will attempt to disavow the latter half of its severance provision and rely exclusively on the first half of the provision, which states that if a court determines the arbitration provision cannot be enforced as to a "claim for relief or remedy," "only that claim or remedy must be brought in court." *E.g.*, Ahluwalia Decl., Ex. 1, at 3 (2021 Order Agreement); Ex. 5, at 3 (2022 Order Agreement). This provision does not, as Tesla will surely contend, mean liability should be severed, as opposed to severing by "claim." To start with, the provision is nonsensical. A "remedy," by itself, cannot be "brought" in court at all. A "remedy" can be *awarded* by a court, but only in response to a finding of liability with respect to a given cause of action. A plaintiff may not "bring" an action for public injunctive relief without tethering that request for public injunctive relief to an underlying legal claim—as Plaintiffs have done here. Thus, Tesla's mandate that a plaintiff "bring" a "remedy" in court makes no sense, and it is the latter half of the severance provision mandating that "*other claims*" be arbitrated that should be given effect.

This conclusion is further necessitated by the Arbitration Provision's use of the verb "to bring," which commonly means to initiate or cause to exist. *E.g.*, Ahluwalia Decl., Ex. 1, at 3 (2021 Order Agreement); Ex. 5, at 3 (2022 Order Agreement) ("[T]hat claim or remedy (and only that claim or remedy) *must be brought in court* . . . ."). The verb "to bring" describes adjudicating a particular claim in court from its inception, as opposed to partially litigating a claim in arbitration, and then *continuing* to litigate the remainder of the claim in court. Tesla did not say, as it could have, that "only that claim or remedy" could be *decided* by a court after an arbitrator had made all preliminary determinations, including as to liability. Instead, it stated "a claim or remedy" must be *brought* in court, and "*any other claims*" must be arbitrated. This can have only one meaning: Plaintiffs' claims seeking public injunctive relief (including their CLRA, UCL, and FAL claims) are rightfully "brought" in court, and Plaintiffs' remaining claims must be arbitrated.

Numerous courts, which have reviewed language similar to Tesla's that permits severance of a "claim or remedy (and only that claim or remedy)," have required the severance of plaintiffs'

*entire* CLRA, UCL, and FAL claims, and not just their request for public injunctive relief. *See e.g.*, *Jack*, 91 Cal. App. 5th at 1209 (following *Blair* and finding severance clause that required "that claim (and only that claim) must be severed from the arbitration and may be brought in court" meant that "plaintiffs' claims (that is, their three causes of action under the Consumer Legal Remedies Act, false advertising law, and UCL, respectively) cannot be arbitrated and may be brought in court" because "it is far more reasonable to read 'claim for relief' to refer to a person's claim and not to a particular remedy requested in respect to a claim"); *In re StubHub Refund Litig.*, 2022 WL 1028711 at *2 (N.D. Cal. Apr. 6, 2022) (following *Blair* and finding severance clause that required "that claim (and only that claim) must be severed from arbitration and may be brought in court" meant that "the entire UCL, CLRA, and FAL claims must be severed for judicial determination, and not just the request for public injunctive relief"); *McBurnie,* 2022 WL 17342195 at *5 (following *Blair* in severing "each claim, in its entirety" for judicial determination where arbitration agreement prohibited public injunctive relief in violation of *McGill* in action alleging violations of the CLRA and UCL arising from defendant's charging of excessive fees in connection with its rent-to-own furniture business). There is little reason to divert from these cases, which were decided based on similar language and circumstances. At a minimum, the Court should refuse to compel to arbitration Plaintiffs' CLRA, UCL, and FAL claims.

## V.   **CONCLUSION**

For the reasons above, Plaintiffs respectfully request that the Court deny Tesla's Motion to Compel Arbitration on an Individual Basis. In particular, Plaintiffs request that the Court refuse to compel to arbitration any of Plaintiffs' claims seeking public injunctive relief, including Plaintiffs' CLRA, UCL, and FAL claims.

DATED: December 18, 2023

/s/ *William A. Ladnier*

Adam A. Edwards (*pro hac vice*)
William A. Ladnier (CA Bar No. 330334)
Virginia Ann Whitener (*pro hac vice*)
**MILBERG COLEMAN BRYSON**
 **PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel: (865) 247-0080
Fax: (865) 522-0049
aedwards@milberg.com
wladnier@milberg.com
gwhitener@milberg.com

Alex R. Straus (CA Bar No. 321366)
**MILBERG COLEMAN BRYSON**
 **PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive, PH Suite
Beverly Hills, CA 90212
Tel: (866) 252-0878
Fax: (310) 496-3176
astraus@milberg.com

Mitchell Breit (*pro hac vice*)
**MILBERG COLEMAN BRYSON**
 **PHILLIPS GROSSMAN, PLLC**
405 E. 50th Street
New York, NY 1002
Tel: (347) 668-8445
mbreit@milberg.com

*Attorneys for Plaintiffs*
*and the Proposed Class*

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT
TESLA, INC.'S MOTION TO COMPEL ARBITRATION
Case No. 4:23-cv-03878-YGR

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## CERTIFICATE OF SERVICE

I, William A. Ladnier, hereby certify that on December 18, 2023, I caused a true and correct copy of the foregoing Plaintiffs' Response in Opposition to Defendant Tesla, Inc.'s Motion to Compel Arbitration to be served upon all counsel of record through the Court's ECF system, including:

**MORGAN, LEWIS & BROKIUS, LLP**
David L. Schrader (SBN 149638)
david.schrader@morganlewis.com
300 South Grand Ave., 22nd Floor
Los Angeles, CA 90071
Phone: (213) 612-2500

Mark A. Feller (SBN 319789)
mark.feller@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105
Phone: (415) 442-1000

Brian M. Ercole
brian.ercole@morganlewis.com
Matthew M. Papkin
matthew.papkin@morganlewis.com
600 Brickell Ave., Suite 1600
Miami, Florida 33131
Phone: (305) 415-3000

/s/ *William A. Ladnier*
William A. Ladnier

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT
TESLA, INC.'S MOTION TO COMPEL ARBITRATION
Case No. 4:23-cv-03878-YGR