William A. Ladnier (CA Bar No. 330334)
wladnier@milberg.com
**MILBERG COLEMAN BRYSON**
  **PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel: (865) 247-0080
Fax: (865) 522-0049

*Attorneys for Plaintiffs and the Proposed Classes in* Porter v. Tesla, Inc.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES PORTER, BRYAN PEREZ, DRO ESRAEILI ESTEPANIAN, DENNIS ROMANEZ, ARTEM KUPRIIETS, NEIL KREUZER, WAFAY NADIR, and KENNETH BROWN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TESLA, INC. d/b/a TESLA MOTORS, INC.,<br><br>Defendant.<br><br>**AND RELATED CASE**<br><br>SAMUEL VAN DIEST and SERGEY KHALIKULOV, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TESLA, INC. dba TESLA MOTORS, INC.,<br><br>Defendant. | Case No. 4:23-cv-03878-YGR<br><br>AND<br><br>Case No. 4:23-cv-04098-YGR<br><br>***PORTER* AND *VAN DIEST* PLAINTIFFS' *AMICUS CURIAE* BRIEF IN SUPPORT OF *CORONA* PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Judge:   Hon. Yvonne Gonzalez Rogers<br><br>Hearing Date: January 30, 2024, at 2:00 p.m.<br>Oakland Federal District Courthouse<br>Courtroom 1, Fourth Floor<br>1301 Clay Street<br>Oakland, CA 94612 |

Plaintiffs in the related *Porter* and *Van Diest* actions bring similar claims alleging that Defendant Tesla, Inc. ("Tesla") engaged in false and deceptive advertising by marketing the range capabilities of its electric vehicles, and the related *Corona* action alleges that Tesla modified the hardware and software controlling Tesla vehicles' available-mileage instruments to overstate the vehicle's range during charging and operation.[1] All Plaintiffs have brought claims under state consumer protection laws based on Tesla's ongoing deceptive marketing and other conduct.

Tesla asserts that the Court should immunize the company from liability for this deceptive marketing because it complied with the Environmental Protection Agency's ("EPA") regulatory scheme, and merely repeated EPA range estimates. This is not the case. Tesla went well beyond merely advertising the EPA range estimates. Instead, Tesla engaged in advertising that created an impression among consumers that Tesla vehicles could meet the advertised driving ranges while concealing that such ranges could not be achieved under normal driving conditions, which are impacted by things like temperature, weather, and use of the vehicles' other features. Notably, Tesla's motion does not even address the Plaintiffs' claims that Tesla manipulated how range was calculated and displayed in the vehicles.

Tesla has moved to compel the *Porter* and *Van Diest* Plaintiffs to arbitration, but it has moved to dismiss the *Corona* Plaintiffs' claims, in part, based on purported federal preemption. The *Porter* and *Van Diest* Plaintiffs join with the *Corona* Plaintiffs in opposing the motion.

I.  **ARGUMENT**

The *Porter* and *Van Diest* Plaintiffs support the *Corona* Plaintiffs' arguments opposing the application of preemption under the Energy Policy and Conservation Act ("EPCA"). *See Corona v. Tesla, Inc.*, No. 4:23-cv-03902-YGR (N.D. Cal.), ECF No. 27 ("*Corona* Br.", at 4–12. The *Porter* and *Van Diest* Plaintiffs offer this *amicus curiae* brief to explain how their allegations reinforce the inapplicability of preemption, because Tesla's conduct goes well beyond merely repeating EPA mileage estimates.

---

[1] Because of the similarities in the *Porter* and *Van Diest* Plaintiffs' allegations, and for the sake of brevity, this brief cites only to the *Porter* Plaintiffs' operative complaint. *Porter*, ECF No. 35.

As Tesla notes, "[a]s a matter of law, there is nothing false or misleading about [] advertising . . . that identif[ies] the EPA" mileage estimates. *See Paduano v. Am. Honda Motor Co., Inc.*, 88 Cal. Rptr. 3d 90, 105 (Cal. Ct. App. 2009). While Tesla correctly explains the state of the law on this discrete issue, its explanation is inapposite because Plaintiffs do not claim that Tesla merely advertised the EPA estimated range. Rather, Plaintiffs allege that Tesla built and deployed software designed to deceive consumers by actively presenting exaggerated range data. *Porter*, First Am. Compl. ("FAC"), ¶¶ 69-71. Further, Plaintiffs allege that Tesla did this intentionally, "want[ing] to show good range numbers" in order to drive sales. *See id.* ¶ 71. Tesla and its CEO wanted Tesla customers to "feel good" about the vehicles, which could be achieved by artificially inflating their range estimates. *Id.*

Tesla's advertised driving ranges are greatly exaggerated. An analysis demonstrated that the driving ranges of Tesla vehicles were among the most overstated in the electric vehicle market, with its vehicles "falling short of their advertised ranges by 26%, on average." *Id.* ¶ 80. This is not particularly surprising, given that "Tesla consistently advertised overly *aggressive* estimates of the range within its vehicles," whereas other manufacturers advertised *conservative* range estimates." *Id.* ¶ 79. Such marketing bred confusion among prospective customers and among Tesla owners, who noticed that their vehicles' ranges consistently fell short of what had been advertised to them. *Id.* ¶ 85. Customers complained to Tesla so frequently about the discrepancy between their vehicles' estimated and actual driving ranges that Tesla created an in-house "Diversion Team," whose sole purpose was to dispose of such complaints without performing any kind testing and to otherwise gaslight customers into believing that their vehicles were operating as promised. *Id.* ¶¶ 90-101.

Tesla deliberately designed its marketing to create the impression that Tesla vehicles had some of the longest driving ranges in the electric vehicle market. And Tesla did this despite knowing its vehicles could not meet the EPA ranges advertised. *Cf. id.* ¶ 80. On Tesla's range webpage, which was specifically developed to advertise Tesla's range capabilities to consumers, *see id.* at 16 n.36, Tesla claims that its vehicles "can travel some of longest driving ranges of any other production electric vehicle on the market." https://www.tesla.com/support/range (last

visited Dec. 20, 2023). Notably, Tesla suggests that consumers set a charge limit for their vehicle—typically 80%. *Porter* FAC ¶ 50. In fact, Tesla suggests that consumers "should charge their vehicle to full 100% capacity only sparingly," and "Tesla's chief executive officer, Elon Musk, suggests that owners should only charge to 90% or 95% when necessary," rather than to 100% capacity. *Id.* ¶ 52. This is noteworthy because charge limits "directly impacts total range." *Id.* ¶ 54. Importantly, the EPA estimated range is calculated based on full 100% battery charge. *See id.* ¶ 115. Thus, if a consumer were to view Tesla's representations—which is a certainty, given their inclusion in the ordering process, *id.* ¶¶ 36, 40–45—and were to comply with Tesla's instructions for charging (and setting charge limits of) the vehicle, the consumer would *not* be able to achieve the advertised EPA estimated range. *Id.* ¶¶ 53–54. Tesla's Diversion Team even recognized that the EPA estimated ranges advertised to consumers were hypothetical figures, which could not be achieved under normal driving conditions, calling them a "prediction, rather than an actual measurement." *Id.* ¶¶ 93, 96.

Notably, Tesla claims that the vehicle's "[d]isplayed range is adapted based on fixed EPA test data, not your personal driving patterns." https://www.tesla.com/support/range (last visited Dec. 20, 2023); *see also Porter* FAC ¶ 96. But this directly contradicts Tesla's development of algorithms for estimating range that would display "rosy," inflated projections for the distance its vehicles can travel on a full battery. *Porter* FAC ¶ 69. As Plaintiffs allege, Tesla's software displayed range calculations based on its own proprietary calculations and projections—not based on EPA testing or data. *Id.* As the vehicle reached 50% or less, these projections vary drastically, as the algorithm calculates (and displays) more realistic projections. *Id.* ¶ 70.

Tesla, of course, knew these facts. However, Tesla chose to conceal them from consumers, relying only on advertising EPA estimated range figures, while actively concealing important information that directly impacted the "achievable range" from consumers. Moreover, Tesla made representations to consumers strongly suggesting that Tesla vehicles should be limited to 80% charge without simultaneously warning consumers that following such manufacturer suggestions would make achieving the advertised EPA estimated range impossible. Notably, Tesla could have simply included a warning to this effect when advertising the EPA estimated ranges—namely, by

warning consumers that the EPA estimated range was based on 100% battery charge, or that they did not reflect normal driving conditions. Indeed, Tesla could simply have incorporated the EPA's language specifically developed on this point, by stating "When fully charged, vehicle can travel about . . ." or by stating that "Actual results will vary for many reasons including driving conditions . . ." *See id.* ¶ 63. Tesla chose not to do so—likely because it saw greater opportunity for profit from a consumer base that "felt good" about a vehicle with a longer range. *See id.* ¶ 71.

Plaintiffs' allegations illustrate that Tesla's advertising was not merely limited to providing consumers the vehicles' EPA estimated ranges and nothing more. Rather, Tesla engaged in extensive marketing and branding in an effort to establish Tesla as one of the premier electric vehicles on the market capable of achieving the greatest driving range. *See id.* Its development of software and algorithms specifically designed to inflate the driving range of vehicles—to Tesla owners and potential customers—is sufficient to establish that Tesla has gone "beyond merely reporting the EPA-estimated [range]." *In re Ford Fusion and C-Max Fuel Economy Litig.*, No. 13-MD-2450, 2015 WL 7018369, at *26. "Plaintiff[s] do[] not challenge the disclosure of the EPA estimate itself," but instead allege additional statements by Tesla establishing the necessity of setting charge limits, which make it impossible to achieve the advertised EPA estimated ranges. *Yung Kim v. Gen. Motors, LLC*, 99 F. Supp. 3d 1096 (C.D. Cal. 2015). Plaintiffs' allegations further establish that Tesla engaged in a deceptive marketing campaign by using proprietary algorithms designed to display exaggerated vehicle ranges and by the "*use* of the EPA estimates in a way that may give consumers the mistaken impression that they are able to achieve real-world mileage and tank range derived from those figures." *Id.*; *see also Paduano*, 88 Cal. Rptr. 3d at 110 (refusing to preempt plaintiff's CLRA and UCL claims based on automaker's "allud[ing] to [EPA] estimates in a manner that may give consumers the misimpression that they will be able to achieve mileage close to the EPA estimates").

To be clear, none of the *Porter* or *Van Diest* Plaintiffs are alleging that Tesla acted deceptively by merely stating the EPA estimated range. Rather, Tesla's marketing and conduct, coupled with its use of the EPA estimates" creates a misimpression among consumers that the advertised range is achievable, when it is not under normal driving conditions, particularly when

following Tesla's suggestions for using the vehicles. This is borne out by the numerous complaints Tesla has received about this very issue—to which Tesla responded with more deception, by creating a team not to address these concerns but to simply dispose of them in summary fashion. Tesla's conduct, marketing, and various representations regarding charging and range are designed in such a way as to suggest to consumers that Tesla vehicles achieve some of the best range on the market. This is not protected by the EPCA or FTC regulations.

Even if Plaintiffs' claims were based only on an omission theory, their claims would still survive. A defendant owes a duty to disclose information about the sale of a product where the information is material, is "central to the product's function," and alleges at least one *LiMandri* factor. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1085 (N.D. Cal. 2022). Driving range is material and is an important factor in a Tesla purchase. *E.g.*, *Porter* FAC ¶¶ 4, 223 (at p. 56), 236 (at p. 58), 245 (at p. 60). Further, vehicle range capabilities are central to the vehicle's function because they directly impact how far the vehicle can drive—no different than the vital importance of gasoline and fuel economy for an internal combustion engine vehicle. *Id.* ¶¶ 224 (at p. 56), 237 (at p. 58), 247 (at p. 60). And Plaintiffs have alleged multiple *LiMandri* factors: that Tesla had exclusive knowledge of the vehicles' true range capabilities; that Tesla actively concealed this through its software and Diversion Team; and while Tesla discussed the "achievable range," it still withheld material information. *E.g.*, *id.* ¶¶ 221 (at p. 55); *Hammerling*, 615 F. Supp. 3d at 1085.

At bottom, Tesla asks the Court to condone a manufacturer's sophisticated efforts to deceive the EPA and consumers merely because the manufacturer was initially successful in those efforts. But this does not support preemption. Accordingly, the Court should deny Tesla's motion.

## II. <u>CONCLUSION</u>

For the above reasons, and for the reasons explained in the *Corona* Plaintiffs' Opposition to Tesla's Motion to Dismiss, the *Porter* and *Van Diest* Plaintiffs respectfully request that the Court deny Tesla's Motion to Dismiss. In particular, the Court should refuse to find federal preemption and allow Plaintiffs' claims to proceed.

DATED: December 20, 2023

/s/ *William A. Ladnier*
Adam A. Edwards (*pro hac vice*)
William A. Ladnier (CA Bar No. 330334)
Virginia Ann Whitener (*pro hac vice*)
**MILBERG COLEMAN BRYSON**
  **PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel: (865) 247-0080
Fax: (865) 522-0049
aedwards@milberg.com
wladnier@milberg.com
gwhitener@milberg.com

Alex R. Straus (CA Bar No. 321366)
**MILBERG COLEMAN BRYSON**
  **PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive, PH Suite
Beverly Hills, CA 90212
Tel: (866) 252-0878
Fax: (310) 496-3176
astraus@milberg.com

Mitchell Breit (*pro hac vice*)
**MILBERG COLEMAN BRYSON**
  **PHILLIPS GROSSMAN, PLLC**
405 E. 50th Street
New York, NY 1002
Tel: (347) 668-8445
mbreit@milberg.com

*Attorneys for the Plaintiffs and the Proposed Class in* Porter, et al. v. Tesla, Inc.


/s/ *Sophia Gold*
Sophia Goren Gold (Cal. Bar No. 307971)
**KALIELGOLD PLLC**
950 Gilman Street, Suite 200
Berkeley, CA 94710
sgold@kalielgold.com
(202) 350-4783

Jeffrey D. Kaliel (Cal. Bar No. 238293)
**KALIELGOLD PLLC**

1100 15th Street NW, 4th Floor
Washington, DC 20005
jkaliel@kalielpllc.com
(202) 350-4783

Francisco Guerra IV (*pro hac vice*)
Jennifer A. Neal (*pro hac vice*)
**WATTS GUERRA LLP**
875 East Ashby Place, Suite 1200
San Antonio, TX 78212
fguerra@wattsguerra.com
jneal@wattsguerra.com
(210) 447-0500

*Attorneys for the Plaintiffs and the
Proposed Class in* Van Diest, et al. v. Tesla, Inc.

# CERTIFICATE OF SERVICE

I, William A. Ladnier, hereby certify that on December 20, 2023, I caused a true and correct copy of the foregoing *Porter* and *Van Diest* Plaintiffs' *Amicus Curiae* Brief in Support of *Corona* Plaintiffs' Opposition to Defendant's Motion to Dismiss to be served upon all counsel of record through the Court's ECF system, including:

**MORGAN, LEWIS & BROKIUS, LLP**
David L. Schrader (SBN 149638)
david.schrader@morganlewis.com
300 South Grand Ave., 22nd Floor
Los Angeles, CA 90071
Phone: (213) 612-2500

Mark A. Feller (SBN 319789)
mark.feller@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105
Phone: (415) 442-1000

Brian M. Ercole
brian.ercole@morganlewis.com
Matthew M. Papkin
matthew.papkin@morganlewis.com
600 Brickell Ave., Suite 1600
Miami, Florida 33131
Phone: (305) 415-3000

/s/ *William A. Ladnier*
William A. Ladnier