**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **JAMES PORTER, ET AL.,**<br><br>  Plaintiffs,<br><br>  v.<br><br>**TESLA, INC.,**<br><br>  Defendant. | **Case No.:** 4:23-cv-3878-YGR<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS**<br><br>Re: Dkt. No. 43 |
| **SAMUEL VAN DIEST, ET AL.,**<br><br>  Plaintiffs,<br><br>  v.<br><br>**TESLA, INC.,**<br><br>  Defendant. | **Case No.:** 4:23-cv-4098-YGR<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION ON AN INDIVIDUAL BASIS**<br><br>Re: Dkt. No. 43 |

Pending before the Court is defendant Tesla, Inc.'s Motion to Compel Arbitration of Plaintiffs' Claims on an Individual Basis. (Dkt. No. 43.) In two related cases, plaintiffs James Porter, Bryan Perez, Dro Esraeili Estepanian, Dennis Romanez, Artem Kupriiets, Neil Kreuzer, Wafay Nadir, Kenneth Brown, Samuel Van Diest, and Sergey Khalikulov brought putative class actions alleging that Tesla purposefully overinflates the driving range of its electric vehicles. Tesla now seeks to hold each of these plaintiffs to the arbitration agreements they signed when purchasing their electric vehicle.

Having carefully considered the papers submitted, the oral argument heard on February 13, 2024, and for the reasons set forth below, the Court **GRANTS** Tesla's motion to compel individual arbitration.

I.  **BACKGROUND**

At the core of this motion are plaintiffs' claims for violations of: the California Consumer Legal Remedies Act ("CLRA"); California Unfair Competition Law ("UCL"); and the California False Advertising Law ("FAL").  In addition, they bring various other California law claims as well as claims under the consumer protection laws of Florida, Illinois, Massachusetts, New York and Washington.[1]

Plaintiffs pled each action specifically as a class action. The Porter plaintiffs seek to represent a national class and various state subclasses for California and each of the other states listed above. (Case No. 23-3878, Dkt. No. 35, First Amended Complaint ¶¶ 224–25.) The Van Diest plaintiffs seek to represent a national class and a California subclass. (Case No. 23-4098, Dkt. No. 1, Complaint ¶ 63.)

Each named plaintiff here signed an "Order Agreement" when they purchased their Tesla vehicle. The agreement included an arbitration provision, which generally stated as follows:

> **Agreement to Arbitrate.** Please carefully read this provision, which applies to any dispute between you and Tesla, Inc. and its affiliates, (together "Tesla").
>
> If you have a concern or dispute, please send a written notice describing it and your desired resolution to resolution@tesla.com.
>
> If not resolved within 60 days, you agree that any dispute arising out of or relating to any aspect of the relationship between you and Tesla will not be decided by a judge or jury but instead by a single arbitrator in an arbitration administered by the American Arbitration Association (AAA) **under its Consumer Arbitration Rules.** This includes claims arising before this Agreement, such as claims related to statements about our products.
>
> We will pay all AAA fees for any arbitration, which will be held in the city or county of your residence. To learn more about the Rules and how to begin an arbitration, you may call any AAA office or go to www.adr.org.

---

[1] These include breach of express warranty; breach of implied warranty; violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301; violations of the Song-Beverly Consumer Warranty Act, Cal Civ. Code § 1790, *et seq.*; fraud; negligent misrepresentation; violations of Florida's Deceptive and Unfair Trade Practice Act; violations of Illinois Consumer Fraud and Deceptive Practices Act; violations of Illinois Uniform Deceptive Trade Practices Act; violations of Massachusetts's Consumer Protection Act; violations of the New York General Business Law; and violations of the Washington Consumer Protection Act.

> The arbitrator may only resolve disputes between you and Tesla, and may not consolidate claims without the consent of all parties. **The arbitrator cannot hear class or representative claims or requests for relief on behalf of others** purchasing or leasing Tesla vehicles. In other words, you and Tesla may bring claims against the other only in your or its individual capacity and not as a plaintiff or class member in any class or representative action. **If a court or arbitrator decides** that any part of this agreement to arbitrate cannot be enforced as to a particular claim for relief or remedy, **then that claim or remedy (and only that claim or remedy) must be brought in court** and any other claims must be arbitrated.
>
> If you prefer, you may instead take an individual dispute to small claims court.
>
> You may opt out of arbitration within 30 days after signing this Agreement by sending a letter to: Tesla, Inc.; P.O. Box 15430; Fremont, CA 94539-7970, stating your name, Vehicle Identification Number, and intent to opt out of the arbitration provision. If you do not opt out, this agreement to arbitrate overrides any different arbitration agreement between us, including any arbitration agreement in a lease or finance contract.

(Dkt. No. 44, Ex. 1, "Arbitration Provision," at 3, emphasis supplied for the reader's convenience; header emphasis in original.) None of the named plaintiffs opted out.

## II.   FRAMEWORK

The Federal Arbitration Act ("FAA") governs commercial arbitration agreements. 9 U.S.C. § 2. Under the FAA, a contract "to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id*. When considering a motion to compel arbitration under the FAA, a court must determine: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Johnson v. Walmart, Inc.*, 57 F.4th 677, 680 (9th Cir. 2023) (internal quotations and citation omitted). If the court answers both questions in the affirmative, it must "enforce the arbitration agreement in accordance with its terms." *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 716 (9th Cir. 2020) (internal quotations and citation omitted).  While "doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 743 (9th Cir. 2014) (internal quotations and citation omitted).

3

## III.  ANALYSIS

As an initial matter, plaintiffs concede that a valid agreement to arbitrate exists, that the agreement covers the dispute here, and all claims must be arbitrated *except for* their UCL, FAL, and CLRA claims, and the other states' equivalent of those claims.

Here, plaintiffs Kupriiets, Kruezer, Nadir, Romanez, and Brown do not reside in California. Accordingly, they cannot and do not seek public injunctive relief under the UCL, FAL, and CLRA. Instead, these plaintiffs seek public injunctive relief under their own state's version of California's UCL, FAL, and CLRA and argue that the Court should extend the California Supreme Court's ruling in *McGill v. Citibank*, 2 Cal. 5th 945 (2017) to apply to those statutes. Plaintiffs identify no precedent to support such a broad proposition and the Court declines to adopt it. For those reasons, the Court **GRANTS** Tesla's motion to compel individual arbitration as to all non-California plaintiffs and all of California plaintiffs' claims other than their FAL, UCL, and CLRA claims.

For the remaining California plaintiffs (Porter, Perez, Estepanian, Van Diest, and Khalikulov), the parties dispute (a) who should decide whether the Arbitration Provision is enforceable; (b) whether *McGill* renders the Arbitration Provision unenforceable as to plaintiffs' request for public injunctive relief under the FAL, UCL, and CLRA; and (c) if the Arbitration Provision is unenforceable as to plaintiffs' claims for public injunctive relief, to what extent those claims are severable. The Court addresses each.

### A.   DELEGATION OF ARBITRABILITY

As a threshold matter, Tesla argues that all plaintiffs, except Khalikulov, agreed to delegate to an arbitrator the question of whether its arbitration provisions are enforceable.[2] They did so, Tesla continues, because the Order Agreements expressly incorporate the AAA's Consumer Arbitration Rules. Plaintiffs disagree.[3]

---

[2] In its reply, Tesla concedes that one plaintiff—Khalikulov—signed a more recent Arbitration Provision that expressly refuses to delegate. The motion, on this point, as to plaintiff Khalikulov is therefore **DENIED.**

[3] Tesla separately argues that, even if the Order Agreement's Arbitration Provision does not clearly delegate, the Sale Agreement that some plaintiffs signed does. The Order Agreement's Arbitration Provision, however, expressly "overrides any different arbitration agreement between us, including any arbitration agreement in a lease or finance contract." (Dkt. No. Dkt. No. 44, Ex. 1

4

The Arbitration Provision states in relevant part:

> **Agreement to Arbitrate.** If [your dispute] is not resolved within 60 days, you agree that any dispute arising out of or relating to any aspect of the relationship between you and Tesla will not be decided by a judge or jury but instead by a **single arbitrator in an arbitration administered by the American Arbitration Association (AAA) under its Consumer Arbitration Rules**. . . . **If a court *or* arbitrator** decides that any part of this agreement to arbitrate cannot be enforced as to a particular claim for relief or remedy, then that claim or remedy (and only that claim or remedy) must be brought in court and any other claims must be arbitrated.

(Dkt. No. 44, Ex. 1 at 3, emphasis supplied, except for header.)[4] If one consults the AAA's Consumer Arbitration Rules, it provides that "the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." (Dkt. No. 43-2, "AAA's Consumer Arbitration Rules," R-14 Jurisdiction (a) at 7.) This language is not quoted in the Arbitration Provision itself. Instead, as expressly noted above, the Arbitration Provision states either "*a court* or arbitrator" could decide its enforceability. Tesla argues that the arbitration provision manifests a clear and unmistakable intent to arbitrate arbitrability; plaintiffs counter that the Court should find otherwise because the actual language of the Arbitration Provision leaves the question of arbitrability for judicial determination.[5]

---

at 3.) At the hearing, Tesla's counsel agreed that this language could only be interpreted to mean that it is the Order Agreement's Arbitration Provision, not any other, that controls. On that point, Tesla's motion is **DENIED.**

[4] Tesla states that there are at times key differences between the Order Agreements signed by plaintiffs. Because no party points the Court to any material differences in these particular clauses in the agreements signed, the Court assumes there are none.

[5] Plaintiffs also argue that, as unsophisticated parties, the Arbitration Provision's delegation clause should not bind them. For this proposition, they cite to *Oracle America, Inc. v. Myriad Group A.G.*, where the Ninth Circuit found that delegation by incorporation was expressly limited to arbitration agreements "between sophisticated parties." 724 F.3d 1069, 1075 (9th Cir. 2013). Shortly after, however, the Ninth Circuit clarified that *Oracle* did not "foreclose the possibility that this rule could also apply to unsophisticated parties or to consumer contracts" and acknowledged that in fact many of its sister circuits had not explicitly limited delegation by incorporation based on that attribute. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). Every other circuit thus far has eschewed sophistication as an interpretive rule. *See Blanton v. Domino's Pizza Franchising, Inc.*, 962 F.3d 842, 851 (6th Cir. 2020) (collecting cases). It is not clear whether the Ninth Circuit intends to provide more clarity. In any event, because plaintiffs proffer no evidence that they are in

5

The Supreme Court has "recognized that parties can arbitrate threshold issues concerning the arbitration agreement." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). That said, there is an "exception" to this policy: "The question of whether the parties have submitted a particular dispute to arbitration, *i.e.*, the question of arbitrability, is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (cleaned up). "Virtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013).

To determine whether there was a clear and unmistakable delegation, the Court starts with the Arbitration Provision itself. Courts in this district have come to opposite conclusions when analyzing this exact Provision. Recently, Judge Gilliam determined that this Arbitration Provision was not "clear and unmistakable evidence" of parties' intent to delegate arbitrability because "the arbitration agreement here leaves open the possibility that a court could decide such issues too." *In re Tesla Advance Driver Assistance Systems Litig.*, No. 22-cv-5240-HSG, 2023 WL 6391477, at *5–*6 (N.D. Cal. Sept. 30, 2023). Magistrate Judge Spero, on the other hand, determined that the same "court or arbitrator" language on which Judge Gilliam relied "does not create tension" and instead "appears to be aimed at the eventuality that a court might conclude that the agreement is invalid as to some claims due to a change in the law governing delegability." *Yeh v. Tesla, Inc.*, 2023 WL 6795414, at *7 (N.D. Cal. Oct. 12, 2023).[6]

---

fact unsophisticated parties, the Court declines to evaluate the clause from that perspective here, as it has done in previous cases. *See Magill v. Wells Fargo Bank, N.A.*, 2021 WL 6199649, at *5 (N.D. Cal. June 25, 2021); *Gerlach v. Tickmark, Inc.*, 2021 WL 3191692 (N.D. Cal. July 28, 2021).

[6] Tesla points out that in *Lambrix v. Tesla*, No. 23-cv-1145-TLT (N.D. Cal. Sept. 27, 2023), Judge Thompson also found that this arbitration provision manifested parties' agreement to delegate arbitrability to the AAA. The Court notes, however, that Judge Thompson in *Lambrix* did not address the "court or arbitrator" language highlighted here by plaintiffs.

The Court agrees with Judge Gilliam that there is an "inherent tension" in the Arbitration Provision. *In re Tesla Advance Driver Assistance Sys.*, 2023 WL 6391477 at *6. Tesla itself drafted the Arbitration Provision that both expressly incorporates the AAA Rules and provides that a court might determine its scope. By contrast, the express language does not delegate arbitrability to the AAA. A consumer could therefore reasonably understand the Arbitration Provision to mean that a court had the authority to decide questions of arbitrability and think that there was no reason to consult the specific section of the AAA's Consumer Arbitration Rules that deals with the arbitrator's jurisdiction. Because there is ambiguity, the presumption is that courts will decide the issue of arbitrability. *See Howsam*, 537 U.S. at 83.

For those reasons, the Court finds that the Order Agreement's Arbitration Provision did not delegate arbitrability. On this ground, the motion is **DENIED.**

**B.   ENFORCEABILITY OF THE ARBITRATION PROVISION UNDER *MCGILL***

The parties dispute whether the Arbitration Provision deprives plaintiffs the opportunity to seek public injunctive relief in any forum and is therefore enforceable under *McGill*.[7]

In *McGill*, the California Supreme Court held that any agreement, including an arbitration provision, that waives a plaintiff's right to seek public injunctive relief is unenforceable. *McGill*, 216 Cal.Rptr.3d 627, 393 P.3d at 93. In explaining *McGill,* the Ninth Circuit stated that "public injunctive relief within the meaning of *McGill* is limited to forward-looking injunctions that seek to prevent future violations of law for the benefit of the general public as a whole, as opposed to a particular class of persons, and that do so without the need to consider the individual claims of any

---

[7] In addition, Tesla argues that some of the plaintiffs—Porter, Estepanian, and Perez—have not pled a claim for public injunctive relief because they did not explicitly request such relief. In *McGill*, the California Supreme Court held that, "[b]y definition, the public injunctive relief available under the UCL, the CLRA, and the false advertising law," the very claims brought by plaintiffs here, "is primarily for the benefit of the general public." *McGill v. Citibank, N.A.*, 2 Cal.5th 945, 961 (Cal. 2017) (cleaned up). Nothing in *Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535 (9th Cir. 2021), which Tesla cites in support, requires the Court to find otherwise. Plaintiffs seek an injunction that would benefit "the public directly by the elimination of deceptive practices," and would not benefit plaintiffs solely because they are aware of the alleged practices and have already been injured by them. *McGill*, 216 Cal.Rptr.3d at 633. On this ground, Tesla's motion is **DENIED.**

7

non-party." *Hodges v. Comcast Cable Communications, LLC*, 21 F.4th 535, 542 (9th Cir. 2021). A request for public injunctive relief, therefore, "does *not* constitute the pursuit of representative claims or relief on behalf of others," nor does it involve "prosecuting actions on behalf of the general public." *Id.* (quoting *McGill*, 216 Cal.Rptr.3d 627, 393 P.3d at 92–93).

To determine whether the Arbitration Provision here prohibits public injunctive relief, the Court must focus on the parties' "objective intent, as evidence[d] by the words of the contract, rather than the subjective intent of one of the parties." *Reilly v. Inquest Tech., Inc.*, 218 Cal.App.4th 536, 160 Cal.Rptr.3d 236, 249 (Cal. 2013) (cleaned up). "When in doubt, both federal and state law point toward interpreting the Agreement to permit arbitration." *DiCarlo v. MoneyLion, Inc.*, 988 F.3d 1148, 1152 (9th Cir. 2021).

Again, the Court starts with the Arbitration Provision's relevant language:

> The arbitrator may only resolve disputes between you[] and Tesla and may not consolidate claims without the consent of all parties. The arbitrator cannot hear class or representative claims or requests for relief on behalf of others purchasing or leasing Tesla vehicles. In other words, you and Tesla may bring claims against the other only in your or its individual capacity and not as a plaintiff or class member in any class or representative action.

(Dkt. No. 44, Ex. 1 at 3.)[8]

The analysis has two parts: First, the plain language of the Arbitration Provision allows for the arbitration of all claims in one's "individual capacity." Such a class waiver does not implicate public injunctive relief because, under *McGill*, public injunctive relief is brought on behalf of an individual for the benefit of the public, not as a class or representative claim. *Hodges*. *Id.* 21 F.4th 535, 542 (9th Cir. 2021) (citing *McGill*, 216 Cal.Rptr.3d 627, 393 P.3d at 92–93). This difference between who brings such a request and who benefits from it is not simply academic. *See Farr v. Acima Credit LLC*, No. 20-cv-8619-YGR, 2021 WL 5161923, at *2 n.5 (noting that an arbitration provision precluding plaintiff from pursuing a representative action "in no way precludes plaintiff

---

[8] The Court disagrees with Tesla's separate argument that the Arbitration Provision does not prohibit public injunctive relief because the clause on "behalf of others purchasing or leasing Tesla Vehicles" should be interpreted to limit the Provision to relief sought on behalf of only the subset of the public that already owns a Tesla. This is not so. Any member of the public can purchase a Tesla and the claims that Tesla has allegedly made about the electric vehicle's driving range were for a general audience.

from seeking public injunctive relief in her individual capacity" under *McGill*). It is the reason why the California Supreme Court held, in *McGill*, that Proposition 64's amendments to the UCL did not eliminate the ability of a private plaintiff to seek public injunctive relief under the UCL, *see Hodges*, 21 F.4th at 542, and why the Ninth Circuit has held that *McGill* is not preempted by the FAA, *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819, 828 (9th Cir. 2019).

Second, the Court turns to the actual relief prohibited under the Arbitration Provision. It expressly states that the "arbitrator cannot hear . . . requests for relief on behalf of others purchasing or leasing Tesla vehicles." Because a request for public injunctive relief is "relief that by and large benefits the general public and that benefits the plaintiff, if at all, only incidentally and/or as a member of the general public," *Hodges*, 21 F.4th at 540 (quoting *McGill*, 216 Cal.Rptr.3d 627, 393 P.3d at 89), a plaintiff seeking such relief could be said to be doing so "on behalf of others." As the Ninth Circuit recently stated, an arbitration provision implicates *McGill* when it "prohibit[s] the arbitrator from awarding relief that would affect those other than plaintiff." *Patrick v. Running Warehouse, LLC*, No. 22-56078 (9th Cir. Feb. 12, 2024) (cleaned up). Although the Arbitration Provision does not reference public injunctive relief, the Court remains concerned that an arbitrator may interpret its language to preclude granting such relief.[9] If so, it would be unenforceable.

Because, when in doubt, the Court must interpret the Arbitration Provision to permit arbitration, and Tesla stated in both its briefing and at the hearing that it did not draft the Arbitration Provision to prohibit public injunctive relief, the Court ultimately concludes that the Arbitration Provision permits plaintiffs to seek public injunctive relief in arbitration. For that reason, the Court **GRANTS** Tesla's motion to compel arbitration as to all of plaintiffs' claims, with the caveat discussed below.

### C. SEVERABILITY

Out of an abundance of caution, the Court addresses to what extent plaintiffs' UCL, CLRA, and FAL claims are severable in the event public injunctive relief is deemed unavailable. The Arbitration Provision's severance clause states:

---

[9] For instance, the Court does not opine on the argument of whether plaintiffs are attempting to bring all claims as class claims given the gravamen of the complaint.

9

> If a court or arbitrator decides that any part of this agreement to arbitrate cannot be enforced as to a particular claim for relief or remedy, then that claim or remedy (and *only that claim or remedy*) must be brought in court and any other claims must be arbitrated.

(Dkt. No. 44, Ex. 1 at 3 (emphasis supplied).)

The Arbitration Provision emphasizes that, to the extent a court finds the Arbitration Provision unenforceable as to a certain remedy, then "only" that "remedy" is severable. At the hearing, the Court initially expressed concern that it could not efficiently administer the public injunctive relief sought without resolving the underlying claim. Upon further reflection, the Court concludes that it will be able to craft appropriate public injunctive relief if plaintiffs successfully arbitrate their UCL, FAL, and CLRA claims and such relief is deemed unavailable.

Accordingly, the Court **STAYS** the case pending resolution of the arbitration in case it is required to adjudicate any request for public injunctive relief. 9 U.S.C. § 3.

## IV. CONCLUSION

For the reasons stated above, the motion to compel arbitration is **GRANTED** as to all claims. The Court finds that the Arbitration Provision does not prohibit plaintiffs from pursuing public injunctive relief in their individual capacities. To the extent an arbitrator finds otherwise, the Court **STAYS** the action as such relief is severable and can be separately adjudicated by this Court.

For administrative purposes, the action shall be closed and may be reopened after arbitration if necessary.

This terminates Docket No. 43.

**IT IS SO ORDERED**.

Date: **March 7, 2024**

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**